## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 6:25-cv-00581-KC |
| v. | ) ) | **JURY TRIAL** |
| ONESTA IP, LLC, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF BMW'S MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND ANTI-SUIT INJUNCTION

I.      AN EMERGENCY TEMPORARY RESTRAINING ORDER AND ANTI-SUIT INJUNCTION ARE WARRANTED DUE TO ONESTA'S UNPRECEDENTED ASSERTION IN GERMANY OF TWO U.S. PATENTS ................................................. 1

II.     ONESTA IMPROPERLY ATTEMPTS TO ASSERT U.S. PATENTS IN GERMANY AND DEPRIVE THIS U.S. COURT OF JURISDICTION ......................... 3

        A.      Prior U.S. Litigations Demonstrate that the WDTX Is the Best Forum to Resolve the Parties' Dispute ................................................. 3

        B.      Onesta's Unprecedented Attempt to Assert U.S. Patents in a German Court Is an Attempt to Gain Unwarranted Advantages and Remedies ................. 4

        C.      BMW Filed a Declaratory Judgment Action and a Motion for TRO and ASI ................................................................................................. 5

III.    THE COURT SHOULD GRANT AN ASI BECAUSE ONESTA IS ASSERTING U.S. PATENTS IN GERMANY, A DIVESTITURE OF U.S. JURISDICTION ................................................................................................. 5

        A.      The Fifth Circuit's ASI Legal Standards Favor BMW ........................................... 5

        B.      Application of the Fifth Circuit's *Unterweser* Test Strongly Favors Issuing an ASI to Preserve U.S. Jurisdiction over Patent Disputes..................................... 6

                1.      The Parties Here Are the Same and the Domestic Action Will Be Dispositive of the U.S. Patent Issues ......................................................... 6

                2.      Each Applicable Factor in the *Unterweser* Analysis Individually Strongly Supports an ASI .......................................................................... 7

                        a.      *Unterweser* Threat No. 1—The Munich Court Adjudicating Infringement of U.S. Patents Frustrates U.S. Policy Goals ............ 7

                        b.      *Unterweser* Threat No. 2—The Oppressive and Vexatious Nature of Litigating U.S. Patents in Munich Is Undeniable ......... 10

                        c.      *Unterweser* threat No. 4—Prejudice and Offense to Equitable Principles Affect Both BMW and the U.S. Public ....... 14

                3.      The *Unterweser* Factors Outweigh Principles of International Comity Because the Principles of International Comity Favor an ASI ......................................................................................................... 15

IV.     AN *EX PARTE* TRO SHOULD ISSUE TO PRESERVE THE STATUS QUO.............. 17

1.       An *Ex Parte* TRO Is Warranted Because Giving Notice to Onesta Is Impracticable and Invites the Harms BMW Seeks an ASI to Enjoin ................................................................................... 17

2.       The Four-Factor TRO Test Is Fully Met for Entry of a TRO ................... 18

V.       BMW ASKS THIS COURT TO ISSUE AN *EX PARTE* TRO AND ASI TO PRESERVE THE STATUS QUO, PREVENT IRREPARABLE HARMS, AND ENSURE THIS COURT'S JURISDICTION ................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015)..................................................................................15

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996)....................................................................................5

*Bowne v. Joy*,
  9 Johns. 221 (N.Y. 1812)..........................................................................................17

*Brulotte v. Thys Co.*,
  379 U.S. 29 (1964)....................................................................................................14

*Byrd v. Blue Ridge Rural Elec. Coop*,
  356 U.S. 525 (1958)....................................................................................................8

*Certain Graphics Sys., Components Thereof, & Digit. Televisions Containing
  the Same*,
  337-TA-1318, ID, D.I. 799959 (USITC July 7, 2023) ............................................4

*Certain Integrated Circuits, Elec. Devices Containing the Same, & Components
  Thereof*,
  337-TA-1450, D.I. 849117 (USITC Apr. 8, 2025)....................................................3

*Colo. River Water Conserv. Dist. v. United States*,
  424 U.S. 800 (1976)....................................................................................................7

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)..................................................................................9

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518 (1972)................................................................................................. 10

*Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*,
  235 U.S. 641 (1915)....................................................................................................8

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)..............................................................................................2, 15

*Ericsson Inc. v. Samsung Elecs. Co.*,
  No. 2:20-CV-00380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 11, 2021) ..............7, 16

*Ericsson Inc. v. Samsung Elecs. Co.*,
  No. 2:20-cv-00380-JRG, Dkt. 14 (E.D. Tex. Dec. 28, 2020) ...........................................18, 20

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
  66 F.4th 578 (5th Cir. 2023) ........................................................................ *passim*

*Granny Goose Foods, Inc. v. Bhd. of Teamsters Loc. No. 70*,
  415 U.S. 423 (1974)........................................................................................................17

*Jacob v. City of New York*,
  315 U.S. 752 (1942) ........................................................................................................8

*Kaepa, Inc. v. Achilles Corp.*,
  76 F.3d 624 (5th Cir. 1996) ........................................................................6, 11, 15

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)........................................................................11

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*,
  335 F.3d 357 (5th Cir. 2003) ........................................................................ 6, 10-11

*Kimble v. Marvel Ent., LLC*,
  576 U.S. 446 (2015)........................................................................................................14

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984)........................................................................ *passim*

*In re Lockwood*,
  50 F.3d 966 (Fed. Cir. 1995)........................................................................8

*Markman v. Westview Instrs., Inc.*,
  517 U.S. 370 (1996)........................................................................................................8, 9

*Maule v. Murray*,
  7 T.R. 470 (1798)........................................................................................................17

*Microsoft Corp. v. Motorola, Inc.*,
  871 F. Supp. 2d 1089 (W.D. Wash.), *aff'd*, 696 F.3d 872 (9th Cir. 2012) ........................7, 17

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)........................................................................................................8

*MWK Recruiting Inc. v. Jowers*,
  833 F. App'x 560 (5th Cir. 2020) ........................................................................5-6

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945)........................................................................................................9-10

*Princo Corp. v. ITC*,
   616 F.3d 1318 (Fed. Cir. 2010) (en banc)..................................................14

*Qxo Bldg. Prods., Inc. v. Carver*,
   No. 4:25-cv-544-JDK, 2025 U.S. Dist. LEXIS 206503 (E.D. Tex. May 23,
   2025) .........................................................................................................17

*Realtek Semiconductor Corp. v. ATI Techs. ULC*,
   IPR2023-00687, Paper 7 (PTAB Oct. 25, 2023) .......................................4

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's*,
   No. CV-05-411-LRS, 2009 WL 4716037 (E.D. Wash. Dec. 8, 2009) ..................11

*Telefonaktiebolaget LM Ericsson v. Lenovo (US), Inc.*,
   120 F.4th 864 (Fed. Cir. 2024) .............................................................6-7

*Tesla, Inc. v. Individuals*,
   No. W-24-CV-00172-ADA, 2024 U.S. Dist. LEXIS 246714 (W.D. Tex.
   Apr. 19, 2024)........................................................................................17, 18

*The Schooner Exch. v. McFaddon*,
   11 U.S. (7 Cranch) 116 (1812)...............................................................16

*In re Unterweser Reederei, GMBH*,
   428 F.2d 888 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971)
   (en banc)................................................................................... *passim*

*Va. Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997)................................................................14

*Voda v. Cordis Corp.*,
   476 F.3d 887 (Fed. Cir. 2007)........................................................9, 16, 17

**Constitutional Provisions**

U.S. Const. amend. VII ...............................................................................8

U.S. Const. art. VI, cl.2.............................................................................16

**Statutes**

19 U.S.C. §1337...........................................................................................5

28 U.S.C. §1295...........................................................................................9

28 U.S.C. §1338(a) ......................................................................................9

28 U.S.C. §1400(b) ......................................................................................9

28 U.S.C. §2201(a) ........................................................................................................... 7

35 U.S.C. §271 .................................................................................................................... 7

35 U.S.C. §287 .................................................................................................................... 7

35 U.S.C. §286 .................................................................................................................. 15

Patent Act ............................................................................................................................ 5

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................... *passim*

**Other Authorities**

Agreement on Trade-Related Aspects of Intellectual Property Rights .......................... 16

Brussels Regulations, art. 24(4) ...................................................................................... 13

German Code of Civil Procedure §890 ........................................................................... 12

Paris Convention, art. 2(3) ............................................................................................... 16

Patent Cooperation Treaty ............................................................................................... 16

**TABLE OF EXHIBITS**

| | |
|---|---|
| **Exhibit A** | Proposed TRO and ASI Orders |
| **Exhibit B** | *BSH Hausgeräte GmbH v. Electrolux AB*, Case C-339/22, Judgment of the Court (Grand Chamber), Court of Justice of the European Union (Feb. 25, 2025) |
| **Exhibit C** | *Onesta IP, LLC v. Bayerische Motoren Werke Aktiengesellschaft*, Complaint, Munich I Regional Court (Oct. 9, 2025) (machine translation) |
| **Exhibit D** | Frank Peterreins, Peterreins Schley, social media post on LinkedIn (last visited Dec. 15, 2025) |
| **Exhibit E** | Declaration of Professor Margo A. Bagley |
| **Exhibit F** | Declaration of Professor Matthias Leistner |
| **Exhibit G** | Olivia Sophie Rafferty, *Eastern District of Munich: Onesta sues BMW in Munich I Regional Court over two U.S. and one European former AMD patents*, IPFRAY (Oct. 30, 2025), *available at* https://ipfray.com/eastern-district-of-munich-onesta-sues-bmw-in-munich-i-regional-court-over-two-u-s-and-one-european-former-amd-patents/ |
| **Exhibit H** | Mathieu Klos, *NPE asserts US patents against BMW in Munich*, JUVE PATENT (Nov. 5, 2025), *available at* https://www.juve-patent.com/cases/npe-launches-us-patent-suits-against-bmw-in-munich/#:~:text=The%20US%20company%20primarily%20targets,US%208%2C854%2C381%20and%20US%208%2C443%2C209 |
| **Exhibit I** | Michael J. Summersgill et al., *The Rising Threat of German Patent Litigation: Are You Ready?*, 37 INTELL. PROP. & TECH. L. J. 1 (Jan. 2025) |
| **Exhibit J** | Adam Houldsworth, *CJEU judgment changes game for European and global litigation strategy*, IAM (Feb. 26, 2025), *available at* https://www.iam-media.com/article/cjeu-judgment-changes-game-european-and-global-litigation-strategy |
| **Exhibit K** | Bree Vculek and Daniel Yonan, *European Courts Can Now Weigh In on US Patents: What the CJEU's Ruling Means*, JD SUPRA (Sept. 24, 2025), *available at* https://www.jdsupra.com/legalnews/european-courts-can-now-weigh-in-on-u-s-5478581/ |
| **Exhibit L** | *The CJEU's BSH Hausgeräte Decision and the UPC's Long Arm Jurisdiction over Foreign Patents* (May 14, 2025), *available at* https://www.quinnemanuel.com/the-firm/publications/client-alert-the-cjeu-s-bsh-hausgerate-decision-and-the-upc-s-long-arm-jurisdiction-over-foreign-patents |

| **Exhibit M** | Marianne Schaffner et al., *European Union: EU Courts Can Overreach in Forein Patent Disputes: The Arm Is Very Long And Not Confined to Infringement*, MONDAQ LTD. (May 21, 2025), *available at* https://www.mondaq.com/france/patent/1627262/eu-courts-can-overreach-in-foreign-patent-disputes-the-arm-is-very-long-and-not-confined-to-infringement |
|---|---|
| **Exhibit N** | Marianne Schaffner and Ailsa Carter, *Worlwide: Beware Overreach By EU Courts in Foreign Patent Disputes*, MONDAQ LTD. (Feb. 6, 2025), *available at* http://www.mondaq.com/redirection.asp?article_id=1580098&company_id=749&redirectaddress=https://gowlingwlg.com/en/insights-resources/articles/2025/beware-overreach-by-eu-courts-in-foreign-patent-disputes |
| **Exhibit O** | Randall R. Rader, *Rader's Ruminations: The Most Striking (and Embarrassing) Legal Mistake in Modern Patent Law*, IP WATCHDOG (Feb. 21, 2024), *available at* https://ipwatchdog.com/2024/02/21/raders-ruminations-striking-embarrassing-legal-mistake-modern-patent-law/ |
| **Exhibit P** | European Commission, IP Helpdesk, *German Court Fines Netflix for Patent Infringement – EUIPO Board of Appeal Rules Over PRADA's Triangle pattern distinctiveness* (Jan. 12, 2024), *available at* https://intellectual-property-helpdesk.ec.europa.eu/news-events/news/german-court-fines-netflix-patent-infringement-euipo-board-appeal-rules-over-pradas-triangle-pattern-2024-01-12_en |
| **Exhibit Q** | *Onesta IP, LLC v. Bayerische Motoren Werke Aktiengesellschaft*, Complaint, Munich I Regional Court (Oct. 9, 2025) (original German) |
| **Exhibit R** | Declaration of Dr. Johannes Druschel |

I.     **AN EMERGENCY TEMPORARY RESTRAINING ORDER AND ANTI-SUIT INJUNCTION ARE WARRANTED DUE TO ONESTA'S UNPRECEDENTED ASSERTION IN GERMANY OF TWO U.S. PATENTS**

Bayerische Motoren Werke Aktiengesellschaft ("BMW") requests a temporary restraining order ("TRO") and anti-suit injunction ("ASI") ordering Onesta IP, LLC ("Onesta") not to take further action that divests this Court of jurisdiction or prevents BMW from vindicating the full scope of its rights and patent defenses before this Court. *See* Ex. A. Onesta is a non-practicing entity ("NPE") from Delaware with no meaningful ties to Germany. Notwithstanding, on October 9, 2025, Onesta asserted *two U.S. patents*—Nos. 8,854,381 B2 ("the '381 patent") and 8,443,209 B2 ("the '209 patent")—against BMW in Munich Regional Court I ("the Munich court"). Through this unprecedented assertion of U.S. patents in Germany, Onesta seeks to enjoin BMW by exploiting the recent Court of Justice of the European Union ("CJEU") decision in *BSH Hausgeräte v. Electrolux* ("*BSH*"). Ex. B; Ex. C, 138(¶214). While *BSH* may apply across EU members issuing cross-border injunctions on European patents, it never expressly grants long-arm authority to divest U.S. courts of jurisdiction to enforce U.S. patents.

Onesta's Munich suit has not gone unnoticed—it is a highly publicized matter in Europe, with many practitioners reveling at the prospect of gobbling up global patent enforcement. Onesta's German counsel on LinkedIn (right) openly touts the facts of this case, while conceding that it appears to rest on



"[c]razy" legal grounds. *See* Ex. D; Ex. E ¶¶67-71, 122–27; Ex. F ¶¶46-61. Onesta nevertheless seeks from the Munich court a "swift, thorough, and high-quality decision from a specialized single forum," including injunctions on its asserted U.S. patents. Ex. G, 2; Ex. H, 2-3. In this matter

of first impression, many observers and experts expect that the Munich court will assume jurisdiction under the broadest reading of *BSH*. *See* Ex. F ¶¶81-82; Exs. J-N; Ex R ¶¶7-8.

For centuries, however, domestic law, treaty agreements, and principles of international comity have left determinations of infringement to the nation issuing a patent. *See infra* §III.B.3. Thus, any rights granted in U.S. patents are strictly territorial, enforceable only against defendants in U.S. federal courts under a panoply of constitutional and procedural protections. *See infra* §III.B.2. Proceedings in the Munich court necessarily deprive BMW of critical defendant rights available only here—e.g., fact discovery; invalidity consideration with *erga omnes* effect; and juries as a bulwark against the improper grant or assertion of U.S. patents. *See infra* §III.B.2.a. It is *this* community that will bear the cost of an injunction against BMW based on the '381 and '209 patents, and a U.S. court alone should make that decision under our federal system, not foreign tribunals. *See id.* Onesta's gambit in Munich to obtain quick-and-easy injunctions on U.S. patents is also an end-run around the public-interest factor that defeats injunctive relief for most domestic NPEs. *See infra* §III.B.2.c. (discussing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). Try as it might, the Munich court, whose injunction decision would ultimately impact U.S. consumers, cannot perform that analysis like an Article III judge would, with extensive experience applying U.S. law and assessing local public interest. *See id.*

While ASIs have been used in the context of standards-essential patents over the last twenty years, this remedy is even more necessary here to prevent Onesta's jurisdictional mischief asserting U.S. patents abroad. Not only does it undermine U.S. policy, Onesta's "vexatious and oppressive" litigation exposes BMW to inequitable hardship, wasted resources, and potentially conflicting decisions. *See infra* §III.B.2.b. (discussing Fifth Circuit's *Unterweser* factors). This Court, on the other hand, will already be resolving BMW's declaratory judgment of

noninfringement, invalidity, and patent misuse—issues that, regardless of outcome, will be dispositive of all U.S. patent issues before the Munich court.

BMW's motion *sub judice* seeks an ASI (1) prohibiting Onesta from pursuing any adjudication of U.S. patents in Munich; (2) preventing Onesta from seeking or enforcing an anti-anti-suit injunction ("AASI") against BMW in Munich; (3) preventing Onesta from seeking or enforcing a preliminary injunction against BMW based on U.S. patents asserted in Munich; and (4) requiring Onesta to indemnify BMW against any costs associated with continuation of the actions in Munich as they relate to U.S. patents. *See infra* §III; Ex. A. BMW also seeks an *ex parte* TRO to temporarily preserve the status quo under Fed. R. Civ. P. 65(b) and prevent irreparable harms while the ASI decision is pending. *See infra* §IV (citing declaration Ex. R ¶¶1-10); Ex. A.

## II. ONESTA IMPROPERLY ATTEMPTS TO ASSERT U.S. PATENTS IN GERMANY AND DEPRIVE THIS U.S. COURT OF JURISDICTION

### A. Prior U.S. Litigations Demonstrate that the WDTX Is the Best Forum to Resolve the Parties' Dispute

Onesta has pursued aggressive litigation of its patent portfolio within the United States. *See* Dkt. 1 (BMW DJ Complaint (filed Dec. 15, 2025)) ¶¶1-24. In April 2025, Onesta filed a complaint at the International Trade Commission ("ITC"), asserting the claims of the '381 patent against NVIDIA Corp. and Qualcomm Inc. *Certain Integrated Circuits, Elec. Devices Containing the Same, & Components Thereof*, 337-TA-1450, D.I. 849117 (USITC Apr. 18, 2025). On April 17, 2025, Onesta also filed two complaints in this Court—one against NVIDIA and another against Qualcomm Inc. and its customers—alleging infringement of the '381 patent, among others. *Onesta IP, LLC v. Qualcomm Inc. et al.*, 1:25-cv-587-ADA, Dkt. 1 (W.D. Tex. Apr. 17, 2025); *Onesta IP, LLC v. NVIDIA Corp.*, 1:25-cv-586-ADA, Dkt. 1 (W.D. Tex. Apr. 17, 2025). Notably, Onesta *did*

*not* seek an injunction in either case, a recognition that as a licensing NPE it cannot plausibly demonstrate irreparable harm.[1] Both Texas actions remain stayed pending resolution at the ITC.

### B.   Onesta's Unprecedented Attempt to Assert U.S. Patents in a German Court Is an Attempt to Gain Unwarranted Advantages and Remedies

With the stays installed in this Court and a government shutdown halting litigation at the ITC, Onesta pivoted overseas: On October 9, 2025, it filed an infringement suit in the Munich court against Qualcomm's indirect customer, BMW, asserting the '381 and '209 patents alongside one European patent—EP 2,473,920. Onesta claims in the press that suing in Munich allows BMW to "respond in their home court." Ex. G. But when the infringement allegations are examined, the ties to Munich are minimal. The product at the center of the dispute is not a vehicle but rather a piece of silicon. Onesta's German complaint alleges that BMW vehicles equipped with a Qualcomm Snapdragon-System-on-Chip ("SoC") built into their head units, such as the BMW i4, infringe various claims of the '381 and '209 patents. Ex. C, 103-04(¶¶120-21), 171-72(¶¶110-11). BMW is not a chip manufacturer, however, and does not possess the technical design documents necessary to defend against SoC-related infringement allegations; such information is with manufacturer Qualcomm—a defendant already haled before this Court by Onesta to adjudicate the '381 patent. *See supra* §II.A.

There is thus no legitimate reason for a case asserting U.S. patents to be situated in Munich, other than Onesta's desire to leverage foreign procedural advantages and seek remedies unavailable in the United States. *See infra* §III.B.2. Beyond monetary damages, for example,

---

[1] The '381 patent has a checkered record. In 2023, the USPTO instituted an IPR on claims 15-20, finding a reasonable likelihood of unpatentability; the matter settled, however. *Realtek Semiconductor Corp. v. ATI Techs. ULC*, IPR2023-00687, Paper 7 at 37 (PTAB Oct. 25, 2023). And in 2022, prior owner AMD asserted, *inter alia*, the '381 patent in *Certain Graphics Sys., Components Thereof, & Digit. Televisions Containing the Same*, Inv. No. 337-TA-1318 (USITC). In July 2023, the ALJ issued an initial determination that "[r]espondents have proven the invalidity of claims 15-17 of [the'381 patent]." *Id.*, ID at 180, D.I. 799959 (USITC July 7, 2023).

Onesta also seeks injunctive relief in Munich to bar BMW from importing into or selling allegedly infringing vehicles within the United States—a remedy that would be almost impossible for a licensing entity such as Onesta to obtain in U.S. district court.[2] Ex. C, 68-70(¶1), 140-42(¶1); *see infra* §III.B.2.c. (discussing post-*eBay* caselaw limiting NPE injunctions). Asserting U.S. patents in a European court represents a clear attempt to circumvent the territorial limits of U.S. patent law and remedies. And Onesta's reliance on *BSH* for justification remains fundamentally flawed. *See* Ex. C, 138(¶214). *BSH*'s teachings on long-arm jurisdiction never reach that far—the case addressed only European patents and infringement in contracting states to the European Patent Convention (EPC), but nothing on extraterritorial enforcement of U.S. patents. *See infra* §III.B.3.

### C.    BMW Filed a Declaratory Judgment Action and a Motion for TRO and ASI

To ensure that the merits of the U.S. patent claims are adjudicated in the proper forum, on December 15, 2025, BMW filed a complaint in this Court seeking declaratory judgment of noninfringement, invalidity, and patent misuse of the '381 and '209 patents. This Court is a natural forum to resolve these issues as Onesta has previously chosen the venue for its own litigations. As an NPE, Onesta's business is asserting patents and it currently has cases involving the '381 patent before this Court. Along with a DJ Complaint, BMW filed the TRO/ASI motion *sub judice*.

### III.    THE COURT SHOULD GRANT AN ASI BECAUSE ONESTA IS ASSERTING U.S. PATENTS IN GERMANY, A DIVESTITURE OF U.S. JURISDICTION

### A.    The Fifth Circuit's ASI Legal Standards Favor BMW

Federal courts have authority to enjoin parties from maintaining actions in foreign courts that divest U.S. courts of jurisdiction in cases properly before them. *MWK Recruiting Inc. v.*

---

[2] Onesta's ITC filing is an inapt comparison to the injunctive relief it now seeks abroad. The ITC has *in rem* jurisdiction over the accused products, not parties. Its findings on both infringement and validity are not binding. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996). And ITC authority does not arise from the Patent Act, but rather 19 U.S.C. §1337, related to U.S. importation and domestic industry—issues not before the Munich court.

*Jowers*, 833 F. App'x 560, 564 (5th Cir. 2020) (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996)). When assessing whether to grant an ASI, the Fifth Circuit does not apply the traditional four-part injunction test. *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584-85 (5th Cir. 2023). Rather, "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions" that focus on harms arising from the foreign proceeding itself. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 335 F.3d 357, 364 (5th Cir. 2003).

The Fifth Circuit requires for an ASI: (1) that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation; (2) that at least one harm from the foreign litigation—referred to as *Unterweser* threats—be identified; and (3) that any *Unterweser* threats found be weighed against the need to defer to principles of international comity. *Kaepa*, 76 F.3d at 626-28 (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)). *Unterweser* articulates the following disjunctive factors to inform this ASI analysis:

> An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles.

*MWK Recruiting*, 833 F. App'x at 562 (citing *Unterweser*, 428 F.2d at 890).

## B.     Application of the Fifth Circuit's *Unterweser* Test Strongly Favors Issuing an ASI to Preserve U.S. Jurisdiction over Patent Disputes

### 1.     The Parties Here Are the Same and the Domestic Action Will Be Dispositive of the U.S. Patent Issues

The threshold "sameness" analyses is a functional assessment. Here, the foreign and domestic cases involve the same parties and the same noninfringement issue for the two asserted U.S. patents. Each of the DJ claims individually satisfies the dispositive inquiry. *See*

*Telefonaktiebolaget LM Ericsson v. Lenovo (US), Inc.*, 120 F.4th 864, 878-79 (Fed. Cir. 2024) (holding U.S. litigation dispositive if it resolves the party's ability to pursue its foreign litigation).

  2.  **Each Applicable Factor in the *Unterweser* Analysis Individually Strongly Supports an ASI**

Finding any one of the four *Unterweser* factors is sufficient for a court to issue an ASI. *Ganpat*, 66 F.4th at 584-85.[3] Numerous independent grounds for each factor are identified below.

  a.  **Unterweser Threat No. 1—The Munich Court Adjudicating Infringement of U.S. Patents Frustrates U.S. Policy Goals**

Under the first *Unterweser* factor, a court may enjoin a party from pursuing foreign litigation if doing so would "frustrate a policy of the forum issuing the injunction." *Unterweser*, 428 F.2d at 890. Foreign proceedings violating public policy erode sovereign interests in a way that money cannot fix, and any one of these harms is alone sufficient to justify an ASI. *See id*.

**First**, Congress empowered federal courts to adjudicate infringement of U.S. patents. *See* 35 U.S.C. §§271, 287; 28 U.S.C. §2201(a). Article III courts "have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants" in properly raised cases and controversies. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984); *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-18 (1976) ("unflagging obligation of the federal courts to exercise the jurisdiction given them"). The risk of conflicting judgments and interference from overreaching foreign courts can threaten the U.S. courts' ability to properly resolve U.S. patent disputes. *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1100 (W.D. Wash.) (potential inconsistent judgments supported ASI), *aff'd*, 696 F.3d 872 (9th Cir. 2012). Onesta's suit in Germany undermines the federal judiciary's ability to decide BMW's declaratory judgment suit regarding U.S. patents.

---

[3] The third *Unterweser* factor is inapplicable to *in personam* actions like this case. *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980, at *7 (E.D. Tex. Jan. 11, 2021).

**Second**, Onesta's German case indisputably deprives BMW of its right to have a jury decide infringement of asserted U.S. patents, as guaranteed by the Seventh Amendment. U.S. Const. amend. VII; *Markman v. Westview Instrs., Inc*., 517 U.S. 370, 377 (1996) ("[T]here is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago."); *In re Lockwood*, 50 F.3d 966, 980 (Fed. Cir. 1995) (noninfringement declaratory judgment action "is entitled under the Seventh Amendment to trial by jury"). A robust U.S. policy prevents outsourcing to other courts issues triable to federal juries:

> An essential characteristic of [the federal] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and . . . assigns the decisions of disputed questions of fact to the jury. . . . ***It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts***.

*Byrd v. Blue Ridge Rural Elec. Coop*, 356 U.S. 525, 537-38 (1958) (emphasis added); *cf. Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942) (federal jury rights "should be jealously guarded by the courts"). Even if the Munich court decides infringement under U.S. law, it has no procedural means to convene a jury—much less one composed of U.S. citizens—to decide whether U.S. patents are infringed in U.S. markets. *See infra* pp.9-10. An ASI will protect the right to a jury decision in this Court where BMW has "properly invoked its jurisdiction" and made a timely jury demand. *Id*.; *see* Dkt. 1, p.44 ("trial by jury on all issues triable of right by a jury").

**Third**, longstanding U.S. policy honors a strong presumption against extraterritoriality, including granting and enforcing patent rights only within U.S. territory. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("[L]egislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) ("[o]ur patent system makes no claim to extraterritorial effect"); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915) (U.S. patent rights are "confined to the United States and its territories"). Extraterritorial forum

shopping—i.e., allowing U.S. patents to be litigated in a foreign tribunal—would also frustrate Congress's express policy determining jurisdictional and venue rules in patent cases. 28 U.S.C. §1338(a) (granting U.S. district courts original jurisdiction over patent disputes); 28 U.S.C. §1400(b) (prescribing special venue rules for patent actions); *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017) (patent venue statutes enacted as a "restrictive measure, limiting a prior, broader venue," and to "eliminate the abuses" (cleaned up)). Allowing the Munich court to assume jurisdiction over Onesta's U.S. patent infringement claims eviscerates that statutory scheme and "prejudice[s] the rights of the [U.S.] government[]." *See Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007) (noting Congress's grant of exclusive jurisdiction to the federal courts). And Congress's policies extend beyond the trial court level: It further created and vested in the U.S. Court of Appeals for the Federal Circuit exclusive appellate jurisdiction to "unif[y] our patent jurisprudence." *Id.* at 903 (citing 28 U.S.C. §1295). That legislative choice reflects "Congress's intent to foster uniformity and to preclude forum shopping." *Id.* Foreign judgments would not be reviewable by the Federal Circuit, however, undermining these policies.[4] If parties can assert U.S. patents the world-over, forum shopping will be a race to the bottom, away from the congressionally mandated order of U.S. courts to countries with fewer protections.

**Fourth**, the public has a "paramount interest" in ensuring that only valid and enforceable patents enjoy the limited exception to the general prohibition on monopolies. *Precision Instr. Mfg. Co. v. Auto. Maint. Mach.*, 324 U.S. 806, 815-16 (1945) ("The possession and assertion of patent rights are 'issues of great moment to the public.'" (citation omitted)). *Precision* underscores that

---

[4] Since *Markman*, the Federal Circuit has also become the *de facto* final arbiter of claim construction, a question of law subject to *de novo* review. 517 U.S. at 384-85. A finding of infringement by the Munich court would leave BMW unable to appeal an adverse claim construction to the Federal Circuit, the body empowered by Congress to unify our patent jurisprudence. Appeal to the Higher Regional Court of Munich simply cannot accomplish this.

patents should not exceed lawful bounds, and removing invalid ones protects the public. *See id*. The Munich court lacks authority to finally invalidate or declare U.S. patents unenforceable with *erga omnes* effect. Ex. F ¶¶49-59 (under *BSH* principles, the Munich court may discretionarily rule on validity (of foreign EP patents), but only *inter partes*). That gap in the Munich court's competence would allow Onesta to again assert invalid or unenforceable patents against third parties—which it seems willing to do given the '381 patent's checkered past. *See supra* §II.A n.1.

At bottom, patent remedies are always affected with a public interest because a finding of infringement on a U.S. patent is a finding that a monopoly granted by the government is to be enforced. *Precision*, 324 U.S. at 815-16. The result is that American consumers will have to either pay more or endure fewer choices than if the U.S. patent monopoly did not exist. Ex. E ¶¶68, 92-101. No foreign tribunal should be left to make such decisions for the domestic market. *See id.*; *Deepsouth*, 406 U.S. at 531 ("'[Our legislation] do[es] not, and [was] not intended to, operate beyond the limits of the United States,' *and we correspondingly reject the claims of others to such control over our markets*." (emphasis added) (citation omitted)). Rather, only U.S. courts should decide infringement and validity of U.S. patents—with judges appointed by an elected president and confirmed by the Senate, and facts found by juries—such that enforcement conclusions "are more likely to command the respect of the public." Ex. E ¶125 (citation omitted). An ASI will protect this vital public interest in policing permissible U.S. patent monopolies domestically.

        **b.**    *Unterweser* **Threat No. 2—The Oppressive and Vexatious Nature of Litigating U.S. Patents in Munich Is Undeniable**

The Fifth Circuit provides examples of vexations or oppressive litigations, including if the foreign suit causes "inequitable hardship" to parties, frustrates the "efficient determination of the cause," or results in "simultaneous prosecution" of distant cases. *Ganpat*, 66 F.4th at 582; *Karaha*,

335 F.3d at 366; *Unterweser*, 428 F.2d at 896. Further, Onesta's foreign suit is itself oppressive and vexatious because it rests on dubious legal grounds.

"Inequitable hardship" initially looks to whether the party trying to divest a U.S. court of jurisdiction would suffer oppression or vexation by being required to litigate there. *See Teck Metals Ltd. v. Certain Underwriters at Lloyd's*, No. CV-05-411-LRS, 2009 WL 4716037, at *4 (E.D. Wash. Dec. 8, 2009). Onesta—a Delaware NPE—cannot meaningfully argue that it would be "vexatious or oppressive" to litigate in Texas where it has previously availed itself of this Court's jurisdiction to assert the '381 patent. *See supra* §II. Both the suit against Qualcomm in this Court and the present case concern the same family of products—Qualcomm's SoCs. *Id*. This alignment of parties and products confirms that requiring Onesta to litigate here imposes no burden.

Conversely, it is BMW that suffers "vexatious and oppressive" litigation in the Munich court for several reasons. "Inequitable hardship," for example, recognizes the "unwarranted inconvenience [and] expense" of having to litigate simultaneous cases at great distance. *Kaepa*, 76 F.3d at 627; *Unterweser*, 428 F.2d at 896 ("prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship'" (citation omitted)). Onesta's unprecedented assertion of U.S. patents in Germany forces BMW to bear the inconvenience and expense of overlapping litigations if it wants to pursue its declaratory judgment in U.S. court. Had Onesta properly filed in U.S. district court, BMW could have requested a stay under the customer-suit exception while Onesta's case against Qualcomm proceeded. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989). Onesta's flight to Munich to open parallel litigation proceedings on the same U.S. patent is "vexatious and oppressive."

Moreover, as the epitome of "inequitable hardship," BMW and its executives could face stiff fines or imprisonment if Onesta seeks and enforces a retaliatory AASI (anti-anti-suit

injunction) in Munich. *See infra* §IV.2; Ex. F ¶¶106-110; Ex. I, 2 ("punishable by a fine of up to EUR 250,000 per violation, or even detention"). In 2023, for example, the Munich court fined Netflix more than € 7.0 million or, alternatively, 15 days of imprisonment for company managers for each day allegedly violating the injunction—permissible under §890 of the German Code of Civil Procedure, which provides for incarceration of up to six months for board members. Ex. I, 2; Ex. P, 1. That possibility carries significant weight in the *Unterweser* analysis, according to the Fifth Circuit: "If unwarranted inconvenience and expense present sufficient hardship to support an anti-suit injunction, *surely jailtime and seizure of property also suffice*." *Ganpat*, 66 F.4th at 582 (emphasis added); Ex. F ¶108 ("€ 250,000 for each violation or imprisonment of a member of the board of directors of the defendant"); Ex. R ¶5 (same); *see infra* § IV.2.

Furthermore, conducting litigations simultaneously frustrates the "efficient determination of the case," as they will unfold across jurisdictions with vastly different timing and procedures. This is another "vexatious and oppressive" tactic aimed at BMW. For example, Onesta's enforcement of U.S. patents in the Munich court requires a highly detailed Statement of Defense ("SOD") from BMW by February 24, 2026, for the '209 patent and by March 2, 2026, for the '381 patent—i.e., within the first six months. Ex. I, 3 ("[T]here is no general pretrial discovery as in the United States. . . . The proceedings are front-loaded: the exchange of written briefs is a substantial part of the process, and the court's decision typically is based on the written submissions, rather than evidence at trial."). This "front-loaded" German pleading is especially problematic where Qualcomm holds the relevant product information, but BMW must still take substantive noninfringement positions without the benefit of U.S. discovery. *See supra* §II.B. The Munich court's restraints on discovery also mean that its factfinders are operating on less information when deciding infringement. Onesta's flawed extraterritorial approach further requires that substantive

U.S. patent law be applied by German judges who are inexperienced in this area, rather than in a venue at home with the law. Accordingly, the SOD will need an extensive U.S.-law expert report to inform the Munich court, a waste of time and resources given the competency of this Court already seized on the matter. The DJ action thus represents the more efficient proceeding for addressing the U.S. patents with less chance of error. An ASI would permit BMW to avoid wasteful, simultaneous proceedings and eliminate possible conflicting decisions.

Lastly, Onesta's first-of-its-kind complaint in the Munich court is fundamentally vexatious and oppressive because it relies on no express legal authority. German law does not contain any explicit provisions on subject-matter jurisdiction for foreign patents, nor does EU law directly provide a German court with competence to decide on U.S. patents. *See* Ex. F ¶¶49-79. Onesta's assertion that the Munich court's jurisdiction over U.S. patents is "well established" in the *BSH* decision overshoots the holding. *Compare* Ex. C, 138(¶214). It is far from settled. *BSH* addressed only European patents and infringement in states that are members of the EPC; it made no statements regarding U.S. patents or unrestrained extraterritorial application. *See generally* Ex. B. The United States is not a member of the Brussels Regulations enabling a pan-European patent system or any other European convention that would allow for *BSH*-like jurisdiction over U.S. patents in Europe. In fact, the CJEU emphasizes that the Brussels Regulation is an *internal* EU regime and confirmed that no jurisdiction is permitted to declare a third-state patent invalid or alter its register—a principle expressly established for European patents and EU member states by Article 24(4) of the Brussels Regulations. Ex. F ¶¶49-79. Since *BSH*, no European court has exercised jurisdiction over U.S. patents as Onesta now invites.[5] *Id*. Requiring BMW to defend

---

[5] The Unified Patent Court—in first-instance cases—has invoked *BSH* to assert jurisdiction over foreign defendants; but those cases, by UPC rule, are only European patents, never U.S. patents.

against dubious action asserting U.S. patents in the Munich court is itself vexatious. Onesta's opportunistic overreach could take years to resolve through appeal. An ASI would release BMW to proceed in its U.S. suit without the interference of foreign law that is still unsettled.

      **c.**    *Unterweser* **threat No. 4—Prejudice and Offense to Equitable Principles Affect Both BMW and the U.S. Public**

Onesta's decision to file a first-of-its-kind suit asserting U.S. patents in the Munich court prejudices BMW and offends equitable principles in two ways. To start with, it is patent misuse to "impermissibly broaden[] the physical or temporal scope of the [U.S.] patent grant . . . in a manner that has anticompetitive effects." *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc). Onesta's Munich complaint directly attempts to expand the temporal scope of its U.S. patents: filed on October 9, 2025, Onesta's complaint seeks damages for the '381 and '209 patents dating back to June 14, 2013, and April 14, 2018, respectively; and an accounting of distribution activities dating back to May 14, 2013, and October 7, 2014, respectively. Ex. C, 71(¶II), 144(¶II), 70(¶2), 142(¶2). Those time spans, however, exceed the six-year limitation applicable under 35 U.S.C. §286—a demand that amounts to patent misuse per se. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964); *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 451-52 (2015). By pursuing infringement in Munich, moreover, Onesta's jurisdictional gamesmanship also denies BMW the protections available to defendants here. *See, e.g.*, *supra* §§III.B.2.b (the customer-suit exception), III.B.2.b (robust discovery), III.B.2.a (jury right). Onesta leverages procedural asymmetries to obtain what Congress did not intend in the patent grant, thus having an anticompetitive effect on the market. *See Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) (finding anticompetitive effect where an action causes "an unreasonable restraint on competition, taking into account a variety of factors"). Onesta's deliberate attempt to broaden the physical, temporal, and/or adjudicative scope of its patent rights through litigation in a foreign forum offends

14

"equitable principles" under *Unterweser*. The enforceability of Onesta's patents depends on BMW's patent misuse claim, Dkt. 1 ¶¶40-77, a novel issue owing to Onesta's jurisdictional overreach that needs to be adjudicated in the first instance by a U.S. court.

Additionally, Onesta now seeks an injunction on U.S. patents in Germany that an NPE would not get in the United States based on *eBay*'s requirements assessed in equity. *Compare* Ex. C, 134-37(¶¶203-10), *with eBay*, 547 U.S. at 396-97, *and Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 650 (Fed. Cir. 2015) (Reyna, J., concurring); *see also* Ex. O at 4 (Onesta's U.S. law expert previously stating that "only a patent owner with a presence in the market can even attempt to prove entitlement to an injunction"). That an American NPE would travel halfway around the world with its U.S. patents to find easier injunctions is hardly surprising given current trends:

> The overriding difference between German and U.S. patent litigation is the relative ease of obtaining injunctive relief in Germany. . . . [There,] NPEs are generally entitled to injunctions to the same degree as practicing entities. . . . [E]ight of the ten most active NPEs in the European Union . . . are based in the United States. . . . Almost two-thirds (62%) of cases filed by NPEs in the 2012 to 2023 timeframe resulted in a finding of infringement (as compared with a plaintiff win rate in the United States of 27%).

Ex. I, 2-4. It "offend[s] other equitable principles," therefore, that Onesta did not even attempt to seek an injunction on the '318 patent in its suits before this Court, but brazenly demands one in the German complaint with only a cursory characterization of U.S. law. Ex. C, 134-37(¶¶203-10). The looming specter of an injunction from the Munich court impacts not just BMW, but the U.S. public whose equitable interests are best evaluated by U.S. judges. *See supra* pp.2, 10; Ex. E ¶¶125.

### 3. The *Unterweser* Factors Outweigh Principles of International Comity Because the Principles of International Comity Favor an ASI

Courts next weigh the threat to U.S. judicial interests against international comity concerns. *Kaepa*, 76 F.3d at 627. Here, the Fifth Circuit's approach favors issuing an ASI barring Onesta's litigation of U.S. patents abroad while allowing the German action to proceed on the European

patent; this actually preserves each court's ability to adjudicate its territorial patent rights without interference, in service of international comity.[6] The centuries-old practice is for each nation's courts to exercise "independent sovereign power" and have "exclusive and absolute" jurisdiction over cases within their borders. *The Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 136 (1812). Existing international conventions further promote this comity. As the "supreme law of the land," U.S. Const. art. VI, cl.2., the limits imposed by ratified treaties should not be subject to the whims of a foreign tribunal. The Paris Convention for the Protection of Industrial Property ("Paris Convention") expressly affirms the independence of each country's patent system. *Voda*, 476 F.3d at 898-99. Notably, the Paris Convention reserves the "provisions . . . relating to . . . jurisdiction" to each member state. *Id.* (quoting Paris Convention, art. 2(3)). The Patent Cooperation Treaty and Agreement on Trade-Related Aspects of Intellectual Property Rights continued to recognize the sovereignty of each national patent system. *Id.* Nothing in these treaties contemplates—let alone endorses—one jurisdiction adjudicating patents issued by another without consent. *Id.* Rather, they ensure standards of national treatment and priority rights, but do not globalize enforcement; a patent remains a fundamentally national right enforced by national courts.

Thus, the Munich court asserting jurisdiction over U.S. patents would be overreach. By contrast, issuing an ASI that merely requires Onesta to seek adjudication of the '381 and '209 patents within the issuing sovereign's territory conforms with international practice and domestic legislation. *See id*. at 898-904; *Ericsson*, 2021 WL 89980, at *7. "Our courts are not required to stand by" when a foreign court "attempts to close a courthouse door" that Congress, exercising "territorial jurisdiction, has opened." *Laker*, 731 F.2d at 936. To that end, BMW seeks only a

---

[6] For clarity, BMW does not now seek, and will not later seek, an ASI prohibiting Onesta's suit in the Munich court on the infringement proceedings of EP 2,473,920 B1.

narrowly tailored, defensive anti-interference injunction—one designed to preserve this Court's ability to adjudicate BMW's U.S. law claims in the DJ action without foreign complications. Far from undermining comity, the requested ASI *promotes* it by allowing both actions to proceed concurrently: the German court addressing the European patent, and this Court addressing the U.S. patents. *Voda*, 476 F.3d at 902 ("[A]djudication of Voda's foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance.").[7]

In sum, all applicable *Unterweser* threats exist here where even one would suffice for an ASI order, and the circumspect relief sought by BMW honors international comity.

## IV.    AN *EX PARTE* TRO SHOULD ISSUE TO PRESERVE THE STATUS QUO

### 1.    An *Ex Parte* TRO Is Warranted Because Giving Notice to Onesta Is Impracticable and Invites the Harms BMW Seeks an ASI to Enjoin

While the Court considers issuing an ASI, it should grant BMW's request for an emergency TRO "to serv[e] [the] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Tesla, Inc. v. Individuals*, No. W-24-CV-00172-ADA, 2024 U.S. Dist. LEXIS 246714, at *5 (W.D. Tex. Apr. 19, 2024) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters Loc. No. 70*, 415 U.S. 423, 439 (1974)). Moreover, "[a]n ex parte TRO is normally justified" where notice to the other side "would render fruitless further prosecution of the action." *Qxo Bldg. Prods., Inc. v. Carver*, No. 4:25-cv-544-JDK, 2025 U.S. Dist. LEXIS 206503, at *6-7 (E.D. Tex. May 23, 2025) (citation omitted). For example, *ex parte*

---

[7] To the degree it is raised, there is no "first-filed principle" in suits before separate sovereigns. *See Unterweser*, 428 F.2d at 890 (upholding injunction against prior-filed English action); *Laker*, 731 F.2d at 927 ("The mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction."); *Microsoft*, 696 F.3d at 887 ("The order in which the domestic and foreign suits were filed . . . [is] not dispositive."). Courts have long followed the imperative that they will not surrender jurisdiction notwithstanding the "pendency of a suit in a *foreign* court," even if it involves the same parties and claims. *Bowne v. Joy*, 9 Johns. 221 (N.Y. 1812) (citing *Maule v. Murray*, 7 T.R. 470 (1798)).

TRO relief was granted in a similar context where notice to an adverse party might have prompted it to "pursue its antisuit injunction" in a foreign court. *Ericsson Inc. v. Samsung Elecs. Co*., No. 2:20-cv-00380-JRG, Dkt. 14 at 1 (E.D. Tex. Dec. 28, 2020).

Under Rule 65, an affidavit must clearly show that injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and certification of efforts to give notice or why it should not be required. Fed. R. Civ. P. 65(b)(1). *See* Ex. R (Declaration); *infra* p.23 (Certificate of Conference). BMW satisfies both requirements. When it is clear that a party intends to obtain and enforce foreign anti-suit relief, the threat that the Court will be robbed of its jurisdiction "worsen[s] every day." *Laker*, 731 F.2d at 931. BMW has good reason to fear that this is exactly what Onesta will do by rushing to the Munich court for a rapid AASI if it receives advance notice of this application. *See* Ex. R ¶¶1-10. Since BMW meets the criteria for an *ex parte* TRO and is prepared to offer a bond for its entry, *see infra* note 8, the Court should grant this relief to avoid rendering "fruitless" the pending ASI decision. *See* Ex. R ¶¶1-10 & *infra* p.23; Ex. A.

### 2.    The Four-Factor TRO Test Is Fully Met for Entry of a TRO

"The standard for obtaining a temporary restraining order . . . requires establishing four elements," *Tesla*, 2024 U.S. Dist. LEXIS 246714, at *3-4, and BMW carries each one:

**BMW has shown (1) "a substantial likelihood of success" of prevailing on its ASI**, i.e., that numerous *Unterweser* threats identified outweigh the needs of comity. *See supra* §§III.A-C.

**BMW has shown (2) "a substantial threat that [it] will suffer irreparable injury"** if the TRO is denied while the ASI is pending. Onesta is highly likely to seek and enforce a retaliatory AASI in the Munich court—relief "very swiftly" and "frequently granted in German patent infringement proceedings" to counter ASIs. Ex. F ¶¶105, 107, 110; Ex. I. The inference to be drawn from Onesta's conduct so far is clear: On the thinnest reed possible to assert U.S. patents abroad, Onesta is forum shopping 4,000 miles away to great fanfare—*it has not gone that far to*

*only go that far*. Onesta will, of course, seek to further entrench itself in Germany by virtue of local AASI procedures the moment it becomes aware of this TRO/ASI motion. Ex. R ¶¶6-7. It has engaged aggressive local German counsel who publicly advertise the case as a "first" and "groundbreaking." Ex. D. Onesta itself states that it expects from the Munich court a "swift, thorough, and high-quality decision from a specialized *single* forum." Ex. G, 2 (emphasis added). These comments demonstrate the means and intent to fight this case in the Munich court *exclusively*, leading to a "substantial threat" that Onesta will obtain and enforce AASI measures in a receptive German forum. Ex. R ¶¶3-9. There is recent history of AASIs issued in the Munich court thwarting pending motions for ASI in U.S. courts. *Id*. ¶¶4-5; Ex. F ¶¶106-110 ("It can be concluded that the Munich Regional Court I is prepared to effectively and expeditiously defend its international jurisdiction against U.S. courts if the court deems this necessary and appropriate."); Ex. I. And German AASIs can be granted fast, even in just *one* day when an ASI is on the horizon in the United States. Ex. F ¶107; Ex. R ¶4 (discussing AASI grants within 1 or 2 days of request from the Munich court). Experts and practitioners agree that the Munich court would likely be disposed to granting an AASI as fast as possible to help maintain jurisdiction for a first-instance determination under *BSH* long-arm principles. *See* Ex. R ¶¶7-8; Ex. F ¶¶81-82, 110.

If this Court does not issue an *ex parte* TRO, its jurisdiction over this action is immediately under "substantial threat" of irreparable harm—an AASI would require BMW to withdraw the pending ASI request and impair the ability to seek declaratory judgment of U.S. patents in a U.S. court without parallel foreign proceedings on infringement. Ex. F ¶108. As seen, the sanction for not complying can result in substantial fines "or imprisonment of a member of the board of directors." Ex. F ¶108; Ex. R ¶¶5, 10; *see supra* §III.B.2.b. BMW would thus be left with the impossible task of choosing between the instructions of its home jurisdiction or vindicating its

rights to a declaratory judgment in this Court. Ex. R ¶¶7-9. A granted AASI punishable by imprisonment will exacerbate reputational injury to BMW in its home forum where it is defending allegations of infringement of U.S. patents under intense media scrutiny. *See id*. ¶10.

BMW has shown (3) that its **"threatened injury outweighs any damage that the temporary restraining order might cause"** to Onesta. Granting the TRO request would not damage Onesta, because it simply preserves the status quo until the ASI is decided; it persists only for a short duration per Rule 65; and it cannot conceivably harm Onesta merely by making it subject to the jurisdiction of this Court where it already litigates. *See supra* §II.A. Moreover, BMW could present a corporate undertaking or a bond to the Court as needed for the TRO duration.[8]

BMW has shown (4) that the TRO requested **"will not disserve the public interest"** if granted. The public interest is served by ensuring that parties seeking relief in U.S. courts can have issues considered without foreign countries divesting them of U.S. jurisdiction before the opportunity for meaningful review. *See supra* §§III.B-C & pp.18-20 (discussing numerous public interest and policy threats); Ex. R ¶¶1-10.

## V.    BMW ASKS THIS COURT TO ISSUE AN *EX PARTE* TRO AND ASI TO PRESERVE THE STATUS QUO, PREVENT IRREPARABLE HARMS, AND ENSURE THIS COURT'S JURISDICTION

For the foregoing reasons, BMW respectfully asks this Court to issue an ASI and an emergency TRO *ex parte* according to the sample orders. *See* Ex. A.

Dated: December 15, 2025

Respectfully submitted,

 /s/ *Lionel M. Lavenue*
Lionel M. Lavenue (VA Bar No. 49005)

---

[8] Onesta cannot conceivably suffer harm merely because it is subject to the legitimate jurisdiction of this Court—a forum in which it often litigates—so the bond should be minimal. *See supra* §II & note 1; *Ericsson*, No. 2:20-cv-00380-JRG, Dkt. 14 at 4 (setting bond at zero in this context).

Lionel M. Lavenue (VA Bar No. 49005)
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone:    (571) 203-2750
Facsimile:    (202) 408-4400

J. Derek McCorquindale (VA Bar No. 77048)
(*pro hac vice* pending)
derek.mccorquindale@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone:    (571) 203-2768
Facsimile:    (202) 408-4400

Matthew C. Berntsen (MA Bar No. 678533)
matthew.berntsen@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Seaport Lane
Sixth Floor
Boston, MA 02210-2001
Telephone:    (617) 646-1618
Facsimile:    (617) 646-1666

Joseph M. Myles (DC Bar No. 1672505)
joseph.myles@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:    (202) 408-4372
Facsimile:    (202) 408-4400

*Attorneys for Plaintiff*
*Bayerische Motoren Werke Aktiengesellschaft*

## CERTIFICATE OF CONFERENCE

Outside counsel has not yet appeared for Onesta. In any event, BMW did not confer on this *ex parte* motion with anyone at Onesta. Given the unprecedented nature of Onesta's suit attempting to enforce U.S. patents in Munich proceedings, BMW has reason to believe that providing advance notice of this motion will cause Onesta to take immediate action in Munich that would render fruitless the relief sought and prevent BMW from further availing itself of this Court's jurisdiction prior to the resolution of this ASI motion. *See* Ex. R ¶¶1-10.

/s/ *Matthew C. Berntsen*
Matthew C. Bernsten