**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, | |
| Plaintiff, | |
| v. | Case No. 6:25-cv-00581-ADA |
| ONESTA IP, LLC, | |
| Defendant. | |

**DEFENDANT ONESTA IP, LLC'S OPPOSITION**
**TO BMW'S MOTION FOR *EX PARTE* TRO AND ANTI-SUIT INJUNCTION**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL AND FACTUAL BACKGROUND ...................................................... 4

    A.   *BSH v. Electrolux* establishes that EU courts can hear patent-infringement
        disputes regarding both EU and non-EU patents. ............................................ 4

    B.   *Onesta* files suit against BMW in Munich on German and U.S. patents........... 5

III.  ARGUMENT ....................................................................................................... 6

    A.   The Munich action does not frustrate any U.S. policy..................................... 6

      1.   U.S. courts are not the exclusive fora for infringement cases. ................... 7

      2.   BMW is mistaken that its claims are presently entitled to a jury trial. ............ 8

      3.   The Munich action does not violate a policy against exterritoriality................ 8

      4.   BMW is incorrect that the Munich action affected its ability to challenge
          Onesta's patents *erga omnes*. ..................................................................... 9

    B.   The Munich action is neither vexatious nor oppressive.................................. 10

      1.   The Munich action presents BMW with no inequitable hardship. .................. 10

         a)   Litigating two cases is not inequitable hardship. ...................................... 11

         b)   The customer-suit exception has no relevance here.................................... 12

         c)   Onesta and the Munich court have not forced BMW executives to act in
            ways that would incur fines or cause imprisonment................................. 13

         d)   That there are differences between U.S. and German courts is not a
            "vexatious and oppressive" tactic aimed at BMW.................................. 13

         e)   A pioneering case is not "fundamentally vexatious." ............................... 16

      2.   The Munich case would not frustrate or delay the speedy and efficient
         determination of this case. ......................................................................... 17

      3.   The Munich case is not fully duplicative of this case..................................... 17

    C.   The Munich case does cause prejudice or offend other equitable principles.................. 18

    D.   Comity considerations support permitting the Munich case to proceed.......................... 19

IV.   THE COURT SHOULD NOT EXTEND THE TRO. .......................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Lab'ys v. Andrx Pharms., Inc.*
  473 F.3d 1196 (Fed. Cir. 2007) ............................................................. 10

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*
  694 F.3d 1312 (Fed. Cir. 2012) ............................................................. 15

*Applied Med. Distribution Corp. v. Surgical Co. BV*
  587 F.3d 909 (9th Cir. 2009) ............................................................. 19

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*
  402 U.S. 313 (1971) ............................................................. 9

*Bundy v. Nirvana LLC*
  No. 21-56305, 2023 WL 4311613 (9th Cir. July 3, 2023) ........................ 16

*Colorado River Water Conservation Dist. v. United States*
  424 U.S. 800 (1976) ............................................................. 8, 12

*CompuCredit Corp. v. Greenwood*
  565 U.S. 95 (2012) ............................................................. 7

*Cont'l Paper Bag Co. v. E. Paper Bag Co.*
  210 U.S. 405 (1908) ............................................................. 19

*Cook v. Tait*
  265 U.S. 47 (1924) ............................................................. 2

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*
  61 F.3d 696 (9th Cir. 1995) ............................................................. 9, 15

*Cunard S.S. Co. v. Salen Reefer Servs. AB*
  773 F.2d 452 (2d Cir. 1985) ............................................................. 20

*eBay Inc. v. MercExchange, L.L.C.*
  547 U.S. 388 (2006) ............................................................. 6, 18, 19

*Eisel v. Columbia Packing Co.*
  181 F. Supp. 298 (D. Mass. 1960) ............................................................. 10

*Ericsson Inc. v. Samsung Elecs. Co.*
  No. 2:20-CV-00380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 11, 2021) .................... 13

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*
589 F. Supp. 2d 84 (D. Me. 2008) ............................................................................ 9

*Ganpat v. E. Pac. Shipping PTE, Ltd.*
66 F.4th 578 (5th Cir.) ............................................................ 6, 10, 11, 18

*In re Lockwood*
50 F.3d 966 (Fed. Cir.) *vacated sub nom.*
*Am. Airlines, Inc. v. Lockwood*, 515 U.S. 1182 (1995) ............................................ 8

*In re Nintendo of Am., Inc.*
756 F.3d 1363 (Fed. Cir. 2014) ............................................................... 13

*In re Tech. Licensing Corp.*
423 F.3d 1286 (Fed. Cir. 2005) ............................................................... 8

*In re Unterweser Reederei, Gmbh*
296 F. Supp. 733 (M.D. Fla. 1969), *aff'd*
428 F.2d 888 (5th Cir. 1970), *vacated sub nom.*
*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .................................... 11, 12

*Innogenetics, N.V. v. Abbott Lab'ys*
512 F.3d 1363 (Fed. Cir. 2008) ............................................................... 15

*Kaepa, Inc. v. Achilles Corp.*
76 F.3d 624 (5th Cir. 1996)), *cert. denied*
144 S. Ct. 487 (2023) ............................................................ 6, 11

*Karaha Bodas Co. v. Negara*
335 F.3d 357 (5th Cir. 2003) ............................................................ 10, 14

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*
342 U.S. 180 (1952) ............................................................... 13

*Kimble v. Marvel Ent., LLC*
576 U.S. 446 (2015) ............................................................... 18

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*
731 F.2d 909 (D.C. Cir. 1984) ............................................................ 19, 20

*Microsoft Corp. v. Motorola*, Inc.
696 F.3d 872 (9th Cir. 2012) ............................................................... 11

*MWK Recruiting Inc. v. Jowers*
833 F. App'x 560 (5th Cir. 2020) ............................................................... 6

*Radian Memory Sys. LLC v. Samsung Elecs. Co., Ltd.*
No. 2:24-cv-1073 (E.D. Tex. Jun. 24, 2025) ................................................ 3

*Sector Navigation Co. v. M/V CAPTAIN P*
No. CIVA 06-1788, 2007 WL 854311 (E.D. La. Mar. 15, 2007) .............................. 11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*
657 F.3d 1349 (Fed. Cir. 2011) ................................................................ 13

*Sysco Mach. Corp. v. Cymtek Sols., Inc.*
124 F.4th 32 (1st Cir. 2024) ..................................................................... 15

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*
458 F.3d 1335 (Fed. Cir. 2006) ................................................................ 13

*Turner Ent. Co. v. Degeto Film GmbH*
25 F.3d 1512 (11th Cir. 1994) ............................................................. 11, 15

*Voda v. Cordis Corp.*
476 F.3d 887 (Fed. Cir. 2007) ......................................................... passim

*Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*
633 F. Supp. 1209 (W.D.N.Y.), *aff'd*
806 F.2d 1045 (Fed. Cir. 1986) ............................................................. 7, 15

*Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*
806 F.2d 1045 (Fed. Cir. 1986) ............................................................... 9

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*
712 F. App'x 88 (2d Cir. 2018) ............................................................. 15

**Statutes**

18 U.S.C. § 1837 ............................................................................. 2

28 U.S.C. § 1338 ............................................................................. 9

28 U.S.C. § 1338(a) ......................................................................... 7, 9

35 U.S.C. § 286 ............................................................................. 18

35 U.S.C. § 294 .............................................................................. 7

35 U.S.C. § 315(a)(1) ....................................................................... 10

37 C.F.R. § 42.80 ........................................................................... 10

**Other Authorities**

Agreement on Trade-Related Aspects of Intellectual Property Rights, pt. 1, art. 3.1, Apr. 15,
    1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1C, 1869
    U.N.T.S. 299 ("TRIPS") ............................................................................................................. 3

## I.    INTRODUCTION

No one can seriously argue that it is in the interests of the United States to diminish the power of patents issued by the U.S. Patent Office relative to foreign patents. But a foreign company has asked this Court to do precisely that.

Earlier this year, in *BSH v. Electrolux*, the highest court in the EU held that non-EU patents were enforceable against defendants in their home EU courts, irrespective of whether the defendants raise invalidity defenses. Thereafter, Onesta filed suit on a German patent, its related U.S. counterpart, and a third U.S. patent against BMW in Munich, where it is headquartered. Even BMW's own expert in this case has represented to this Court that it is considerably likely that the German court will exert its jurisdiction over the case. But BMW has asked this court to enjoin those proceedings before the German court can even confirm its jurisdiction.

If BMW were successful in its argument, other countries' (*e.g.*, China, the U.K., and EU) patents would be enforceable in their originating country and in the EU—*except* U.S. patents. BMW's position, if accepted, would make U.S. patents less powerful, less valuable, and less respected than foreign patents. The U.S. Courts should reject *any* efforts—including those of foreign companies like BMW—to undermine U.S. institutions on the global stage. It does not harm America or its courts if EU courts prohibit their citizens from committing torts in America.

The Court should not lose perspective: Major policy decisions with international implications should be handled by the political branches of government, not the courts. American notions of comity counsel that questions of first impression of foreign law should be decided in the first instance by EU courts. Whether *Electrolux* means the Munich action can proceed—to the extent that can credibly be disputed at all—is a question about the interpretation of a CJEU decision that should be resolved in the first instance by the Munich court. This Court should reject BMW's invitation to step into and stop that process.

Far from attempting to dodge the jurisdiction and laws of the United States, to the extent Onesta's German action is pioneering, it seeks to *strengthen* the power of U.S. patents by confirming they are enforceable in Europe against European citizens for their conduct in the U.S. by applying a straightforward reading of *Electrolux.*  Indeed, the CJEU's decision should not have been surprising, as it brings patent practice in line with similar copyright practice.

The Munich action respects both this Court's and the Munich court's jurisdiction.  The German action *does not* divest this Court of jurisdiction over BMW for its acts domestically within the United States.  Whatever the result of the Munich action, that court is simply and only exercising Germany's jurisdiction to regulate the conduct of its own citizens.  There is nothing remotely controversial about the power of a country to regulate its citizens' conduct abroad.[1] Indeed, BMW agrees with this notion: Immediately upon filing this lawsuit BMW requested that this Court enjoin the extraterritorial conduct of Onesta, an American company, with a TRO.

Onesta's Munich action achieved what Onesta could not have in any other forum: it consolidated both its German and U.S. patent issues, achieving significant efficiencies over dual track, overlapping proceedings in both the United States and Germany.  One cost Onesta paid for this efficiency was having to travel to BMW's home court.  Another was imposition of the strictures and structure of German litigation—a system that does not use the notice pleading standard of U.S. courts and, instead, requires a plaintiff like Onesta to come forward with detailed factual pleadings without discovery in a "front-loaded" system.  German law also departs from the American Rule by applying a loser-pays system that would impose liability on Onesta if it was not successful in its claims.  To be clear, the German litigation respects the

---

[1] *See, e.g.*, *Cook v. Tait*, 265 U.S. 47, 56 (1924) (the U.S. has the power to tax citizens' foreign property based solely on the property owner's U.S. citizenship); 18 U.S.C. § 1837 (extending the reach of Title 18 Chapter 90, including provisions regarding trade secret misappropriation, to "conduct occurring outside the United States" when the offender is a U.S. citizen).

2

territoriality of U.S. patent rights: the decision related to BMW's infringement of U.S. patents will be made under U.S. substantive law, and injunctive relief related to the U.S. patents, should it issue, would be limited to restraining BMW from infringing in the United States.

For a party seeking such a drastic devaluation of the U.S. patent system, BMW has advanced half-baked arguments. For example, BMW advances an incorrect notion of U.S. patent policy. In reality, BMW's requested relief—that a U.S. court to protect a German entity from a decision issued by the highest authority in the EU by categorically carving out U.S. patents from the *Electrolux* decision—if granted, would greatly devalue U.S. patents on the world stage and undercut national patent policy. It is not the policy of the United States to weaken the enforcement of U.S. patents, especially relative to foreign patents. "Broadly, the United States seeks to *advance* consistent and correct application and enforcement of the intellectual property laws, including the Patent Act, to safeguard patents, fuel economic growth, and spur innovation to advance American freedoms."[2] What is more, the U.S. is a signatory of the TRIPS agreement, which requires that its members treat other signatory's patents "no less favo[rably]" than their own.[3] BMW's attempt to fashion an antisuit injunction to disadvantage U.S. patents in EU fora would undercut the U.S. and Congressional policy expressed by the U.S. Department of Justice, the U.S. Patent Office, and the U.S. ratification of TRIPS.

BMW also cannot establish that it is entitled to halt the Munich case based on the prevailing considerations in the Fifth Circuit governing antisuit injunctions. The crux of its motion is that U.S. courts have exclusive jurisdiction to hear patent cases and that the Munich

[2] Ex. 1 (Statement of Interest of the United States, *Radian Memory Sys. LLC v. Samsung Elecs. Co., Ltd.*, Case No. 2:24-cv-1073 (E.D. Tex. Jun. 24, 2025), ECF No. 52, at 1.
[3] Agreement on Trade-Related Aspects of Intellectual Property Rights, pt. 1, art. 3.1, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1C, 1869 U.N.T.S. 299 ("TRIPS").

action will "deprive" it of "critical defendant rights" like "its right to have a jury trial" and "invalidity consideration with *erga omnes* effect." Dkt. 7 ("Mot.") 2 & 7–10. But not one of these assertions is legally correct. And BMW's filing of this case caused its own alleged injury of multiple lawsuits, depriving both BMW and Onesta of a single, efficient, and first-filed case that might have otherwise efficiently resolved the disputed issues between the parties.

This Court should defer to Germany's right to govern its own citizens under German law. If that benefits U.S. patent rights, the U.S. is the better for it. If the Court adopts BMW's argument, it would usurp Germany's authority to regulate its own citizens and deal a sharp blow to U.S. patents and the U.S. patent system abroad. The court should deny BMW's motion.

## II.    LEGAL AND FACTUAL BACKGROUND

### A.    *BSH v. Electrolux* establishes that EU courts can hear patent-infringement disputes regarding both EU and non-EU patents.

In 2020, BSH sued Electrolux, a company domiciled in Sweden, on a European patent, which had been validated and gave rise to national patents in Germany, Greece, Spain, France, Italy, the Netherlands, Austria, Sweden, the United Kingdom, and Turkey. Mot. Ex. B (*Electrolux*) ¶ 11. Electrolux argued that the foreign patents were invalid and that the Swedish court did not have jurisdiction to rule on infringement by virtue of Electrolux's invalidity defense. The lower court agreed, *id.* ¶ 16, and the appellate court stayed its proceedings and referred the questions raised regarding the jurisdiction of EU courts to the Court of Justice of the European Union (or "CJEU"), *id.* ¶ 23.

The CJEU issued "one of the most important CJEU decisions of the last decades." Ex. 2 (Picht Decl.) ¶ 10.[4] *Electrolux* changed the prior rule, holding that, where an EU-based defendant is sued in its domicile member state, infringement alongside invalidity defenses can be

---

[4] Onesta submits Professor Picht's opinion (Ex. 2) on foreign law under Fed. R. Civ. P. 44.1.

adjudicated—with the invalidity findings carrying only *inter partes* effects.  *Id.* ¶ 42.  That invalidity decisions only carried force between the parties was a carefully crafted solution based on the notion of comity—ensuring that no country's sovereignty was invaded and that only the issuing country had the power to formally invalidate a patent.  *Id.* ¶¶ 30–35.  This ruling applied to both EU member state patents and to "third State" patents (*e.g.*, non-EU countries like, in *Electrolux*, Turkey).  *Id.* ¶¶ 11–15; *id.* ¶ 16 ("[W]ell-reputed experts in cross-border patent law have already acknowledged the status of the United States of America as a third State").

While BMW spills much ink attempting to portray Onesta's action in Germany as "crazy," Mot. 1, several articles attached to its Motion read *Electrolux* to permit courts like the Munich court to enforce foreign patents, including U.S., U.K., and Chinese patents, against their own citizens regardless of whether an invalidity defense is raised.[5]  *Electrolux* also reflects a continuing international trend to broadly recognize intellectual property rights.  *See* Ex. 2 (Picht Decl.) ¶¶ 36–41 (discussing *Lucasfilm*, a U.K. Supreme Court decision establishing that "English courts could exercise jurisdiction and hear U.S. copyright infringement claims against a defendant domiciled in England"); Ex. 5 (Case C-227/23, *Kwantum v. Vitra*, EU:C:2024:914) (holding that EU Member States must provide copyright protection to works of applied art that meet EU copyright requirements, regardless of the works' origin or the author's nationality).

**B.    *Onesta* files suit against BMW in Munich on German and U.S. patents.**

On October 9, 2025, Onesta filed suit against BMW in Munich I Regional Court asserting infringement of a German part of European Patent 2 473 920 B1 alongside two U.S. patents, one of which is related to the German patent.  The two U.S. patents are the subject of BMW

---

[5] *See* Mot. Ex. I, J, K; *see also* Ex. 3 ("post-BSH" EU courts can hear "UK, U.S. China, and others" patent cases "if the defendant is domiciled in the EU"); Ex. 4 (same).  *See also* Ex. 2 (Picht Decl.) ¶ 16 (collecting sources).

declaratory judgment claims here.  The Munich case involves only a German defendant, the parent of the BMW group (the plaintiff here), subject to German process.  Onesta seeks to enjoin BMW from infringing Onesta's U.S. patents in the U.S. based on U.S. law, relying on cases like *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006), and its mandate that courts consult the "traditional principles of equity" in meting out injunctive relief in patent cases.  Mot. Ex. C (Onesta's German Complaint) Part 2 ¶ 210, Part 3 ¶ 253.

BMW has lodged a boilerplate objection to the Munich court's jurisdiction, Ex. 6 at 3; Ex. 7 at 3, although its expert here has opined that the court will likely affirm its jurisdiction, Mot. Ex. F ¶ 99 (concluding "there is nonetheless a considerable likelihood that the Munich Regional Court I applies the BSH/Electrolux principles to the infringement case at hand").

## III.    ARGUMENT

The Fifth Circuit "authorize[s] district courts to grant anti-suit injunctions 'to prevent vexatious or oppressive litigation.'"  *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582 (5th Cir.) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996)), *cert. denied*, 144 S. Ct. 487 (2023).  The analysis pits questions of the vexatiousness of foreign litigation against considerations of comity.  *Id.* at 583.  Other formulations in Fifth Circuit opinions have listed additional considerations, including whether the to-be-enjoined litigation abroad would "frustrate a policy of the forum issuing the injunction," "threaten the issuing court's in rem or quasi in rem jurisdiction" or "cause prejudice or offend other equitable principles."  *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (quoting *Kaepa*, 76 F.3d at 627 n.9).  None of these considerations support granting an injunction here.  For simplicity, Onesta addresses the factors in the order BMW raises them.

### A.    The Munich action does not frustrate any U.S. policy.

BMW first argues that the Munich case frustrates U.S. policy because (1) "Congress

empowered federal courts to adjudicate infringement of U.S. patents," (2) the German case "indisputably deprives BMW of its right to have a jury decide infringement of U.S. patents," (3) U.S. policy is against "extraterritoriality," and (4) the U.S. public has an interest in BMW's ability to invalidate Onesta's patents. Mot. at 7–10. None of these arguments are correct.

### 1. U.S. courts are not the exclusive fora for infringement cases.

First, it is not the case that Congress granted "exclusive jurisdiction to the federal courts" for adjudicating U.S. patent infringement disputes. Mot. at 9. To be sure, *federal* courts (as opposed to state courts) can hear infringement disputes. But they also proceed regularly, for example, before the ITC and in private arbitration, *see* 35 U.S.C. § 294, which is permitted if not encouraged by U.S. Congressional policy, *see*, *e.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (FAA establishes "a liberal federal policy favoring arbitration agreements"). International arbitration occurs, and there is no rule that arbitrations *must* occur within U.S. territory. And arbitration is lawful even without an ability to appeal arbitral decisions to the Federal Circuit. Indeed, the "exclusive" jurisdiction federal courts enjoy as to patent disputes "is not exclusive of other forums in the international context." *Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 633 F. Supp. 1209, 1212 (W.D.N.Y.), *aff'd*, 806 F.2d 1045 (Fed. Cir. 1986).[6]

BMW is also incorrect that federal courts *must* always exercise the full scope of their jurisdiction. In fact, in *Voda*, the Federal Circuit addressed whether district courts should exercise supplemental jurisdiction in their discretion and hear infringement cases involving foreign patents; it held that U.S. courts should decline to exercise that jurisdiction. *Voda v. Cordis Corp.*, 476 F.3d 887, 900 (Fed. Cir. 2007). Courts may also abstain from exercising jurisdiction based on abstention doctrines and based on principles of wise judicial administration,

---

[6] While a BMW declarant cites this case, Mot. Ex. E ¶ 43, BMW failed to note that the district court expressly rejected BMW's argument about § 1338(a), and the Federal Circuit affirmed.

including abstention from duplicative, second-filed litigation.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

**2.      BMW is mistaken that its claims are presently entitled to a jury trial.**

Second, BMW argues that the German case would "indisputably deprive" it of its "right to have a jury decide infringement of asserted U.S. patents."  Mot. 8.  Critically, *BMW does not presently have a jury trial right* in this declaratory judgment action.

At this stage, all that is pled in this case is a series of BMW's requests for declarations. Dkt. 1 at 45.  The Federal Circuit has instructed that the right to a jury trial is governed by the form of relief sought in an action: where the relief sought is only equitable, no Seventh Amendment right attaches, but where the relief sought is legal, a jury right follows.  *In re Lockwood*, 50 F.3d 966, 972 (Fed. Cir.), *vacated sub nom. Am. Airlines, Inc. v. Lockwood*, 515 U.S. 1182 (1995).  To date, patentee Onesta has filed no counterclaims of infringement seeking damages.  Without Onesta doing so, BMW has no jury right in this case.  *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1289-91 (Fed. Cir. 2005).  BMW argues that, as a policy matter, the U.S. public should get to decide issues related to U.S. markets, Mot. 10, but these policy arguments cannot create a jury right where there is none.  And policy decisions—like the extremely important policy question of whether U.S. should hobble its own patents relative to foreign patents—should be left to the political branches of the U.S. government.

**3.      The Munich action does not violate a policy against exterritoriality.**

Third, BMW is wrong that the Munich action violates a U.S. policy against extraterritoriality.  Mot. 8–9.  The German court is not usurping the role of federal courts.  That German companies at home in Germany can be sued in Germany for infringing U.S. patents does

not undermine Congress's jurisdictional and venue statutes.[7]  The Ninth Circuit has already determined that 28 U.S.C. § 1338 does not prohibit enforcement of U.S. copyrights in foreign courts: while § 1338(a) grants United States district courts exclusive jurisdiction over copyright claims, it is "not exclusive of the courts of foreign nations[.]"  *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995).  There is no reason to treat patents differently.

BMW also suggests that allowing the Munich action to proceed would undermine the supremacy of the Federal Circuit in the realm of patent jurisprudence.  The Munich court, however, would apply substantive U.S. law to U.S. patents.  Mot. Ex. F (Leistner Decl.) ¶ 84; *see also* Ex. 2 (Picht Decl.) ¶ 29.  It is not issuing binding precedent, and its invalidity findings are binding only on the parties, limiting the impact of any conflicting legal analyses.

### 4. BMW is incorrect that the Munich action affected its ability to challenge Onesta's patents *erga omnes*.

BMW then pivots and takes the opposite tact: it is actually a problem that the Munich court cannot invalidate patents writ large because the U.S. has an interest in foreign defendants like BMW being able to invalidate patents with global effect.  Mot. 9–10.  But U.S. district court decisions on invalidity do not themselves inherently and immediately carry *erga omnes* effect.  Instead, whether a court's invalidity decision is binding in later cases is determined as a matter of collateral estoppel and considers whether the patentee had a full and fair opportunity to litigate validity.  *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333 (1971) ("the

---

[7] Parties also routinely agree to arbitration or forum selection clauses in patent cases that circumvent the default rules on Congressional statutes without undermining U.S. policy, and that form of "forum shopping," Mot. 9, too, does not prejudice the rights of the United States government.  *See Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 806 F.2d 1045, 1046 (Fed. Cir. 1986) (affirming dismissal of case based on a forum selection clause that required the case to be brought in Italy, even though that meant an Italian court may decide U.S. patent law issues); *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 589 F. Supp. 2d 84, 98 (D. Me. 2008) (post-*Voda*, district court enforcing forum selection clause and declining to dismiss case even though that meant the court may have to decide issues of Chinese patent law).

patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'" (quoting *Eisel v. Columbia Packing Co.*, 181 F. Supp. 298, 301 (D. Mass. 1960)); *see also Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1206 (Fed. Cir. 2007) (declining to apply estoppel to unenforceability findings made in preliminary injunction ruling).

In contrast, administrative proceedings challenging U.S. patents can have *erga omnes* effect.  *See* 37 C.F.R. § 42.80 (PTO to issue certificates cancelling claims found unpatentable in IPR).  Nothing about the Munich case, however, has limited BMW's ability to challenge Onesta's patents at the PTO through, for example, requesting an *ex parte* reexam.[8]  If anything, *BMW barred itself* from seeking an IPR by filing this case,[9] limiting its options to challenge Onesta's patents *erga omnes*.  But that choice does not warrant enjoining the Munich action.

## B.    The Munich action is neither vexatious nor oppressive.

The Munich litigation is not vexatious.  In deciding whether to enjoin foreign litigation as vexatious, courts consider: "(1) 'inequitable hardship' resulting from the foreign suit; (2) the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'; and (3) the extent to which the foreign suit is duplicitous" of the U.S. litigation.  *Ganpat*, 66 F.4th at 582 (quoting *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 366 (5th Cir. 2003)).

### 1.    The Munich action presents BMW with no inequitable hardship.

First, BMW will not incur inequitable hardship by litigating in its home, Munich, where Germany enjoys general jurisdiction over it.  For BMW, it is merely another day in a German

---

[8] In *Electrolux*, CJEU did not require that the defendant have commenced invalidity proceedings in the State of registration of the patent but did comment that EU courts could choose to stay or terminate their proceedings in light of such proceedings.  Mot. Ex. B (*Electrolux*) ¶¶ 65.

[9] BMW could have filed a *inter partes* review ("IPR") petition, but it statutorily waived this right by filing this declaratory judgment action *See* 35 U.S.C. § 315(a)(1) (IPR "may not be instituted" if petitioner "filed a civil action challenging" patent validity).

court.[10]  The foreign litigation provides a streamlined, single case to resolve the dispute between

BMW and Onesta regarding three patents, two of which are in the same family.

### a)    Litigating two cases is not inequitable hardship.

BMW decries that it would incur hardship by litigating in two places "*if it wants to*

*pursue its declaratory judgment in U.S. court.*"  Mot. 11 (emphasis added).  But it is precisely

BMW that has "open[ed] parallel litigation proceedings" here.  *Id.*  This is the second filed case.

That BMW "wants to pursue" another case, *id.*, does not render Onesta's properly, earlier-filed

case vexatious.  In fact, it is exceedingly rare for an antisuit injunction to be granted in favor of a

*second*-filed case like BMW's.[11]  BMW argues that there is no "'first-filed principle' in suits

before separate sovereigns."  Mot. 17 n.7.[12]  But its own authorities advise that the order of filing

is relevant.  BMW purports to quote *Microsoft*, *id.*, but in the remainder of a quote that BMW

omitted, the Ninth Circuit noted that "[t]he order in which the domestic and foreign suits were

filed, although not dispositive, *may be relevant* to this determination depending on the particular

circumstances."  *Microsoft Corp. v. Motorola*, Inc., 696 F.3d 872, 887 (9th Cir. 2012) (emphasis

---

[10] As even an American court has recognized, "Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process." *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994).

[11] *See, e.g.*, *Sector Navigation Co. v. M/V CAPTAIN P*, No. CIVA 06-1788, 2007 WL 854311, at *2 (E.D. La. Mar. 15, 2007) (the court noting that it could find no caselaw involving a foreign antisuit injunction where, as here, the foreign lawsuit was filed before the lawsuit filed in the U.S.); *see also Kaepa*, 76 F.3d at 627 (ASI granted in favor of *earlier* filed U.S. case); *Ganpat*, 66 F.4th at 580 (affirming ASI enjoining *later* Indian action filed almost a year after U.S. case).

[12] In the Motion, BMW did not identify a *single* case where an antisuit injunction was issued enjoining an earliest-filed foreign case.  BMW did identify one case where an *anti*-antisuit injunction was issued against an earlier filed case.  *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 11, 2021), at *7.  However, that court discussed at length why it was justified in enjoining the technically first filed case—explaining that the foreign case was only filed four days before the domestic case, that the domestic plaintiff had no notice of the foreign case when the domestic case was filed, and that the domestic plaintiff was not even aware an antisuit injunction had been requested in China before it was issued and from which the anti-antisuit injunction provided relief.  *Id*. at *1–*3.

added).  And in *Unterweser*, there were three cases—a first U.S. case, a later London case, and then a third U.S. limitation action.  The court explained that it had "first acquired jurisdiction over the parties and the subject matter of this controversy" in both the first civil action and in the limitation action in deciding to enjoin the London case.  *See In re Unterweser Reederei, Gmbh*, 296 F. Supp. 733, 735–36 (M.D. Fla. 1969), *aff'd*, 428 F.2d 888 (5th Cir. 1970), *vacated sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  *See also Colorado River*, 424 U.S. at 818 ("It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.").

BMW also suggests that the Munich case is vexatious because simultaneous litigation is inefficient.  Mot. 12. But before *BMW* filed this case, there was no simultaneous litigation.  There was one case, in a patent-specialized court of competent jurisdiction, that comprised both the German and related U.S. patent issues.  Such a case would rest on tenuous ground here given the Federal Circuit's ruling in *Voda.*  The *only* place where all three patents could be heard efficiently was in Munich, and that is where Onesta filed suit.

But *even if* BMW secured its antisuit injunction to purportedly relieve it from the alleged burden of litigating multiple lawsuits, the Munich case would still proceed on the German patent.  That would effectively decouple decisions regarding one of the U.S. patents (the '381 patent) and its family member, the German patent, potentially complicating this action on issues of claim construction.  BMW would be likely to cite statements Onesta makes regarding the related German patent in this case, too, adding to the inefficiency between in the proceedings.

Any "unwarranted inconvenience," Mot. 11, flows from BMW's own choices.

### b) The customer-suit exception has no relevance here.

BMW also incorrectly suggests that it could have invoked the customer-suit exception in the United States if it had been sued here. Mot. 11. The customer-suit exception is an exception

from the general rule that first-filed cases proceed first. *See Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185 (1952)). It comes into play when a patentee first sues a manufacturer's customer, and the manufacturer then files a declaratory judgment case. In those unique circumstances, despite being second-filed, "the suit by the manufacturer generally takes precedence," *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (citing *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011)). If Onesta sued BMW here (instead of Munich), as BMW suggests it would have preferred, the Qualcomm case would be the first-filed case, not the BMW case, and the issues in that case do not perfectly overlap with this one, so the customer-suit exception would have limited import.

At best, BMW complains that if the Munich case was filed here, it could ask this Court for a discretionary stay, but it can ask the Munich court for a stay just the same.

> ### c) Onesta and the Munich court have not forced BMW executives to act in ways that would incur fines or cause imprisonment.

BMW decries that the "epitome" of its hardship is that its executives could be fined or imprisoned *if* Onesta filed an anti-antisuit injunction in Germany and was successful. Mot. 11–12. No one is forcing BMW to violate any orders of any court. That Onesta *could* seek an anti-antisuit injunction, that such a request *could* be granted, and that BMW *could* choose to violate that injunction and incur penalties does not make the Munich case vexatious. And, in any event, BMW could also be enjoined from its ongoing patent infringement in the United States, and its executives might be fined or imprisoned if it violated such an injunction. The possibility of injunctive relief and BMW violating court orders does not make the Munich litigation vexatious.

> ### d) That there are differences between U.S. and German courts is not a "vexatious and oppressive" tactic aimed at BMW.

BMW next offers a series of pleas that this Court protect it from the different procedural

rules in Munich, which are "another 'vexatious and oppressive' tactic aimed at BMW." Mot. 12. For starters, Munich is BMW's home jurisdiction that it has availed itself of many times. Conversely, BMW has also claimed (with the same counsel it has here) that it is "not at home in Texas," Ex. 8 at 11, where BMW chose to file this case. In fact, in contesting that it was home in Texas, BMW itself pointed to its connection to Munich, where Onesta filed suit. *Id.* A German company litigating under Germany procedures in Germany is not experiencing vexatious and oppressive litigation because that court follows German rules. As this Court noted in its TRO Order, a party "cannot conceivably suffer harm by continuing to be subject to the legitimate jurisdiction of this court." Dkt. 16 at 3. The same can be said for BMW continuing to be subject to the general jurisdiction of its home court in Munich.

BMW specifically attacks its home courts by complaining that (1) proceedings in Germany are front-loaded and lack American-style discovery, (2) the Munich court will apply U.S. law with "German judges" who are "inexperienced," and (3) the Munich case is "fundamentally vexatious and oppressive" for not relying on "legal authority." Mot. 12–13.

**Discovery.** While Germany does not have the U.S. Federal Rules of Civil Procedure and their discovery provisions, this advantages BMW, as confirmed by BMW's own declarant, Prof. Bagley. Mot. Ex. E ¶ 79 (explaining that the "*claimant* must present all facts establishing infringement as early as possible" (emphasis added)). Liberal U.S. notice pleading standards would have advantaged Onesta. BMW also claims it needs discovery from Qualcomm, its chip supplier. Mot. 11. But it has not substantiated what that evidence is, how it may be relevant, or even whether it faces any obstacle in getting it voluntarily. *Karaha*, 335 F.3d at 368 (discounting purported hardship that is speculative). And to whatever extent BMW believes it needs process to get information from its own suppliers, it has not even raised the need for discovery in the German proceedings—instead prematurely asking this Court enjoin that whole proceeding.

14

**Non-U.S. judges.** Second, judges routinely apply law that they are unfamiliar with across substantive areas of law, and that does not rise to inequitable hardship. Federal judges often apply state law principles. Appellate courts have routinely recognized that foreign courts can exercise jurisdiction over claims implicating U.S. substantive law, including in copyright cases.[13] Notably, these decisions do not hinge on the availability of jury trials.

Even the Federal Circuit has blessed sending U.S. patent questions abroad. For example, the Federal Circuit affirmed a district-court opinion that sent U.S. contract claims that could implicate patent infringement and invalidity questions to be decided in Italy—with the district court reasoning that "[a]lthough the patent laws are complex, there is no reason to believe that an Italian court would be any less capable of applying them than" other international tribunals are capable of applying securities or antitrust law. *Warner*, 633 F. Supp. at 1214, *aff'd*, 806 F.2d 1045. And "Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process." *Turner*, 25 F.3d at 1520.

At bottom, BMW is complaining about litigation costs. Mot. 12–13 (protesting the burden of educating Munich judges on U.S. law). Such costs are rarely considered as a form of irreparable injury in the United States. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("Litigation costs are . . . not an irreparable harm in the injunction calculus."). If litigation costs were always in and of themselves inequitable hardship, this factor would always be met in every case, rendering it meaningless. *See*

---

[13] *E.g.*, *Creative Tech.*, 61 F.3d at 703 ("Creative can point to no barrier precluding the High Court of Singapore from applying United States copyright law . . . should the need arise"); *Sysco Mach. Corp. v. Cymtek Sols., Inc.*, 124 F.4th 32, 39 (1st Cir. 2024) ("it is not clear that the premise for this argument (i.e., that a Taiwanese court could not apply U.S. law) stands scrutiny"); *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, 712 F. App'x 88, 90 (2d Cir. 2018) ("The record contains no reason to conclude that Singapore courts are not entirely capable of properly adjudicating copyright ownership and infringement claims.").

*Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1381 n.8 (Fed. Cir. 2008).

Moreover, BMW failed to inform this Court that the German court system is a loser-pays system. That is, if BMW ultimately prevails in Germany, it will have the ability to recover under that system as a matter of right. That is a significant procedural protection *afforded to BMW* in Germany if Onesta's claims fail, undercutting BMW's claims of inequitable burden. It also calls into question BWM's claim of Onesta's "crazy" approach to this case: in a loser pays system, the party initiating litigation is going to ensure the claims are sound before filing.

    **e)**  **A pioneering case is not "fundamentally vexatious."**

Finally, BMW claims that the Munich case is "fundamentally vexatious" because it is the first case to seek enforcement of U.S. patents post-*Electrolux*. Mot. 13. But several commentators agree with Onesta on the import of *Electrolux*: that EU courts can now hear U.S. or even Chinese patent infringement claims against their citizens at home. Mot. Ex. I, J, K; *see also* Exs. 3, 4. BMW's own declarant recognizes that the Munich court is considerably likely to agree with Onesta's reading of *Electrolux* and will affirm its jurisdiction. Mot. Ex. F (Leistner Decl.) ¶ 99; *see also* Picht Decl. ¶ 16, 27. Bringing a valid legal claim that BMW's expert agrees is likely to proceed is not "fundamentally vexatious," Mot. 13. And *Electrolux* is not an aberrant decision: U.K. courts, for example, have been enforcing U.S. copyright for decades. *See Bundy v. Nirvana LLC*, No. 21-56305, 2023 WL 4311613, at *1 (9th Cir. July 3, 2023) ("The main thrust of *Lucasfilm* is to expand the United Kingdom's jurisdiction over copyright infringement suits, rather than restrict it."); Picht Decl. ¶¶ 36–41.

What is more, to the extent there is a legitimate question about the scope of the CJEU's *Electrolux* ruling, EU courts like the Munich court should be afforded the opportunity in the first instance to decide their jurisdiction. Yet, after lodging a boilerplate objection in that court, Exs. 6, 7, BMW ran to this court to stop the Munich proceeding before that tribunal has an

16

opportunity to receive briefing on and decide the issues. BMW's Motion violates principles of comity by asking this Court to decide how German courts may proceed post-*Electrolux.*

> **2.    The Munich case would not frustrate or delay the speedy and efficient determination of this case.**

In evaluating vexatiousness, courts also consider the foreign suit's ability to frustrate and delay the efficient determination of this case. Again, the Munich case is the only case that can efficiently join both the U.S. and EU patent issues together. By BMW's own admission, German proceedings are front-loaded and efficient and do not have drawn out discovery procedures that could slow down this later-filed U.S. case. The Munich case has been proceeding for two months now and has a headstart. And even if the instant injunction is granted, *there will still be two cases* because, under *Voda*, U.S. courts do not hear foreign patent disputes, and BMW does not seek to enjoin the German action with respect to the German patent.

That speedy and efficient resolution should be in BMW's interest, as one of its declarants has claimed that Onesta's suit has caused "irreparable harm to BMW's reputation" based on "widespread media coverage reporting that BMW is an alleged infringer of U.S. patents to be tried in Germany." Mot. Ex. R ¶ 10. Ostensibly, if BMW were *actually* worried about media coverage, its counsel would not be *affirmatively seeking additional* media coverage on the dispute, which it did immediately upon filing this case.[14] But the reality is that BMW is not genuinely interested in streamlining its dispute with Onesta. It has duplicated and drawn out the proceedings because prolonging and escalating litigation always favors the wealthier party.

> **3.    The Munich case is not fully duplicative of this case.**

The final question in the vexatiousness inquiry is whether the proceedings in Munich

---

[14] Ex. 9 (article by BMW's counsel directing the public to contact the firm's "Chief Marketing Officer" and "Director of Branding and Communications" regarding the instant suit).

duplicate the U.S. proceedings.  The Munich case necessarily cannot duplicate the proceedings here because this Court is bound by *Voda* and cannot adjudicate the German patent at issue in that proceeding.  Regardless of how this injunction is resolved, the German action will proceed at least with respect to the German patent, undercutting any argument that it is vexatious.

No *Ganpat* factor suggests that the Munich case should be enjoined as vexatious.

### C.    The Munich case does cause prejudice or offend other equitable principles.

Next, BMW argues that Onesta's Munich suit offends equitable principles by implicating patent misuse and "brazenly" demanding an injunction.  Mot. 14–15.

**Patent misuse.**  But it is not "per se" patent misuse, Mot. 14, to seek damages beyond the six-year lookback in section 286, and none of BMW's authorities establish that principle.  *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964) (finding misuse where royalties extended beyond the *patent's term*, not § 286); *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 464 (2015) (declining to overrule *Brulotte*).  Further, BMW has full ability to raise any damages arguments or alleged misuse defense in the Munich court, which will apply U.S. law.  *See* Ex. 2 (Picht Decl.) ¶ 29.

**Injunctions.**  Next, BMW takes issue with Onesta seeking an injunction in Munich, asserting confidently that Onesta is not entitled to one.  Mot. 15.  But BMW can argue in Munich that Onesta is not entitled to an injunction under *eBay*.  And there is no basis for thinking that obtaining an injunction in Germany is "easier," *id.*, since that tribunal would apply U.S. law.

In any event, there is nothing wrong with Onesta seeking an injunction.  That is not only consistent with U.S. policy, as injunctions are key to the "incentive to innovate at the heart of the Patent Act," Ex. 1 (Statement of Interest of the United States) at 3; it is consistent with *eBay* and the traditional principles of equity, *see* Ex. 10 (Motion for Permanent Injunction, *Collision Communications, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 2:23-cv-587, ECF No. 346) at 5–7.

And contrary to BMW's view of U.S. policy, Mot. 15, there can be no doubt that it is

U.S. policy *not* to discriminate against non-practicing patent owners in granting injunctive relief:

> In some foreign countries the right granted to an inventor is affected by nonuse. This policy, we must assume, Congress has not been ignorant of nor of its effects. It has, nevertheless, selected another policy; it has continued that policy through many years.

*Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 429 (1908); *see also id.* ("[I]t is the privilege of any owner of property to use or not use it, without question of motive."); *see also eBay*, 547 U.S. at 393 (affirming *Continental Paper Bag* without qualification).

### D.    Comity considerations support permitting the Munich case to proceed.

Finally, BMW argues that this Court should bar Onesta from litigating its U.S. patents in Munich based on comity.  Mot. 15–16.  But comity considerations point to the exact opposite result.  The grant of BMW's injunction threatens relations between the U.S. and the EU. *Electrolux* is a landmark decision of the highest legal authority in the EU, Picht Decl. ¶ 9, and comity would respect foreign courts' authority to regulate their own citizens, *see Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984).  The heart of the *Electrolux* is that it respects comity and the territorial jurisdiction of the patent-issuing nation by limiting invalidity findings to *inter partes* effect while still allowing efficient resolution of patent disputes.  A Munich court can bind a German company with all legal instruments enforcing that decision staying within Germany.  Yet BMW, a foreign defendant, has haled itself into this Court to fashion its own exception from *Electrolux*, carving out U.S. patents for disparate and disadvantaged treatment in the EU.  It asks this Court to intervene and protect it, a German company, from a German court[15] applying a CJEU decision that permits omnibus patent

---

[15] Comity considerations also favor the first-filed case in this instance—the Munich action.  *See supra* § III.B.1.a).  Here, the timing suggests that BMW is attempting to evade the jurisdiction of the Munich court, as it ran to file this case and seek *ex parte* relief so it would not be forced to respond to the Munich action in February.  *See Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 921 (9th Cir. 2009).

litigation in its home city of Munich.  BMW would rather proceed piecemeal, separating decisions regarding related patents across the Atlantic and litigate in a venue it once clearly stated was not "home."  Ex. 8 at 10.  And it would prefer that this Court prohibit Onesta from even briefing any issues in Munich, when comity would suggest the German court should rule on its jurisdiction in the first instance.[16]

## IV.    THE COURT SHOULD NOT EXTEND THE TRO.

The Court should decline to extend the *ex parte* TRO in this case.  There is simply no ongoing emergency warranting emergency relief.  The next step in Munich is for BMW to file its responsive pleading on February 24, 2026 (the deadline after BMW sought a lengthy extension, Exs. 6–7), a date so far away that is well-after the TRO would expire.  *See* Fed. R. Civ. P. 65(b)(2) (limiting TRO length).  In seeking temporary relief, BMW represented to this Court that knowledge of its motion was so sensitive that the TRO must be granted *ex parte*—without any notice to Onesta—despite soliciting press coverage on it, putting into question the need for *ex parte* relief.  *See* Ex. 9.  And BMW waited two months after the Munich case was filed to move for its non-emergency TRO in an attempt to jam up both the Court and Onesta's counsel over the holidays with the apparent (failed) strategic goal that its misstatements of law, policy, and fact would be lost in BMW's over 1600-page filing.  Endorsing BMW's strategy would only serve to disadvantage U.S. patents on the world stage as compared to Chinese, EU, and other nations' patents.  That would be a terrible result for the United States, its patent system, and U.S. patent holders.  At bottom, every country has a right to regulate the conduct of the citizens.

---

[16] BMW occasionally points to *Voda*, suggesting that the Federal Circuit discretionarily declining jurisdiction over foreign patents is relevant.  While comity encourages international cooperation and reciprocity, *Laker*, 731 F.2d at 937, reciprocity is not "a condition precedent to the granting of comity," *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 460 (2d Cir. 1985).  That a German court may be willing to hear foreign patent disputes and U.S. courts may not does not justify enjoining a German court from exercising jurisdiction over a German defendant.

DATED: December 23, 2025

Respectfully submitted,

*/s/Aisha Mahmood Haley*
Jason D. Cassady
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Daniel R. Pearson
Texas Bar No. 24070398
Email: dpearson@caldwellcc.com
Aisha M. Haley
Texas Bar No. 24139895
Email: ahaley@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 888-4848
Facsimile:   (214) 888-4849

Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509
msiegmund@cjsjlaw.com

**ATTORNEYS FOR DEFENDANT
ONESTA IP, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of record via email on December 23, 2025.

*/s/Aisha Mahmood Haley*
Aisha Mahmood Haley