*Exhibit 4*

# CJEU Reshapes Patent Litigation Landscape

inquisitiveminds.bristows.com/post/102k2cy/cjeu-reshapes-patent-litigation-analysis-of-the-cjeus-decision-in-bsh-v-electro

Gregory Bacon                                                                                  28 February 2025

Learn more regarding this case with our relevant rapid reaction episode here

The CJEU's ruling in BSH v Electrolux (C-339/22) has significant implications for jurisdictional rules in European patent litigation. The decision is especially relevant in the context of the Unified Patent Court (UPC) and its authority over European patents granted outside EU territory.

The judgment clarifies the application of Article 24(4) of Regulation (EU) No 1215/2012 (Brussels I *bis*), addressing the extent to which EU national courts retain jurisdiction over an infringement claim concerning foreign patents when a validity defence is raised. Additionally, the ruling explores how European courts should handle infringement disputes involving non-EU patents.

## Background

BSH brought proceedings against Electrolux (a Swedish company) in Sweden, claiming that Electrolux had infringed national designations of a European patent (EP) validated across multiple jurisdictions, namely Austria, France, Germany, Greece, Italy, the Netherlands, Spain, the UK, Turkey, and Sweden.

Electrolux responded by asserting in the Swedish proceedings that these designations were invalid and argued that, under Article 24(4) of Brussels I *bis*, the Swedish courts lacked jurisdiction to hear infringement claims concerning foreign designations of the European patent. Electrolux based this argument on Article 24(4) of Regulation (EU) No 1215/2012 (Brussels I *bis*), which grants exclusive jurisdiction to the courts of each Member State in matters relating to the registration or validity of patents granted for that state, even when validity is raised as a defence, codifying the CJEU's ruling in GAT/LuK (C 4/03).

BSH's counter argument was that Article 24(4) is not applicable, since the action brought by BSH is not, in itself, "*concerned with the … validity of patents*" within the meaning of that provision. Moreover, pursuant to Paragraph 61 of the Swedish Patentlagen, where the defendant pleads in infringement proceedings that the patent is invalid, the court seised must order them to bring a separate invalidity action to that effect before the competent (Swedish) courts.

The Swedish Patent and Market Court dismissed the infringement action in respect of the foreign parts of the EP on the grounds that once validity was challenged, the Court lost jurisdiction to deal with those aspects of the claim. BSH appealed and the Svea Court of Appeal, Stockholm referred three questions to the CJEU, which we have summarised below:

1. Does Article 24(4) of Brussels I *bis* mean that a national court loses jurisdiction over the entire infringement claim when a validity defence is raised, or only over the validity challenge?
2. Does the Swedish procedural rule requiring a separate invalidity action affect the jurisdictional issue in Question 1?
3. Does Article 24(4) apply to third states, meaning that Turkey has exclusive jurisdiction over the EP designation validated there?

## Procedural history

The request for a preliminary ruling was lodged on 24 May 2022, with written observations submitted by BSH, Electrolux, the French Government and the European Commission. An oral hearing took place on 22 June 2023 and Advocate General Emiliou delivered his (first) opinion on 22 February 2024.

Following this, the case was transferred to the larger Grand Chamber, who reopened the oral phase, inviting further submissions only on the third question concerning third-state jurisdiction. A second oral hearing took place on 14 May 2024 and AG Emiliou issued a supplementary opinion on 5 September 2024. The CJEU handed down its decision on 25 February 2025.

## AG Emiliou's opinion

AG Emiliou's opinion was considered in detail in our previous article available [here](here).

In short, on the first and second question, AG Emiliou advocated a narrow reading of Article 24(4), arguing that exclusive jurisdiction should apply only to validity, not the entire infringement dispute. He warned that a broader approach would let defendants manipulate jurisdiction by raising an invalidity defence. While he acknowledged the inefficiency of splitting cases across jurisdictions, he saw this as manageable, citing bifurcated systems like that of Germany. He also advised that courts should not automatically stay infringement proceedings pending a foreign validity ruling but should assess proportionality and fairness, and may conduct a preliminary review of the invalidity defence's seriousness.

The AG's opinion on the third question concerning third-state patents is of particular interest given the CJEU's apparent departure from it. AG Emiliou rejected two extreme positions: first, that EU courts automatically lose jurisdiction over disputes involving patents registered in third states when a validity defence is raised, and second, that EU courts must always exercise jurisdiction under Brussels I *bis*. Instead, he endorsed a middle-ground approach, arguing that while EU courts have jurisdiction under Article 4(1) over defendants resident or domiciled in the territory of their court, they are not bound to hear cases with strong connections to third states. Part of his reasoning stems from the 'principle of reflectivity' in international law – i.e. the idea that courts of one jurisdiction should show deference or respect to the jurisdictional rules and legal decisions of another, particularly in cross-border disputes. In other words, while EU courts are not strictly

required to decline jurisdiction over a dispute involving a third-state patent, they should take into account whether the courts of that third state would, in a similar situation, defer to the EU court. He also recognised that the Brussels jurisdiction regime was not actually designed for disputes connected to non-EU states. As a result, the regime contained a 'design flaw' in not including provisions equivalent to those in Article 24(4) for non-EU patents, recommending that the CJEU fill the gaps of that regime with regard to cross-border disputes extending to non-EU countries.

**Questions 1 and 2: Jurisdiction Over Infringement Actions Concerning Foreign EU Patents**

In addressing the first and second questions, the CJEU largely followed AG Emiliou's opinion, adopting a narrow interpretation of Article 24(4) of the Brussels I *bis* Regulation. The Court confirmed that a patent holder may bring an infringement action in the court of the EU Member State where the defendant is domiciled, even if the patent was granted in another Member State.

Where the defendant challenges the validity of the foreign EU patent as a defence to infringement, the infringement court cannot rule on the patent's validity, even though the issue arises in response to the claim. However, this does not strip the infringement court of jurisdiction over the infringement proceedings themselves. The validity of the patent must be determined exclusively by the courts of the granting state, but the infringement case may continue. The infringement court may, however, stay proceedings if it considers that there is a "reasonable and non-negligible chance" that the competent court in the granting state will declare the patent invalid. This ensures that the infringement court can take the validity ruling into account before delivering its own decision on infringement.

Several factors influenced the Court's reasoning. First, this narrow interpretation of Article 24(4) prevents defendants from escaping jurisdiction simply by raising a validity challenge, a tactic that could otherwise disrupt infringement proceedings. Second, the Court sought to promote legal certainty and prevent abusive litigation strategies, such as raising a late invalidity defence to delay or derail proceedings. The CJEU also emphasized the efficiency of its approach - if validity challenges automatically stripped the domicile court of jurisdiction, patent holders would have to litigate in multiple jurisdictions, increasing complexity and costs. By contrast, under the CJEU's approach, a patent proprietor can consolidate infringement claims in a single forum, reducing the risk of divergent decisions across Member States. Of course, the CJEU's approach does not prevent a multiplicity of proceedings, as the defendant is entitled to and may choose to file revocation actions in each of the EU countries in question.

As a result of its ruling, there was no need for the CJEU to give a separate answer to the second question.

**Jurisdiction Over Actions Involving Non-EU Patents**

The CJEU ruled that Article 24(4) applies strictly to EU Member States and does not confer jurisdiction, exclusive or otherwise, on courts of non-Member States regarding patent validity. This is because Brussels I *bis* is an internal EU instrument, governing jurisdictional matters within the

EU legal framework. Except in a few limited cases, it does not extend its provisions to third countries.

However, the Court then considered whether a Member State court hearing a patent infringement action concerning a patent granted in a non-EU country could rule on the patent's validity when raised as a defence. Under Article 4(1) of the Brussels I *bis* Regulation, the general rule is that the courts of the defendant's domicile have jurisdiction over infringement actions, including any defences raised including, in principle, objections based on patent validity. However, the CJEU recognized that certain exceptions might limit this jurisdiction. These include:

- If the non-EU country is a contracting state to the Lugano Convention, which contains a similar exclusive jurisdiction rule for patent validity, or a similar agreement between the EU as a whole and that third non-EU country;
- If a bilateral agreement exists between the Member State and the third country assigning exclusive jurisdiction over validity disputes to the latter; or
- If Articles 33 and 34 of the Brussels I *bis* Regulation apply, which allow a Member State court to defer to a third-country court where parallel proceedings are already pending.

In this case, the CJEU found no such limitations: Turkey is not a Lugano Convention party, there was no bilateral agreement between Sweden and Turkey, and no evidence of parallel proceedings in Turkey. The European Patent Convention also does not impose specific jurisdictional rules for cross-border validity disputes.

The Court also examined whether general international law (particularly the principle of non-interference) restricted the jurisdiction of Member State courts over patents granted in third countries. Referring to Owusu (C-281/02), the Court reaffirmed that jurisdiction based on the defendant's domicile does not violate international law, provided that the ruling does not interfere with the sovereignty of the third country. However, the CJEU then went on to decide that a Member State court may assess the validity of a non-EU patent, but only for the purpose of deciding an infringement claim. Such a ruling only has *inter partes* effect, meaning it applies only to the parties in the case and does not alter the patent's official status in the third country's national register.

## Implications of the Decision

The CJEU's decision in BSH v Electrolux attempts to strike a balance between efficiency in infringement litigation and respect for national sovereignty over patent validity. However, whether the right balance has been achieved remains open to debate. The Advocate General devoted a significant part of his legal analysis to finding a middle ground that respected the rights of third-state patents while still allowing EU courts to hear infringement disputes involving foreign patents in appropriate cases. In contrast, the position adopted by the CJEU is more extreme, granting greater jurisdiction to EU courts over patents of third states (who are not parties to the Brussels

jurisdiction regime) than those registered in states who are parties to the regime, a paradox that the Advocate General had proposed to solve by a middle way that did not adopt this extreme position.

It is important to remember that the jurisdiction created by this decision applies only where a defendant is domiciled in an EU country and has committed acts of infringement in foreign territories. In many cases, the infringing foreign acts will be carried out by a local subsidiary, meaning that separate local proceedings will still be necessary, as previous CJEU case law has confirmed *(Roche v Primus* C-539/03) and which appears to be unaffected by the present decision*.* However, different jurisdictions apply different legal tests for joint liability of the parent company, meaning that liability for foreign infringement may or may not extend to the EU-domiciled defendant depending on where the patentee chooses to sue. For at least this reason, the decision is likely to increase forum shopping and national torpedoes, as litigants seek jurisdictions most favourable to their strategic interests.

The decision seeks to prevent defendants from using validity challenges to derail infringement claims while allowing patent holders to consolidate enforcement actions in a single EU jurisdiction. However, it is worth noting that using validity challenges to disrupt cross-border litigation remains a viable tactic at least for patents granted within the EU.

For non-EU patents, the CJEU judgment provides no clear guidance on when EU courts should consider a validity decision from a third state. Notably, the CJEU does not suggest that infringement proceedings should be stayed in respect of non-EU patents pending a validity challenge in the non-EU state, unless third-state proceedings were already underway when the infringement case was filed. This approach risks producing inconsistent outcomes: an EU court could find a non-EU patent valid and infringed, while a separate non-EU court might later rule it invalid. Such fragmentation could increase legal uncertainty and complicate enforcement strategies for patent holders. For example, would the patentee be required to compensate the defendant for damage resulting from a positive decision of infringement and validity if the foreign court subsequently revoked the patent. Would a granted injunction have to be lifted, or would it remain in place as the case has already been decided *inter partes*?

**The Role of the UPC and National Courts**

A key consequence of this ruling is that it will likely encourage the UPC to determine issues of infringement relating to EP (UK) patents, and patents of other non-EU EPC territory states. The Düsseldorf Division of the UPC has already concluded that it has jurisdiction to rule on the infringement of an EP (UK) patent in proceedings between Fujifilm and Kodak (UPC_CFI_355/2023), although it did not have the benefit of the CJEU's ruling when doing so. In contrast, the Munich Local Division stayed the part of parallel proceedings concerning the EP (UK) infringement claim, pending the outcome of this decision. Now that the decision has been issued, the Munich proceedings will likely move forward with the UPC providing a ruling on infringement of the EP (UK) patent.

The decision also raises wider questions about the role of the UPC in a system where consolidated infringement actions can now be brought before national courts. Patent holders may now have the option of choosing between the UPC and national courts when filing infringement claims. Previously, a validity challenge would often force all litigation into the jurisdiction where the patent was granted. Now, national courts can retain infringement jurisdiction even when validity is contested. This could make national courts a more attractive option for patentees seeking centralized enforcement without the risk of a UPC-wide revocation of their patent. Patentees may also prefer to use the national courts rather than the UPC if seeking to extend the dispute to non-European patents, as the UPC has no jurisdiction under the UPC Agreement to resolve disputes other than in relation to European patents (whether having unitary effect or not). Although the CJEU was asked the third question in relation to non-EU European patents, it (and the Advocate General) pointedly answered the question in a broader fashion, extending this new-found jurisdiction potentially to US or Chinese patents, for example.

On the other hand, at least in cases involving EU patents, national courts may choose to stay infringement proceedings while awaiting a validity ruling from another court, potentially prolonging litigation. Litigants may also face increased costs from having to defend or pursue cases in multiple jurisdictions rather than resolving everything in a single forum. National litigation is likely to be more complex than UPC proceedings, as parties may need to submit evidence regarding the relevant laws of foreign jurisdictions. For instance, expert testimony may be required from legal scholars on matters such as patent construction, infringement, and validity under foreign law. Whether this ruling will diminish the UPC's role as the primary forum for European patent disputes therefore remains to be seen.

## How Will Non-EU Countries Respond?

The decision raises questions about how the UK and other non-EU countries will respond. Will they seek to negotiate a treaty with the EU to prevent EU courts from ruling on their patents (whether on validity or also on infringement)? While such an agreement is theoretically possible, it is may not be a high-priority issue for policymakers. A more immediate concern is whether courts in non-EU countries such as the UK would issue anti-suit injunctions against EU proceedings attempting to rule on the infringement and validity of UK patents. If the EU proceedings were initiated after UK litigation had already commenced, a UK court may well do so, as such a ruling could undermine its own jurisdiction. However, if the EU proceedings were started first, the position is less clear.

## Impact on other registered rights

While patents were the primary focus of the decision, Article 24(4) of Brussels I *bis* also applies to registered trademarks, designs, utility models, supplementary protection certificates and so on. This decision may therefore have broader implications for the enforcement and jurisdictional treatment of other registered intellectual property rights.

**Conclusion**

The CJEU's ruling in BSH v Electrolux has profound implications for European patent litigation. It enables EU courts to hear infringement cases involving non-EU patents, even in situations where validity is contested, fundamentally altering the balance between national sovereignty and procedural efficiency. While this change benefits patentees seeking consolidated enforcement, it also creates legal uncertainty, increases the potential for forum shopping, and raises questions about the interplay between EU and non-EU legal systems. Whether this decision strengthens or undermines the role of the UPC in European patent disputes will depend on how national courts and litigants choose to navigate this new landscape.