*Exhibit 8*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLITZSAFE TEXAS, LLC,** | ) | |
| | ) | |
| | ) | Case No. 2:17-CV-00418-JRG |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BAYERISCHE MOTOREN WERKE AG** | ) | |
| **AND BMW OF NORTH AMERICA,** | ) | |
| **LLC,** | ) | |
| | | |
| *Defendants.* | | |

**DEFENDANT BAYERISCHE MOTOREN WERKE AG'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL**
**JURISDICTION**

**AND**

**DEFENDANTS BAYERISCHE MOTOREN WERKE AG'S AND BMW OF NORTH**
**AMERICA, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT FOR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER**

## TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1) ..................................................................................... i

I.   INTRODUCTION: THERE IS NO PERSONAL JURISDICTION OR VENUE ............. 1

II.  PROCEDURAL HISTORY: BLITZSAFE CANNOT ESTABLISH JURISDICTION OR VENUE .............................................................................. 1

III. FACTUAL BACKGROUND: DEFENDANTS HAVE NO TIES TO TEXAS ............... 3

     A.   Plaintiff Blitzsafe Texas, LLC ............................................................... 3

     B.   Defendant Bayerische Motoren Werke AG ("BMWAG") .................................... 4

     C.   Defendant BMW of North America, LLC ("BMWNA") .................................... 4

IV.  STATEMENT OF LAW .......................................................................... 6

     A.   The Assertion of Personal Jurisdiction Must Be Reasonable and Fair ................ 6

     B.   Venue in Patent Cases Requires Residence or a Regular and Established Place of Business in the Forum ............................................................... 8

V.   ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED ................ 9

     A.   BMWAG Is Not Subject To General Personal Jurisdiction In Texas Because It Is Not At "Home" In Texas ............................................... 10

     B.   This Court Does Not Have Specific Personal Jurisdiction Over BMWAG In This Case ................................................................... 12

     C.   The Amended Complaint Should Be Dismissed for Improper Venue ................ 14

          1.   Defendants Do Not Reside In This District ............................... 14

          2.   Defendants Have Not Committed Acts Of Infringement In This District .................................................................... 15

          3.   Neither Defendant Maintains A Regular And Established Place Of Business In This District .................................................. 15

     D.   Alternatively, The Court Should Transfer This Case To New Jersey ................ 19

          1.   Blitzsafe's Claims Could Have Been Brought In New Jersey ................ 21

          2.   The Private Interest Factors Favor Transfer To The District of New Jersey .................................................................... 22

3.     The Public Interest Factors Favor Transfer To New Jersey ..................... 26

VI.    CONCLUSION: THIS CASE SHOULD BE DISMISSED OR TRANSFERRED ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple, Inc.*,
456 Fed. Appx. 907, 2012 WL 112893 (Fed. Cir. 2012)..........................................................24

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009)..........................................................................................6, 7, 8

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
552 F.3d 1324 (Fed. Cir. 2009)..............................................................................................12

*Blitzsafe Texas, LLC v. Honda Motor Co., Ltd. et al.*,
2:15-cv-01274-JRG-RSP ........................................................................................................28

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).................................................................................................................7

*Campbell Pet v. Miale*,
542 F.3d 879 (Fed. Cir. 2008).................................................................................................13

*In re Cray Inc.*,
No. 2017-129, --- F.3d ---, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017) ..................... *passim*

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)..............................................................................................................11

*DSS Tech. Management, Inc. v. Apple, Inc.*,
No. 13-cv-00919, 2014 WL 6847569 (E.D. Tex. Nov. 17, 2014).........................................26

*Dual Mfg. & Eng'g v. Burris Indus.*, 531 F. 2d 1382 (7th Cir. 1976) ...............................9, 17, 18

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ..................................................................................................16

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
353 U.S. 222 (1957)...........................................................................................................14, 15

*Frederick v. Advanced Fin. Solutions, Inc.*,
558 F. Supp. 2d 699 (E.D. Tex. 2007).....................................................................................20

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).................................................................................22, 24, 26, 28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011).............................................................................................................11

*Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184-85 (7th Cir. 1969) ......................9

*Groupchatter, LLC v. Itron, Inc.*,
    No. 15-900, 2016 WL 2758480 (E.D.Tex. May 12, 2016)................................23, 24

*Hand Held Products, Inc. et al. v. The Code Corporation*,
    2:17xc--167-RMG (D.S.C. July 18, 2017) ...........................................................18

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)...........................................................................27

*Indus. Tech. Research Inst. v. LG Corp.*,
    No. 6:10CV628 LED-JDL, 2011 WL 10622246 (E.D. Tex. Nov. 29, 2011)...................20, 28

*Ingeniador, LLC v. Adobe Sys. Inc.*,
    No. 12-cv-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) ...............................25

*Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al.*,
    No. 5:16-cv-11-CMC (E.D.Tex. July 21, 2016) ......................................23, 24, 26, 28

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945).........................................................................................11

*Magnacoustics, Inc. v. Resonance Technology Co.*, No. 97-1247, 1997 WL
    592863 (Fed. Cir. Sept. 25, 1997)...........................................................................3

*Marlowe Patent Holdings LLC v. Dice Electronics, LLC, et al.*,
    3:10-cv-01199 .............................................................................................27, 28

*Marlowe Patent Holdings LLC v. Ford Motor Company*,
    3:11-cv-07044 .............................................................................................27, 28

*In re Microsoft Corporation*,
    630 F.3d 1361 (Fed. Cir. 2011).........................................................................21, 24

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
    35 F.3d 1576 (Fed. Cir. 1994)..........................................................................15

*Network Protection Scis., LLC v. Juniper Networks, Inc.*,
    No. 10-cv-00224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ........................21, 26

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009).........................................................................21

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
    688 F.3d 214 (5th Cir. 2012) .............................................................................7

*Prolacta Bioscience, Inc. v. Ni-Q, LLC*,
    2:17-cv-04071-SJO-E (C.D. Cal. August 7, 2017) ..............................................18

*Software Rights Archive, LLC v. Google, Inc.*,
   No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2011) .........................27

*Special Indus. v. Zamil Group Holding Co.*,
   578 Fed. Appx. 325 (5th Cir. 2014)......................................................................................7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .............................................................................................16

*TC Heartland LLC v. Kraft Food Brands Grp. LLC*,
   137 S.Ct 1514 (2017)................................................................................................ *passim*

*In re Toa Techs., Inc.*,
   543 F. App'x 1006 (Fed. Cir. 2013) .....................................................................................22

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014)...........................................................................................21

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008).....................................................................................21, 24

*Uniloc USA, Inc. v. Sony Corp. of Am.*,
   No. 6:10-CV-373, 2011 WL 13141728 (E.D. Tex. Sept. 20, 2011).......................................13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .......................................................................................20, 25

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)...........................................................................................21

**Federal Statutes**

28 U.S.C. § 1391(c) ..............................................................................................................8, 14

28 U.S.C. § 1400(b) ...........................................................................................................*passim*

28 U.S.C. § 1404(a) ........................................................................................................20, 21, 24

28 U.S.C. § 1406(a) ...............................................................................................................19, 20

35 U.S.C. § 271.........................................................................................................................12

**State Statutes**

Tex. Occ. Code Ann. § 2301.476.........................................................................................5, 12, 19

**Rules**

Fed. R. Civ. P. 4(k)(2).............................................................................................................112

Fed. R. Civ. P. 12 ...................................................................................................................1

Fed. R. Civ. P. 12(b)(2) ....................................................................................................6, 14

Fed. R. Civ. P. 12(b)(3) ...........................................................................................................6

**Other Authorities**

www.blitzsafe.com .....................................................................................................................3

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)

1) Whether the Court has personal jurisdiction over Defendant Bayerische Motoren Werke AG, a non-Texas entity with no significant contacts with the Eastern District of Texas.

2) Whether the Court should dismiss this patent case under 28 U.S.C. § 1406 for improper venue because no Defendant resides in this District, has committed alleged acts of infringement in this District, or has a regular and established place of business here, as required to support venue under 28 U.S.C. § 1400.

3) Alternatively, whether the Court should transfer this case to the District of New Jersey under 28 U.S.C. § 1404, a district where venue is proper, because the District of New Jersey is more convenient for the parties and the witnesses.

## I.      INTRODUCTION: THERE IS NO PERSONAL JURISDICTION OR VENUE

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Bayerische Motoren Werke AG ("BMWAG") moves to dismiss the First Amended Complaint of Plaintiff Blitzsafe Texas, LLC ("Blitzsafe") for lack of personal jurisdiction. Defendants BMW of North America, LLC ("BMWNA") and BMWAG (collectively, "Defendants") also move to dismiss Blitzsafe's First Amended Complaint for improper venue.

BMWAG is located in Munich, Germany, and does not make, use, sell, or offer to sell any products in the Eastern District of Texas. Indeed, BMWAG's only contacts to this District are secondhand through BMWNA, a New Jersey-based entity registered in Delaware, that distributes products made by BMWAG and non-party BMW Manufacturing Co., LLC ("BMWMC").[1] This attenuated connection does not amount to the "minimum contacts" needed for this Court to exercise personal jurisdiction over BMWAG. Accordingly, the Amended Complaint should be dismissed as to BMWAG.

Moreover, the Defendants are Delaware and German entities with no places of business in this District. As such, under the test for venue case in patent cases recently affirmed by the Supreme Court and Federal Circuit, this District is not a proper forum for this case. The Amended Complaint should be dismissed as to all Defendants for this reason.

## II.     PROCEDURAL HISTORY: BLITZSAFE CANNOT ESTABLISH JURISDICTION OR VENUE

On May 11, 2017, Blitzsafe filed a complaint against Defendants alleging direct and indirect infringement of U.S. Patent Nos. 7,489,786 ("the '786 patent") and 8,155,342 ("the '342 patent"). Dkt. No. 39 at ¶¶ 33, 41. Blitzsafe alleged that BMW and Mini automobiles and automobile parts (in particular, audio and multimedia integration system components used in

---

[1] BMWMC was named as a defendant in Blitzsafe's original Complaint, but Blitzsafe removed BMWMC from the First Amended Complaint.  Thus, BMWMC is no longer a party to this case.

BMW's "Infotainment Systems") infringe the Patents-in-Suit, because the Infotainment Systems allegedly support the integration of third-party external audio and multimedia devices. *Id.* at ¶¶ 3, 4, 7-10. On August 28, 2017, Defendants filed a Motion to Dismiss for lack of personal jurisdiction over BMWAG and BMWMC, and a Motion to Dismiss for improper venue with respect to BMWAG, BMWMC, and BMWNA. Dkt. No. 30. In lieu of responding to the Motion to Dismiss, on September 18, 2017 Blitzsafe filed a First Amended Complaint, naming only BMWAG and BMWNA as defendants. Dkt. No. 39.

In its Amended Complaint, Plaintiff generally alleges personal jurisdiction in the Eastern District of Texas (EDTX) because "Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this judicial district and/or have contributed to patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States." *Id.* at ¶ 19. Plaintiff further alleges that this Court has jurisdiction "due at least to [Defendants'] substantial business" in the EDTX. *Id.* at ¶ 21. This is incorrect, especially with respect to BMWAG.

Plaintiff also alleges venue in the EDTX based on 28 U.S.C. § 1400(b) "because, among other things, Defendants are subject to personal jurisdiction in this judicial district, each Defendants [sic] has a regular and established place of business in Texas and in [the EDTX], Defendant [sic] have purposely transacted business involving the accused products in this judicial district, including sales to one or more customers in Texas, and certain of the acts complained of herein occurred in [the EDTX]." *Id.* at ¶ 20. But these allegations are also incorrect, at least because neither Defendant has a regular and established place of business in the EDTX. *See TC Heartland LLC v. Kraft Food Brands Grp. LLC*, 137 S.Ct 1514 (2017); *In re Cray Inc.*, No. 2017-129, --- F.3d ---, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017). In fact,

the new allegations regarding BMW's activities Blitzsafe includes in its First Amended Complaint are either (1) repeated from BMW's own declarations showing why there is no established place of business in the EDTX, or (2) speculative, unsupported statements. Moreover, Blitzsafe improperly treats BMWAG or BMWNA as a single entity for venue purposes, or tries to impute BMWNA's activities to BMWAG. *See, e.g.,* Dkt. No. 39 at ¶¶ 11-16. Venue, however, must be determined as to each defendant separately. *Magnacoustics, Inc. v. Resonance Technology Co.*, No. 97–1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants venue and jurisdiction requirements must be met as to *each defendant*.") (citing 17 Moore's Fed. Practice 3d § 111.12[4][b]) (emphasis added).Therefore, Blitzsafe has not established that the EDTX is a proper venue over either (or both) Defendants.

## III.     FACTUAL BACKGROUND: DEFENDANTS HAVE NO TIES TO TEXAS

### A.     Plaintiff Blitzsafe Texas, LLC

Blitzsafe is allegedly organized under the laws of the State of Texas, with a principal place of business at 100 W. Houston Street, Marshall, Texas 75670. Dkt. 39 at ¶ 1. Blitzsafe's mailing address, however, is in New Jersey. Ex. A. Blitzsafe further claims that it "sells automotive interface products that allow the end user to connect a third-party external audio device or multimedia device to a car stereo in order to play the content on the device through the car stereo system and speakers," and that it "sells its products throughout the United States including in this judicial district." Dkt. 39 at ¶ 1. However, Blitzsafe formed on July 8, 2015, just days before filing five earlier patent infringement suits in the EDTX, so its sales claims are misleading. Ex. A. Instead, it appears that only Blitzsafe of America, Inc. ("BOA," a third party located in Englewood, New Jersey whom Blitzsafe identifies as its sole member (*id.*)) sells

products through its website, www.blitzsafe.com. Blitzsafe's only online presence is a listing on BOA's website including the above-listed address next to the EDTX courthouse and an 800-number that redirects to Blitzsafe of America. *See* Ex. B at 1. The BOA product catalog privacy policy, however, only mentions Blitzsafe of America. *Id.* at 2-5.

**B.      Defendant Bayerische Motoren Werke AG ("BMWAG")**

BMWAG is a German Stock Company headquartered in Munich, Germany. Schäck & Göbel Decl. ¶ 3. BMWAG designs and develops BMW-brand vehicles in Germany. BMWAG is a German automobile, motorcycle and engine manufacturing company. *Id.* ¶ 4. BMWAG does not design, develop or manufacture any BMW-brand vehicles in Texas. *Id.* ¶¶ 4, 7. For instance, the BMW 1 Series, 2 Series, 3 Series, 4 Series, 5 Series, 6 Series, 7 Series, Z series, 1 Series M, M2, M3, M4, M5, M6, 3 GT, 5 GT, i3, i8, BMW X1, X3, X4, X5, and X6 models accused in the Amended Complaint are not manufactured in Texas. *Id.* ¶ 6. BMWAG does not have offices, warehouses, stores, facilities, or employees in Texas, nor does it create, maintain, or store any documents, relevant to this case or otherwise, in the EDTX. *Id.* ¶¶ 11, 14-15. BMWAG is not registered to do business in Texas, and does not have any registered agent for service of process in Texas. *Id.* ¶ 12. Most of the key managers and personnel at BMWAG having knowledge relating to BMW Infotainment Systems are located in Germany, at BMWAG's headquarters. *Id.* ¶ 13.

**C.      Defendant BMW of North America, LLC ("BMWNA")**

BMWNA is a Delaware limited liability company with its headquarters at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey. Hernandez Decl. ¶ 3. The Woodcliff Lake campus is the home of BMWNA's corporate headquarters, its Technical Training Center, and the BMW Group's sales headquarters for North America. *Id.* All of the managers and key employees

having responsibility for technical aspects of the Infotainment Systems accused of infringement in this case work and reside outside of the EDTX. *Id.* ¶ 15. BMWNA also operates a Vehicle Preparation Center in Port Jersey, New Jersey. *Id.* ¶ 3. BMWNA has two Parts Distribution Centers in Texas-one in Galveston and one in Lancaster–neither of which is in the EDTX. *Id.*



Of its approximately ███ employees, BMWNA has ████████████████ ████████████████████. *Id.* ¶ 5. █████████████████████████ do not research, design, develop, or manufacture any of the accused Infotainment Systems or any components thereof. *Id.* ¶ 6. ███████████████████████████████████████████████ ████████████████. *Id.* ¶ 7.

BMWNA is the exclusive importer and distributor of BMW-brand passenger cars, sport activity vehicles, and motorcycles in the United States. ███████████████████████ ████████████████████████████ *Id.* ¶ 8. █████████████████████ ██████████████████████████████████████████████████████ ███████████████████ *Id.* One Mini-brand automobile dealer and three BMW-brand automobile dealers are located in the EDTX, but BMWNA does not own or control these four automobile dealers; they are independent. *Id.* ¶ 9; *see also* Tex. Occ. Code Ann. § 2301.476 (West). BMWNA does not have any training schools in the EDTX, nor does BMWNA provide continuous or regular training programs for employees of the four independent automobile dealers in the EDTX. *Id.* ¶ 10.

Infotainment System units installed in BMW-brand and Mini-brand vehicles are manufactured by BMW's suppliers, none of which are known to be located in the EDTX. Hernandez Decl. ¶ 14. BMWNA does not research, design, develop, or manufacture any of the accused Infotainment Systems or any components thereof in Texas. *Id.* BMWNA engages in

nationwide marketing and support activities for BMW-brand vehicles. *Id.* ¶ 11. Accordingly, BMWNA's distribution, marketing, and support activities are consistent throughout the country and BMWNA does not have any unique contacts with Texas as compared to any other state in which any independent BMW-brand dealers are located. *Id.*

BMWNA employs engineers and technical support personnel in various locations in the United States (but not in the EDTX) who understand, analyze, and assist independent dealers with questions and repair of vehicular systems. *Id.* ¶ 12. For example, from New Jersey, BMWNA maintains a regional technical field force of "Technical Service Engineers" (TSEs) that provide support to dealers. *Id.* ████████████████████████████████████████████ ████████████████████████████████████████████. *Id.* ████████ ████████████████████████████████████████████ ████████████████████. *Id.* Indeed, most of the key managers and personnel at BMWNA work in Woodcliff Lake, New Jersey. *Id.* ¶ 12.

BMWNA has no offices in the EDTX. *Id.* ¶ 16. BMWNA creates and maintain the documents that may be relevant to this case outside the EDTX. *Id.* ¶ 17. In contrast, BMWNA does not maintain or store any documents, relative to this case or otherwise, in Texas. *Id.* ¶ 18.

## IV. STATEMENT OF LAW

Federal Rules of Civil Procedure 12(b)(2) and (3) support dismissal for lack of personal jurisdiction over a party or improper venue.

### A. The Assertion of Personal Jurisdiction Must Be Reasonable and Fair

Federal Circuit law applies to the issue of personal jurisdiction, "because the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (internal quotations

omitted). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Id.* at 1017 (internal quotations omitted). Because Texas's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one. *Special Indus. v. Zamil Group Holding Co.*, 578 Fed. Appx. 325, 327-328 (5th Cir. 2014) (citing *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012)).

A court must have either general or specific personal jurisdiction over a defendant. "General jurisdiction, on one hand, requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Autogenomics*, 556 F.3d at 1017 (internal quotations omitted). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Id.* Specific jurisdiction can exist if "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* at 1018.

Courts consider multiple factors to evaluate whether personal jurisdiction is reasonable and fair: "[1]the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (internal quotations omitted).

"Where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the *uncontroverted* allegations in the plaintiff's Amended Complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Autogenomics*, 556 F.3d at 1017 (internal quotations omitted) (emphasis in original). However, the plaintiff "is entitled to only those inferences that are reasonable." *Id.* at 1018.

> ### B.     Venue in Patent Cases Requires Residence or a Regular and Established Place of Business in the Forum

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland,* 137 S. Ct. at 1516 (2017) (quoting 28 U.S.C. § 1400(b)). As the Supreme Court recently confirmed in *TC Heartland*, 28 U.S.C. § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and … is not to be supplemented by § 1391(c)." *Id.* at 1519. Under § 1400(b), a domestic company "resides" in the State in which it is incorporated. *TC Heartland,* 137 S. Ct. at 1520.

The Federal Circuit recently reaffirmed that to establish proper venue: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc*., No. 2017-129, __ F.3d __, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017). The Court cautioned "be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *Id.* at *4-5. The Federal Circuit further emphasized that the place of the third inquiry must be "of the

defendant." *Id.* at *6. "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.* "A further consideration for this requirement might be the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues. Such a comparison might reveal that the alleged place of business is not really a place of business at all." *Id.* (emphasis in original) (footnote omitted).

"[T]he mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *Id.* Without a permanent presence in the District, even conducting significant business involving direct sales of the accused products does not demonstrate a "regular and established" place of business for venue purposes. *See Dual Mfg. & Eng'g v. Burris Indus.*, 531 F. 2d 1382, 1386-88 (7th Cir. 1976) (collecting cases to establish that the following activities were insufficient to show a regular and established place of business under § 1400(b): "maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis; periodic visits by high-ranking executives to large customers to discuss sales; maintaining authorized warranty service, including repair and replacement of defective products; occasional rental of business space; and maintaining telephone or other listings.") (quoting *Grantham v. Challenge-Cook Bros., Inc.*, 420 F. 2d 1182, 1184-85 (7th Cir. 1969).

## V. ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED

Blitzsafe's Amended Complaint should be dismissed because this Court does not have personal jurisdiction over BMWAG, and because venue is not proper.

Regarding personal jurisdiction, Blitzsafe's Amended Complaint does not show that Court has jurisdiction over BMWAG. *See* Dkt. 39 at ¶¶ 19, 21. Blitzsafe provides no reasonable facts or inferences directed to BMWAG's connections to this District or to the State of Texas, and Blitzsafe does not identify specific acts performed by BMWAG in Texas related to its infringement claims. For example, Blitzsafe does not identify specific acts of "past infringing activities" in the EDTX, "business in Texas," or "persistent conduct and/or deriving substantial revenue" sufficient to establish personal jurisdiction over BMWAG. Thus, Blitzsafe has failed to set forth a *prima facie* case for this District having personal jurisdiction over BMWAG, and Blitzsafe's Amended Complaint should be dismissed with respect to BMWAG.

Regarding venue, Blitzsafe fails to set forth any basis for showing that either BMWAG or BMWNA resides in the EDTX, or has committed (alleged) acts of infringement in this District and has a regular and established place of business here. *See* Dkt. No. 39 at ¶¶ 4-16, 20. BMWAG and BMWNA are not incorporated in Texas, and therefore do not reside here. Hernandez Decl., ¶ 3; Schäck & Göbel Decl., ¶ 3. Further, BMWAG and BMWNA do not have a "regular and established place of business" in this District, and their accused products do not infringe any claim of the '786 or '342 patents. Blitzsafe's allegations regarding BMWNA's activities in the EDTX are, at best, speculative and unsupported, and still fail to establish that BMWNA has a "regular and established place of business" in this District under the three-inquiry framework set forth by the Federal Circuit in *In re Cray*.

### A. BMWAG Is Not Subject To General Personal Jurisdiction In Texas Because It Is Not At "Home" In Texas

Blitzsafe does not allege that this Court has general personal jurisdiction over BMWAG. Dkt. No. 39 at ¶¶ 19, 21. Even if Blitzsafe had alleged general jurisdiction, the facts do not establish general personal jurisdiction over BMWAG.

General personal jurisdiction over BMWAG requires a showing that BMWAG has "continuous corporate operations within [Texas] so substantial and of such a nature as to justify suit against it on causes of action arising from dealing entirely distinct" from that complained of by Blitzsafe in the present case. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). Therefore, this Court may exercise general personal jurisdiction over BMWAG "only when affiliations with the State in which suit is brought are so constant and pervasive 'as to render [BMWAG] essentially at home in the forum State." *Daimler AG,* 134 S. Ct. 749 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). The facts show that BMWAG is not at home in Texas.

As Blitzsafe acknowledges, BMWAG[2] is a German Stock Company (corporation) with its headquarters in Munich, Germany. Dkt. No. 39 at ¶ 2; *see also* Schäck & Göbel Decl., ¶ 3. BMWAG designs and develops BMW-brand vehicles in Germany, and BMWAG does not develop or produce any BMW-brand vehicles in Texas, including the BMW vehicles accused in paragraph 13 of Blitzsafe's Amended Complaint. Schäck & Göbel Decl. ¶¶ 4, 6, 7. Furthermore, the accused Mini-brand vehicles are not manufactured in Texas. Hernandez Decl. ¶ 13. BMWAG does not have offices, warehouses, stores, facilities, or employees in Texas. Schäck & Göbel Decl. ¶ 11. BMWAG is not registered or authorized to do business in Texas, and does not have any registered agent for service of process in Texas. *Id.* ¶ 12.

BMWAG does not sell any of the vehicles it develops or produces to consumers or BMW-brand dealers in Texas. *Id.* ¶ 9. Vehicles produced by BMWAG ████████

---

[2] BMWAG is a foreign entity, and Blitzsafe does not allege that BMWAG is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2). Even if Blitzsafe had alleged jurisdiction under this rule, BMWAG consents to jurisdiction in the state of New Jersey for the purposes of this action only, the state where BMWNA is headquartered. Therefore, Rule 4(k)(2) does not establish personal jurisdiction over BMWAG in Texas.

██████ outside of the EDTX. *Id.* There are three independent BMW-brand and one Mini-brand dealerships located within the EDTX, but these four dealerships are independently owned and operated, (Hernandez Decl. ¶ 8), and BMWAG also does not own, operate, or control any BMW-brand or Mini-brand automobile dealers in the EDTX. Schäck & Göbel Decl. ¶ 10; *see also* Tex. Occ. Code Ann. § 2301.476 (West) (stating that, absent specific exceptions, a manufacturer or distributor may not own, operate, or control a dealer or dealership).

**B.     This Court Does Not Have Specific Personal Jurisdiction Over BMWAG In This Case**

Blitzsafe's Amended Complaint fails to establish that this Court has specific personal jurisdiction over BMWAG. As Blitzsafe's allegations are directed to patent infringement, the issue of specific personal jurisdiction is governed by Federal Circuit law. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2009). In order to determine whether a court has specific personal jurisdiction over a defendant, the Federal Circuit considers: "whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* at 1332 (internal citations omitted). Blitzsafe has failed to plead any facts establishing that BMWAG have purposefully directed any activities at Texas residents, or that Blitzsafe's claims arise out of any such activities. As such, it would not be reasonable or fair for this Court to assert specific personal jurisdiction over BMWAG in this case.

Blitzsafe indistinctly alleges that "Defendants" have and continue to directly infringe one or more claims of the '786 and '342 patents by "making, using, offering to sell, selling and/or importing into the United States infringing Infotainment Systems without authority and in violation of 35 U.S.C. § 271" (Dkt. No. 39 ¶¶ 33, 41); have and continue to indirectly infringe one or more claims of the '786 and '342 patents by "knowingly and intentionally inducing others

to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the infringing Infotainment Systems" (*id.* ¶¶ 34, 42); and have and continue to indirectly infringe one or more claims of the '786 and '342 patents by "contributing to the direct infringement, either literally or under the doctrine of equivalents, by others, including end users, by offering to sell, selling, and/or importing into the United States the infringing Infotainment Systems..." (*id.* ¶¶ 35, 43). These general allegations fail to establish specific personal jurisdiction.

For example, Blitzsafe's infringement allegations refer generically to "Defendants," but fail to identify specific infringing actions of BMWAG occurring in Texas, or provide any basis for grouping the Defendants with respect to these allegations. Nor can Blitzsafe do so. As discussed above, BMWAG has not engaged in any of the alleged activities in Texas, let alone in this District. Thus, any connection between BMWAG and Texas does not "aris[e] from or relat[e] to" the infringement allegations in Blitzsafe's Amended Complaint. Therefore, Blitzsafe has failed to establish specific personal jurisdiction over at least BMWAG. *See, e.g., Uniloc USA, Inc. v. Sony Corp. of Am.*, No. 6:10-CV-373, 2011 WL 13141728, at *3 (E.D. Tex. Sept. 20, 2011) (holding that "Defendants have made a *prima facie* showing via their declarations" regarding jurisdiction because Plaintiff did not provide any contrary evidence (citing *Campbell Pet v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008))).

Nor can Blitzsafe properly allege that specific jurisdiction exists in Texas with respect to BMWAG, at least because BMWAG does not conduct business in Texas or this District relating to Blitzsafe's infringement allegations. BMWAG does not sell any of the vehicles it develops or produces in Texas; instead, vehicles produced by BMWAG ████████████████ outside of the EDTX. Schäck & Göbel Decl. ¶¶ 4,9. Moreover, BMWAG ██████████████████████

13

███████████████████ it does not produce or transfer vehicles specifically for Texas customers. *See id.* Likewise, BMWAG does not develop or produce any vehicles in the EDTX (Schäck & Göbel Decl. ¶ 7; Hernandez Decl. ¶¶ 4, 6), and the accused Infotainment Systems are not designed, developed, or manufactured in Texas (Schäck & Göbel Decl. ¶¶ 8).

In view the foregoing, it would not be "reasonable and fair" for this Court to find that it has specific personal jurisdiction over BMWAG in this case, and BMWAG is not subject to general personal jurisdiction in Texas. Therefore, Blitzsafe's Amended Complaint should be dismissed with respect to BMWAG for lack of personal jurisdiction under FRCP 12(b)(2).

### C.     The Amended Complaint Should Be Dismissed for Improper Venue

Venue in a patent infringement case is governed solely by 28 U.S.C. § 1400(b). *TC Heartland*, 137 S. Ct. at 1516; *see also Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957) (Holding that "28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)."). Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or whether the defendant has committed acts of infringement and has a regular and established place of business." As the Supreme Court's decision in *TC Heartland* and the Federal Circuit's decision in *In re Cray* make clear, this Court does not have venue over Defendants.

### 1.     Defendants Do Not Reside In This District

Under the first part of 28 U.S.C. § 1400(b), a corporate defendant "resides" only in its State of incorporation. *TC Heartland*, 137 S. Ct. at 1517 (2017); *Fourco Glass*, 353 U.S. at 229. BMWAG is a German Stock Company. Schäck & Göbel Decl. ¶ 3. BMWNA is incorporated in

Delaware. Hernandez Decl. ¶ 3. Therefore, venue cannot be supported by residency in this District. *See* 28 U.S.C. § 1400(b); *Fourco Glass*, 353 U.S. at 229.

### 2. Defendants Have Not Committed Acts Of Infringement In This District

The second part of § 1400(b) provides that venue in a patent infringement action may be in the judicial district "where the defendant has committed acts of infringement **and** has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). "The situs of the infringement is wherever an offending act is committed." *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994). The accused automobiles and automobile parts allegedly associated with the Infotainment Systems have no connection to this District—*e.g.*, they were not designed, developed, manufactured, or tested here. Hernandez Decl. ¶¶ 6, 12-14. No employee of Defendants knowledgeable or responsible for the research, design, development, marketing, sales, or implementation of the accused Infotainment Systems in any accused vehicle is located in Texas. *Id.* BMWNA does not have any training schools in the EDTX, nor does BMWNA provide continuous or regular training programs for employees of the four independent automobile dealers in the EDTX. Hernandez Decl. ¶ 10. Thus, even assuming arguendo that Plaintiff has sufficiently alleged facts to support any actionable conduct by Defendants, which it has not, any relevant activity performed by Defendants with respect to their alleged infringement occurred outside the EDTX.

### 3. Neither Defendant Maintains A Regular And Established Place Of Business In This District

The Federal Circuit set forth three requirements for meeting the "established place of business" test: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray*, __ F.3d __, 2017 WL 4201535, at *4. Blitzsafe's conclusory venue allegations do not meet this test.

For example, Plaintiff's original complaint merely alleges that "Defendants" collectively "have regularly conducted business in this judicial district, and certain of the acts complained of [in the Complaint] occurred in this judicial district." Dkt. No. 1 at ¶ 7. Plaintiff's Amended Complaint is also deficient, as it either repeats facts from declarations to Defendants' original Motion to Dismiss or Transfer (facts that show why venue is not proper in the EDTX), or makes unsupported, speculative statements. *See* Dkt. No. 39 at ¶¶ 4-16.

Like the original Complaint, Plaintiff also makes the bare assertion that "Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this judicial district and/or have contributed to patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States."[3] *Id.* ¶ 19. Blitzsafe fails to demonstrate any "regularly conducted business" at a place of business of Defendants within the EDTX, and the Court need not accept Blitzsafe's conclusory allegations. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) ("We construe the plaintiffs' complaints in the light most favorable to them, accepting all well-pleaded facts as true, but we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). The facts

---

[3] Defendants note that Texas contains four distinct judicial districts, and it cannot be reasonably inferred that a defendant who allegedly maintains business activities somewhere in Texas, even if accepted as true, "resides in" or has "a regular and established place of business" in the EDTX specifically.

demonstrate that BMWNA and BMWAG do not maintain a "regular and established place of business" in the EDTX, especially when considering the three inquiries set forth in *In re Cray*.

### a. BMWAG

BMWAG does not have a physical presence in the EDTX, as BMWAG has no offices, warehouses, stores, facilities, or employees in Texas. Schäck & Göbel Decl. ¶ 11. BMWAG does not develop or produce any BMW-brand or Mini-brand vehicles in Texas, and does not research, design, develop, or manufacture any of the accused Infotainment Systems or components thereof in Texas. *Id.* ¶¶ 7, 8; Hernandez Decl. ¶ 13.

Further, BMWAG does not represent that it has a presence in the EDTX. BMWAG is not registered or authorized to do business in Texas, and does not have any registered agent for service of process in Texas. *Id.* ¶ 12. BMWAG does not own, operate, or control any BMW-brand automobile dealers in the EDTX, as such dealers are independent from BMWAG. *Id.* ¶ 10. Indeed, under *In re Cray*, the independent dealerships cannot establish venue in this District, because the four dealerships are not a "place of the defendant." *In re Cray*, __ F.3d __, 2017 WL 4201535, at *4; *see also Dual Mfg.*, 531 F. 2d at 1386-88 (7th Cir. 1976).

BMWAG derives no special benefits from the EDTX, and BMWAG does not interact in a targeted way with individuals in the EDTX. For example, BMWAG does not sell any vehicles to consumers or to BMW-brand or Mini-brand dealers in Texas. Vehicles produced by BMWAG ███████████████████████████ are distributed nationwide. Schäck & Göbel Decl. ¶ 9.

### b. BMWNA

BMWNA does not have a physical presence in this District sufficient to establish venue. Like BMWAG, BMWNA has no offices in the EDTX. Hernandez Decl. ¶ 16. BMWNA also has no training schools in this District. *Id.* at ¶ 10. Though BMWNA has two facilities in Texas, neither is in the EDTX. *Id.* ¶ 5. Further, BMWNA does not own or control the three BMW-brand

and one Mini-brand automobile dealers in the EDTX. *Id.* ¶ 9. Therefore, similar to BMWAG, the independent dealerships cannot establish venue in this District, because the four dealerships are not a "place of the defendant." *In re Cray*, __ F.3d __, 2017 WL 4201535, at *4; *see also Dual Mfg.*, 531 F. 2d at 1386-88 (7th Cir. 1976).

BMWNA also does not regularly conduct business from an established BMWNA location in this District. Out of approximately ████ employees, BMWNA employs ████ ████████████████████████████████████████████. *Id.* ¶ 5. None of ████ ████████████████ research, design, develop, or manufacture any of the accused Infotainment Systems or components thereof in Texas. *Id.* ¶ 6. The mere presence ████████ ████████ in this District does not establish venue. *See Hand Held Products, Inc. et al. v. The Code Corporation,* 2:17xc--167-RMG (D.S.C. July 18, 2017) (finding improper venue despite the presence of an employee in the district); *see also Prolacta Bioscience, Inc. v. Ni-Q, LLC,* 2:17-cv-04071-SJO-E (C.D. Cal. August 7, 2017) (dismissing the complaint for improper venue, and finding that mere presence of an employee in the district was insufficient to establish venue). Thus, ████████████████████████ four independent dealerships do not constitute "a regular and established place of business" of BMWNA as required for venue by the second part of § 1400(b).

Similarly, BMWNA neither represents that it has a presence in this district, nor does it derive benefits from a presence in this district. BMWNA engages in marketing and support activities for BMW-brand vehicles in a nationwide campaign (*id.* ¶ 11), but not targeted within this District. BMWNA distributes the imported and acquired vehicles through independent dealers throughout the United States. *Id.* ¶ 8. BMWNA does not directly sell vehicles to consumers in the EDTX.

BMWNA also does not interact in a targeted way with existing or potential customers, consumers, users, or entities in this District. BMWNA's distribution, marketing, and support activities are consistent throughout the country and BMWNA does not have any unique contacts with Texas as compared to any other state in which any independent BMW-brand dealers are located. *Id.* ¶ 11. BMWNA also does not provide localized customer support within this District. *Id.* ¶ 12. Instead, BMWNA's customer and technical support personnel are in New Jersey. *Id.* BMWNA does not provide continuous or regular training programs for employees of the four independent dealerships in this District. *Id.* ¶ 10. Thus, rather than targeting this specific District locally, BMWNA provides nationwide support via employees located outside this District.

As shown above, venue is improper with respect to both BMWNA and BMWAG under 28 U.S.C. § 1400(b) because there is no physical place of "regular and established" business in this District for either BMWNA or BMWAG. Indeed, in accordance with the Texas Occupations Code, BMWNA and BMWAG cannot own, operate, or control the four independent dealerships in this District. *See* Tex. Occ. Code Ann. § 2301.476. As Blitzsafe cannot establish venue over any Defendant under either part of 28 U.S.C. § 1400(b), and in view of the facts presented above, this case should be dismissed. *See* 28 U.S.C. § 1406(a) (when a case is filed in the "wrong division or district," district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"); *see also TC Heartland*, 137 S.Ct 1514 (2017).

### D. Alternatively, The Court Should Transfer This Case To New Jersey

This case should be dismissed for lack of personal jurisdiction over BMWAG, and for improper venue with respect to both Defendants. Alternatively, if the Court declines to dismiss the Amended Complaint, Defendants respectfully request transfer of this case to the District of New Jersey, a proper and far more convenient venue.

A district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406(a). To determine whether a case should be transferred, the court pursues a two-pronged inquiry. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (directing the EDTX to transfer).

The court first determines whether the case originally could have been brought in the proposed transferee district. *Id.* A patent infringement action may be brought "where the defendant resides, or where the defendant has [allegedly] committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). If the threshold inquiry is met, the court then weighs the relative convenience of the transferee district and the transferor district, based on a number of private and public interest factors. *See, e.g.*, *Indus. Tech. Research Inst. v. LG Corp.*, No. 6:10CV628 LED-JDL, 2011 WL 10622246, at *2 (E.D. Tex. Nov. 29, 2011) (granting motion to transfer to District of New Jersey). The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen*, 545 F.3d at 315. The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law." *Id.*

"Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer." *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007). The plaintiff's choice of forum,

however, is entitled to no weight in determining whether to transfer venue. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."). This is particularly true where a plaintiff's recent and ephemeral contacts with a forum "are nothing more than a construct for litigation." *See, e.g.*, *Network Protection Scis., LLC v. Juniper Networks, Inc.*, No. 10-cv-00224, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) (citing *In re Microsoft Corporation*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)).

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). Thus, even though "[t]he analysis may not show that the transferee forum is far more convenient[,] that is not what is required. With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is 'clearly more convenient.'" *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

This case could have been brought in New Jersey, and the convenience factors weigh in favor of transfer, with no factor weighing against it. Defendants therefore request that the Court transfer this case to the District of New Jersey.

### 1. Blitzsafe's Claims Could Have Been Brought In New Jersey

To determine whether venue is proper in the proposed transferee court, and inquiry must first be made as to whether a patent infringement action could have been brought "where the defendant resides, or where the defendant has [allegedly] committed action of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Certainly, Plaintiff could

have brought this action against BMWNA in the District of New Jersey where BMWNA is headquartered. *See* 28 U.S.C. § 1400(b). *See* Hernandez Decl. ¶ 3.

> ### 2. The Private Interest Factors Favor Transfer To The District of New Jersey

> #### a. The Relative Ease of Access to Sources of Proof Strongly Favors Transfer

Accessibility to sources of proof is an important private interest factor that weighs heavily in favor of transfer. *Id.* "The critical inquiry 'is relative ease of access, not absolute ease of access.'" *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (citations omitted). Here, the sources of evidence in this case are far more accessible in New Jersey, where BMWNA is headquartered, than in Texas. In patent cases, "the bulk of relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). In this case, most, if not all, of Defendants' witnesses and physical evidence relating to the accused vehicles are located in, or accessible from, New Jersey, making the District of New Jersey a clearly more convenient venue for the present case. For example, BMWNA's relevant documents and records are maintained at BMWNA's headquarters in New Jersey. Hernandez Decl. ¶ 15. Most of the key managers and personnel at BMWNA work in New Jersey. Hernandez Decl. ¶ 15. Further, most of the key managers and personnel at BMWAG having knowledge relating to the accused Infotainment Systems are located in Germany, Schäck & Göbel Decl. ¶ 13, and New Jersey is far more convenient for them. Schäck & Göbel Decl. ¶ 16. Thus, New Jersey is far more accessible than Texas for any of Defendants' potential witnesses. Hernandez Decl. ¶ 19; Schäck & Göbel Decl. ¶ 16.

Importantly, expected third-party witnesses also have ties to New Jersey. For example, BOA, the "member" of Blitzsafe who appears to manufacture and sell Blitzsafe's products is located in Englewood, New Jersey. Moreover, Blitzsafe has identified four non-party witnesses

in New Jersey: (1) former BOA engineer Edward Fischer; (2) BOA production manager Samuel A. Morales; (3) former BOA engineer Dmitriy Kiryashov; and (4) Kun Cho, former attorney for Marlowe Patent Holdings, LLC, the prior owner of the asserted patents. Ex. F (Blitzsafe's Initial Disclosures). The District of New Jersey would be much more convenient for these third parties than the EDTX.

In contrast, no known Defendants' or third-party's witnesses or physical evidence are located in this District. *See* Hernandez Decl. ¶ 16; Schäck & Göbel Decl. ¶ 15. As stated, none of Defendants' witnesses are located in Texas. *See* Hernandez Decl. ¶ 16; Schäck & Göbel Decl. ¶ 11. And no manufacturers of any parts of the accused Infotainment System are believed to be located in this District. Schäck & Göbel Decl. ¶¶ 14,15, 16; Hernandez Decl. ¶¶ 15, 16.

Moreover, if Blitzsafe has evidence or witnesses relevant to the issues in dispute in the present cases is located in the EDTX, it is likely minimal—favoring transfer. *Groupchatter, LLC v. Itron, Inc*., No. 15-900, 2016 WL 2758480, at *3 (E.D.Tex. May 12, 2016) (granting motion to transfer due to the lack of relevant evidence in the EDTX); *Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al*., No. 5:16-cv-11-CMC (E.D.Tex. July 21, 2016) (same). For instance, Blitzsafe's alleged headquarters appears to double as an office for Blitzsafe's registered agent Kurt Truelove in Marshall, Texas. *See* Exs. A, E. Defendants could find no evidence of Blitzsafe's "principle place of business" in Texas, or any evidence of such a place of business at which activities are conducted relevant to the allegations of the Amended Complaint.

With actual ties to New Jersey and little but an office space here, Blitzsafe exhibits the "classic case where the plaintiff is attempting to game the system" in anticipation of litigation, with its weak connection to this District. *Zimmer*, 609 F.3d at 1381-82 (directing the EDTX to transfer). "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional

and venue laws are not frustrated by a party's attempt at manipulation." *Microsoft*, 630 F.3d at 1364 (Fed. Cir. 2011) (ordering transfer where plaintiff incorporated under Texas laws and opened an office in Tyler shortly before filing suit). The Federal Circuit has also made clear that a Plaintiff cannot manufacture ties to Texas for venue. *See In re Apple, Inc.*, 456 Fed. Appx. 907, 908–09, 2012 WL 112893, at *1 (Fed. Cir. 2012) ("courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'") (citing *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011)). Accordingly, the first private interest factor strongly favors transfer.

### b.    The Cost of Attendance for Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343; *see also Nintendo*, 589 F.3d at 1198-99 (weighing the travel burden and disruption to work and family for trial witnesses). Here, transfer to the District of New Jersey would substantially reduce the cost and burden of attendance for expected party and non-party witnesses.

"Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *Intelligent Automation Design*, No. 5:16-cv-CMC, at 9; *Groupchatter*, 2016 WL 2758480, at *4 (quoting *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted)).

In this case, to the extent Defendants' employees have knowledge regarding the issues relevant to Blitzsafe's allegations as set forth in its Amended Complaint, such as marketing,

sales, financial reporting, engineering services, or product support for vehicles that have been accused of infringement, most of these employees work or reside in New Jersey (BMWNA), or Germany (BMWAG). Schäck & Göbel Decl. ¶¶ 13, 16; Hernandez Decl. ¶¶ 6, 12, 15, 19. BMWNA, with its headquarters in New Jersey, is located over 1,400 miles from this District, yet less than 25-100 miles from the District of New Jersey courthouses. BMWAG, with its headquarters in Germany, is located over 5,000 miles from this District (and about 4100 to New Jersey). Indeed, the Defendants are all significantly further than 100 miles from this District, and more (sometimes much more) than 100 miles closer to New Jersey. Thus, New Jersey would be far less costly and much more convenient for any of Defendants' witnesses.

Furthermore, BOA is headquartered in New Jersey, where BOA's third-party witnesses identified by Plaintiff are located. Thus, even if there are party witnesses for whom this District is more convenient, any convenience to them would be greatly outweighed by how much more convenient New Jersey is for expected BMW and third-party witnesses. Schäck & Göbel Decl. ¶ 16; Hernandez Decl. ¶ 19; *see also Ingeniador, LLC v. Adobe Sys. Inc.*, No. 12-cv-00805, 2014 WL 105106, *3-*4 (E.D. Tex. Jan. 10, 2014) ("[G]iven that most witnesses will come from California, [the inconvenience to witnesses closer to the EDTX] is outweighed by the substantially increased convenience of witnesses in California.").

As noted by the Fifth Circuit, "it is an obvious conclusion that it is more convenient for witnesses to testify at home and that additional distance means additional travel time" and additional monetary burden. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 317. (citation, quotation marks, and brackets omitted). "Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *See id.* Here, where "most witnesses and evidence [are] closer to the transferee venue" and "few or no

convenience factors [favor] the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198 (overturning denial of motion to transfer). Therefore, this private factor weighs strongly in favor of transfer to New Jersey.

### c.    The Other Private Interest Factors Favor Transfer

The other private interest considerations are: 1) the availability of compulsory process to secure the attendance of non-party witnesses, and 2) the practical problems related to the ease, expense, and expediency of trial. A transferee "venue with usable subpoena power [] weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. The practical problems "include those that are rationally based on judicial economy." *DSS Tech. Management, Inc. v. Apple, Inc.*, No. 13-cv-00919, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 17, 2014).

In this case, some non-party witnesses may include suppliers for BMW Infotainment Systems, and those suppliers are not believed to be located within this District. Hernandez Decl. ¶ 14.[4] Third-party witnesses identified by Blitzsafe are located in New Jersey. Moreover, since defendants in other suits by Blitzsafe are believed to be seeking transfer to New Jersey, the cases will not proceed in entirely separate jurisdictions, reducing any practical problems. Thus, These two private interest factors favor transfer to New Jersey.

### 3.    The Public Interest Factors Favor Transfer To New Jersey

### a.    The District of New Jersey Has a Substantial Connection to and Local Interest in Adjudicating this Case

The District of New Jersey has a significant interest in this dispute because (1) BMWNA is headquartered in that District; (2) Blitzsafe's sole member BOA is located in that District, (3) Blitzsafe's allegations call into question the work and reputation of Defendants' employees

---

[4] That car dealerships or customers thereof residing in this District are irrelevant. The mere presence of sales reps or customers in Texas does not weigh against transfer. *Intelligent Automation Design*, No. 5:16-cv-11-CMC, at 8; *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *5, n. 4 (E.D. Tex. Jan. 23, 2012).

residing or conducting business within the District of New Jersey; (4) Blitzsafe's has identified third-party witnesses with relevant information residing in the District of New Jersey, and (5) the District of New Jersey previously presided over two cases involving the '786 patent.[5] *See, e.g.*, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferee district's local interest is strong because case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").

In contrast, the EDTX has no meaningful connection to this dispute. None of Defendants' employees with relevant knowledge or known non-party witnesses reside in this District. Blitzsafe's litigation-manufactured and barely-detectable presence here does not outweigh New Jersey's clear local interest in adjudicating this dispute. *See Microsoft*, 630 F.3d at 1364 (rejecting that the court must honor "connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22, 2011) ("Establishing a principal place of business in this district shortly before filing suit does not create a local interest."). Thus, this factor favors transfer.

### b.  Administrative Difficulty from Court Congestion is Neutral

Certain statistics favor transfer to New Jersey, while others place the Districts close together. For example, the EDTX has an extraordinary number of patent cases pending on its docket. In 2016 and through June 2017, more than 2,200 patent cases were filed in the EDTX, in contrast to fewer than 300 patent cases filed in New Jersey. Ex. C. Thus, the District of New Jersey has a far less congested patent docket than the EDTX.

---

[5] *Marlowe Patent Holdings LLC v. Ford Motor Company,* 3:11-cv-07044; and *Marlowe Patent Holdings LLC v. Dice Electronics, LLC, et al.,* 3:10-cv-01199.

Additionally, since 2000, the average time to bench trial in patent cases in the EDTX is 28 months, and the average time to trial in New Jersey is approximately 41 months. Ex. D at 4-5. However, "this factor is the most speculative and cannot alone outweigh other factors." *Intelligent Automation Design*, No. 5:16-cv-11-CMC, at 11 (*citing Genentech*, 566 F.3d at 1347); *see also Indus. Tech. Research Inst..*, 2011 WL 10622246, at *8 (granting motion to transfer to the District of New Jersey despite evidence of slightly faster time to trial in the EDTX). Thus, this public interest factor is neutral.

### c. The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral because federal patent law will apply to this case and both the EDTX and the District of New Jersey are capable of adjudicating patent claims. Further, even though this Court has presided over previous cases where Blitzsafe asserted the same patents, *see, e.g., Blitzsafe Texas, LLC v. Honda Motor Co., Ltd. et al.,* 2:15-cv-01274-JRG-RSP, and thus has specific knowledge relevant to Blitzsafe's allegations, the venue statutes and the Supreme Court's decision in *TC Heartland* demand dismissal or transfer regardless of any expertise the transferor Court may have, or potential for judicial economy derived therefrom. Moreover, the District of New Jersey has also presided over two previous cases filed by Blitzsafe's predecessor for asserted patent no. 7,489,786, including holding claim construction hearings. *See, e.g., Marlowe Patent Holdings LLC v. Ford Motor Company,* 3:11-cv-07044; *Marlowe Patent Holdings LLC v. Dice Electronics, LLC, et al.,* 3:10-cv-01199.

## VI. CONCLUSION: THIS CASE SHOULD BE DISMISSED OR TRANSFERRED

Based on the forgoing, Defendant BMWAG respectfully request that the Court dismiss Plaintiff's Amended Complaint against it for lack of personal jurisdiction. Additionally, Defendants BMWAG and BMWNA respectfully request that the Court dismiss Plaintiff's Amended Complaint for improper venue or, alternatively, transfer this case to New Jersey.

Respectfully submitted,

Dated: October 16, 2017


*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:     (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") all counsel of record who have appeared in this case. I also caused the documents above to be sent to all counsel of record via electronic mail.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC

## CERTIFICATE OF CONFERENCE

The parties complied with Local Rule CV-7(h). On September 25, 2017, Defendants' counsel conferred with Plaintiff's counsel via telephone, and on October 10, 2017, Plaintiff's counsel confirmed via email that Plaintiff opposes the transfer relief sought in this motion.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue