*Exhibit 10*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC. | |
| Plaintiff, | |
| v. | Case No. 2:23-cv-00587-JRG |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

# **TABLE OF CONTENTS**

Introduction ........................................................................................................................ 1

Argument .......................................................................................................................... 1

I. The Court's authority to administer equitable relief comes from Congress, and Congress has instructed the courts to apply their equitable powers according to traditional equitable principles. ............................................................................ 1

II. Consistent with the Congressional grant, courts must exercise their powers in equity according to the system of remedies that the English Court of Chancery administered in 1789 (unless and until Congress instructs the courts otherwise). ........... 2

III. Post-*eBay*, injunctive relief is still ordinary relief in patent-infringement cases. ............ 3

IV. *eBay*'s four factors must be understood and applied according to their corresponding traditional principles of equity. ......................................................................... 5

V. Federal courts cannot discriminate against nonuser patent owners. ................................ 7

VI. In *eBay*, the Federal Circuit was reversed for short-circuiting the traditional rules of equity into a single "categorical" rule. ....................................................................... 8

VII. *eBay* did not abolish the continuing-violations doctrine, nor does it prohibit courts from concluding that certain categories of torts are irreparable harm as a traditional principle of equity. ............................................................................................ 9

VIII. The Federal Circuit's post-*eBay* cases do not preclude applying traditional equitable principles to grant permanent injunctive relief. ........................................... 11

IX. The Court should permanently enjoin Samsung from continuing to infringe Collision's '492 patent. ........................................................................................ 14

    A. Factors 1 and 2: irreparable harm and inadequate remedy at law .................. 14

    B. Factor 3: the balance of hardships ............................................................... 18

    C. Factor 4: public interest ............................................................................. 19

Conclusion ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*
  694 F.3d 1312 (Fed. Cir. 2012) .................................................................... 14

*Allington & Curtis Mfg. Co. v. Booth*
  78 F. 878 (2d Cir. 1897) ............................................................................. 10

*Apple, Inc. v. Samsung Elecs. Co.*
  678 F.3d 1314 (Fed. Cir. 2012) ............................................................... 11, 12

*Atlas Life Ins. Co. v. W. I. Southern, Inc.*
  306 U.S. 563 (1939) ................................................................................ 2, 3

*Boyle v. Zacharie & Turner*
  31 U.S. 648 (1832) ..................................................................................... 2

*Broadcom Corp. v. Emulex Corp.*
  732 F.3d 1325 (Fed. Cir. 2013) ............................................................... 16, 18

*Broadcom Corp. v. Qualcomm Inc.*
  543 F.3d 683 (Fed. Cir. 2008) ..................................................................... 18

*Cary v. Faden*
  5 Ves. Jr. 24 (Ch. 1799) .............................................................................. 7

*City of Walla Walla v. Walla Walla Water Co.*
  172 U.S. 1 (1898) ...................................................................................... 10

*Clark v. Wooster*
  119 U.S. 322 (1886) .................................................................................... 9

*Continental Paper Bag Co. v. E. Paper Bag Co.*
  210 U.S. 405 (1908) ............................................................................. 7, 8, 9

*Donaldson v. Becket*
  (H.L. 1774) ......................................................................................... 6, 13

*Donovan v. Pennsylvania Co.*
  199 U.S. 279 (1905) ................................................................................... 10

*eBay Inc. v. MercExchange, L. L. C.*

547 U.S. 388 (2006) ............................................................................................ passim

*Fontain v. Ravenel*
58 U.S. 369 (1855) ...................................................................................................... 2

*Guaranty Tr. Co. v. York*
326 U.S. 99 (1945) ...................................................................................................... 2

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*
527 U.S. 308 (1999) ........................................................................................... 2, 4, 13

*Hecht Co. v. Bowles*
321 U.S. 321 (1944) .................................................................................................... 1

*Horton v. Maltby*
LI Misc MS 112 (Ch. 1783) .................................................................................. 6, 13

*Humble Oil & Refining Co. v. Sun Oil Co.*
191 F.2d 705 (5th Cir. 1951) ...................................................................................... 3

*Jesus Coll. v. Bloom*
Amb. 54 (Ch. 1745) .................................................................................................. 12

*Liardet v. Johnson*
(Ch. 1777) .................................................................................................................. 6

*Liardet v. Johnson*
(Ch. 1780) ......................................................................................................... 4, 6, 18

*Mahmoud v. Taylor*
606 U.S. 522 (2025) ...............................................................................................4, 11

*Maryland v. King*
567 U.S. 1301 (2012) ...............................................................................................11

*Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*
831 F. Supp. 1354 (N.D. Ill. 1993) .......................................................................... 19

*Matthews v. Rodgers*
284 U.S. 521 (1932) .................................................................................................... 2

*McConihay v. Wright*
121 U.S. 201 (1887) .................................................................................................... 3

*Payne v. Hook*
74 U.S. 425 (1869) ........................................................................................... 2

*Radian Memory Sys. LLC v. Samsung Elecs. Co.*
No. 2:24-cv-01073, Dkt. 52 (E.D. Tex. June 24, 2025) ........................................ 19

*Robert Bosch LLC v. Pylon Mfg. Corp.*
659 F.3d 1142 (Fed. Cir. 2011) ..................................................................... 12, 13

*Robinson v. Campbell*
16 U.S. 212 (1818) ........................................................................................... 2

*Rojas-Adam Corp. v. Young*
13 F.2d 988 (5th Cir. 1926) ............................................................................... 10

*Roman Cath. Diocese of Brooklyn v. Cuomo*
592 U.S. 14 (2020) ........................................................................................... 11

*Rondeau v. Mosinee Paper Corp.*
422 U.S. 49 (1975) ........................................................................................... 10

*Root v. Railway Co.*
105 U.S. 189 (1882) .......................................................................................... 1

*Sprague v. Tictonic Nat'l Bank*
307 U.S. 161 (1939) ........................................................................................... 2

*Stationers v. Carnan*
(Ch. 1774) ........................................................................................................ 6

*Stearns-Roger Mfg. Co. v. Brown*
114 F. 939 (8th Cir. 1902) ................................................................................. 10

*Texas v. U.S. Dept. of Homeland Security*
123 F.4th 186 (5th Cir. 2024) ............................................................................ 10

*Trump v. CASA, Inc.*
606 U.S. 831 (2025) .................................................................................. passim

*United States v. W.T. Grant Co.*
345 U.S. 629 (1953) .......................................................................................... 10

*Univs. of Oxford & Cambridge v. Richardson*
6 Ves. Jr. 689 (Ch. 1802) .............................................................................. 6, 13

*VidStream LLC v. Twitter, Inc.*
  No. 2024-2265, 2024 WL 4820802 (Fed. Cir. Nov. 19, 2024) ................................. 14

*Walker v. Congreve*
  29 Reper. of Arts 311 (Ch. 1816) ........................................................................... 6

*Waterman v. Canal-Louisiana Bank & Tr. Co.*
  215 U.S. 33 (1909) ................................................................................................. 2

*Windsurfing Int'l Inc. v. AMF, Inc.*
  782 F.2d 995 (Fed. Cir. 1986) ................................................................................ 18

**Statutes**

35 U.S.C. § 283 ............................................................................................................ 1

Judiciary Act of 1789, 1 Stat. 73 ................................................................... 1, 2, 3, 5, 9

Patent Act of 1819, 3 Stat. 481 .................................................................................. 1

**Other Authorities**

1 C.L. Bates
  *Federal Equity Procedure* § 10 (1901) ................................................................ 3

1 C.L. Bates
  *Federal Equity Procedure* § 526 (1901) .............................................................. 3

1 Justice Story & A.E. Randall
  *Commentaries on Equity Jurisprudence* §§ 930–933 (3d ed. 1920) ................... 5, 20

1 Roger Foster
  *A Treatise on Federal Practice Civil and Criminal* § 81 (6th ed. 1920) .................. 3

13 P. Edmunds et al.
  *Cyclopedia of Federal Procedure* § 6537 (2d ed. 1944) ........................................ 3

17 *The Parliamentary History of England from the Earliest Period to the Year 1803*
  (William Cobbett ed., London, 1813) ...................................................................... 6

3 William C. Robinson
  *The Law of Patents* § 1086 (1890) ........................................................................ 3

4 J. N. Pomeroy
  *Equity Jurisprudence* §§ 1347, 1352 (3d ed. 1905) ............................................. 5

Armistead M. Dobie
*Handbook of Federal Jurisdiction and Procedure* § 170 (1928) ................................. 3

Bryan A. Garner *et al.*
*The Law of Judicial Precedent* (Thomson Reuters 2016) ............................................ 3

Douglas Laycock
*The Death of the Irreparable Injury Rule* (Oxford University Press 1991) ............................. 16

Guido Calabresi & A. Douglas Melamed
*Property Rules, Liability Rules, and Inalienability: One View of the Cathedral*
85 Harv. L. Rev. 1089 (1972) .................................................................... 4, 15

H. T. Gómez-Arostegui & S. Bottomley
*The Traditional Burdens for Final Injunctions in Patent Cases c.1789 and*
*Some Modern Implications*, 71 Case W. Res. L. Rev. 403 (2020) ................................... passim

H. T. Gómez-Arostegui & S. Bottomley
*Patent-Infringement Suits and the Right to a Jury Trial,* 72 Am. U. L. Rev. 1293 (2023) ......... 4

Kristen Jakobsen Osenga
*"Efficient" Infringement and Other Lies,* 52 Seton Hall L. Rev. 1085 (2022) ........................ 19

Ryan T. Holte
*Clarity in Remedies for Patent Cases*, 26 Geo. Mason L. Rev. 127 (2018) .............................. 4

S. Bottomley
*The British Patent System During the Industrial Revolution*, 1700–1852 (2014) ..................... 7

W.S. Simkins & Alfred J. Schweppe
*Simkins Federal Practice* § 371 (1934) ............................................................ 3

Wesley Hohfeld
*Fundamental Legal Conceptions as Applied in Judicial Reasoning*
26 Yale L.J. 710 (1917) .......................................................................... 8

## Introduction

Collision seeks a permanent injunction prohibiting Samsung from further infringing U.S. Patent No. 7,593,492—the only patent with term remaining that Samsung's concealed, willful infringement has not already destroyed.

## Argument

**I.      The Court's authority to administer equitable relief comes from Congress, and Congress has instructed the courts to apply their equitable powers according to traditional equitable principles.**

In patent-infringement cases, 35 U.S.C. § 283 authorizes the courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent[.]"  Congress gave the courts equitable jurisdiction to apply the traditional principles of equity to grant injunctions in patent infringement cases.  Judiciary Act of 1789, ch. 20, 1 Stat. 73 (diversity patent suits); Act of Feb. 15, 1819, 3 Stat. 481, 481–82 (extending to non-diversity patent suits); *Root v. Railway Co.*, 105 U.S. 189, 191–93 (1882) (explaining that the act of 1819 merely extended jurisdiction to non-diverse parties).  The statutory language of the patent laws has persisted with no material changes in all the patent statutes enacted through to the current 35 U.S.C. § 283.  As such, there has been no "drastic departure from the traditions of equity practice."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  Federal courts' authority to exercise equitable jurisdiction is derived from Congress's authority, and the courts must therefore exercise Congress's prerogative.  To summarize: since the Founding, Congress has consistently and repeatedly instructed federal courts to grant and deny injunctions in patent-infringement cases according to the traditional principles of equity.

## II. Consistent with the Congressional grant, courts must exercise their powers in equity according to the system of remedies that the English Court of Chancery administered in 1789 (unless and until Congress instructs the courts otherwise).

The federal courts' equitable jurisdiction and authority is derived from the Judiciary Act of 1789, which is in force "still today" and therefore requires courts to apply the substantive principles of the system of judicial remedies that the English Court of Chancery administered in 1789, except as Congress has subsequently altered or augmented those traditional principles. *Trump v. CASA, Inc.*, 606 U.S. 831, 841, 856 (2025) (citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999); *Payne v. Hook*, 74 U.S. 425, 430 (1869) ("The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses")).[1] Thus, absent a congressional act, the "substantive pre-requisites for obtaining an equitable remedy as well as the general availability of injunctive relief" have not changed since 1789. *Grupo Mexicano*, 527 U.S. at 318–19; *see also id.* at 318 ("[T]he equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England [in 1789.]").  Adherence to traditional equity is essential: "a judge's oath to follow the law" requires "[o]bserving. . . the boundaries of the Judiciary Act of 1789." *Trump v. CASA*, 606 U.S. at 858.

The substantive principles of 18th-century Chancery control how federal courts must exercise their equitable jurisdiction today.  "After the founding, the states passed 'reception statutes' to adopt English common law as judicial precedent."  Bryan A. Garner *et al.*, *The Law*

---

[1] *Accord Guaranty Tr. Co. v. York*, 326 U.S. 99, 105 (1945); *Sprague v. Tictonic Nat'l Bank*, 307 U.S. 161, 164–65 (1939); *Atlas Life Ins. Co. v. W. I. Southern, Inc.*, 306 U.S. 563, 568 (1939); *Boyle v. Zacharie & Turner*, 31 U.S. 648, 658 (1832) ("[T]he settled doctrine of this court is, that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity in the parent country"); *Matthews v. Rodgers*, 284 U.S. 521, 529 (1932); *Waterman v. Canal-Louisiana Bank & Tr. Co.*, 215 U.S. 33, 43 (1909); *Fontain v. Ravenel*, 58 U.S. 369, 384 (1855); *Robinson v. Campbell*, 16 U.S. 212, 222–23 (1818).

*of Judicial Precedent* 738 (Thomson Reuters 2016). This is true for equity as well. And as the Supreme Court has explained, the "body of doctrine" adopted by Congress in 1789 must be used to "guide [the court's] decisions." *Atlas Life*, 306 U.S. at 568. The Court has likewise held that whether there is an "adequate remedy at law" for a particular wrong must be assessed against the legal remedies that "existed [for the wrong] when the Judiciary Act of 1789 was adopted," except insofar as Congress has "subsequently changed" the legal remedies. *McConihay v. Wright*, 121 U.S. 201, 206 (1887). Although the Federal Circuit has not discussed this ruling (nor others directing courts to apply traditional 18th-century equitable principles), the Fifth Circuit has, ruling that "[w]hether a plaintiff has a plain, adequate, and complete, remedy at law depends not upon the law at the time the suit is brought, but upon what it was when the Constitution of the United States drew the line of demarcation between legal and equitable jurisdiction." *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705, 710–11 (5th Cir. 1951).[2]

## III. Post-*eBay*, injunctive relief is still ordinary relief in patent-infringement cases.

Consistent with the Supreme Court's other decisions regarding federal equity jurisdiction and federal equitable authorities, *eBay* requires courts to apply—not depart from—the traditional principles of equity in patent-infringement cases:

> We hold only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity[.]

---

[2] *See also* 13 P. Edmunds et al., *Cyclopedia of Federal Procedure* § 6537, at 88 (2d ed. 1944) ("Where, under the English Chancery system, relief by injunction can be given, the same or similar relief may be given by a federal court [today] . . . ."); *accord* 3 *id.* § 857, at 666–67; W.S. Simkins & Alfred J. Schweppe, *Simkins Federal Practice* § 371, at 267–68 (1934); Armistead M. Dobie, *Handbook of Federal Jurisdiction and Procedure* § 170, at 659–62 (1928); 1 Roger Foster, *A Treatise on Federal Practice Civil and Criminal* § 81, at 564–65 (6th ed. 1920); 1 C.L. Bates, *Federal Equity Procedure* § 10, at 12, § 526, at 540 (1901); 3 William C. Robinson, *The Law of Patents* § 1086, at 397 n.1 (1890).

3

*eBay*, 547 U.S. at 394. The question of whether injunctive relief is ordinary relief in patent-infringement cases post-*eBay* depends on whether it was ordinary in the English Court of Chancery in 1789. *See Trump v. CASA*, 606 U.S. at 841–42.[3] And in examining that question, *Trump v. CASA*, *Grupo Mexicano*, and *eBay* all require the federal courts to apply the substantive principles used by the Chancery in the 18th century. *See Grupo Mexicano*, 527 U.S. at 318–19 ("[S]ubstantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief . . . depend on traditional principles of equity jurisdiction.").

Those principles provide a clear answer here. In the 18th century, patent infringement was one of a limited number of torts (some others being cases of waste, ongoing trespass, and continuing nuisance) for which Chancery gave injunctive relief as ordinary relief. "The ordinary relief in Case of Rights upon Patents [is] [an] Injunction & an Account." *Liardet v. Johnson* (Ch. 1780), *as printed in* H. Tomás Gómez-Arostegui & Sean Bottomley, *Patent-Infringement Suits and the Right to a Jury Trial*, 72 Am. U. L. Rev. 1293, 1343 (2023); *see also, e.g.*, *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring, joined by Scalia J. and Ginsburg J.) ("From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the

---

[3] After reviewing a decade of academic reaction to *eBay*, then-professor, now-Judge Ryan Holte astutely summarized that the crux of the disagreement between the competing interpretations of *eBay* was whether "property rule" or "liability rule" applies to patent rights. Ryan T. Holte, *Clarity in Remedies for Patent Cases*, 26 Geo. Mason L. Rev. 127, 128 (2018). The "property rule" vs. "liability rule" framework relates to the observation in *eBay* that "the creation of a right is distinct from the provision of remedies for violations of that right." *eBay*, 547 U.S. at 392. When the property rule applies, the right is ordinarily enforced (via injunction or specific performance) by the court system. *See* Calabresi & Melamed, *Property Rules, Liability Rules, and Inalienability* at 1092. For example, the Supreme Court has recognized that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025). In contrast, when the liability rule applies, the right is allowed to be violated, and the plaintiff is awarded substitutionary relief (e.g., money damages for breach of contract). The view that the liability rule governs injunctions in patent cases post-*eBay* is incorrect.

vast majority of patent cases.").  Nor is that surprising "given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes—a difficulty that often implicates the first two factors of the traditional four-factor test."  *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring).

Later materials on equity are accord with the 18th-century decisions from the time of the Founding and the Judiciary Act of 1789.  For instance, Justice Joseph Story's and John Norton Pomeroy's classic treatises on equity confirm that equity continued to grant injunctive relief as ordinary relief in patent-infringement cases well after 1789 in accordance with the traditional principles of equity.  *See* 1 J. Story & A.E. Randall, Commentaries on Equity Jurisprudence § 930–933 (3d ed. 1920) (attached as Ex. 1 to Curry Decl.); 4 John Norton Pomeroy, Equity Jurisprudence §§ 1347, 1352 (3d ed. 1905) (attached as Ex. 2 to Curry Decl.).  These materials confirm that under traditional principles of equity, injunctive relief should be ordinary relief in patent-infringement cases in U.S. federal courts today.  "Ordinary" does not mean automatic. Injunctions could still be denied for public interest reasons or because of an equitable defense such as unclean hands.  But any assertion that injunctive relief should not ordinarily be granted in patent-infringement cases would read *eBay* as conflicting with the traditional principles of equity and with itself.

## IV.  *eBay*'s four factors must be understood and applied according to their corresponding traditional principles of equity.

To obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay*, 547 U.S. at 391.

Understanding these factors according to how they were understood in 1789 confirms that the four-factor equitable test will typically warrant a permanent injunction in patent infringement cases. As to the first factor, it is a traditional principle of equity that ongoing patent infringement is irreparable harm. *Horton v. Maltby*, LI Misc MS 112, p. 10 (Ch. 1783) (attached as Ex. 3 to Curry Decl.). As to the second, it is a traditional principle of equity that the remedies at law are inadequate in patent- and copyright-infringement cases. *Donaldson v. Becket* (H.L. 1774), *printed in* 17 The Parliamentary History of England from the Earliest Period to the Year 1803, at 953, 989 (William Cobbett ed., London, 1813); *Univs. of Oxford & Cambridge v. Richardson*, 6 Ves. Jr. 689, 707 (Ch. 1802). As to the third, if there were doubts before trial about the merits of a plaintiff's case and concerns over the defendant's undue hardship, the traditional equity practice was to deny a *preliminary* injunction and order the defendant to keep an account of its profits until liability was decided at trial. H. Tomás Gómez-Arostegui & Sean Bottomley, *The Traditional Burdens for Final Injunctions in Patent Cases c.1789 and Some Modern Implications*, 71 Case W. Res. L. Rev. 403, 420 n.70 (2020) (citing *Stationers v. Carnan* (Ch. 1774); *Liardet v. Johnson* (Ch. 1777)). After trial and a verdict that the patent is valid and infringed, however, a defendant's hardship in complying with a *permanent* injunction was immaterial: "[As to the argument] that it will be a hardship to tie the Defendant up for ever from making this Cement[,] . . . if the Plaintiffs have established their Right at Law, they are intitled to tie him up. This is not different from other Injunctions in like Cases." *Liardet v. Johnson* (Ch. 1780). Finally, as to the fourth factor, equity traditionally viewed public-interest considerations as an independent ground for granting or denying an injunction. *Univs. of Oxford & Cambridge v. Richardson*, 6 Ves. Jr. 689 (Ch. 1802); *Walker v. Congreve*, 29 Reper. of Arts 311, 377 (Ch. 1816). In addition, equity might refuse to grant injunctive relief where the defendant

successfully mounted an equitable defense (e.g., laches or unclean hands).  *See, e.g., Cary v. Faden*, 5 Ves. Jr. 24, 25–26 (Ch. 1799).

## V.    Federal courts cannot discriminate against nonuser patent owners.

Traditional equitable practice also confirms that all patent owners, including non-practicing entities, are equally entitled to permanent injunctive relief.  Nothing in 18th-century practice confined equitable relief to patentees that were practicing, to patentees that refused to license their patents, or to patentees that suffered consequential harm from the infringement.  In fact, the historical record disproves that view.  Chancery regularly protected the patent rights of Matthew Boulton and James Watt in the late 18th century, notwithstanding the fact that Messrs. Boulton and Watt operated their business in large part by offering licenses to all comers who wished to implement Watt's separate-condenser improvement to the steam engine.  *See* S. Bottomley, *The British Patent System During the Industrial Revolution*, 1700–1852, at 117 (2014) (mentioning fifteen injunctions); *id.* at 251–55 (describing their licensing business).  Even in that context, Chancery enjoined ongoing infringement to stop the ongoing violation of the property right.

The law thus simply does not permit discrimination against non-practicing patent owners.  That was reaffirmed in *eBay* itself, where the Supreme Court criticized the district court for denying injunctive relief to the plaintiff based on the plaintiff's lack of commercial activity; as the Court explained, that approach deviated from traditional principles of equity.  *See* 547 U.S. at 393.  As detailed above, patent owners were granted injunctive relief upon showing the likelihood of ongoing infringement under the traditional principles of equity, and using or practicing the patent was not a prerequisite for injunctive relief.

In fact, the Supreme Court previously confirmed the same point more than a century ago in *Continental Paper Bag*.  In that case, the parties agreed that injunctive relief could not be

denied to a patent owner merely because of nonuse.  The point was too settled to be disputed.

Instead, the defendant argued for an exception—that denial of injunctive relief might be justified

where a patent owner's nonuse was unreasonable.  *See Cont'l Paper Bag Co. v. E. Paper Bag*

*Co.*, 210 U.S. 405, 422 (1908) ("It will be observed that it is not urged that nonuse merely of the

patent takes jurisdiction from equity, but an unreasonable nonuse.").  Distinguishing between a

patent owner's right to exclude others and its own privilege to use, the Court rejected the

proposed exception to the rule: "[I]t is the privilege of any owner of property to use or not use it,

without question of motive."  *Continental Paper Bag*, 210 U.S. at 429; *accord* Wesley Hohfeld,

*Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 26 Yale L.J. 710, 747 (1917)

(explaining that a property owner's privileges "are strikingly independent" of the owner's rights

against others).  No form of discrimination against non-practicing patent owners is permitted by

the traditional principles of equity and Supreme Court precedent.  The rights conferred by

foreign patents given by foreign countries are sometimes affected by non-use.  *Continental*

*Paper Bag*, 210 U.S. at 429–30.  But from the beginning, Congress has chosen a different policy

for the United States: The right granted by a U.S. patent to exclude others is unaffected by non-

use.  *Id.*

## VI.    In *eBay*, the Federal Circuit was reversed for short-circuiting the traditional rules of equity into a single "categorical" rule.

The Federal Circuit was not reversed in *eBay* because it used rules.  Rather, the Federal

Circuit was reversed because it short-circuited the entirety of equity's rules into a single

"categorical" rule—namely, a rule that injunctions should be granted in patent-infringement

cases regardless of the likelihood that the defendant's infringement would continue, irrespective

of the public interest (beyond the "exceptional" and narrow instance where the injunction would

compromise public health), and also irrespective of the rules for possible equitable defenses.  *See*

*eBay*, 547 U.S. at 393–94. Rejecting that categorical rule, the Court in *eBay* held that "traditional equitable considerations" apply to final injunctions in patent cases, just as they do in other cases, and the Court instructed lower courts to apply traditional principles of equity. *eBay*, 547 U.S. at 394. To comply with *eBay*, this Court must accordingly apply *eBay*'s four-factor test according to the traditional principles of equity, as identified above.

## VII. *eBay* did not abolish the continuing-violations doctrine, nor does it prohibit courts from concluding that certain categories of torts are irreparable harm as a traditional principle of equity.

At the time of the Founding and the Judiciary Act of 1789, it was a settled equitable principle that legal damages were inadequate in patent-infringement cases, as well as in other types of cases, where a defendant was likely to repeat a wrong if not enjoined. This is known as the continuing-violations doctrine (also called the ongoing-violations doctrine or the multiplicity-of-suits doctrine). Because common-law courts could not award post-judgment damages for patent infringement, a plaintiff who succeeded in an action at law would nevertheless have to file additional actions against the same defendant as the infringement continued. It was that prospect—having to file serial suits, in the absence of an injunction—that traditionally rendered the legal remedy inadequate in patent-infringement cases. *See* Gómez-Arostegui & Bottomley, *Traditional Burdens* at 422.

The Supreme Court has embraced the continuing-violations doctrine in numerous cases. In *Continental Paper Bag*, for instance, the Court observed that "it hardly need[ed] to be pointed out that the [patent] right can only retain its attribute of exclusiveness by a prevention of its violation" and that "trespasses and continuing wrongs and the vexation of many actions" were "well-recognized grounds of equity jurisdiction" in patent cases. *Cont'l Paper Bag Co.*, 210 U.S. at 430; *accord Clark v. Wooster*, 119 U.S. 322, 325–26 (1886) (noting that complaints alleging "continued infringement" sufficed to show that a damages remedy was inadequate, and

thereby invoke equitable jurisdiction, but if a patent expired after the suit was filed, making future violations impossible, some other form of future harm must be shown to support an injunction). The continuing-violations doctrine has also been applied across many other different types of cases, with the Supreme Court deeming damages inadequate in cases of continuing trespasses generally. *E.g.*, *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59 (1975); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Donovan v. Pennsylvania Co.*, 199 U.S. 279, 304–05 (1905); *City of Walla Walla v. Walla Walla Water Co.*, 172 U.S. 1, 12 (1898). And just last year, the Fifth Circuit applied this same trans-substantive principle—that continuing wrongs render damages inadequate as a matter of law—to reverse the denial of a preliminary injunction in a case involving trespass to chattels. *Texas v. U.S. Dept. of Homeland Security*, 123 F.4th 186, 212 (5th Cir. 2024) ("When a trespass is continuous such that stopping it would require a multiplicity of suits, an injunction is justified because monetary relief is inadequate."); *accord Rojas-Adam Corp. v. Young*, 13 F.2d 988, 989–90 (5th Cir. 1926) (continuous trespass to land); *see also Stearns-Roger Mfg. Co. v. Brown*, 114 F. 939, 945 (8th Cir. 1902) (affirming a preliminary injunction in a patent case due to continuing trespass); *Allington & Curtis Mfg. Co. v. Booth*, 78 F. 878, 879 (2d Cir. 1897) (affirming a preliminary injunction because "infringement of a patent is a constantly recurring grievance").

To interpret *eBay* as abolishing the continuing-violations doctrine would read *eBay* as conflicting with the traditional principles of equity and itself. The *eBay* Court did not question the continuing-violations doctrine, and nothing in *eBay* prohibits courts from concluding that certain categories of torts are irreparable harm as a matter of law, as the Supreme Court itself has concluded in other contexts. *See Trump v. CASA*, 606 U.S. at 860–62 (Executive Branch is always irreparably harmed when an injunction exceeds a federal court's equitable authority);

*Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (*per curiam*) (same); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (stay) (government is always irreparably harmed when a court enjoins enforcement of a statute); *see also eBay*, 547 U.S. at 395 (Roberts, C.J., concurring) (recognizing that courts have granted injunctions upon a finding of infringement "in the vast majority of patent cases," and that ongoing infringement "often implicates the first two factors of the traditional four-factor test").

## VIII. The Federal Circuit's post-*eBay* cases do not preclude applying traditional equitable principles to grant permanent injunctive relief.

The Federal Circuit has decided a number of appeals concerning injunctive relief in patent-infringement cases since *eBay* was decided in 2006. But the Federal Circuit has not yet discerned the traditional principles of equity for injunctive relief in patent infringement cases. That is largely the fault of the parties that have litigated these issues before the Federal Circuit, who have often attempted to establish irreparable harm in non-traditional ways rather than relying on traditional equitable principles as they existed in 1789. For example, in *Apple, Inc. v. Samsung Elecs. Co.*, rather than pointing to Samsung's ongoing infringement, Apple attempted to establish irreparable harm by showing that the infringement caused Apple consequential harm in the form of competitive injury. 678 F.3d 1314, 1324 (Fed. Cir. 2012). The Federal Circuit deferred to the district court's finding that Apple had not established irreparable harm based on its showing of competitive injury, *see id.* at 1325, but did not address the more basic question of whether traditional equity practice would have found irreparable harm from the infringer's continuing trespass on the patentee's rights.

11

*Apple v. Samsung* is not an outlier in this regard. In another frequently cited case, *Robert Bosch LLC v. Pylon Mfg. Corp.*, the Federal Circuit "jettisoned [its pre-*eBay*] presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief," without discerning the traditional principles of equity. 659 F.3d 1142, 1149 (Fed. Cir. 2011). This was not a point of issue between the parties. The plaintiff did not rely on a presumption of irreparable harm. The plaintiff did not defend the propriety of the presumption. And the defendant assumed that the presumption had already been discarded. *See* Non-Confidential Brief of Defendant-Appellee Pylon Manufacturing Corp. at 46 n.11, *Bosch*, 659 F.3d 1142 (No. 2011-1096). It is not at all clear that *Bosch* can be squared with traditional 18th-century equity practice. Chancery would presume the defendant would continue to infringe based on the fact that the defendant had already infringed. *See Jesus Coll. v. Bloom*, Amb. 54, 55 (Ch. 1745) (Hardwicke, L.C.), *discussed in* Gómez-Arostegui & Bottomley, *Traditional Burdens* at 426 (Chancery would presume the defendant would continue to infringe based on the fact that the defendant had already infringed). In other words, the traditional presumption was not a presumption of irreparability (since patent and copyright infringement were recognized as irreparable harm as a matter of law) but was rather a presumption of harm—that the acts constituting infringement would continue absent an injunction. Withholding this presumption from patent owners today would be an ahistorical approach to equity. In any event, the likelihood of a defendant's future infringement can be shown factually—without a presumption.

More to the point, the Federal Circuit's post-*eBay* cases cannot survive *Trump v. CASA* because they uniformly overlook traditional equity practice as it existed in 1789. The Supreme Court has left no doubt that the "the governing historical approach" is the correct approach to federal equity. *See Trump v. CASA*, 606 U.S. at 847 n. 9. For example, if *Apple v. Samsung* or

*Bosch v. Pylon* were interpreted to stand for the proposition that ongoing patent infringement, itself, cannot qualify as the pertinent harm for showing irreparable harm, that would directly run afoul of the traditional principles of equity and consequently *Grupo Mexicano* and *Trump v. CASA*. In the 1783 patent-infringement case of *Horton v. Maltby*, for instance, the Chancery drew a parallel to copyright infringement and noted that, absent injunctive relief, the accused infringer "may in the mean time print of a number of copies to the irreparable injury of the Owner." *Horton*, LI Misc MS 112, p. 10. It is a traditional principle of equity that ongoing patent infringement is irreparable harm, and requiring a plaintiff to show something more than ongoing infringement to establish irreparable harm would be an ahistorical approach to equity.

The analysis for the adequacy of the remedies at law is similar. In the 1774 copyright-infringement case *Donaldson v. Becket*, Chief Justice De Grey noted that it was a settled principle of equity that the remedies at law were inadequate in copyright-infringement cases, noting that an accused infringer has no "objection that the party applying for it has a remedy at law" in opposing a motion for preliminary injunction. *Donaldson v. Becket* (H.L. 1774). In 1802, Lord Chancellor Eldon reiterated this view for patent-infringement cases: "[T]his Court has lately said, [in cases involving invention patents, that] possession [of a patent] under a colour of title is ground enough to enjoin, and to continue the injunction, till it shall be proved at law" (i.e., in the Courts of King's Bench or the Court of Common Pleas). *Univs. of Oxford & Cambridge*, 6 Ves. Jr. at 707. And legal historians who have studied hundreds of intellectual-property cases in Chancery between 1660 and 1800 "have never encountered a case that denied a final injunction on the ground that the successful patentee had an adequate remedy at law." Gómez-Arostegui & Bottomley, *Traditional Burdens* at 414, 429. Put simply, it is a traditional principle of equity that the remedies at law are inadequate in patent- and copyright-infringement

cases, and deviation from this principle would be an ahistorical approach to equity. To the extent the Federal Circuit's decision in *ActiveVideo v. Verizon* could be read to suggest that money damages will typically provide an adequate remedy at law for patent infringement, *see ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.* 694 F.3d 1312, 1338 (Fed. Cir. 2012), that interpretation does not survive scrutiny under the governing historical approach to federal equity.

The only case where the Federal Circuit was presented with 18th-century Chancery authority on the traditional principles of equity was in *VidStream v. Twitter*—in a short, per curiam order designated as nonprecedential. There, the Federal Circuit said that an argument based on the "principles administered by the Court of Chancery at the founding . . . clearly runs afoul of" *eBay* "which rejected such a 'broad' and 'categorial rule' in deciding motions for injunctive relief[.]" *See VidStream LLC v. Twitter, Inc.*, No. 2024-2265, 2024 WL 4820802, at *1 (Fed. Cir. Nov. 19, 2024). Since the order is designated as nonprecedential, it has no precedential force. And further context explains why it should have no persuasive value: *VidStream* was decided months before *Trump v. CASA*, when it was perhaps less clear that the historical approach to federal equity is the governing approach. *Trump v. CASA* accordingly supersedes the Federal Circuit's nonprecedential decision in *VidStream*. And to the extent that any of the Federal Circuit's other post-*eBay* cases on injunctive relief or irreparable harm contradict the substantive principles of 18th-century Chancery practice, they cannot continue to have precedential force.

## IX. The Court should permanently enjoin Samsung from continuing to infringe Collision's '492 patent.

Both traditional 18th-century equitable practice and the traditional four-factor test for injunctive relief confirm that Samsung should be enjoined from further infringement here.

### A. Factors 1 and 2: irreparable harm and inadequate remedy at law

Under any approach, the first and second factors in the traditional four-factor test are readily satisfied here, as Collision is suffering ongoing irreparable harm from Samsung's continued infringement and has no adequate remedy at law.

First, traditional 18th-century equity practice makes clear that ongoing infringement is irreparable harm and that remedies at law are inadequate to address patent infringement. *See supra* § IV. Under traditional practice, "two main rebuttals" are available to Samsung to show that its ongoing infringement is not irreparable: (i) "demonstrate to the court's satisfaction that it is unlikely to infringe again" or (2) "demonstrate that a lump-sum trial award fully compensated the patentee for all future infringements[.]" Gómez-Arostegui & Bottomley, *Traditional Burdens* at 422 at 440. But in this case, the jury elected "running royalty" instead of "lump sum" on the verdict form, (Dkt. No. 312 at Question 4), and there is no indication that Samsung will stop its infringement absent an injunction. Accordingly, the first two *eBay* factors favor granting injunctive relief under traditional equity practice.

Even setting aside the past three centuries of traditional equity practice, it is clear that Collision will suffer irreparable harm from Samsung's ongoing infringement and that monetary damages are insufficient to remedy that harm. If Samsung had honored Collision's patent rights, it would have had to secure a license from Collision in a voluntary transaction where Collision would have veto power in the negotiations if Samsung did not offer enough. *See* Guido Calabresi & A. Douglas Melamed, *Property Rules, Liability Rules, and Inalienability: One View of the Cathedral*, 85 Harv. L. Rev. 1089, 1092 (1972). But because of Samsung's infringement, Collision has been denied veto-power control of its patented technology, and that harm will continue until it is restored via injunction. That is an irreparable harm that cannot be remedied through legal remedies. *See eBay, Inc.*, 547 U.S. at 395 (Roberts, C.J., concurring); Douglas

Laycock, *The Death of the Irreparable Injury Rule* 37 (Oxford University Press 1991) ("Injury is irreparable if plaintiff cannot use damages to replace the specific thing he has lost.")  Samsung's infringement has irreversibly destroyed the limited term of Collision's patents.  The term that was destroyed by Samsung's ongoing infringement during the pendency of this litigation cannot be restored.  The term of Collision's patents will not be extended by the time it has taken to establish the patents in court.  Collision will not be able to use the money received from satisfaction of judgment to extend the terms of its patents.  Monetary remedies do not and cannot replace the specific thing that Collision has lost to Samsung's infringement.

The Federal Circuit has also recognized that evidence of consequential damages—specifically, competitive injury such as loss of market share—can show irreparable injury.  As explained above, traditional equity practice does not require that showing, and the Federal Circuit's decisions should not be read to make that additional showing mandatory in all cases.  But in this case, Collision can make that additional showing as well, because Samsung's infringement did cause Collision consequential, competitive injury.  Collision's original business plan was to develop receiver algorithms and a software core based on its patented technology, perform simulations of said software to demonstrate the superiority of its algorithms, and then to enter co-development agreements with cellular equipment manufacturers like Samsung, Qualcomm, Nokia, and Ericsson to adapt and incorporate Collision's software into their base station or handset receiver chips. Decl. of J. Fry at ¶¶ 2–4; TT Day 2 at 345:2–25, 348:1–13, 348:25–349:4, 351:23–352:10, 368:4–6.  So while Collision did not produce its own physical product, it participated in a form of "design win" market, in which "the sales are 'design wins,' not a steady flow of discrete product sales[.]"  *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013).  This is a known business model for small, innovative technology

companies, and it depends on ordinary enforcement of patent rights.  Fry Decl. at ¶¶ 5–7; TT Day 2 at 346:20–347:4.

This case exemplifies the need of property rights for technology.  Collision was in a "design wins" competition with Samsung's own in-house team (and other chip manufacturers) to develop cellular receiver software for use in Samsung's cellular products.  Fry Decl. at ¶¶ 8–12. But trusting that its patent rights would be respected by Samsung or enforced by the courts, Collision nevertheless discussed its proprietary techniques and their performance benefits with Samsung extensively—for years—and ran repeated tests at Samsung's request.  *Id.* at ¶ 15; TT Day 2 at 353:4–361:16.  Unfortunately, Samsung chose to willfully infringe rather than do business with Collision.  Dkt. No. 312 (jury verdict).  Worse, Samsung's conduct suggests that efficient infringement was its plan from the outset.  The record suggests that Samsung dangled the prospect of a lucrative business arrangement to deter Collision from taking legal action against its infringement (*see* TT Day 3 at 810:5–16; PX-33), while planning its unilateral development of Collision's technology behind the scenes (*see* PX-17, PX-19, PX-20, PX-22). Fry Decl. at ¶¶ 7, 15.  Samsung deliberately took Collision's technology, treated its patent rights as nothing more than an ordinary business risk, and stripped Collision of its primary competitive edge in design-wins competitions.  This heavily contributed to Collision's exit from the market altogether.  Fry Decl. at ¶¶ 7, 13–14.  Small technology companies like Collision depend on the exclusionary rights of their patents to compete in design-win markets, because their superior technology will otherwise be taken by large implementors like Samsung, leaving no market at all.

Samsung's infringement has thus caused Collision competitive injury, denying Collision the design-win victory that the jury's verdict shows Collision rightfully won.  By denying

Collision that design win, Samsung's infringement deprived Collision of the competitive benefits that come from a design win—the lock-in effect, the incumbency effect, and goodwill as the winning supplier. *See Broadcom*, 732 F.3d at 1336. That additional showing confirms that Samsung's infringement has caused Collision irreparable harm. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702 (Fed. Cir. 2008) (affirming a finding of irreparable harm where the district court recognized that, in design-win markets, the "exclusion has a competitive effect on a firm even if it does not have an immediately available product").

**B.     Factor 3: the balance of hardships**

Under traditional equity principles, any hardship to Samsung from complying with a permanent injunction is immaterial: "[As to the argument] that it will be a hardship to tie the Defendant up for ever from making this [infringing product,] . . . if the Plaintiffs have established their Right at Law, they are intitled to tie him up. This is not different from other Injunctions in like Cases." *Liardet v. Johnson* (Ch. 1780). Federal Circuit precedent correctly recognizes this principle. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). Further, the injunction is narrowly tailored to the specific technology found to infringe the '492 patent, and so imposes no cognizable harm on Samsung. *See* Kowalski Decl. at ¶¶ 3–8. And the injunction does not require Samsung to develop new single-user MIMO algorithms; rather, it would only require Samsung to limit its existing single user MIMO algorithms to a non-infringing subset. *Id* at ¶ 7. Further, the injunction's one-month grace period gives Samsung ample time to bring its infringement to an end, since Samsung simply needs to stop importing infringing products into the United States. *Id*. at ¶ 12.

## C.      Factor 4: public interest

An injunction against Samsung would also serve the public interest.  Denying injunctive relief subjects patent owners to perpetual litigation and strains the legal system.  *See* Kristen Jakobsen Osenga, *"Efficient" Infringement and Other Lies*, 52 Seton Hall L. Rev. 1085, 1090–91 (2022).  The reason is straightforward:  Absent injunctive relief, perpetual litigation is more attractive than licensing to accused infringers when the accumulated unpaid licensing fees cost more than litigation.  Granting a permanent injunction in this case would serve the public interest by correcting that dynamic.

As Judge Easterbrook has explained (sitting in district court by designation): "The injunction creates a property right and leads to negotiations between the parties.  A private outcome of these negotiations—whether they end in a license at a particular royalty or in the exclusion of an infringer from the market—is much preferable to a judicial guesstimate about what a royalty should be."  *Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 831 F. Supp. 1354, 1397 (N.D. Ill. 1993).  Not only did Judge Easterbrook recognize that injunctions facilitate out-of-court resolutions; he deemed that outcome to be superior in every case: "The actual market beats judicial attempts to mimic the market every time, making injunctions the normal and preferred remedy."  *Id*.  This more efficient, private market for patented technology cannot exist without regular injunctive relief.    Indeed, as the Department of Justice and the U.S. Patent Office have observed, there are a "large number of reversals based on [allegedly] flawed damages models" in patent-infringement cases.  *See* Statement of Interest of the United States of America at 16, *Radian Memory Sys. LLC v. Samsung Elecs. Co.*, Case No. 2:24-cv-01073, Dkt. 52 (E.D. Tex. June 24, 2025).  That confirms Justice Story's observation more than a century ago: "It is quite plain, that, if no other remedy could be given in cases of

patents and copyrights than an action at law for damages, the inventor or author might be ruined by the necessity of perpetual litigation, without ever being able to have a final establishment of his rights." 1 J. Story & A.E. Randall, Commentaries on Equity Jurisprudence § 931 (3d ed. 1920). Granting a permanent injunction here would serve the public interest by avoiding that problem.

## <u>Conclusion</u>

This Court should grant a permanent injunction and prevent Samsung from wasting what remains of the term for the '492 patent.

DATED: December 10, 2025

Respectfully submitted,

/s/ Austin Curry
Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Christopher S. Stewart
Texas Bar No. 24079399
Email: cstewart@caldwellcc.com
Justin T. Nemunaitis
Texas Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
Aisha M. Haley
Texas Bar No. 24139895
Email: ahaley@caldwellcc.com
John F. Summers
Texas Bar No. 24079417
Email: jsummers@caldwellcc.com
James F. Smith
Texas Bar No. 24129800
Email: jsmith@caldwellcc.com
James Yang (admitted *Pro Hac Vice*)
CA Bar No. 329979
Email: jyang@caldwellcc.com
Alexander J. Gras
Texas Bar No. 24125252
Email: agras@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 888-4848
Facsimile:   (214) 888-4849

Andrea Leigh Fair
Texas Bar No. 24078488
Email: andrea@millerfairhenry.com
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone:  (903) 757-6400
Facsimile:   (903) 757-2323

Paul D. Clement (*admitted pro hac vice*)
VA State Bar No. 37915
Email:  paul.clement@clementmurphy.com
C. Harker Rhodes IV (*admitted pro hac vice*)
VA State Bar No. 99759
Email:  harker.rhodes@clementmurphy.com
Camilo Garcia (*admitted pro hac vice*)
DC Bar No. 90004901
Email:  Camilo.garcia@clementmurphy.com
**CLEMENT & MURPHY, PLLC**
706 Duke Street

Alexandra, VA  22314
Phone:  (202) 742-8900
Facsimile:  (703) 997-6207

**ATTORNEYS FOR PLAINTIFF**
**COLLISION COMMUNICATIONS, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, a true and correct copy of the foregoing

document was filed electronically with the Clerk of Court using the CM/ECF system. As of this

date, all counsel of record have consented to electronic service and are being served with a copy

of this document through the Court's CM/ECF system.


*/s/  Austin Curry*
Austin Curry


## CERTIFICATE OF CONFERENCE

I certify that counsel for Collision met and conferred with counsel for Samsung to discuss

the substantive relief sought in this Motion pursuant to Local Rule CV-7(h).  Counsel for

Samsung indicated that it was opposed to the relief sought in this Motion.


*/s/  Austin Curry*
Austin Curry