# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, ) ) | |
| ) | C.A. No. 6:25-cv-00581-ADA |
| Plaintiff, ) | |
| ) | |
| v. ) | **JURY TRIAL** |
| ) | |
| ONESTA IP, LLC, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF BMW'S
## MOTION FOR TEMPORARY RESTRAINING ORDER AND
## ANTI-SUIT INJUNCTION

**TABLE OF CONTENTS**

I.  Onesta's Unprecedented Suit in Germany Asserting U.S. Patents Threatens the Jurisdiction of U.S. Federal Courts and the American Market. ........................................... 1

II. Any of the *Unterweser* Threats Identified by BMW Suffice to Establish That an ASI Is Warranted, and Onesta's Distinctions Each Fall Short. .......................................... 2

    A.  U.S. Policy Is Harmed by Onesta Asserting U.S. Patents in Munich. ..................... 2

        1.  Onesta ignores Congress's legislative intent regarding U.S. federal courts and the established presumption against extraterritoriality. ............. 2

            a.  The right to a jury trial must be protected for BMW. ...................... 4

            b.  A district court's final judgment is *erga omnes* in practice. ............ 5

    B.  Onesta's Litigation of U.S. Patents in Munich is Vexatious Under *Unterweser*. ................................................................................................................ 5

        1.  Onesta incorrectly claims there is no inequitable hardship. ....................... 5

        2.  The customer-suit exception would have applied if Onesta filed here. ................................................................................................................ 6

        3.  Threat of civil imprisonment suffices for an ASI. ...................................... 6

        4.  The differences in court timing and procedure are vexatious. .................... 7

        5.  Onesta's Munich case is vexatious because it relies on a questionable legal theory to upset centuries of settled practice. .................. 8

        6.  This matter is duplicative of what the ASI would prevent in Munich. ...................................................................................................... 9

    C.  Onesta Offends Other Equitable Principles Under *Unterweser*. ........................... 9

    D.  Comity Favors an ASI Preventing Onesta's Munich Action on U.S. Patents. ................................................................................................................. 10

III. The Court Should Modestly Extend the TRO Until the ASI Decision Is Entered. .......... 10

i

# **TABLE OF AUTHORITIES**[*]

Page(s)

**Federal Cases**

*Alacritech, Inc. v. Intel Corp.*,
 966 F.3d 1367 (Fed. Cir. 2020)...........................................................................................2

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*,
 402 U.S. 313 (1971)............................................................................................................5

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
 157 F.3d 1340 (Fed. Cir. 1998)...........................................................................................9

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
 61 F.3d 696 (9th Cir. 1995) ............................................................................................ 2-4

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*,
 651 F.2d 877 (3d Cir. 1981)................................................................................................5

*Deepsouth Packing Co. v. Laitram Corp.*,
 406 U.S. 518 (1972)............................................................................................................5

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
 66 F.4th 578 (5th Cir. 2023) ........................................................................................... 6-8

*Kaepa, Inc. v. Achilles Corp.*,
 76 F.3d 624 (5th Cir. 1996) ..............................................................................................10

*In re Lockwood*,
 50 F.3d 966 (Fed. Cir. 1995)...............................................................................................4

*MWK Recruiting Inc. v. Jowers*,
 833 F. App'x 560 (5th Cir. 2020) .......................................................................................9

*TC Heartland LLC v. Kraft foods Grp. Brands LLC*,
 137 S. Ct. 1514 (2017)........................................................................................................3

*In re Tech. Licensing Corp.*,
 423 F.3d 1286 (Fed. Cir. 2005)...........................................................................................4

---

[*] All case short forms, textual truncations or abbreviations, and exhibits established in Plaintiff BMW's Motion for *Ex Parte* Temporary Restraining Order and Anti-suit Injunction (Dkt. 7 or "Mot.") persist throughout this BMW Reply.

*Turner Ent. Co. v. Degeto Film GmbH,*
   25 F.3d 1512, 1520 (11th Cir. 1994) .................................................................................8

*In re Unterweser Reederei, GMBH,*
   428 F.2d 888 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971)
   (en banc) ................................................................................................................ *passim*

*Voda v. Cordis Corp.,*
   476 F.3d 887 (Fed. Cir. 2007) ................................................................................... 4, 10

*Warner & Swasey Co. v. Salvagnini Transferica S.p.A.,*
   633 F. Supp. 1209 (W.D.N.Y.), aff'd, 806 F.2d 1045 (Fed. Cir. 1986) .............................2, 8

*Williams v. Norris,*
   25 U.S. (12 Wheat.) 117 (1827) ...................................................................................... 2

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ............................................................................................................8

**Federal Statutes**

19 U.S.C. §1337 ........................................................................................................................2

28 U.S.C. §451 ..........................................................................................................................3

28 U.S.C. §1295 ........................................................................................................................4

28 U.S.C. §1338 .................................................................................................................... 2-3

28 U.S.C. §1400 ........................................................................................................................3

35 U.S.C. §154 ..........................................................................................................................9

35 U.S.C. §286 ..........................................................................................................................9

35 U.S.C. §294 ..........................................................................................................................2

**Rules**

Fed. R. Civ. P. 65 ....................................................................................................................10

**Other Authorities**

2025 EU Justice Scoreboard .....................................................................................................3

**I.     Onesta's Unprecedented Suit in Germany Asserting U.S. Patents Threatens the Jurisdiction of U.S. Federal Courts and the American Market.**

Onesta's arguments are detached from the ASI standard in the Fifth Circuit. Each point in its Opposition (Dkt. 20 ("Opp.")) fails to substantively address the threats to the jurisdiction of the U.S. federal courts posed by Onesta's unprecedented assertion of U.S. patents abroad. If parties are permitted to engage in such extraterritorial forum shopping, litigation of U.S. patents will become a race to the bottom—away from the congressionally mandated order of U.S. courts to a patchwork of nations with fewer protections. *See infra* §II.A & n.2.

Onesta repeatedly argues that preventing European courts from adjudicating infringement of U.S. patents will somehow "hobble its own patents relative to foreign patents," and "greatly devalue U.S. patents on the world stage." Opp. 1-3, 8. Exclusive access to the U.S. market is what makes U.S. patents *valuable*, however, and the consistent application of U.S. law by U.S. federal courts has made them highly appealing to industry for over 200 years. Yet Onesta now seeks U.S. patent monopoly rights in the U.S. market while simultaneously insulating such decisions from U.S. courts—the entities best equipped to assess domestic law and public interest. Mot. 10. Onesta claims that "[i]t does not harm America" for Germany to "regulate the conduct of its own citizens," Opp. 1-2, but it completely ignores that any injunction entered by the Munich court means that "American consumers will either have to pay more or endure fewer choices than if the U.S. patent monopoly did not exist," Mot. 10; *see infra* §II.A.1.a. This Court is empowered in a case of first impression to protect through an ASI its exclusive jurisdiction in this patent infringement dispute, thereby *strengthening* U.S. patents and elevating U.S. courts.

With the ASI briefing now complete, **BMW also requests an extension of the TRO expiring December 30, 2025**, Dkt. 16, to permit the Court time to fully consider this matter and issue an appropriate order. *See infra* §III; Mot. 17-20 & cited materials.

**II.     Any of the *Unterweser* Threats Identified by BMW Suffice to Establish That an ASI Is Warranted, and Onesta's Distinctions Each Fall Short.**

**A.     U.S. Policy Is Harmed by Onesta Asserting U.S. Patents in Munich.**

**1.     Onesta ignores Congress's legislative intent regarding U.S. federal courts and the established presumption against extraterritoriality.**

Onesta sweeps aside centuries of U.S. courts' patent litigation territoriality by suggesting that such matters are simply akin to international arbitration. *See* Opp. 7, 9 n.7. But arbitration is by private agreement, not foreign courts installing contested injunctions based on U.S. patents. No such agreement exists here.[1] Patent arbitration, moreover, proceeds by express congressional sanction. *See* 35 U.S.C. §294. So too do investigations at the ITC, established by Congress with a right of appeal to the Federal Circuit. 19 U.S.C. §1337. None of that is true of the Munich court.

Onesta's last argument for extraterritorial enforcement of U.S. patents is derived from copyright: "The Ninth Circuit has already determined that 28 U.S.C. §1338 does not prohibit enforcement of U.S. copyrights in foreign courts …. There is no reason to treat patents differently." Opp. 9. But there are many reasons to distinguish the copyright context, as evidenced by the 30-year-old-split-decision that Onesta cites from the Ninth Circuit. *See id.* (citing *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995)). First, *Creative*'s copyright dictum that §1338(a) "is not exclusive of the courts of foreign nations," rests on paper-thin analysis—as the

---

[1] Onesta intentionally misunderstands appellate practice in declaring that "BMW failed to note [of *Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 633 F. Supp. 1209, 1212 (W.D.N.Y.), aff'd, 806 F.2d 1045 (Fed. Cir. 1986)] that the district court expressly rejected BMW's argument about §1138(a), *and the Federal Circuit affirmed.*" *See* Opp. 7 & n.6 (emphasis added). It is axiomatic that an appellate court may uphold a lower court's *judgment* but reject its *rationale*. *Williams v. Norris*, 25 U.S. (12 Wheat.) 117, 120 (1827) ("[i]f the judgment should be correct, although the reasoning … be deemed unsound, that judgment would certainly be affirmed"); *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1372 (Fed. Cir. 2020) ("we affirm judgments, not opinions"). The decision of the Federal Circuit in *Warner & Swasey* makes no mention of §1338(a), but rests its entire disposition on the enforceable agreement of the parties to litigate in a pre-selected forum under §294. *See* 806 F.2d at 1046; Ex. E ¶46 (expert noting that "the parties … agreed at arm's length to adjudicate breach of contract … claims in a particular forum").

2

robust dissent exposes. *See* 61 F.3d at 704-09 (Ferguson, J., dissenting). Section 1338(a) states that "district courts shall have original jurisdiction" over actions arising under federal IP statutes, adding that this jurisdiction is "exclusive of the courts of the States." Congress's explicit carve-out of state courts is a channeling function to allocate jurisdiction within the United States and unify patent jurisprudence at the federal level. Onesta's contrary suggestion—that silence about foreign courts in §1338(a) is a deliberate policy choice authorizing extraterritorial adjudication—is classic overread. *Nothing in §1338(a) suggests a legislative intent for foreign tribunals to enforce U.S. patents on the merits*. Rather, Congress expressly sought to centralize this jurisdiction in the federal judiciary of the United States by excluding a hodgepodge of local tribunals from the task—a logic that would similarly preclude the Munich court and dozens of EU-member state courts stretching from Latvia to Greece and Portugal to Bulgaria.[2] Onesta invites the very mischief that §1338(a) sought to avoid domestically when Congress channeled litigation of U.S. patents to Article III courts *exclusively*. Second, *Creative* made clear that the Copyright Act has broad forum options because there "is not the same type of mandatory venue provision" found in other statutes containing a specific "privilege of venue, granted by the legislative body which created th[e] right of action." 61 F.3d at 700. The Patent Act *does* contain these stricter venue provisions, and the Supreme Court requires adherence to them. *See TC Heartland LLC v. Kraft foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017); 28 U.S.C. §§451 (defining "judicial district" as the enumerated *U.S. District Courts*), 1400(b) (special venue rules for patent actions in the appropriate judicial district);

---

[2] The 2025 EU Justice Scoreboard highlights wide variations in court efficiency, quality, and independence among the EU's member states. Ongoing concerns about transparency, public confidence, delays, budgets, and cases of political interference affect judicial outcomes across several nations. *See generally* https://commission.europa.eu/document/download/51b21eff-a4b0-4e73-b461-06bd23b43d4e_en?filename=2025%20EU%20Justice%20Scoreboard_template.pdf (last visited Dec. 29, 2025).

3

*cf.* 28 U.S.C. §1295 (CAFC appellate jurisdiction). Nowhere does this comprehensive congressional scheme for situating litigation and appeal of cases on U.S. patents admit of venue in Munich. Third, *Creative* explains that part of its rationale rests on reciprocity and the applicable copyright conventions. *See* 61 F.3d at 700-03. So it is of no moment to *patent* law if "U.K. courts, for example, have been enforcing U.S. copyright for decades." Opp. 16. Even if true of copyright, no such possibility exists in patent litigation where the Federal Circuit has rejected reciprocal extraterritoriality. *Voda*, 476 F.3d at 898-904. As Onesta candidly admits, *Voda* "held that U.S. courts should decline to exercise that jurisdiction." Opp. 7. The Court should reject Onesta's superficial comparisons to copyright for unprecedented extraterritorial litigation of U.S. patents.

> a. **The right to a jury trial must be protected for BMW.**

Onesta is wrong that BMW currently has no jury right. *Lockwood,* 50 F.3d at 972-80, is clear that a DJ of noninfringement carries a jury right. Mot. 8. As taught in the case Onesta cites, a U.S. jury is BMW's right unless and until Onesta clearly "abandon[s]" any claim for money damages. *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1289-91 (Fed. Cir. 2005) ("[I]f the patentee has abandoned any claim for damages, the related invalidity claims are triable to the bench, not to a jury."). In German courts, there is no possibility of a jury despite the fact that Onesta indeed seeks monetary damages there in its assertion of two U.S. patents. Mot. 14. It is clear that Onesta is artfully hedging its position with qualifiers like "presently," "[t]o date," and "[a]t this stage." *See* Opp. 8. Even prior to its forthcoming pleadings, Onesta is trying to thwart BMW's Seventh Amendment right before answering with counterclaims that will inevitably fall short of disclaiming all damages. Jury rights should yet be preserved by the requested ASI.

Onesta also claims that "BMW argues that, as a policy matter, the U.S. public should get to decide issues related to U.S. markets, Mot. 10, but these policy arguments cannot create a jury right where there is none." Opp. 8. Onesta never addresses BMW's actual argument that *U.S.*

4

*courts*—the combination of an Article III judge in equity for injunctions and, on any issues so triable, a jury—should be making this decision regarding U.S. markets, since U.S. consumers will bear the burden of any injunction decision, not Germans.[3] Mot. 9-10 (citing *Deepsouth*, 406 U.S. at 531 ("'[Our legislation] do[es] not, and [was] not intended to, operate beyond the limits of the United States,' and *we correspondingly reject the claims of others to such control over our markets*." (emphasis added) (citation omitted))).[4]

### b.    A district court's final judgment is *erga omnes* in practice.

Onesta's invocation of *Blonder-Tongue* for collateral estoppel is a red herring—of course proceedings in WDTX will constitute a full and fair opportunity to litigate its patent claims. *See* Opp. 9-10. There is no suggestion that a future court will view a German judgment the same way, leaving Onesta free to assert U.S. patents invalidated *inter partes* again. *See* Mot. 9-10.

## B.    Onesta's Litigation of U.S. Patents in Munich is Vexatious Under *Unterweser*.

### 1.    Onesta incorrectly claims there is no inequitable hardship.

Predictably, Onesta presses the incorrect position that the Munich case is a "single, efficient, and first-filed case," so the Court should reject a "second-filed litigation" here. *See, e.g.,* Opp. 4, 8, 11 ("This is the second filed case."), 13, 19. But there is no rule that U.S. courts must surrender jurisdiction to a "first-filed case" abroad. Mot. 17 n.7 (collecting cases). Such a rule exists as between district courts, but it "has never been applied, and in fact it was never meant to

---

[3] Onesta is incredulous that BMW would ask "a U.S. court to protect a German entity… by categorically carving out U.S. patents" from the Munich cases. *See* Opp. 1-3. That jaundiced perspective fails to acknowledge BMW clearly has a substantial impact on the U.S. economy and there is no question a foreign entity may bring a DJ suit in U.S. courts.

[4] Currently, "the United States' stance across a range of areas is unabashedly territorial … as expressed in the following statements: 'The [U.S.] will unapologetically protect our own sovereignty … free of outside interference … [and] will insist on being treated fairly by other countries …. [W]e want to protect our intellectual property from foreign theft …. We want to halt and reverse the ongoing damage that foreign actors inflict on the American economy.'" Ex. E ¶102 (quoting *Nat'l Security Strategy of the U.S.A.*, at 3-10 (White House Nov. 2025)).

apply[,] where the two courts involved are not courts of the same sovereignty….” *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981). If Onesta's "first-filed" status made a difference here, it would encourage a bad policy of racing to forum-shopped courts to obtain global injunctions—exactly what Onesta attempted.

Despite being in Munich, it is not "merely another day in a German court" for BMW, which now finds itself litigating U.S. patents abroad, which has never been done. Opp. 10-11. If Onesta had not filed its case in such an unprecedented venue and instead asserted its U.S. patents in U.S. district court where they belong, there would not be multiple cases. Blaming BMW for pursuing DJ relief as a proper response to Onesta's own extreme actions is at best disingenuous.

### 2. The customer-suit exception would have applied if Onesta filed here.

Citing no authority, Onesta asserts that BMW can "ask the Munich court for a stay just the same." Opp. 13. But under the Rome II Regulations on choice of law, the Munich court will apply its own procedural law. Ex. F ¶¶32–33. Onesta's own discussion of the customer-suit exception only underscores its stratagem to deprive BMW of such procedural protections. Had Onesta filed its suit against BMW in the U.S., BMW would have been able to seek a U.S. stay after a supplier (e.g., Qualcomm) pursued declaratory relief addressing Onesta's claims (e.g., in Onesta's current suit against Qualcomm in WDTX). *See* Opp. 12-13; Mot. 11.

### 3. Threat of civil imprisonment suffices for an ASI.

Onesta provides no substantive response to the prospect of fines and imprisonment of BMW executives in Munich, other than to blithely say "[n]o one is forcing BMW to violate orders of any court." Opp. 13. That was also true in *Ganpat*, where the Fifth Circuit found that being forced onto the horns of such a dilemma—the impossible task of choosing between draconian consequences at home or vindicating one's rights in a U.S. court—was a harm worthy of an ASI. 66 F.4th at 582 ("If unwarranted inconvenience and expense present sufficient hardship to support

6

an anti-suit injunction, surely jailtime and seizure of property also suffice."). In *Ganpat*, even the threat of imprisonment was deemed a Hobson's choice that could coercively strip U.S. courts of jurisdiction absent an ASI. Onesta does not grapple with this dispositive caselaw. Opp. 13.

### 4. The differences in court timing and procedure are vexatious.

Onesta paints a series of false equivalencies. Whether BMW is "at home" in the WDTX has no bearing on this Court's jurisdiction over Onesta or the DJ claims presented here. Dkt. 1, 32-37. BMW's prior arguments against litigating in Texas only underscore its commitment to litigating the U.S. patents in the proper forum. BMW has also never availed itself of the Munich court to adjudicate U.S. patents, which is the vexatious aspect of Onesta's Munich claims. BMW is willing to defend itself in Munich with respect to Onesta's EP claim, as evident from the terms of its ASI request on the U.S. patents only. *See* Mot. 16 & n.6; Ex. A (sample order).

**Discovery:** The notion that limited discovery somehow favors defendants like BMW, *see* Opp. 14, presents a myopic view of how the German system works:

> Although the lack of discovery may seem like an advantage for defendants, a defendant can be required to explain certain facts if the plaintiff is unable or cannot reasonably be expected to provide more detailed information. If the defendant fails to disclose the information without justification, the facts stated by the plaintiff can be deemed admitted.

Ex. I, 3. On a very quick turnaround, BMW must submit a detailed Statement of Defense in Munich with an extensive U.S.-law expert report and important technical information from Qualcomm. Mot. 12-13. There is no question that the WDTX can more fairly and efficiently address the U.S. patents than the Munich court can hope to. *Id.* "Under [Fifth Circuit] caselaw, 'unwarranted inconvenience [and] *expense*' can suffice to constitute hardship meriting an anti-suit injunction." *Ganpat*, 66 F.4 at 582 (emphasis added). Onesta's disregard for Fifth Circuit consideration of "expense," *id.*, does not mean BMW cannot rely on it in the ASI context here. Opp. 15-16 (citing only Federal Circuit law on litigation costs). The German loser-pays system does not change this.

7

**Non-U.S. Judge:** The ability of the foreign suit to frustrate the "efficient determination of the cause" exemplifies a vexatious or oppressive litigation. *Ganpat*, 66 F.4th at 582. Even if judges can, as a conflict of law matter, interpret foreign law—this is far from efficient and increases error risk. Mot. 13. And Onesta's rewarming of its same arbitrator argument, Opp. 9 n.7, 15 (citing *Warner*, 633 F. Supp. at 1214) is equally unavailing here, *see supra* n.1.[5]

### 5. Onesta's Munich case is vexatious because it relies on a questionable legal theory to upset centuries of settled practice.

Onesta's self-styled "pioneering" position, Opp. 16, is vexatious for attempting to dislodge centuries of settled practice where U.S. patent claims are evaluated by U.S. courts. *BSH* does not hold "that EU courts can hear patent-infringement disputes regarding both EU and non-EU patents" as Onesta claims. Opp. 4. Rather, the CJEU "has only directly decided the matter with regard to third countries that are contracting states of the EPC system," which the United States is not. Ex. F ¶54. Onesta's reinterpretation of *BSH* is thus dubious. *Compare* Mot. 13-17 *and* Opp. 4-5. Further, Onesta's reading creates a potential conflict with the TRIPS agreement. *See* U.S. Const. art. VI, cl. 2 ("[A]ll Treaties made . . . shall be the supreme law of the land"). Under Onesta's theory of *BSH*, the Munich court could assess validity of U.S. patents on an *inter partes* basis but be prohibited from assessing validity of German patents under German law. Ex. E ¶¶69-70. This presents a troubling scenario where U.S. patents are treated less favorably than both German and European patents, and as Onesta correctly points out "the U.S. is a signatory of the TRIPS agreement, which requires that its members treat other signatory's patents 'no less favo[rably]' than their own." Opp. 3. *BSH* will likely be clarified by the CJEU, but seems unlikely to totally upend the territoriality of the international patent order beyond Europe. Opp. 16.

---

[5] In *Turner Ent. Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1520 (11th Cir. 1994), dicta regarding sufficiency of due process in a broadcasting suit has no bearing on patent litigation or procedure.

### 6. This matter is duplicative of what the ASI would prevent in Munich.

Suits are "duplicative where they involve the 'same or similar legal bases,' or 'identical claims.'" *MWK*, 833 F. App'x at 564 (citations omitted). Onesta's claim that "[t]he Munich case is not fully duplicative of this case," Opp. 17, forgets that there are *three* German cases and the matter regarding the EP is not at issue here. Mot. 11, 16-17 & n.6; Ex. C. The two German cases—based on only the U.S. patents—are fully duplicative of what will be adjudicated here and should be withdrawn in Germany pursuant to an ASI to avert vexatious litigation. *See id*.

### C. Onesta Offends Other Equitable Principles Under *Unterweser*.

**Patent Misuse:** Onesta does not dispute that it seeks damages outside the temporal scope of its statutory patent rights but contends that its approach is not "per se" misuse. Opp. 18. Whether the temporal expansion reaches forward beyond the 20-year term, 35 U.S.C. §154(a)(2), or backwards beyond the six-year damages window of 35 U.S.C. §286, Onesta is splitting hairs in a way that conflicts with the doctrine's equitable foundation. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998) ("[P]atent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage."). Even if a patent misuse defense is somehow available in Munich, issues of first impression should be left to U.S. courts trained to read and develop common law. Ex. E ¶¶109-10.

**NPE Injunctions:** It is not inherently problematic to seek an injunction. It is Onesta's conduct that raises concern, i.e., pursuing injunctive relief in Munich on an underdeveloped caselaw presentation, while declining to seek the same relief on similar claims in WDTX. *Compare* Ex. C 68-71 (¶I) *with Onesta IP, LLC v. Qualcomm Inc.*, No. 1:25-cv-587-ADA, Dkt. 1 (W.D. Tex. Apr. 17, 2025). Why seek such relief in Munich and not the U.S. if "there is no basis for thinking that obtaining an injunction in Germany is 'easier'"? Opp. 18; Mot. 15. The asymmetrical

request shows Onesta believes it is more likely to prevail in Munich, and it leverages a threat of injunction unavailable in the U.S. such that it offends equitable principles.

### D. Comity Favors an ASI Preventing Onesta's Munich Action on U.S. Patents.

Onesta speaks out of both sides of the mouth with respect to comity. It demands that this Court respect the "landmark decision" in *BSH*, while candidly admitting that "[m]ajor policy decisions with international implications should be handled by the political branches of government, not the courts." Opp. 1, 19-20. Onesta is correct about one thing—the CJEU's decision should not be allowed to upset the centuries-old international norm where U.S. patents are litigated *solely* in U.S. courts; comity dictates that such a change should be left to the political branches of our respective governments. *Voda*, 476 F.3d at 905 (explaining that a "new international patent treaty" would warrant revisiting supplemental jurisdiction). But in the meantime, this Pandora's box is opening *now*, and an ASI here can prevent immediate irreparable harm to BMW and blaze a path for U.S. courts to preserve the *status quo*. This Court need not "genuflect before a vague and omnipotent notion of comity [before] it must decide whether to enjoin a foreign action." *Kaepa*, 76 F.3d at 627. Rather than deferring to Onesta's "[c]razy" view of CJEU caselaw in the name of comity, Ex. D, an ASI is justified based on *Unterweser*'s threats.

### III. The Court Should Modestly Extend the TRO Until the ASI Decision Is Entered.

For reasons already stated, Mot. 17-20, this Court should extend the TRO due soon to expire. Dkt. 16. Rule 65 permits extensions for good cause to preserve the *status quo* until the ASI decision issues. Absent a TRO extension, nothing prevents Onesta from still seeking an AASI in Munich as soon as tomorrow. *Id*. Onesta never commits in its brief to refrain from obtaining/enforcing an AASI should the TRO lapse; nor does it contest the bond amount (and rather appears to endorse it). *See* Opp. 14. Good cause thus exists for the TRO to be extended a short period until the Court decides the ASI motion outcome. *See* Mot. 17-20 & cited materials.

10

Respectfully submitted,

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue (VA Bar No. 49005)
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone: (571) 203-2750
Facsimile: (202) 408-4400

J. Derek McCorquindale (VA Bar No. 77048)
(*pro hac vice*)
derek.mccorquindale@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone: (571) 203-2768
Facsimile: (202) 408-4400

Matthew C. Berntsen (MA Bar No. 678533)
matthew.berntsen@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Seaport Lane
Sixth Floor
Boston, MA 02210-2001
Telephone: (617) 646-1618
Facsimile: (617) 646-1666

Joseph M. Myles (DC Bar No. 1672505)
joseph.myles@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413
Telephone: (202) 408-4372
Facsimile: (202) 408-4400

*Attorneys for Plaintiff*
*Bayerische Motoren Werke Aktiengesellschaft*

## CERTIFICATE OF SERVICE

    I hereby certify that on December 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

                                        */s/ Lionel M. Lavenue*
                                        Lionel M. Lavenue