# *Exhibit A*

# Bayerische Motoren Werke Aktiengesellschaft ("BMW")

## v.

## Onesta IP, LLC ("Onesta")

# Motion for Anti-Suit Injunction ("ASI")

Case No: 6:25-cv-00581-ADA

January 13, 2026

## BMW's ASI Hearing Roadmap

- Who is Onesta, and what has it done?

- How and why has Onesta sued in Germany on a U.S. patent?

- Why is BMW seeking an ASI?

- This Court should grant an ASI based on the Fifth Circuit's controlling ASI framework.

- This Court should grant BMW's ASI to prevent Onesta from continuing to pursue its U.S. patent claims in Germany (and if necessary, to prevent Onesta from seeking an AASI, and convert the TRO into a Preliminary Injunction).

2

## Who Is Onesta?

**Onesta is a Non-Practicing Entity run by principals with deep patent monetization experience: Bill Marino and David Loo**



Onesta is a Delaware non-practicing entity ("NPE") with limited connection to Germany and led by individuals notorious for extracting licensing fees through aggressive IP enforcement.

# What Has Onesta Done?

- **Onesta has done something unprecedented and improper:**
  **It has asserted U.S. patents in a foreign country (Germany).**



wegen: Patentverletzung

**EP 2 473 920 B1** (Grafische Verarbeitungseinheit mit einem Befehlsprozessor mit mehreren Puffern zur asynchronen zeitgleichen Ausführung von Aufgaben verschiedener Art auf einem Shader-Core)

US 8,854,381 B2 (Processing unit that enables asynchronous task dispatch – Verarbeitungseinheit, die asynchrone Aufgabenverteilung ermöglicht)

US 8,443,209 B2 (Throttling computational units according to performance sensitivity – Drosselung von Recheneinheiten entsprechend der Performanzempfindlichkeit)

Streitwert (vorl. gesch.): EUR 3.000.000,–
(EUR 1.000.000,– pro Patent)

**Foreign Forum:**
Munich Regional Court I
**Plaintiff:** Onesta IP, LLC
**Defendant:** BMW
**U.S. Patents at Issue:**
- U.S. Patent No. 8,854,381
- U.S. Patent No. 8,443,209

**On October 9, 2025, Onesta filed suit in Munich:**
- US 8,854,381 B2 (Case No. 21 O 13056/25)
- US 8,443,209 B2 (Case No. 21 O 12768/25)
- EP 2 473 920 B1 (Case No. 21 O 13057/25)

4

# Onesta (a U.S. Entity) Obtains U.S. Patents to Monetize

## Key Timeline



**August 19, 2024**
AMD and Onesta signed Patent Transfer Agreement including the '381 and '209 patents

**November 8, 2024**
Onesta and AMD recorded the patent assignments

**April 17-18, 2025**
Onesta asserted the '381 patent against Qualcomm and NVIDIA in WDTX, and these companies and more at the ITC. 1:25-cv-00587; 1:25-cv-00586; Inv. No 337-TA-1450

**September 25, 2025**
Onesta dropped the '381 patent from its ITC case

**October 9, 2025**
Onesta sued BMW, Qualcomm's indirect customer, in the Munich Regional Court I, asserting the '381 and '209 U.S. patents and EP 2,473,920




**Onesta acquired the '381 and '209 patents from AMD in 2024 for one sole purpose—to assert them for profit.**

5

# Onesta Begins an Aggressive Litigation Campaign by Asserting the '381 Patent in Multiple U.S. Venues

## Key Timeline



**August 19, 2024**
AMD and Onesta signed Patent Transfer Agreement including the '381 and '209 patents

**November 8, 2024**
Onesta and AMD recorded the patent assignments

**April 17-18, 2025**
Onesta asserted the '381 patent against Qualcomm and NVIDIA in WDTX, and these companies and more at the ITC. 1:25-cv-00587; 1:25-cv-00586; Inv. No 337-TA-1450

**September 25, 2025**
Onesta dropped the '381 patent from its ITC case

**October 9, 2025**
Onesta sued BMW, Qualcomm's indirect customer, in the Munich Regional Court I, asserting the '381 and '209 U.S. patents and EP 2,473,920






Onesta then began its aggressive litigation campaign by asserting the '381 patent *in this Court* and at the ITC.

6

# Onesta Drops the '381 Patent from Its ITC Investigation

## Key Timeline



| August 19, 2024 | November 8, 2024 | April 17-18, 2025 | September 25, 2025 | October 9, 2025 |
|---|---|---|---|---|
| AMD and Onesta signed Patent Transfer Agreement including the '381 and '209 patents | Onesta and AMD recorded the patent assignments | Onesta asserted the '381 patent against Qualcomm and NVIDIA in WDTX, and these companies and more at the ITC. 1:25-cv-00587; 1:25-cv-00586; Inv. No 337-TA-1450 | Onesta dropped the '381 patent from its ITC case | Onesta sued BMW, Qualcomm's indirect customer, in the Munich Regional Court I, asserting the '381 and '209 U.S. patents and EP 2,473,920 |







**Onesta then voluntarily drops its '381 patent from its own ITC investigation, which signals that this patent is particularly weak.**

7

# Then, Onesta's Aggressive Litigation Campaign Culminates in an Improper Assertion of U.S. Patents in Germany

## Key Timeline



**August 19, 2024**
AMD and Onesta signed Patent Transfer Agreement including the '381 and '209 patents

**November 8, 2024**
Onesta and AMD recorded the patent assignments

**April 17-18, 2025**
Onesta asserted the '381 patent against Qualcomm and NVIDIA in WDTX, and these companies and more at the ITC. 1:25-cv-00587; 1:25-cv-00586; Inv. No 337-TA-1450

**September 25, 2025**
Onesta dropped the '381 patent from its ITC case

**October 9, 2025**
Onesta sued BMW, Qualcomm's indirect customer, in the Munich Regional Court I, asserting the '381 and '209 U.S. patents and EP 2,473,920

     

Next, Onesta did something no party in the history of the world has ever done: Onesta improperly asserts *U.S.* Patents in a *foreign* country, namely, Germany, and part of its relief there includes *seeking injunctions* on both U.S. patents.

8

# BMW's ASI Hearing Roadmap

Who is Onesta, and what has it done?

How and why has Onesta sued in Germany on a U.S. patent?

Why is BMW seeking an ASI?

This Court should grant an ASI based on the Fifth Circuit's controlling ASI framework.

This Court should grant BMW's ASI to prevent Onesta from continuing to pursue its U.S. patent claims in Germany (and if necessary, to prevent Onesta from seeking an AASI, and convert the TRO into a Preliminary Injunction).



# How Has Onesta Sued in Germany on a U.S. Patent?



- **The Court of Justice of the European Union (CJEU) is the EU's highest court.**
  - The CJEU is thus the court that addresses issues such as jurisdiction for all EU member states, including Germany.
  - The United States is <u>not</u> an EU member state.
- **The CJEU's Feb. 25, 2025 *BSH v. Electrolux* decision:**
  - Found that a European member state's (<u>Sweden</u>) national court has jurisdiction to adjudicate patent claims based on foreign portions of a European bundle patent (<u>including German (EU), UK (EPC, former EU), and Turkish (EPC, candidate EU member)</u>) against its residents.
    - *BSH* only specifically addressed a European Patent issued by the EPO and subsequently validated in European Patent Convention (EPC) contracting states.
    - *BSH* also found that EU national courts can evaluable invalidity of non-EU member states' patents on an *inter partes* basis but <u>cannot</u> evaluate validity of foreign EU country patents.
  - *BSH* did <u>not</u> deal with U.S. Patents—or any non-EPC country patent.
  - **The United States is <u>not</u> a signatory to the EPC.**

> **The United States is <u>neither</u> a Member of the European Union <u>nor</u> a signatory to the European Patent Convention**



# How Has Onesta Sued in Germany on a U.S. Patent?

- ***BSH*** did <u>not</u> deal with U.S. Patents—or any non-EPC country patent.
- Experts agree that under BSH the Munich Court will likely seize jurisdiction over Onesta's assertion of U.S. Patents.



"90. In fact, in my professional opinion, it seems rather likely that the Munich Regional Court I will assume jurisdiction based on the CJEU judgement in the case at hand…."

*BMW's expert, Prof. Dr. jur. Matthias Leistner, LL.M. (Dkt. 7-7 ¶ 90)*



"27. Furthermore, while Electrolux address a **patent effective in, and alleged infringing activities taking place in**, Tükiye, its *radio decidendi* applies equally to any other third State…. **This cohort includes the United States of America.**"

*Onesta's expert, Prof. Dr. Peter Georg Picht, LL.M. (Dkt. 20-3 ¶¶ 16 (collecting commentary), 27)*

- **Onesta filed the first case asking an EU court to seize jurisdiction to adjudicate U.S. patents.**



*LinkedIn Post of Onesta's German counsel (Dkt. 7-5).*



**Eastern District of Munich: Onesta sues BMW in Munich I Regional Court over two U.S. and one European former AMD patents**

**What's new:** Non-practicing entity Onesta IP LLC has sued BMW in the Munich I Regional Court over the alleged infringement of three semiconductor patents – one European and the other two U.S. The new actions are unprecedented and push for an extension of the practical reach of the so-called "long-arm jurisdiction", which has so far only been tested within Europe.

*https://ipfray.com/eastern-district-of-munich-onesta-sues-bmw-in-munich-i-regional-court-over-two-u-s-and-one-european-former-amd-patents/ (Dkt. 7-8)*

11

#  Why Has Onesta Sued in Germany on a U.S. Patent?

1. Munich is a <u>free bite at the infringement apple</u> for Onesta:
   - Injunctions are granted as a matter of course
     - In Germany, 62% of NPE cases result in finding of infringement—**injunctions are automatic**.
     - In comparison, plaintiffs have a 27% win-rate in the U.S. with **effectively zero NPE injunctions**.
   - <u>No estoppel effect</u>: even if Onesta loses, it can just refile in the U.S.

2. Munich court will not address validity like in the U.S.
   - <u>No estoppel effect</u>: even if Onesta loses, it can just refile in the U.S.
   - At least one of the Asserted Patents, the '381, has a checkered validity past.

3. Quick decisions, expected Q4 202<u>6</u>.

> **Litigating in Munich presents Onesta with a win-win scenario: a victory on infringement against BMW resulting in damages and/or an injunction, but a loss on invalidity leaves Onesta free to assert its patents again elsewhere.**

## The '381 Patent Is a Weak Patent that Onesta Wants to Monetize in Germany

**'381: Checkered Past**

- **The '381 Patent has a checkered past.**
  - The USPTO has questioned the validity of several of its claims.

> "Petitioner [sought] an *inter partes* review of claims 15–20…. Upon consideration of the evidence and arguments in the record, we determine that the information presented shows a reasonable likelihood that Petitioner would prevail…. We therefore grant institution of an *inter partes* review."

IPR2023-00687, Paper 7 at 37 (PTAB Oct. 25, 2023)

  - Its previous assignee, AMD, thwarted the '381 patent's IPR before the PTAB could invalidate the challenged claims.

> "AMD … request[s] termination of the inter partes review of U.S. Patent No. 8,854,381, Case No. IPR2023-00687."



IPR2023-00687, Paper 27 at 2 (PTAB Jun. 24, 2024)

**First, the USPTO questioned the validity of several claims of the '381 patent.**

## The '381 Patent Is a Weak Patent that Onesta Wants to Monetize in Germany

'381: Checkered Past

- **The '381 Patent has a checkered past.**
  - The USITC has also questioned the validity of several of its claims.

    > "Respondents have **proven the invalidity** of claims 15-17 of [the'381 patent]."

    *Certain Graphics Sys., Components Thereof, & Digit. Televisions Containing the Same*, Inv. No. 337-TA-1318 (USITC), Initial Determination at 180, D.I. 799959 (USITC July 7, 2023)

  - Its previous assignee, AMD, again terminated the proceeding, thereby thwarting any invalidation of the claims at issue.

    > "AMD … hereby request[s] that the ALJ grant this Motion and issue an Initial Determination **terminating this proceeding in its entirety**."

    *Certain Graphics Sys., Components Thereof, & Digit. Televisions Containing the Same*, Inv. No. 337-TA-1318 (USITC), Joint Motion to Terminate Modification Proceeding at 1, D.I. 824633 (USITC June 27, 2024)

**Second, the USITC questioned the validity of several claims of the '381 patent.**

## The '381 Patent Is a Weak Patent that Onesta Wants to Monetize in Germany

'381: Checkered Past

- **The '381 Patent has a checkered past.**
  - Onesta itself dropped the '381 Patent from its own ITC case.

> "Onesta … moves for … termination of the Investigation with respect to claims 5-8 and 19-20 of the … '381 Patent … [which] will terminate the Investigation with respect to all asserted claims of the '381 Patent."



**Onesta IP, LLC**

*Certain Integrated Circuits, Electronic Devices Containing the Same, and Components Thereof*, Inv. No. 337-TA-1450 (USITC), Onesta IP, LLC's Corrected Unopposed Motion for Partial Termination of the Investigation with Respect to Certain Asserted Claims of the Asserted Patents at 2–3, D.I. 862782 (USITC Sep. 23, 2025)

  - And the ITC again terminated claims of the '381 patent.

> "Accordingly, … claims 5-8 and 19-20 of the '381 patent… are hereby terminated from this investigation."



*Certain Integrated Circuits, Electronic Devices Containing the Same, and Components Thereof*, Inv. No. 337-TA-1450 (USITC), Initial Determination Granting Onesta IP, LLC's Corrected Unopposed Motion at 2–3, D.I. 863040 (USITC Sep. 25, 2025)

**Onesta itself dropped the '381 Patent at the ITC in favor of asserting it against BMW in Munich.**

**New Commentary Jan. 5, 2026**

## Prof. Willem Hoyng Comments on US District Court for the Western District of Texas WACO Division, BMW v. Onesta – Ex Parte Temporary Restraining Order

- Onesta mistakenly believes the holding of *BSH v. Electrolux* can be extended to give Munich jurisdiction over U.S. patents. Not so.
  - For example, William Hoyng, who Onesta's German expert cites with approval as "**the Chairman of the Advisory Committee to the UPC, a member of the former drafting committee of the Rules of Proceedings of the UPC,**" Dkt. 20-3 ¶ 16, passionately disagrees and specifically commented on this case as follows:

> "4. For a non-practicing entity, [Munich] is the ideal forum to coerce high license fees and/or damage payments on the basis of weak/shaky patents, especially as the proportionality rule of Art. 3 (2) of the Enforcement Directive remains in practice a virtually dead letter in German national courts."

https://www.eplaw.org/blog/detail/news-prof-willem-hoyng-comments-on-us-district-court-for-the-western-district-of-texas-waco-division-bmw-v-onesta-ex-parte-temporary-restraining-order/  (Jan. 5, 2026)

**EPLAW**    LOGIN

Home / Blog /
News – Prof. Willem Hoyng comments on US District Court for the Western District of Texas WACO Division, BMW v. Onesta – ex parte temporary restraining order

News – Prof. Willem Hoyng comments on US District Court for the Western District of Texas WACO Division, BMW v. Onesta – ex parte temporary restraining order

05 Jan 2026



Willem Hoyng
HOYNG ROKH MONEGIER

**This Court should reject Onesta's attempt to exploit Munich's reputation as a haven for coercive, weak-patent litigation and reaffirm that U.S. patent rights must be adjudicated in U.S. courts.**

16



**Prof. Willem Hoyng Comments on US District Court for the Western District of Texas WACO Division, BMW v. Onesta – Ex Parte Temporary Restraining Order**

- **Professor Williem Hoyng also states:**

"However, what the Regional Court of Munich does is what I would qualify as judicial imperialism. It also shows a "bei uns ist alles besser [we do things better here]" attitude which attitude leads to ressentent [*sic*] and reactions."

"10. There is nothing in the BSH Hausgeräte v Electrolux decision which obliges a German court to hear a US infringement case, let alone that that judgment can be read as advocating antisuit injunctions."

"11. I note that US courts do not feel competent to deal with the infringement and validity of foreign patents."

"12. In my opinion, I do not think that EU courts should deal with non-European patents, certainly not with patents of countries which do not interfere with foreign patents, except maybe in situations where it is virtually impossible to enforce patents in a certain country and if such country is a member of TRIPS."



**"Judicial Imperialism"**



Willem Hoyng
**HOYNG ROKH MONEGIER**

**Professor Hoyng's view, which issued *after* BMW submitted its reply, stated that Munich's attempt to adjudicate U.S. patents "goes too far," and indicated that the German court should not deal with U.S. patents.**

17

## BMW's ASI Hearing Roadmap

Who is Onesta, and what has it done?

How and why has Onesta sued in Germany on a U.S. patent?

Why is BMW seeking an ASI?

This Court should grant an ASI based on the Fifth Circuit's controlling ASI framework.

This Court should grant BMW's ASI to prevent Onesta from continuing to pursue its U.S. patent claims in Germany (and if necessary, to prevent Onesta from seeking an AASI, and convert the TRO into a Preliminary Injunction).

# Why BMW Is Seeking an ASI

- **BMW seeks to maintain order in patent law.**
  - Before Onesta sued in Munich, there was a clear divide: <mark>U.S. Courts litigated U.S. patents, and the rest of the world litigated their patents.</mark>
  - Onesta seeks to **break that divide** and has upset this equilibrium that has functioned well for centuries.
  - BMW seeks to confirm the United States' legitimate jurisdiction over **its own patents.**
  - **This Court cannot allow a foreign court to take it.**





> **BMW seeks this ASI to restore the centuries-old balance that Onesta has upended and safeguard the United States' rightful authority over its own patents.**

19

## Why BMW Is Seeking an ASI

- **Why an ASI is necessary?**
  - This is a "*first*," *unprecedented* move: Onesta sued BMW in Munich, asserting two U.S. patents, seeking to use a foreign forum to adjudicate U.S. patent rights.
  - Onesta's German counsel on LinkedIn (right) openly touts the facts of this case, while conceding that it appears to rest on "**[c]razy**" legal grounds. *See* Ex. D.



**That is a direct challenge to the territorial nature of U.S. patent rights and the U.S. forum Congress selected.**

# Why BMW Is Seeking an ASI

## Without an ASI:

**1. Two proceedings run in parallel on the same U.S. patents.**

– Munich and WDTX proceed in parallel on the same U.S. patents, creating duplicative litigation and wasted resources

**2. Munich proceedings are fast.**

– Because the German process is front-loaded and can move quickly, the practical risk is not merely a faster decision.

**3. Injunctive relief is the coercive leverage.**

– If Munich issues or credibly threatens permanent injunctive relief based on U.S. patents, that relief can drive immediate business disruption and settlement pressure.

**4. The U.S. case can become practically moot even if BMW later wins here.**

– Once foreign leverage drives a coerced outcome, the U.S. court's later merits ruling may not restore the status quo.

**ASI is the only tool that preserves this Court's jurisdiction and the integrity of U.S. patent adjudication. It prevents foreign adjudication of U.S. patents while allowing legitimate European patent disputes to proceed**

# BMW's ASI Hearing Roadmap

Who is Onesta, and what has it done?

How and why has Onesta sued in Germany on a U.S. patent?

Why is BMW seeking an ASI?

This Court should grant an ASI based on the Fifth Circuit's controlling ASI framework.

This Court should grant BMW's ASI to prevent Onesta from continuing to pursue its U.S. patent claims in Germany (and if necessary, to prevent Onesta from seeking an AASI, and convert the TRO into a Preliminary Injunction).

## What Is the Fifth Circuit's ASI Framework?

- **The Fifth Circuit's ASI framework comes from *Unterweser*.**
  - *Unterweser* is a landmark Fifth Circuit case that gives federal courts discretion to enjoin persons subject to their jurisdiction from prosecuting foreign suits.

> "The court … has the authority and power of enjoining the parties to the litigation from proceeding in another jurisdiction. And the court has an undoubted authority to control all persons and things within its own territorial limits."

*In re Unterweser Reederei*, 428 F.2d 888, 891 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)



**Undisputed**

***Unterweser* empowers this Court to bring a foreign suit to a grinding halt at its discretion.**

# What Is Needed to Issue an ASI in the Fifth Circuit?

- *Unterweser* provided a test that enumerates multiple threats, each or any one of which may independently warrant an ASI.

> "An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; . . . or ([3]) cause prejudice or offend other equitable principles."

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Unterweser*)

- **<u>Only one</u>** *Unterweser* threat is needed to issue an ASI.
- Either (1) alone, **<u>or</u>** (2) alone, **<u>or</u>** (3) alone—*or any combination of them, even if no single threat alone is met*—is sufficient to warrant an ASI.

**Under well-established Fifth Circuit precedent, only <u>one</u> *Unterweser* threat needs to be shown to issue an ASI.**

*Undisputed*

24

## What Else Should Be Considered to Issue an ASI in the Fifth Circuit?

- **The Fifth Circuit's test also *considers* international comity but to a far lesser extent than the *Unterweser* threats.**



"When [considering] a foreign antisuit injunction, we are required to balance domestic judicial interests against concerns of international comity…. [H]owever,… notions of comity do not wholly dominate our analysis to the exclusion of these other concerns."

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 335 F.3d 357, 366 (5th Cir. 2003)
(footnotes and internal citations omitted)

"[In applying the ASI test, the Fifth Circuit rejected the approach taken by some other circuits that] have employed a standard that elevates principles of international comity to the virtual exclusion of essentially all other considerations."

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996)



**The Fifth Circuit's ASI framework *considers* international comity should be considered but does not dominate the analysis.**

25

## The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.   Presence of **at least one** *Unterweser* threat:
    - Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
      - 1.a.    Duty to protect jurisdiction
      - 1.b.    Right to a jury
      - 1.c.    Exclusive jurisdiction
      - 1.d.    Public interest
    - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
      - 2.a.    Inequitable hardship
      - 2.b.    Inefficient
      - 2.c.    Duplicative
    - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
      - 3.a.    Patent misuse
      - 3.b.    Improper injunctions
  - II.   Threats outweigh comity concerns



Undisputed

**The Fifth Circuit's ASI framework applies in this case.**

26

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.    Presence of **at least one** *Unterweser* threat:
    - Disputed    Threat 1. Frustration of U.S. public policy (any one of):
      - 1.a.    Duty to protect jurisdiction
      - 1.b.    Right to a jury
      - 1.c.    Exclusive jurisdiction
      - 1.d.    Public interest
    - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
      - 2.a.    Inequitable hardship
      - 2.b.    Inefficient
      - 2.c.    Duplicative
    - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
      - 3.a.    Patent misuse
      - 3.b.    Improper injunctions
  - II.    Threats outweigh comity concerns



**BMW shows Onesta's Munich litigation (1) frustrates a policy of this forum issuing the ASI for four reasons, i.e., (1)(a)-(1)(d), each of which alone is a sufficient and independent basis that shows an ASI is warranted.**

27

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

  I.   Presence of **at least one** *Unterweser* threat:

  Threat 1. Frustration of U.S. public policy (<u>any one of</u>):

  Disputed    1.a.    Duty to protect jurisdiction

  1.b.    Right to a jury

  1.c.    Exclusive jurisdiction

  1.d.    Public interest

  Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):

  2.a.    Inequitable hardship

  2.b.    Inefficient

  2.c.    Duplicative

  Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):

  3.a.    Patent misuse

  3.b.    Improper injunctions

  II.   Threats outweigh comity concerns



**For example, Onesta (1) frustrates U.S. public policy by (a) threatening this Court's duty to protect its own legitimately conferred jurisdiction.**

## Threat 1(a): Onesta's Munich Case Threatens WDTX's Jurisdiction

- **Congress empowered Federal Courts to adjudicate infringement of U.S. patents, and this Court has an obligation to protect it:**
  - "Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants."
    *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).
  - 28 U.S.C. §2201 declaratory judgment jurisdiction
  - 35 U.S.C. §271 infringement is a federal question

"… the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them …"

*Colo. River  Water Conserv. Dist. v. United States*, 424 U.S. 800, 817–18 (1976)

**BMW seeks this ASI to restore the centuries-old balance that Onesta has upended and safeguard the United States' rightful authority over its own patents.**

29

# Threat 1(a): Onesta Mischaracterizes BMW's Argument

- Onesta mischaracterizes BMW argument as "federal courts *must* always exercise the full scope of their jurisdiction." 

- Onesta fails to identify a reason for WDTX not to protect its jurisdiction.
  - Citing only *Voda,* which requires declining jurisdiction over foreign patents, and *Colo. River*, which requires abstaining from concurrent state suits in extraordinary circumstances.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."

*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-18 (1976)



**Onesta completely fails to identify an extraordinary circumstance for WDTX to abstain from exercising the full scope of its DJ jurisdiction, which requires an ASI.**

## Threat 1(a): White House Policy Confirms Duty to Protect Jurisdiction

- White House policy confirms this Court's duty to protect its jurisdiction against foreign interference:

> "We want to protect this country, its people, its territory, its economy, and its way of life from military attack and hostile foreign influence, whether espionage, predatory trade practices … or any other threat to our nation.  [W]e want to protect our intellectual property from foreign theft.... We want to halt and reverse the ongoing damage that foreign actors inflict on the American economy...."



Dkt. 7-6, ¶102 (quoting *National Security Strategy of the United States of America*, at 3–10 (White House Nov. 2025))

**This Court's duty extends to guarding against *any threat* of foreign interference to its people, its *economy*, and its *intellectual property*.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

✓ Satisfied    I.    Presence of **at least one** *Unterweser* threat:

    ✓ Satisfied   Threat 1. Frustration of U.S. public policy (<u>any one of</u>):

      ✓ Satisfied   1.a.    Duty to protect jurisdiction

          1.b.    Right to a jury

          1.c.    Exclusive jurisdiction

          1.d.    Public interest

     Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):

          2.a.    Inequitable hardship

          2.b.    Inefficient

          2.c.    Duplicative

     Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):

          3.a.    Patent misuse

          3.b.    Improper injunctions

   II.    Threats outweigh comity concerns



**BMW thus shows Onesta's foreign litigation (1) frustrates U.S. public policy by threating (a) this Court's duty to protect its own legitimately conferred jurisdiction.**

## The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.  Presence of **at least one** *Unterweser* threat:
    - Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
      - 1.a.    Duty to protect jurisdiction
      - **Disputed**  1.b.    Right to a jury
      - 1.c.    Exclusive jurisdiction
      - 1.d.    Public interest
    - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
      - 2.a.    Inequitable hardship
      - 2.b.    Inefficient
      - 2.c.    Duplicative
    - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
      - 3.a.    Patent misuse
      - 3.b.    Improper injunctions
  - II.   Threats outweigh comity concerns



**Another example of Onesta's foreign litigation (1) frustrating U.S. public policy by (b) depriving BMW of its Constitutional right to a jury.**

33

## Threat 1(b): Infringement Cases Are Indisputably Entitled to a Jury

- Onesta's German case indisputably deprives BMW of its right to have a jury decide infringement of asserted U.S. patents, as guaranteed by the Seventh Amendment:

> "[T]here is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago."

*Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 377 (1996)

**Onesta's foreign litigation is indisputably incapable of satisfying the Supreme Court's mandate that infringement cases "must" be tried before a jury.**

34

## Threat 1(b): Federal Circuit Law Confirms BMW's Declaratory Judgment Claims Grant a Jury Right

- Federal Circuit law is clear, a declaratory judgment of noninfringement carries a Seventh Amendment jury right.

"If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law— then the parties have a right to a jury."

*In re Lockwood*, 50 F.3d 966, 975 (Fed. Cir. 1995) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959))



"Because patent validity is not purely an equitable issue, and because the pending declaratory judgment action is most comparable to an inversion of a patent infringement lawsuit, Lockwood is entitled under the Seventh Amendment to trial by jury in this declaratory judgment action …"

*Id.* at 980

**Onesta cannot frustrate BMW's right to a jury simply by pointing to the fact that it is an unanswered declaratory judgment complaint.**

## Threat 1(b): Onesta's Incorrectly Argues that BMW Does Not "Presently" Have a Right to a Jury

- Onesta hides behind qualifiers, that BMW is not "presently" entitled to a jury right "[a]t this stage" because "[t]o date."
- Onesta is wrong even considering those qualifiers.
  - Onesta's own citation confirms, BMW presently has a jury right until Onesta affirmatively abandons its damages claim:

> "*Lockwood* stands for the proposition that if the patentee has abandoned any claim for damages, the related invalidity claims are triable to the bench, not to a jury."

*In re Technology Licensing Corp.*, 423 F.3d 1286, 1291 (Fed. Cir. 2005)

**Onesta has not yet answered, and until it does and affirmatively abandons its claim for damages, BMW *IS* "presently" entitled to a jury.**

36

# Threat 1(b): BMW's Right to a Jury Must Be Protected

- The Seventh Amendment right to a jury that must be protected.
- It is procedurally impossible to get any jury in the Munich court—and certainly not one composed of U.S. citizens.

"[T]here is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts."

*Byrd v. Blue Ridge Rural Elec. Coop*, 356 U.S. 525, 537–38 (1958)

"The right of jury trial in civil cases at common law … should be jealously guarded by the courts."

*Jacob v. City of New York*, 315 U.S. 752, 752–53 (1942)

**This Court must safeguard BMW's constitutional jury right through an ASI.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

✔ **Satisfied**  I.  Presence of **at least one** *Unterweser* threat:

    ✔ **Satisfied**  Threat 1. Frustration of U.S. public policy (<u>any one of</u>):

        ✔ **Satisfied**  1.a.    Duty to protect jurisdiction

        ✔ **Satisfied**  1.b.    Right to a jury

        1.c.    Exclusive jurisdiction

        1.d.    Public interest

    Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):

        2.a.    Inequitable hardship

        2.b.    Inefficient

        2.c.    Duplicative

    Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):

        3.a.    Patent misuse

        3.b.    Improper injunctions

  II.  Threats outweigh comity concerns



**BMW has shown that Onesta's Munich litigation (1) frustrates U.S. public policy by (b) stripping BMW of its right to a jury trial.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  I. . Presence of **at least one** *Unterweser* threat:
      Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
          1.a.    Duty to protect jurisdiction
          1.b.    Right to a jury
      **Disputed**    1.c.    Exclusive jurisdiction
          1.d.    Public interest
      Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
          2.a.    Inequitable hardship
          2.b.    Inefficient
          2.c.    Duplicative
      Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
          3.a.    Patent misuse
          3.b.    Improper injunctions
  II.   Threats outweigh comity concerns



**Moreover, Onesta's Munich litigation (1) frustrates U.S. public policy by threatening (c) the U.S.'s exclusive jurisdiction over its patents.**

## Threat 1(c): U.S. Statutes Do Not Provide for Foreign Enforcement of U.S. Patents

- Longstanding U.S. policy maintains a strong presumption against extraterritoriality, including with respect to enforcing patents:

"Our patent system makes no claim to extraterritorial effect…."

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972)

It is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (citation omitted)

"The right conferred by a patent under our law is confined to the United States and its territories…."

*Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915)

**U.S. patent rights, including enforcement rights, are granted by U.S. statutes. Onesta's Munich action violates the U.S. presumption against extraterritoriality.**

## Threat 1(c): U.S. Statutes Grant Exclusive Jurisdiction of Patent Disputes to U.S. Federal Courts

- Congress's multilayered approach to jurisdiction of U.S. patent disputes proves its intent for exclusivity to U.S. courts.
- U.S. patent law statutes reflect this:
  - 28 U.S.C. § 1338(a): grants U.S. district courts jurisdiction over patent disputes exclusive of the states
  - 28 U.S.C. § 1400(b): prescribes special venue rules for patent disputes
  - 28 U.S.C. §1295: exclusive jurisdiction of patent appeals to the CAFC
  - 35 U.S.C. § 271: infringement is a federal question
  - 35 U.S.C § 281: provides remedy through civil action



**U.S. patent statutes enacted by Congress clearly show Congressional intent for disputes over U.S. patents to be resolved exclusively by U.S. courts.**

## Threat 1(c): Onesta Threatens U.S. Congress's Intent to Unify U.S. Patent Jurisprudence

- In the words of the Federal Circuit:

> "Congress unified our patent jurisprudence by creating the Federal Circuit and granting exclusive jurisdiction of appeals on patent claims."

*Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007) (citing 28 U.S.C. § 1295)



- Foreign judgments are not reviewable by the Federal Circuit and undermine Congress's policy to unify our patent jurisprudence.
- Letting parties enforce U.S. patents worldwide would spur forum shopping toward jurisdictions with weaker protections.



**Allowing foreign courts to adjudicate U.S. patents eviscerates Congress's intended unification of U.S. patent jurisprudence.**

## Threat 1(c): Onesta Threatens U.S. Congress's Intent for U.S. Courts To Have Exclusive Jurisdiction over U.S. Patent Cases

- Onesta incorrectly argues "it is not the case that Congress granted 'exclusive jurisdiction to the federal courts' for adjudicating U.S. patent infringement disputes." Opp. at 7.

  **WRONG**

  - Onesta's citation to *Warner & Swasey* is unpersuasive:
    - On appeal the CAFC made no mention of §1338(a), but rested its disposition on the enforceable agreement of the parties to litigate in a pre-selected forum under §294.

- In *Voda* the Federal Circuit said:

  "Foreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity and to preclude forum shopping."

  *Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007) (citing *Empagran S.A.*, 542 U.S. 155, 168–69 (2004))

  **The Federal Circuit has made it clear: A foreign court's attempt to adjudicate a U.S. patent outright destroys Congressional intent on U.S. patent policy.**

## Threat 1(c): Onesta Threatens U.S. Congress's Intent for U.S. Courts To Have Exclusive Jurisdiction over U.S. Patent Cases

- Onesta tries to downplay territorial limits of U.S. patent litigation that have been well-established for centuries.

- Onesta argues U.S. courts lack exclusive authority over U.S. patent disputes because:

  - (i) U.S. patents could be arbitrated abroad;
  - (ii) U.S. patents could be litigated abroad through forum-selection clauses;
  - (iii) the USITC hears patent cases; and
  - (iv) foreign courts have litigated U.S. copyright.





- Onesta's arguments are irrelevant to Congress's intent for Article III courts to have exclusive jurisdiction over U.S. patent disputes.

**Onesta's inapt comparisons to private (arbitration and forum selection) agreements, USITC cases, and copyright fail both individually and collectively.**

44

## Threat 1(c): Onesta Threatens U.S. Congress's Intent for U.S. Courts To Have Exclusive Jurisdiction over U.S. Patent Cases

- **Onesta's (i) <u>arbitration</u> and (ii) <u>forum-selection</u> arguments fail**:

    - Congress expressly authorized the use of private arbitration in patent disputes in 35 U.S.C. § 294.

    - Arbitration and forum selection agreements are both voluntary and contractual.

    - In this case, there are no party agreements.

    - Private (arbitration and forum selection) agreements are very different from a foreign court adjudicating—*and imposing a contested injunction based on*—a U.S. patent.



**Private (arbitration and forum selection) agreements, that do not exist between the parties here, are irrelevant to Onesta's ability to enforce U.S. patents in Munich against BMW.**

45

## Threat 1(c): Onesta Threatens U.S. Congress's Intent for U.S. Courts To Have Exclusive Jurisdiction over U.S. Patent Cases

- **Onesta's (iii) <u>ITC</u> argument fails**:
  - The ITC derives its authority not from the Patent Act but Section 337 of the Tariff Act of 1930, 19 U.S.C. §1337.
  - ITC case are *in rem* cases—authority is over the goods themselves, not parties.
  - Congress mandated that ITC patent case appeals only go to Federal Circuit—a foreign court's decision never will.
  - Onesta thus clearly frustrates U.S. policy by its unprecedented attempt to rip U.S. patent cases away from U.S. courts.



> **Onesta's attempt to litigate a U.S. patent frustrates U.S. Policy regarding Congress's intended appellate framework for patent cases, including ITC patent cases, to be appealed to the Federal Circuit.**

## Threat 1(c): Onesta Threatens U.S. Congress's Intent for U.S. Courts To Have Exclusive Jurisdiction over U.S. Patent Cases

- **Onesta's (iv) <u>copyright</u> argument fails.**

  – Onesta asserts: "The Ninth Circuit has already determined that 28 U.S.C. §1338 does not prohibit enforcement of U.S. copyrights in foreign courts …. There is no reason to treat patents differently." Opp. 9.

  **WRONG**

  – Ninth Circuit copyright law is **not** equivalent to U.S. patent law for many reasons, including those identified by the same 30-year-old-split-decision on which Onesta relies.
    - *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995).

**Onesta's analogy of Ninth Circuit copyright law to U.S. patent law to justify unprecedented extraterritorial litigation of U.S. patents is superficial at best.**

47

# Threat 1(c): Onesta Threatens U.S. Congress's Intent for U.S. Courts To Have Exclusive Jurisdiction over U.S. Patent Cases

- **Copyright ≠ Patent**
- Copyright lacks any form of centralization of jurisdiction
  - 28 U.S.C. § 1295, granting exclusive appellate jurisdiction to the CAFC, demonstrates Congress's intent to centralize patent jurisdiction in the federal judiciary excluding a hodgepodge of regional tribunals.
- The Patent Act has stricter venue requirements in 28 U.S.C. § 1400(b)
  - For copyright, there "is not the same type of mandatory venue provision" found in other statutes containing a specific "privilege of venue, granted by the legislative body which created th[e] right of action." *Creative Tech*, 61 F.3d at 700.
- Patents lack reciprocal enforcement of foreign rights in the U.S.
  - *Creative* relies on reciprocity in the applicable copyright conventions, 61 F.3d at 700, whereas the Federal Circuit rejected such U.S. enforcement, *Voda*, 476 F.3d at 898–904.

**Onesta's copyright analogy fails because it ignores the fundamental, statutory, and structural differences that distinguish copyright law from patent law.**

## Threat 1(c): Onesta's Munich Litigation Frustrates U.S. Policy Regarding the Presumption Against Extraterritoriality

- Onesta's attempt to disrupt Congress's intent for exclusive federal jurisdiction of patent disputes through extraterritorial forum shopping must be prevented.

- It bears worth repeating, the Federal Circuit counseled:

> "Foreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity and to preclude forum shopping."

*Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007) (citing *Empagran S.A.*, 542 U.S. 155, 168-69 (2004))

**Unless stopped with an ASI, Onesta's extraterritorial forum shopping will spawn a race to the bottom, away from the congressionally mandated order of U.S. courts.**

49

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

✔ Satisfied I. Presence of **at least one** *Unterweser* threat:

✔ Satisfied Threat 1. Frustration of U.S. public policy (any one of):



✔ Satisfied 1.a.    Duty to protect jurisdiction

✔ Satisfied 1.b.    Right to a jury

✔ Satisfied 1.c.    Exclusive jurisdiction

          1.d.    Public interest

    Threat 2. Vexatious or oppressive litigation (any one of):

          2.a.    Inequitable hardship

          2.b.    Inefficient

          2.c.    Duplicative

    Threat 3. Prejudice or offense to equitable principles (any one of):

          3.a.    Patent misuse

          3.b.    Improper injunctions

II.    Threats outweigh comity concerns

> **BMW thus shows Onesta's foreign litigation (1) frustrates U.S. public policy regarding (c) the U.S.'s established presumption against extraterritoriality.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.  Presence of **at least one** *Unterweser* threat:
    - Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
      - 1.a.    Duty to protect jurisdiction
      - 1.b.    Right to a jury
      - 1.c.    Exclusive jurisdiction
      - **Disputed**  1.d.    Public interest
    - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
      - 2.a.    Inequitable hardship
      - 2.b.    Inefficient
      - 2.c.    Duplicative
    - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
      - 3.a.    Patent misuse
      - 3.b.    Improper injunctions
  - II.  Threats outweigh comity concerns



**Furthermore, Onesta's Munich litigation (1) frustrates U.S. public policy by threatening (d) American public interest.**

## Threat 1(d): Onesta's Munich Litigation Frustrates U.S. Policy Regarding Public Interest

- The public has a vital interest in making sure that ***only valid and enforceable patents*** receive a limited monopoly.

> "The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope."



*Precision Instr. Mfg. Co. v. Auto. Maint. Mach.*, 324 U.S. 806, 816 (1945)

- Ensuring patents do not overreach is invaluable and preventing assertion of invalid or unenforceable patents safeguards the public interest.

**The public has a vital interest in ensuring that patent-monopoly rights extend only to patents that are valid and enforceable. This Court should issue an ASI to guard against Onesta's attempt to circumvent the U.S. courts and public.**

## Threat 1(d): Onesta's Munich Litigation Frustrates U.S. Policy Regarding Public Interest

- **_IF_** the Munich court considers and finds invalidity, that would not preclude future U.S. litigation.
- Any Munich invalidity finding would only operate *inter partes*
  - It only binds the parties to the case.
- Onesta suggests that a Munich judgment will be subject to the same collateral estoppel standard. Citing *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333 (1971).   **WRONG**
- In Munich, **without access to discovery**, neither party can be said to have had "**a fair opportunity** procedurally, substantively and **evidentially** to pursue his claim the first time." *Blonder-Tongue*, 402 U.S. at 333.

> **Litigating in Munich presents Onesta with a win-win scenario: a victory on infringement against BMW resulting in damages and/or an injunction, but a loss on invalidity leaves Onesta free to assert its patents again elsewhere.**

## Threat 1(d): Onesta's Munich Litigation Frustrates U.S. Policy Regarding Public Interest

- **Onesta is clearly willing to assert questionable patents.**
- Both the USPTO and the ITC indicated Onesta's '381 patent is invalid.
- *ITC Investigation:*
  - In 2022 Investigation, the ITC issued a decision that explicitly had "proven the invalidity" of some claims of Onesta's patent.
- *IPR Proceeding:*
  - In a 2023 IPR, the USPTO found a reasonable likelihood that certain claims of Onesta's patent were invalid.
- Onesta nevertheless proceeds to assert this checkered patent in Munich.

**Onesta has shown a willingness to assert patents that are, at best, questionably valid, and Onesta continues this trend in Germany.**

## Threat 1(d): Onesta's Munich Litigation Frustrates U.S. Policy Regarding Public Interest

- **Patent remedies are <u>always</u> affected with a public interest: U.S. consumers left to pay more or with fewer choices.**

"[Our legislation] do[es] not, and [was] not intended to, operate beyond the limits of the United States, and *we correspondingly reject the claims of others to such control over our markets.*"

*Deepsouth*, 406 U.S. at 531 (citation omitted) (emphasis added)

- Only U.S. courts should decide infringement and validity of U.S. patents—with judges appointed by an elected president and confirmed by the Senate, and facts found by juries.

**Undisputed by Onesta: An ASI protects this vital public interest in policing U.S. patent monopolies domestically, by the appropriate U.S. judge and jury.**

55

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**



✔ **Satisfied** I. Presence of at least one *Unterweser* threat:
  ✔ **Satisfied** Threat 1. Frustration of U.S. public policy (any one of):
    ✔ **Satisfied** 1.a.     Duty to protect jurisdiction
    ✔ **Satisfied** 1.b.     Right to a jury
    ✔ **Satisfied** 1.c.     Exclusive jurisdiction
    ✔ **Satisfied** 1.d.     Public interest
  Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
    2.a.     Inequitable hardship
    2.b.     Inefficient
    2.c.     Duplicative
  Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
    3.a.     Patent misuse
    3.b.     Improper injunctions
II.   Threats outweigh comity concerns



**BMW shows that Onesta's Munich litigation (1) frustrates U.S. policy, for four reasons (1)(a)-(1)(d), each of which is an independent basis warranting an ASI.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  I. Presence of **at least one** *Unterweser* threat:

    Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
    - 1.a.    Duty to protect jurisdiction
    - 1.b.    Right to a jury
    - 1.c.    Exclusive jurisdiction
    - 1.d.    Public interest

    **Disputed**   Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
    - 2.a.    Inequitable hardship
    - 2.b.    Inefficient
    - 2.c.    Duplicative

    Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
    - 3.a.    Patent misuse
    - 3.b.    Improper injunctions

  II.   Threats outweigh comity concerns



> **BMW shows many more independent bases that warrant an ASI, namely, that Onesta's foreign litigation is (2) vexatious or oppressive, for each of three reasons (2)(a)–(2)(c).**

## Threat 2:
## Onesta's Munich Case Is Vexatious or Oppressive

- **When is foreign litigation "vexatious or oppressive"?**
- In the Fifth Circuit:



"To determine whether proceedings in another forum constitute "vexatious or oppressive" litigation that threatens the court's jurisdiction, the domestic court considers whether the following interrelated factors are present: ([a]) inequitable hardship resulting from the foreign suit; ([b]) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and ([c]) the extent to which the foreign suit is duplicative of the litigation in the United States."

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020)

**Onesta's Munich litigation is (2) vexatious or oppressive litigation because it (a) results in inequitable hardship; (b) frustrates the efficient determination of the case; and/or (c) is duplicative of the WDTX case.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.  Presence of **at least one** *Unterweser* threat:
    - Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
      - 1.a.    Duty to protect jurisdiction
      - 1.b.    Right to a jury
      - 1.c.    Exclusive jurisdiction
      - 1.d.    Public interest
    - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
      - **Disputed**  2.a.    Inequitable hardship
      - 2.b.    Inefficient
      - 2.c.    Duplicative
    - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
      - 3.a.    Patent misuse
      - 3.b.    Improper injunctions
  - II.   Threats outweigh comity concerns



**For example, Onesta's foreign litigation is (2) vexatious or oppressive because it results in (a) inequitable hardship.**

## Threat 2(a): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Creates Inequitable Hardship

- **The Munich litigation imposes "inequitable hardship"** through "unwarranted inconvenience [and] expense."

  – Onesta—a Delaware NPE—improperly filed suit in Munich on claims related to those it was already litigating in WDTX against Qualcomm.

  – BMW was forced to file this DJ action to combat Onesta's improper and unprecedented assertion of U.S. patents in Germany.

- Onesta cannot meaningfully argue that it suffers "inequitable hardship" litigating in WDTX, where it availed itself of jurisdiction.



October 9, 2025 Onesta improperly sued BMW, Qualcomm's indirect customer, in the Munich Regional Court I.

> **Onesta's unprecedent assertion of U.S. patents in a foreign country forced BMW to bear the inconvenience and expense of overlapping litigations great distances apart to pursue litigation of Onesta's U.S. patents in a proper forum.**

## Threat 2(a): BMW Could Have Avoided Unwarranted Inconvenience and Expense Had Onesta Filed in the U.S.

- **Onesta's Munich filing evades the customer-suit exception.**
- Onesta asserts "[t]he customer-suit exception has no relevance here." 
- In Munich, the <u>accused product is Qualcomm's chips</u>.
- Had Onesta properly filed in the U.S.:
  - BMW could seek a U.S. stay after Qualcomm pursued declaratory relief addressing Onesta's new claims: (e.g., <u>in Onesta's current suit against Qualcomm in WDTX</u>)



**April 17, 2025**
Onesta asserted the '381 patent against Qualcomm in WDTX.

**Onesta's Munich filing improperly weaponizes a foreign forum to eliminate BMW's U.S. procedural protections, particularly the customer-suit exception, that could have applied had Onesta properly brought suit in the U.S.**

61

## Threat 2(a): Onesta's Timing of Its Improper "First-Filed" Foreign Litigation Carries No Weight

- **Onesta tries to distract this Court from the key issues.**
- Onesta claims "no inequitable hardship" because the Munich action is a "single, efficient, first-filed" case. **Onesta is wrong.**

    **WRONG**

  - The first-filed rule does not apply to foreign courts.

  "The rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty."

  *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981)

- Does Onesta's notice regarding an AASI moot its "first-filed" argument?

**Onesta's "first-filed" status makes no difference here. Such a rule would encourage a bad policy of racing to forum-shopped courts to obtain international injunctions—exactly what Onesta attempted in Munich.**

## Threat 2(a): Onesta's Arguments on Expenses Are Disconnected from Fifth Circuit Law

- **Onesta argues "At bottom, BMW is complaining about litigation costs."**
  - Onesta accuses BMW of "failing to inform this Court that the German court system is a loser-pays system."
  - Onesta also incorrectly cites to Federal Circuit law on "irreparable injury" to argue against "inequitable hardship."



- BMW's arguments extend far beyond merely cost, German loser-pays system does not change this and would cover only a <u>fraction</u> of the actual cost.
- Regardless the Fifth Circuit expressly provides:

"Under our caselaw, unwarranted inconvenience [and] *expense* can suffice to constitute hardship meriting an anti-suit injunction."

*Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582 (5th Cir. 2023)

**BMW's hardship is far more than only cost and, nevertheless, in this case unwarranted expense alone justifies the anti-suit injunction that BMW seeks under the Fifth Circuit's well-established ASI framework.**

63

## Threat 2(a): Penalties Available in the Munich Court Are a Quintessential Inequitable Hardship

- **The Munich court can levy severe penalties on BMW and its executives, including imprisonment.**

  "If unwarranted inconvenience and expense present sufficient hardship to support an anti-suit injunction, surely jailtime and seizure of property also suffice."

  *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582 (5th Cir. 2023)

- A Munich injunction could expose BMW and its executives to fines up to €250,000 per violation or even imprisonment.
  - These risks are real: in 2023 the Munich court fined Netflix more than €7 million and authorized jailtime for managers.

**The choice between defending U.S. rights and risking jail or massive fines abroad is a quintessential inequitable hardship—Onesta's notice should not be allowed to confuse the issue, an ASI is still needed.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

✔ **Satisfied**  I.  [Presence of] **at least one** *Unterweser* threat:



✔ **Satisfied**  Threat 1. Frustration of U.S. public policy (<u>any one of</u>):

✔ **Satisfied**  1.a.    Duty to protect jurisdiction
✔ **Satisfied**  1.b.    Right to a jury
✔ **Satisfied**  1.c.    Exclusive jurisdiction
✔ **Satisfied**  1.d.    Public interest

✔ **Satisfied**  Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):

✔ **Satisfied**  2.a.    Inequitable hardship
2.b.    Inefficient
2.c.    Duplicative

Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
3.a.    Patent misuse
3.b.    Improper injunctions

II.   Threats outweigh comity concerns



**BMW has shown that Onesta's foreign litigation is (2) vexatious or oppressive because it results in (a) inequitable hardship, which alone warrants an ASI.**

65

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

    I.    Presence of **at least one** *Unterweser* threat:

    Threat 1. Frustration of U.S. public policy (<u>any one of</u>):

        1.a.    Duty to protect jurisdiction
        1.b.    Right to a jury
        1.c.    Exclusive jurisdiction
        1.d.    Public interest

    Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):

        2.a.    Inequitable hardship
        **Disputed** 2.b.    Inefficient
        2.c.    Duplicative

    Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):

        3.a.    Patent misuse
        3.b.    Improper injunctions

    II.   Threats outweigh comity concerns



**Threat 2 is also satisfied because Onesta's foreign litigation is (2) vexatious or oppressive because it has the ability to—and will, absent an ASI—(b) frustrate and delay the speedy and efficient determination of this cause.**

## Threat 2(b): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Is Inefficient and Error Prone

- **Munich litigating a U.S. patent offends judicial economy.**
- The Federal Circuit reasoned that judicial economy supported their decision to **decline** to do exactly what the Munich Court is trying to do in this case— adjudicate another country's patent.



"The assertion of... jurisdiction over [a foreign] infringement claim would in effect result in the trial court having to conduct two separate trials at one time… The governing laws of the foreign courts differ in important ways... Examining foreign law, compared with American law means… appeals, and more proceedings[,] procedural costs and delays…. Accordingly, … unreasonable interference with the authority of other sovereigns dictate in this case [to] decline… jurisdiction…. [of a foreign patent]."

*Voda v. Cordis Corp.*, 476 F.3d 887, 895, 903 (Fed. Cir. 2007) (cleaned up)

**In *Voda*, the Federal Circuit considered comity and disapproved of one country adjudicating the patents of another.**

67

## Threat 2(b): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Is Inefficient and Error Prone

- **Simultaneous proceedings in Munich are inefficient.**
  - The German process is front-loaded and forces BMW to take premature substantive positions without the benefit of U.S. discovery.
  - German judges, unfamiliar with U.S. patent law, must apply substantive U.S. doctrines, requiring BMW to prepare extensive U.S.-law expert reports that would be unnecessary in this Court.
  - The Munich court's lack of discovery means its factfinders will act on less information, increasing the risk of error and unnecessary appeals.
- This Court is the more efficient and accurate forum for resolving the U.S. patents, and an ASI would prevent wasteful parallel litigation, avoid the risk of conflicting decisions, and avoid unnecessary appeals.

> **Onesta's foreign litigation delays and complicates this case by forcing premature, discovery-free, and procedurally incompatible parallel proceedings in a court unfamiliar with U.S. patent law.**

## Threat 2(b): Onesta's Foreign Litigation Is Vexatious or Oppressive Because of Inequitable Hardship

- **Munich lacks important safeguards that exist in U.S. Courts.**
- Munich lacks the procedural safeguards that Congress built into U.S. patent law: jury trials, meaningful discovery, and a measured schedule that allows for full development of the record
- Onesta purposefully chose Munich to avoid these safeguards.
- German procedure forces BMW to defend complex U.S.-law infringement claims before a German judge with inadequate knowledge.
- These structural deficiencies make Munich an inefficient, inaccurate, and fundamentally unfair venue.

> **Munich's procedural shortcomings make it an inappropriate and inefficient forum for U.S.-patent disputes, and Onesta's attempt to exploit those deficiencies only reinforces why this case must be litigated in a U.S. court.**

69

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**



✔ [Satisfied] I. [Presence of] **at least one** *Unterweser* threat:

  ✔ [Satisfied] Threat 1. Frustration of U.S. public policy (any one of):

    ✔ [Satisfied] 1.a.    Duty to protect jurisdiction

    ✔ [Satisfied] 1.b.    Right to a jury

    ✔ [Satisfied] 1.c.    Exclusive jurisdiction

    ✔ [Satisfied] 1.d.    Public interest

  ✔ [Satisfied] Threat 2. Vexatious or oppressive litigation (any one of):

    ✔ [Satisfied] 2.a.    Inequitable hardship

    ✔ [Satisfied] 2.b.    Inefficient

    2.c.    Duplicative

  Threat 3. Prejudice or offense to equitable principles (any one of):

    3.a.    Patent misuse

    3.b.    Improper injunctions

  II.   Threats outweigh comity concerns



**BMW has thus shown that Onesta's foreign litigation is (2) vexatious or oppressive because it has the ability to—and will, absent an ASI—(b) frustrate and delay the speedy and efficient determination of this cause.**

70

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
    - I.  Presence of **at least one** *Unterweser* threat:
        - Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
            - 1.a.  Duty to protect jurisdiction
            - 1.b.  Right to a jury
            - 1.c.  Exclusive jurisdiction
            - 1.d.  Public interest
        - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
            - 2.a.  Inequitable hardship
            - 2.b.  Inefficient
            - **Disputed** 2.c.  Duplicative
        - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
            - 3.a.  Patent misuse
            - 3.b.  Improper injunctions
    - II.  Threats outweigh comity concerns



**Onesta's foreign litigation is (2) vexatious and oppressive because (c) it is indisputably highly duplicative of this case before this Court.**

## Threat 2(c): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Is Highly Duplicative of This Case

- **Multiple Fifth Circuit cases have found the same action in a foreign forum thousands of miles away is duplicative, vexatious, and warrants an ASI.**

"[I]n… *Unterweser*… [e]mphasizing… the need to prevent vexatious or oppressive litigation, we concluded that a district court does not abuse its discretion by issuing an antisuit injunction when [there is] simultaneous prosecution of the same action in a foreign forum thousands of miles away… Given the… duplicative and vexatious nature of the [foreign] action, we conclude that the district court did not abuse its discretion by barring the prosecution of the foreign litigation…. [T]he prosecution of the [foreign] action would entail an absurd duplication of effort…. [O]ur holding today … is to prevent multiplicity of actions and to achieve resolution in a single suit of all disputes arising out of common matters."



*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626–28, n.4 (5th Cir. 1996).

**Like these other Fifth Circuit cases, the simultaneous prosecution of this case and Onesta's Munich litigation would similarly be an inefficient "absurd duplication of effort."**

72

## Threat 2(c): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Is Highly Duplicative of This Case

- **The Fifth Circuit defines duplicative suits as those involving the same or similar legal bases or identical claims:**

  "We find suits to be duplicative where they involve the same or similar legal bases, or identical claims."

  *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 564 (5th Cir. 2020) (internal quotations and citations omitted)



- **The Fifth Circuit has recognized parallel lawsuits in the U.S. and Europe is "an absurd duplication of effort":**

  "[There is] 'an absurd duplication of effort' where a party had 'parallel lawsuits' in the United States and France."

  *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 564 n.2 (5th Cir. 2020) (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 430–31 (7th Cir. 1993))

**Both this WDTX case and the Munich cases asserting U.S. patents either do or will involve identical legal theories, and litigating these parallel suits would be "an absurd duplication of effort."**

73

## Threat 2(c): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Is Highly Duplicative of This Case

- Onesta's claim that its foreign litigation is not "fully duplicative" ignores that **two of the three German actions assert only the U.S. patents**—those are indisputably duplicative of this Action.

  

  - The inverse is not true as the **Munich result will not have collateral estoppel effect** here: <u>without access to discovery</u>, neither party can be said to have had "<u>a fair opportunity</u> procedurally, substantively and <u>evidentially</u> to pursue his claim the first time." *Blonder-Tongue*, 402 U.S. at 333.

- Duplicative suits exist where cases involve similar legal bases or identical claims, and here the Munich U.S.-patent actions replicate the very issues this Court will adjudicate.

> **Unless Onesta abandons its compulsory counterclaims, this U.S. case is indisputably fully duplicative of its U.S. patent claims in Germany. An issue it conveniently dodged by requesting an extension for its time to Answer.**

74

## Threat 2(c): Onesta's Foreign Litigation Is Vexatious or Oppressive Because It Is Highly Duplicative of This Case

- **BMW understands that Onesta's January 8, 2026 Notice means that an AASI is off the table.**

  – **This case is therefore going forward.**

  

  – Allowing the **Munich** litigation to also go forward is an "absurd duplication of effort."

  – Without an ASI and to allow the Munich case to go forward would therefore be both inefficient and create unwarranted inconvenience and expense.

  

**WDTX is moving forward,** an ASI will prevent the needless duplication, inconvenience, and expense of Munich's vexatious and oppressive parallel litigation.

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**



- ✔ **Satisfied** I. Presence of **at least one** *Unterweser* threat:
  - ✔ **Satisfied** Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
    - ✔ **Satisfied** 1.a. Duty to protect jurisdiction
    - ✔ **Satisfied** 1.b. Right to a jury
    - ✔ **Satisfied** 1.c. Exclusive jurisdiction
    - ✔ **Satisfied** 1.d. Public interest
  - ✔ **Satisfied** Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
    - ✔ **Satisfied** 2.a. Inequitable hardship
    - ✔ **Satisfied** 2.b. Inefficient
    - ✔ **Satisfied** 2.c. Duplicative
  - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
    - 3.a. Patent misuse
    - 3.b. Improper injunctions
- II. Threats outweigh comity concerns



> **Onesta's Munich litigation is thus (2) vexatious or oppressive for three reasons (2)(a)-(2)(c), each of which is an independent basis warranting an ASI.**

76

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**

    I.    Presence of **at least one** *Unterweser* threat:

    Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
    - 1.a.    Duty to protect jurisdiction
    - 1.b.    Right to a jury
    - 1.c.    Exclusive jurisdiction
    - 1.d.    Public interest

    Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
    - 2.a.    Inequitable hardship
    - 2.b.    Inefficient
    - 2.c.    Duplicative

    **Partially Disputed**  Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
    - 3.a.    Patent misuse
    - 3.b.    Improper injunctions

    II.    Threats outweigh comity concerns



**Threat 3 is satisfied because Onesta's Munich litigation qualifies as (3) prejudice or offense to equitable principles for multiple reasons, e.g., (3)(a) and (3)(b).**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.   Presence of **at least one** *Unterweser* threat:
    - Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
      - 1.a.  Duty to protect jurisdiction
      - 1.b.  Right to a jury
      - 1.c.  Exclusive jurisdiction
      - 1.d.  Public interest
    - Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
      - 2.a.  Inequitable hardship
      - 2.b.  Inefficient
      - 2.c.  Duplicative
    - Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
      - **Partially Disputed**   3.a.  Patent misuse
      - 3.b.  Improper injunctions
  - II.   Threats outweigh comity concerns





One reason that Onesta's foreign litigation (3) is prejudice of offense to equitable principles is because (a) Onesta engages in patent misuse.

78

## Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **What is Patent Misuse?**

  "[T]he Supreme Court established the basic rule of patent misuse: that the patentee… may not use [its patent] to acquire a monopoly not embraced in the patent.… In our cases applying the Supreme Court's patent misuse decisions, we have characterized patent misuse as the patentee's act of impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect."

  

  *Princo Corp. v. ITC*, 616 F.3d 1318, 1327-28 (Fed. Cir. 2010) (en banc) (cleaned up)

- Onesta improperly broadens the (i) temporal scope or (ii) physical scope of its patents, and (iii) litigating in Munich has anticompetitive effects.

- **Onesta therefore engages in patent misuse.**

  **Onesta's engages in patent misuse by impermissibly broadening the (i) temporal or (ii) physical scope of its patents in Munich with (iii) anticompetitive effect.**

79

## Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **(i) Improper Temporal Expansion:**
- Onesta impermissibly expands the **temporal** scope of its patents.
  - o  Congress expressly set a limit on patent damages:

  "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint…."

  35 U.S.C. § 286

- Onesta improperly **seeks damages beyond this 6-year limitation**.
  - – *At best*, Onesta is *only* entitled to damages 6 years before filing its Munich complaint.
  - – Onesta filed its Munich complaint on October 9, 2025.
  - – *At best*, Onesta is *only* entitled to damages no earlier than October 9, 2019.
  - – But Onesta's Munich complaint seeks damages dating <u>as far back as June 14, 2013</u>.

  **Undisputed**

**Onesta improperly expands the temporal scope of its patents by seeking damages in Munich beyond § 286's 6-year limit.**

# Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **(i) Improper Temporal Expansion:**



Onesta Demands '209 Patent Damages in Germany Back to: **Jun. 14, 2013** **More than DOUBLE the Lawful Limit**

Onesta Demands '381 Patent Damages in Germany Back to: **Apr. 14, 2018** **More than 1 Year Over the Lawful Limit**

6 Years Before Filing of Munich Complaint: Oct. 9, 2019

Filing Date of Munich Complaint: Oct. 9, 2025

**Only Permissible American Damages Period**

Undisputed

**Onesta's German Damages Demand for the '381 Patent**

Undisputed

**Onesta's German Damages Demand for the '209 Patent**

Undisputed

2012　2013　2014　2015　2016　2017　2018　2019　2020　2021　2022　2023　2024　2025　2026

**Onesta seeks damages in Germany more than DOUBLE what is legally permissible in the United States, which is an improper and unlawful temporal expansion of Onesta's patent rights that constitutes patent misuse.**

## Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **(ii) Improper Physical Expansion:**
- Onesta impermissibly expands the **physical** scope of its patents:
  - Onesta has done something inappropriate and unprecedented.
  - Onesta filed a patent infringement suit 4,000 miles away **in Germany** asserting U.S. patents.
  - Because, to our knowledge, no one has ever done this before, this may be an issue of first impression that this Court is best equipped to decide.
  - Onesta's alarming decision to assert U.S. patents in Munich, coupled with the unsettling that relief it seeks there, among other things, constitutes an improper expansion of the physical scope of its patents constituting patent misuse.

> **Onesta's unfounded assertion of U.S. patents in Munich in an impermissible expansion of the physical scope of its patents.**

82

## Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **(iii) Anti-Competitive Effect:**

> "[An action has anticompetitive effect when it causes] an unreasonable restraint on competition, taking into account a variety of factors."

*Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997)



- Onesta has engaged in jurisdictional gamesmanship that causes an unreasonable restraint on competition and thus constitutes anticompetitive effects by:
  - *Leveraging foreign procedural asymmetries* that deny BMW core protections— e.g., its <u>jury right</u>, <u>discovery</u>, and <u>appeals to the Federal Circuit</u>—that would otherwise be available to BMW had Onesta properly filed suit in the U.S.; and
  - *Exerting undue pressure on BMW* to take a license to avoid the expense, burden, and uncertainty of defending a U.S. patent—<u>and an improper injunction</u>—in a foreign court, all of *which restrains BMW's ability to compete in the U.S. market.*

**Onesta's foreign assertion of U.S. patents has a multitude of anticompetitive effects that cause unreasonable restraints on trade, e.g., related to the pressure of an improper German injunction that would indisputably distort U.S. markets.**

## Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **Patent misuse**
  - **Onesta *only* makes two arguments: The first is wrong.**
  - First, Onesta argues that seeking damages beyond the six-year statutory time frame is **not "*per se*"** patent misuse.    *WRONG*
    - Not only is Onesta wrong for the reasons already discussed, ***even if Onesta were right***, **this Court *still* could (and should) find patent misuse exists in this case.**
      - Onesta <u>declined to inform</u> the Munich Court about this statutory damages limitation.
      - There are two categories of patent misuse: (1) "Per se" patent misuse and (2) more broadly, patent misuse under the "rule of reason" doctrine.
      - Even if there is no (1) "per se" patent misuse, this Court could (and should) find patent misuse under (2) the "rule of reason" (which is an argument Onesta waived because Onesta only argues there is no "per se" patent misuse), which broadly applies equitable principles for relief, just like the Fifth Circuit's ASI framework.
  - **This Court should find patent misuse under either applicable doctrine.**

**Even though Onesta is wrong that there is no "per se" patent misuse, this Court can still find patent misuse under the "rule of reason," which Onesta does not dispute.**

## Threat 3(a): Onesta Causes Prejudice or Offends Other Equitable Principles by Patent Misuse

- **Patent misuse**
  - **Onesta *only* makes two arguments: The second is irrelevant.**
  - Second, Onesta argues that BMW can raise the misuse arguments in the Munich court.

    *IRRELEVANT*
  - For reasons already discussed, adjudicating U.S. patents in Munich would have far reaching and massive negative consequences, not only for BMW, but also **for the United States of America**.
  - Whether foreign adjudication of a U.S. patent should be considered a new category of patent misuse may be an issue of first impression.

**Even if a patent misuse defense is somehow available in Munich, issues of first impression should be left to U.S. courts trained to read and develop common law.**

85

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  I.   Presence of **at least one** *Unterweser* threat:
       Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
       - 1.a.    Duty to protect jurisdiction
       - 1.b.    Right to a jury
       - 1.c.    Exclusive jurisdiction
       - 1.d.    Public interest
       
       Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
       - 2.a.    Inequitable hardship
       - 2.b.    Inefficient
       - 2.c.    Duplicative
       
       Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
       
       ✔  Satisfied
       - 3.a.    Patent misuse
       - 3.b.    Improper injunctions
  II.  Threats outweigh comity concerns



**One reason threat 3 is satisfied is because (a) Onesta's Munich litigation qualifies as patent misuse that is prejudice or offense to equitable principles.**

## The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.  Presence of **at least one** *Unterweser* threat:
    Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
    - 1.a.  Duty to protect jurisdiction
    - 1.b.  Right to a jury
    - 1.c.  Exclusive jurisdiction
    - 1.d.  Public interest

    Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
    - 2.a.  Inequitable hardship
    - 2.b.  Inefficient
    - 2.c.  Duplicative

    Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
    - 3.a.  Patent misuse
    - **Partially Disputed**  3.b.  Improper injunctions
  - II.  Threats outweigh comity concerns



**Another reason threat 3 is satisfied is because (b) Onesta improperly seeks injunctions in Munich—that it knows it is not entitled to and that it did not seek in the U.S.—which also qualifies as prejudice or offense to equitable principles.**

## Threat 3(b): Onesta Causes Prejudice or Offends Other Equitable Principles by Seeking Injunctions in Germany

- **<u>Injunctions</u>**
  - Under *eBay*, Onesta's <u>*own U.S. law expert*</u>, former <u>*Chief Judge Randall Rader*</u>, has explained that "only a patent owner with a presence in the market can even attempt to prove entitlement to an injunction. . . . [Others] <u>*need not even apply; they cannot qualify*</u>." Dkt. 7-16 at 6.
    - Onesta is "a patent management and licensing company," 337-1450 Compl. ¶ 7, with no presence in the market.
    - Onesta did not seek any injunction on overlapping U.S. patent assertions in this Court.
  - Onesta is seeking precisely that leverage through Munich, where injunctive relief is practically easier for NPEs, and then using the threat to pressure BMW.

> **Onesta's choice to seek an injunction in Munich while not seeking comparable relief in U.S. court shows inequitable forum shopping for injunctive leverage**

## Threat 3(b): Onesta Causes Prejudice or Offends Other Equitable Principles by Seeking Injunctions in Germany

- **Injunctions**
  - **Onesta argues:**
    
    <span style="float:right">**Disputed**</span>
    - ❑ BMW can argue in Munich that Onesta is not entitled to an injunction under *eBay*.
    - ❑ There is no basis to assume an injunction in Germany is easier to obtain because the Munich court would apply U.S. law.
    - ❑ Seeking an injunction is consistent with U.S. policy and traditional equity, including for non-practicing patent owners.
  - **Onesta did not dispute:**
    
    <span style="float:right">**Undisputed**</span>
    - ❑ Onesta is asking a foreign court to seek injunction to U.S. patents in the first instance.
  - **Onesta did not address:**
    
    <span style="float:right">**Undisputed**</span>
    - ❑ Onesta's inequity of seeking injunction abroad on U.S. patents while avoiding the same request in U.S. court.

**Onesta concedes Munich would apply *eBay*, but only underscores the inequity of asking a foreign court to decide U.S. injunctive entitlement on U.S. patents first.**

89

## Threat 3(b): Onesta Causes Prejudice or Offends Other Equitable Principles by Seeking Injunctions in Germany

- **<u>Injunctions</u>**

  ➤ This asymmetry raises the question: **why seek an injunction in Munich and not in the U.S.** if there is "no basis" to think Germany is easier.

  ➤ Onesta's choice to seek an injunction in Munich while not seeking comparable relief in U.S. court shows inequitable forum shopping for injunctive leverage.

  > **Onesta's decision to seek injunctive relief in Munich, while not seeking the same relief in WDTX, shows it is using foreign procedure for injunctive leverage to pressure BMW, offending equitable principles.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**



✔ **Satisfied** I. Presence of **at least one** *Unterweser* threat:

    ✔ **Satisfied** Threat 1. Frustration of U.S. public policy (any one of):

        ✔ **Satisfied** 1.a.    Duty to protect jurisdiction

        ✔ **Satisfied** 1.b.    Right to a jury

        ✔ **Satisfied** 1.c.    Exclusive jurisdiction

        ✔ **Satisfied** 1.d.    Public interest

    ✔ **Satisfied** Threat 2. Vexatious or oppressive litigation (any one of):

        ✔ **Satisfied** 2.a.    Inequitable hardship

        ✔ **Satisfied** 2.b.    Inefficient

        ✔ **Satisfied** 2.c.    Duplicative

    ✔ **Satisfied** Threat 3. Prejudice or offense to equitable principles (any one of):

        ✔ **Satisfied** 3.a.    Patent misuse

        ✔ **Satisfied** 3.b.    Improper injunctions

  II.    Threats outweigh comity concerns



**An ASI is also warranted in this case because BMW has shown two independent reasons why Onesta's Munich litigation is prejudice or offense to equitable principles.**

# The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**
  - I.    Presence of **at least one** *Unterweser* threat:

    Threat 1. Frustration of U.S. public policy (<u>any one of</u>):
    - 1.a.    Duty to protect jurisdiction
    - 1.b.    Right to a jury
    - 1.c.    Exclusive jurisdiction
    - 1.d.    Public interest

    Threat 2. Vexatious or oppressive litigation (<u>any one of</u>):
    - 2.a.    Inequitable hardship
    - 2.b.    Inefficient
    - 2.c.    Duplicative

    Threat 3. Prejudice or offense to equitable principles (<u>any one of</u>):
    - 3.a.    Patent misuse
    - 3.b.    Improper injunctions

     **Disputed**    II.    Threats outweigh comity concerns



**And finally, an ASI is warranted in this case because domestic judicial interests far outweigh any concerns of international comity.**

92

## Comity Dictates that Patents Should Be Adjudicated by the Sovereign that Issued Them

- **What is "Comity":**
  - **Respect for another forum's laws and judicial decisions.**

- But, as the Supreme Court further explained:

  "Comity ... is [not] a matter of absolute obligation...."

  *Hilton v. Guyot*, 159 U.S. 113, 163 (1895)



- **The Fifth Circuit expressly states that a U.S. District Court should not supplicate itself to a foreign tribunal.**

  "We decline ... to require a district court to genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action."

  *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996)



**This Court need not, and should not, bow down to a Munich court.**

93

## Comity Dictates that Patents Should Be Adjudicated by the Sovereign that Issued Them

- **The Federal Circuit, in *Voda*, found that comity <u>supported</u> the reciprocal relief to the ASI BMW seeks.**

  – In *Voda*, a plaintiff in W.D. Okla. sought leave to amend their U.S. patent infringement complaint to add claims of infringement of **a German patent**, among other foreign patents. The District Court granted leave, **and the Federal Circuit reversed**, reasoning:



> "[T]he norm is that patent claims are adjudicated by the courts within the jurisdiction where such patents are created.… We find that **considerations of comity**, judicial economy, convenience, fairness, and other exceptional circumstances constitute compelling reasons to … [disapprove] assuming jurisdiction [of foreign patents]."

*Voda v. Cordis Corp.*, 476 F.3d 887, 897–898 (Fed. Cir. 2007) (emphasis added)

**The Federal Circuit considered comity and rejected the District Court's attempt to litigate a German patent in the U.S.—the same is true for a German court's attempt to litigate U.S. patents.**

94

## Comity Dictates that Patents Should Be Adjudicated by the Sovereign that Issued Them

- **BMW seeks a narrowly tailored ASI**—one designed to preserve this Court's ability to adjudicate BMW's U.S. law claims in the DJ action without foreign complications.

  – The Federal Circuit indicates that adjudicating <u>U.S. patents should be left to U.S. courts</u>:

    "[A]djudication of [the] foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance."

    *Voda v. Cordis Corp.*, 476 F.3d 887, 902 (Fed. Cir. 2007)

**The requested ASI promotes comity by allowing each country to stay in their own lane.**

95

## Onesta's Munich Case Threatens to Bypass the Political Branches of the U.S. Government

- The CJEU's *BSH* decision should not be allowed to upset the centuries-old international norm where U.S. patents are litigated solely in U.S. courts.

- Onesta speaks out of both sides of its mouth when it:
  - attempts to bypass the political branches of the U.S. government by filing in Munich based on a <u>decision of the CJEU</u>, yet

    "[This case] should be resolved … by the Munich court."

    Opp. 1.

  - argues that <u>this Court</u> should wait for Congress to act.

    "Major policy decisions with international implications should be handled by the political branches of government, not the courts."

    *Id.*

**Onesta IP, LLC**

HYPOCRITICAL

WRONG

**A major policy shift—allowing U.S. patents to be litigated abroad—should not be decided by the CJEU.**

96

## Comity Dictates that U.S. Patents Should Be Adjudicated by U.S. Courts

- **U.S. Treaties <u>Do Not</u> Allow Foreign Adjudication of U.S. Patents**

- No existing international agreement between the United States and the EU allows for adjudication of U.S. patents in Munich.



"[N]othing in [the Paris Convention, the PCT, and the Agreement on TRIPS] contemplates or allows one jurisdiction to adjudicate the patents of another."

*Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007)

**Comity considerations <u>do not allow</u> for the limits imposed by ratified treaties to be subject to the whims of the CJEU and Munich.**

## The Court Should Grant an ASI under the Fifth Circuit's Controlling ASI Framework

- **The Fifth Circuit requires for an ASI:**



✔ Satisfied I.     Presence of **at least one** *Unterweser* threat:
  ✔ Satisfied Threat 1. Frustration of U.S. public policy (any one of):
    ✔ Satisfied 1.a.     Duty to protect jurisdiction
    ✔ Satisfied 1.b.     Right to a jury
    ✔ Satisfied 1.c.     Exclusive jurisdiction
    ✔ Satisfied 1.d.     Public interest
  ✔ Satisfied Threat 2. Vexatious or oppressive litigation (any one of):
    ✔ Satisfied 2.a.     Inequitable hardship
    ✔ Satisfied 2.b.     Inefficient
    ✔ Satisfied 2.c.     Duplicative
  ✔ Satisfied Threat 3. Prejudice or offense to equitable principles (any one of):
    ✔ Satisfied 3.a.     Patent misuse
    ✔ Satisfied 3.b.     Improper injunctions
✔ Satisfied II.     Threats outweigh comity concerns



**BMW thus has provided nine independent bases using which this Court can, and should, issue BMW's Motion for an Anti-Suit Injunction.**

98

# BMW's ASI Hearing Roadmap

Who is Onesta, and what has it done?

How and why has Onesta sued in Germany on a U.S. patent?

Why is BMW seeking an ASI?

This Court should grant an ASI based on the Fifth Circuit's controlling ASI framework.

This Court should grant BMW's ASI to prevent Onesta from continuing to pursue its U.S. patent claims in Germany (and if necessary, to prevent Onesta from seeking an AASI, and convert the TRO into a Preliminary Injunction).

## BMW Seeks an ASI To Prevent Onesta from Pursuing Its U.S. Patent Claims and an AASI in Germany

- The only issue that BMW believes this Court needs resolve is whether to prevent Onesta from adjudicating U.S. patents in a foreign country.



- BMW thus respectfully requests this Court:

==Enjoin Onesta from pursuing adjudication of U.S. patents in Munich.==



**BMW respectfully requests this Court issue the requested ASI by permanently enjoining Onesta from pursuing its U.S. patent claims in Germany.**

# Why We Need an ASI Immediately?

- **Race against time:**
  - **Parallel proceedings will in fact deprive WDTX's Jurisdiction.**
    - **Onesta has already initiated actions in Munich asserting U.S. patents.**
      - Only four briefs are filed by the parties before a decision:
        1) Complaint, 2) Statement of Defense (SoD), 3) Reply to SoD, and 4) Rejoinder to Reply
      - SoDs due:
        - The '209 patent: February 24, 2026
        - The '381 patent: March 2, 2026
      - Munich decisions anticipated: Q4 2026 



*German Proceeding Schedule*

101

## BMW Seeks an ASI To Prevent Onesta from Pursuing Its U.S. Patent Claims and an AASI in Germany

- **There are other two other issues, which BMW believes are unclear because Onesta's January 8, 2026 Notice is unclear.**

- These two issues are:

  (1) BMW's request to enjoin Onesta from seeking an AASI or ASI against BMW related to U.S. Patents in Germany; and

  (2) BMW's request to maintain the status quo of the TRO by ordering a Preliminary Injunction **before midnight tonight** using the same language of the TRO and the extended TRO, including a <u>bond amount of $0</u>.

**What did Onesta mean by its January 8, 2026 Notice?**

## BMW Seeks an ASI To Prevent Onesta from Pursuing Its U.S. Patent Claims and an AASI in Germany

**Onesta's Notice is unclear.**

Onesta's January 8, 2026 Notice states:



"Onesta hereby gives NOTICE that it does not **intend** to request an AASI from the Munich court to enjoin BMW from pursuing its complaint (Dkt. 1) or anti-suit injunction motion ("ASI") (Dkt. 7) in the above-captioned case, regardless of the outcome of BMW's ASI request. ... Onesta remains opposed to all other forms of relief sought by BMW in its ASI motion and complaint."

Dkt. 24. at 1 (Jan. 8, 2026) NOTICE Regarding BMWs TRO and Injunction Motion (Dkt. 7) by Onesta IP, LLC.

- **If Onesta <u>agrees</u> it will NOT seek an ASI/AASI these two issues are moot.**

**BMW respectfully requests Onesta unequivocally state on the record at this hearing that it will NOT request or otherwise take action in pursuit of an ASI <u>or</u> AASI in Germany.**

103

## BMW's Motion for Anti-Suit Injunction

