*Exhibit B*

# Hearing on BMW's Motion for ASI; Bayerische Motoren Werke Aktiengesellschaft v. Onesta IP, LLC, WDTX-6-25-cv-00581

# There Is No Threat to This Court's Jurisdiction



> To be clear on the record, Onesta hereby gives **NOTICE** that it does not intend to request an AASI from the Munich court to enjoin BMW from pursuing its complaint (Dkt. 1) or anti-suit injunction motion ("ASI") (Dkt. 7) in the above-captioned case, regardless of the outcome of BMW's ASI request. BMW's statements to the contrary are incorrect. Onesta remains opposed to all other forms of relief sought by BMW in its ASI motion and complaint.

Dkt. 24

2

## BMW Lacks Standing To Seek An ASI Regarding Interference with This Court's Jurisdiction (Proposed Order Point 2)



"In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)



**Laidlaw is right to insist that a plaintiff must demonstrate standing separately for each form of relief sought**. *See, e.g., Lyons*, 461 U.S. at 109, 103 S.Ct. 1660 (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief); see also *Lewis v. Casey*, 518 U.S. 343, 358, n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) **("[S]tanding is not dispensed in gross.")**.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (emphasis added)



[T]his court has recognized that developments subsequent to the filing of a citizen suit may moot the citizen's case.

*Env't Conservation Org. v. City of Dallas,* 529 F.3d 519, 526 (5th Cir. 2008)

3

# Antisuit Injunctions Are an Extraordinary Remedy



"It is well established that an antisuit injunction, like all preliminary injunctions, is 'an extraordinary remedy.' *Karaha Bodas*, 335 F.3d at 363 (cleaned up)."

*MWK Recruiting Inc. v. Jowers,* 833 F. App'x 560, 564 (5th Cir. 2020)



"[T]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."

*Karaha Bodas Co., L.L.C. v. Peru. Perta.*, 335 F.3d 357, 363-64 (5th Cir. 2003) (quotations omitted)

4

# Because the German Actions Do Not Interfere With This Case, an ASI Is Unwarranted



"**When a foreign court tries to keep an American court from hearing a case, that frustrates the American litigation**. We have reversed a district court injunction where the foreign litigation was "ineffective in curtailing the ability of ... U.S. courts[ ] to enforce" the rights of the plaintiff. *Id.* at 369. **There, an American court could enforce the plaintiff's rights regardless of what the foreign court did, so there was no frustration of American litigation.** *See id.* Here, by contrast, the Indian court seeks to prevent the American litigation from proceeding. The district court's injunction is thus 'necessary to protect the court's jurisdiction.' *MacPhail v. Oceaneering Intern., Inc.*, 302 F.3d 274, 277 (5th Cir. 2002)."

*Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582–83 (5th Cir. 2023) (emphasis added)

5

## BMW's Conclusion in Reply Requests the Court to Overrule *Electrolux* and "Preserve the *Status Quo*"

international patent treaty" would warrant revisiting supplemental jurisdiction). But in the meantime, this Pandora's box is opening *now*, and an ASI here can prevent immediate irreparable harm to BMW and blaze a path for U.S. courts to preserve the *status quo*. This Court need not "genuflect before a vague and omnipotent notion of comity [before] it must decide whether to enjoin a foreign action." *Kaepa*, 76 F.3d at 627. Rather than deferring to Onesta's "[c]razy" view

Dkt. 21 at 10

6

## An ASI Should Not Be Granted to Preserve the Status Quo Because the German Action Does Not Affect the Court's Ability to Rule in This Case



"There is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy."

*Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974)

7

## BMW Cites *Compagnie* in Reply to Argue That the Order of Filing of the German and U.S. Actions is Irrelevant



"The [first-filed] rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty."

Dkt. 21 at 5-6 (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 887 (3d Cir. 1981) (emphasis added), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982))

8

## *Compagnie* Does Not Hold That the Sequence of Cases Is Irrelevant and Does Not Support BMW's Motion



"The [first-filed] rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty. *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d at 929. **Restraining a party from pursuing an action in a court of foreign jurisdiction involves delicate questions of comity and therefore "requires that such action be taken only with care and great restraint**." *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 578 (1st Cir. 1969)."

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 887 (3d Cir. 1981) (emphasis added), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

9

## BMW's Requested ASI Would Necessarily Affect the Munich Court and Compromise Comity



"Likewise, **there is no difference between addressing an injunction to the parties and addressing it to the foreign court itself**. *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841 (1849)*; see also O'Hare International Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972). Enjoining the parties necessarily affects the court and compromises "the comity which the federal courts owe to courts of other jurisdictions." *Canadian Filters (Harwich) Limited v. Lear-Siegler, Inc.*, 412 F.2d at 578."

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 887 (3d Cir. 1981) (emphasis added), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

10

# The Supreme Court Teaches That Both Cases Should Proceed in Parallel



"The general principle established "(e) arly in our history," is that one court will not interfere with or try to restrain proceedings in another in an ordinary action in personam. *Donovan v. City of Dallas*, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964). "(W)here the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939). This principle has often been applied in cases similar to the present case where one of the actions is in a foreign jurisdiction."

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 887 (3d Cir. 1981), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

11

## In February 2025, *Electrolux* Held That European Courts Have Jurisdiction to Regulate Their Citizens in Actions for Patent Infringement for Patents Worldwide

61    It follows that, under the general rule laid down in Article 4(1) of the Brussels I *bis* Regulation, the courts of the Member State in which the defendant is domiciled have, in principle, jurisdiction in an infringement action brought against that defendant by the holder of a patent granted or validated in a third State which is domiciled in another Member State. In addition, the jurisdiction of the court of the Member State thus seised does, in principle, by virtue of that general rule, extend to the question of the validity of that patent raised as a defence in the context of that infringement action.

Dkt. 7-3 at ¶ 61

12

## In October 2025, Onesta Initiated Efficient Proceedings Regarding BMW's Infringement in BMW's Home Court

- Onesta asserted two United States patents and one related European patent.
- The proceedings were filed in Munich, the location of BMW's worldwide headquarters.
- The legal and equitable claims regarding the U.S. patents are directed to BMW's conduct in the U.S.
- Claims regarding the U.S. patents will exclusively be determined under U.S. law, including *eBay*.

Dkt. 20 at 5-6

13

## The Munich Court Has Proper Jurisdiction Over Onesta's Claims

27.    Furthermore, while *Electrolux* addressed a **patent effective in, and alleged infringing activities taking place in**, Türkiye, its *ratio decidendi* applies equally to **any other third State**.  In line with the established use of the term "third State" in EU law, and absent any language limiting the term to certain third States, it is clear that the CJEU here refers to *any jurisdiction that is not an EU Member State*. **This cohort includes the United States of America**.

Dkt. 20-3 at ¶ 27 (Picht Decl.)

14

# BMW's Expert Opines That the Munich Court Will Agree That It Has Jurisdiction



99.    In sum, although in my professional viewpoint there are several open questions concerning the applicability of the BSH/Electrolux judgment to the facts of the case at hand (U.S. patents concerned, whereas BSH/Electrolux as well as all hitherto follow-up case law by lower courts concerned European (EPC) bundle patents) as well as its implementation concerning U.S. patents in the context of a bifurcated patent law system (see in the previous section), there is nonetheless a considerable likelihood that the Munich Regional Court I applies the BSH/Electrolux principles to the infringement case at hand.

Dkt. 7-7 at ¶ 99 (Leistner Decl.)

15

## BMW's Expert Argues That *Electrolux* Should Be Limited to Its Facts

60.    However, BSH/Electrolux has only directly decided the matter in a case, in which the third country, while not being an EU Member State (i.e. a third country), was still a contracting state of the EPC system and in which the patent in suit was a European bundle patent issued by the EPO. For third countries, which are not contracting states of the EPC, such as e.g. the United States in the case at hand, the question has not been specifically decided by the CJEU yet.

Dkt. 7-7 at ¶ 60 (Leistner Decl.)

16

# The Holding of *Electrolux* Is Not Limited to EPC Countries

16.    It comes as no surprise, therefore, that **well-reputed experts in cross-border patent law have already acknowledged the status of the United States of America as a third State** in the sense of *Electrolux*. For example, Finnegan's Dr. Johannes Druschel and Julia Obradovic-Walz have stated that: "Unlike the UPC that has jurisdiction only over EPs, the (national) courts of any EU member state could, however, likewise assume international jurisdiction even over patents registered in non-EPC states, such as the USA, Japan or China, in case the respective defendant is domiciled in their EU member state".[3] I understand that **Finnegan** are representing a party in the case at bar. **Willem Hoyng**, inter alia the Chairman of the Advisory Committee to the UPC, a member of the former drafting committee of the Rules of Proceedings of the UPC states: "I also think that the reasoning of the court is also valid with respect to foreign non EP patents (f.i. suing a French company in France for infringement of a German national patent and/or a UK and/or US national patent). In these cases the court will have to apply the law of the patent".[4]

# The General Professional Public Agrees That the Munich Court Has Jurisdiction Over Onesta's Claims



Earlier this year, the Court of Justice of the European Union (CJEU) issued a decision in *BSH v. Electrolux* (C-339/22) that could directly affect U.S. companies and their counsel. In particular, the Court held that courts of an EU member state can hear infringement cases involving patents granted outside the EU—even U.S. patents—when the defendant is based in the EU.[1] This applies even if the defendant raises the issue of the patent's validity by way of defense. Prior to the ruling, there was uncertainty about jurisdiction in cross-border patent disputes—the CJEU has now clarified this issue unequivocally.

Dkt. 7-12

18

# The General Professional Public Agrees That the Munich Court Has Jurisdiction Over Onesta's Claims

- **Patents registered in third countries (e.g., UK, U.S., China, and others)**: National courts of EU member states may hear infringement actions involving such patents if the defendant is domiciled in the EU[viii]. If the defendant raises a validity defense, the court hearing the infringement case may assess validity incidentally and *inter partes* without *erga omnes* effect (e.g., UKIPO, USPTO, or CNIPA records remain untouched). This may enable patent holders to enforce a worldwide patent portfolio more flexibly before EU national courts. However, EU national courts must apply foreign patent law for the foreign portion of the case (e.g., U.S. law for the U.S. portion of the case).

Dkt. 20-4

19

## The General Professional Public Agrees That the Munich Court Has Jurisdiction Over Onesta's Claims

other than in relation to European patents (whether having unitary effect or not). Although the CJEU was asked the third question in relation to non-EU European patents, it (and the Advocate General) pointedly answered the question in a broader fashion, extending this new-found jurisdiction potentially to US or Chinese patents, for example.

Dkt. 20-5

20

## If There Is a Question of German Jurisdiction, the Munich Court Should Decide It in the First Instance

- BMW improperly seeks an ASI here before the Munich Court has an opportunity to address BMW's jurisdictional objections made there. Dkt. 20-7 at 3; Dkt. 20-8 at 3.
- Should BMW's requested ASI issue, the Munich Court would not have the opportunity to address the issue.
- It is reasonable to conclude that BMW's alleged "emergency" filings here reflect BMW's assessment regarding the chance that its German jurisdictional objections will succeed.

# How Granting BMW's ASI Would Affect This Court: Isolation

- Onesta identified in Response that BMW had found no case where an antisuit injunction was issued enjoining an earlier-filed foreign case. Dkt. 20 at 11-12.
- In Reply, BMW only responded with the *Compagnie* case.
- In *Compagnie*, a U.S. court issued an ASI against a foreign action that was filed four years after the U.S. action. The Third Circuit found this ASI an abuse of discretion and reversed. Dkt. 21 at 5-6.

## How Granting BMW's ASI Would Affect This Court: Isolation

- Onesta identified multiple Circuit-level opinions allowing foreign enforcement of U.S. copyrights. Dkt. 20 at 15-16.
- In Reply, BMW identified no principled reason why patents should be treated differently here. Dkt. 21 at 2-4.

## How Granting BMW's Request Could Affect the U.S. Patent System

- Granting BMW's ASI on the terms it requested has the potential to globally devalue U.S. Patents.

# Countries Where U.S. Patents Were Enforceable Pre-*Electrolux*



# Countries Where U.S. Patents Are Currently Enforceable



# Countries Whose Patents Are Enforceable in the E.U.



# BMW's Request for Countries Whose Patents Are Enforceable in the E.U.



## BMW's Request Should Be Denied Based On BMW's Expert's Recitation of the White House's U.S. Policy

We want to protect this country, its people, its territory, its economy, and its way of life from military attack and hostile foreign influence, whether espionage, predatory trade practices . . . or any other threat to our nation. [W]e want to protect our intellectual property from foreign theft. . . . We want to halt and reverse the ongoing damage that foreign actors inflict on the American economy. . . .[109]

Dkt. 7-6 at ¶ 102 (Bagley Decl.) (quoting whitehouse.gov); *see also* Dkt. 21 at n. 4

It fundamentally *strengthens—not harms*—the United States if its allies want to hold their citizens accountable for the torts they commit in the U.S.

29

# Congressional Policy Disfavors Antisuit Injunctions



## § 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283

30

# BMW Ironically Faults Onesta for Not Suing It Here Despite BMW's Lead Counsel Representing That Texas Does Not Have Personal Jurisdiction Over BMW

**V.   ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED**

Blitzsafe's Amended Complaint should be dismissed because this Court does not have

personal jurisdiction over BMWAG, and because venue is not proper.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

BLITZSAFE TEXAS, LLC,

    *Plaintiff,*

    v.

BAYERISCHE MOTOREN WERKE AG
AND BMW OF NORTH AMERICA,
LLC,

    *Defendants.*

Case No. 2:17-CV-00418-JRG

DEFENDANT BAYERISCHE MOTOREN WERKE AG'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL
JURISDICTION

AND

DEFENDANTS BAYERISCHE MOTOREN WERKE AG'S AND BMW OF NORTH
AMERICA, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER

Dated: October 16, 2017

Respectfully submitted,

/s/ Lionel M. Lavenue
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:     (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC

Dkt. 20-9 at 1, 9, and 29

31

# To the Extent BMW Believes It Is Harmed by Having Litigation in Two Locations, It Created this Harm, Barring Equitable Relief



"Third and finally, we turn to the Government's non-strawmen arguments for its irreparable injuries. Most of these are self-inflicted and therefore do not count. See 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2021) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted")."

*State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)



"That the government's asserted harm is largely self-inflicted "severely undermines" its claim for equitable relief. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993). "[S]elf-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)."

*Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)

32

# BMW's Recitation of the Fifth Circuit Test

Fifth Circuit requirements for antisuit injunction:

1. that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation;

2. that at least one harm from the foreign litigation— referred to as *Unterweser* threats—be identified; and

3. that any *Unterweser* threats found be weighed against the need to defer to principles of international comity.

Dkt. 7 at 6 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626-28 (5th Cir. 1996) (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)))

## BMW's Recitation of the Fifth Circuit Test

Fifth Circuit requirements for antisuit injunction:

1. that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation;

2. that at least one harm from the foreign litigation— referred to as *Unterweser* threats—be identified; and

3. that any *Unterweser* threats found be weighed against the need to defer to principles of international comity.

Dkt. 7 at 6 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626-28 (5th Cir. 1996) (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)))

# BMW Admits in Reply That It Burdened This Court With "Fully Duplicative" Litigation

claims.'" *MWK*, 833 F. App'x at 564 (citations omitted). Onesta's claim that "[t]he Munich case is not fully duplicative of this case," Opp. 17, forgets that there are *three* German cases and the matter regarding the EP is not at issue here. Mot. 11, 16-17 & n.6; Ex. C. The two German cases—based on only the U.S. patents—are fully duplicative of what will be adjudicated here and should be withdrawn in Germany pursuant to an ASI to avert vexatious litigation. *See id.*

Dkt. 21 at 9

35

# BMW's Recitation of the Fifth Circuit Test

Fifth Circuit requirements for antisuit injunction:

1. that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation;

2. that at least one harm from the foreign litigation— referred to as *Unterweser* threats—be identified; and

3. that any *Unterweser* threats found be weighed against the need to defer to principles of international comity.

Dkt. 7 at 6 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626-28 (5th Cir. 1996) (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)))

## ASI Factor 2: The *Unterweser* Factors

An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would:

1. frustrate a policy of the forum issuing the injunction;
2. be vexatious or oppressive;
3. threaten the issuing court's in rem or quasi in rem jurisdiction; or
4. cause prejudice or offend other equitable principles.

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Unterweser*, 428 F.2d at 890)

37

# ASI Factor 2: The *Unterweser* Factors

An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would:

1. frustrate a policy of the forum issuing the injunction;
2. be vexatious or oppressive;
3. threaten the issuing court's in rem or quasi in rem jurisdiction; or
4. cause prejudice or offend other equitable principles.

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Unterweser*, 428 F.2d at 890)

## BMW's incorrect arguments on U.S. policy:

BMW argues that the Munich case frustrates U.S. policy because:

1. "Congress empowered federal courts to adjudicate infringement of U.S. patents";
2. the German case "indisputably deprives BMW of its right to have a jury decide infringement of U.S. patents";
3. U.S. policy is against "extraterritoriality"; and
4. the U.S. public has an interest in BMW's ability to invalidate Onesta's patents.

Dkt. 7 at 7-10

39

# BMW's Incorrect Arguments on U.S. Policy

BMW argues that the Munich case frustrates U.S. policy because:

1. "Congress empowered federal courts to adjudicate infringement of U.S. patents";
2. the German case "indisputably deprives BMW of its right to have a jury decide infringement of U.S. patents";
3. U.S. policy is against "extraterritoriality"; and
4. the U.S. public has an interest in BMW's ability to invalidate Onesta's patents.

Dkt. 7 at 7-10.

## BMW Argues That U.S. District Courts Have Exclusive Jurisdiction of Litigation Regarding U.S. Patents

courts stretching from Latvia to Greece and Portugal to Bulgaria.[2] Onesta invites the very mischief

that §1338(a) sought to avoid domestically when Congress channeled litigation of U.S. patents to

Article III courts *exclusively*. Second, *Creative* made clear that the Copyright Act has broad forum

Dkt. 21 at 3

41

# Original Jurisdiction Does Not Mean Exclusive Jurisdiction



**§ 1338. Patents, plant variety protection, copyrights, mask works, designs, trademarks, and unfair competition**

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.

28 U.S.C. § 1338(a)

# Congress Did Not Channel Exclusive Jurisdiction to the Federal Courts Because It Created the ITC





https://www.usitc.gov/press_room/about_usitc.htm; 19 U.S.C. § 1330(a); 19 U.S.C. § 1337

43

# International Arbitration of U.S. Patent Rights Is Allowed by Federal Courts

opposed to state courts) can hear infringement disputes.  But they also proceed regularly, for example, before the ITC and in private arbitration, *see* 35 U.S.C. § 294, which is permitted if not encouraged by U.S. Congressional policy, *see, e.g., CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (FAA establishes "a liberal federal policy favoring arbitration agreements"). International arbitration occurs, and there is no rule that arbitrations *must* occur within U.S. territory.  And arbitration is lawful even without an ability to appeal arbitral decisions to the Federal Circuit.  Indeed, the "exclusive" jurisdiction federal courts enjoy as to patent disputes "is not exclusive of other forums in the international context." *Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 633 F. Supp. 1209, 1212 (W.D.N.Y.), *aff'd*, 806 F.2d 1045 (Fed. Cir. 1986).[6]

Dkt. 20 at 7

44

# BMW's Incorrect Arguments on U.S. Policy

BMW argues that the Munich case frustrates U.S. policy because:

1. "Congress empowered federal courts to adjudicate infringement of U.S. patents";

2. the German case "indisputably deprives BMW of its right to have a jury decide infringement of U.S. patents";

3. U.S. policy is against "extraterritoriality"; and

4. the U.S. public has an interest in BMW's ability to invalidate Onesta's patents.

Dkt. 7 at 7-10.

45

# BMW Does Not Have a Right to a Jury Because No Legal Relief Has Been Requested in the Western District of Texas



"In short, any adjudication of a legal, as opposed to an equitable, right falls within the scope of the [Seventh] Amendment. *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (Seventh Amendment "require[s] a jury trial on the merits in those actions that are analogous to 'Suits at common law.' ")."

*In re Lockwood*, 50 F.3d 966, 972 (Fed. Cir.), *vacated sub nom.*
*Am. Airlines, Inc. v. Lockwood*, 515 U.S. 1182 (1995)

46

## BMW Does Not Have a Right to a Jury Because No Legal Relief Has Been Requested in the Western District of Texas



"In sum, *Lockwood* does not stand for the proposition that a counterclaim for invalidity always gives rise to a right to a jury trial (for either party) on the ground that it is an inverted infringement action and that a patentee at common law had the right to a jury by filing an infringement action and seeking damages. Instead, the more accurate reading of *Lockwood* is that (1) it preserves to the patentee the right to elect a jury by seeking damages in an infringement action or counterclaim, and (2) the accused infringer or declaratory judgment counterclaimant is entitled to a jury trial only if the infringement claim, as asserted by the patentee, would give rise to a jury trial."

*In re Tech. Licensing Corp.*, 423 F.3d 1286, 1290 (Fed. Cir. 2005)

47

# In Reply, BMW Abandons Its Jury Policy Argument to Argue "U.S. Courts Should Be Making This Decision Regarding U.S. Markets"

Onesta also claims that "BMW argues that, as a policy matter, the U.S. public should get to decide issues related to U.S. markets, Mot. 10, but these policy arguments cannot create a jury right where there is none." Opp. 8. Onesta never addresses BMW's actual argument that *U.S. courts*—the combination of an Article III judge in equity for injunctions and, on any issues so triable, a jury—should be making this decision regarding U.S. markets, since U.S. consumers will bear the burden of any injunction decision, not Germans.[3] Mot. 9-10 (citing *Deepsouth*, 406 U.S. at 531 ("'[Our legislation] do[es] not, and [was] not intended to, operate beyond the limits of the United States,' and *we correspondingly reject the claims of others to such control over our markets.*" (emphasis added) (citation omitted))).[4]

Dkt. 21 at 4-5

48

# BMW's Citation To *Deepsouth* Implies It Rejected Any Foreign Court Making a Ruling That Affected U.S. Markets

*courts*—the combination of an Article III judge in equity for injunctions and, on any issues so triable, a jury—should be making this decision regarding U.S. markets, since U.S. consumers will bear the burden of any injunction decision, not Germans.[3] Mot. 9-10 (citing *Deepsouth*, 406 U.S. at 531 ("'[Our legislation] do[es] not, and [was] not intended to, operate beyond the limits of the United States,' and *we correspondingly reject the claims of others to such control over our markets*." (emphasis added) (citation omitted))).[4]

Dkt. 21 at 5

49

## The "citation omitted" Makes Clear That *Deepsouth* Rejected Foreign Patents Controlling U.S. Markets



"The right which Hecht had to make and sell the burners in Germany was allowed him under the laws of that country, and purchasers from him could not be thereby authorized to sell the articles in the United States in defiance of the rights or patentees under a United States patent. A prior foreign patent operates under our law to limit the duration of the subsequent patent here, but that is all. ***The sale of articles in the United States under a United States patent cannot be controlled by foreign laws***."

*Boesch v. Graff*, 133 U.S. 697, 703 (1890) (emphasis added)

50

## BMW Offers No Authority for the Proposition That U.S. Judges Must Decide Any Issue That Could Affect Domestic Markets

- For example, U.S. Judges do not decide every international injunction, despite the fact that many affect downstream U.S. commerce.

51

# U.S. Courts Have Already Blessed Foreign Courts Enforcing Injunctions Regarding U.S. I.P. Rights



"The remedies that Creative seeks, namely a permanent injunction against further production of the infringing computer software, an order recalling all infringing copies, and profits obtained from sales of the infringing products, are those provided by the United States Copyright Act. *See* 17 U.S.C. §§ 502–504."

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 705 (9th Cir. 1995)
(dissenting opinion)



"In addition, we are aware of nothing preventing the High Court of Singapore from applying United States Copyright law to Creative's counterclaim in the event that it determines the scope of remedies offered under the Singapore Copyright Act to be inadequate."

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995)
(majority opinion)

## Equitable Relief for U.S. Copyrights and U.S. Patents Are Both Governed by *eBay*



"We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief. In so holding, we join at least two of our sister circuits that have reached the same conclusion as it relates to a similar presumption in copyright infringement matters. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) ("[W]e conclude that our longstanding rule that a showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm is clearly irreconcilable with the reasoning of the Court's decision in *eBay* and has therefore been effectively overruled." (internal quotation marks and citations omitted)); *Salinger v. Colting*, 607 F.3d 68, 76–78 (2d Cir. 2010) (finding that *eBay* abrogated the presumption of irreparable harm in copyright cases)."

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011)

# BMW's Incorrect Arguments on U.S. Policy

BMW argues that the Munich case frustrates U.S. policy because:

1. "Congress empowered federal courts to adjudicate infringement of U.S. patents";
2. the German case "indisputably deprives BMW of its right to have a jury decide infringement of U.S. patents";
3. U.S. policy is against "extraterritoriality"; and
4. the U.S. public has an interest in BMW's ability to invalidate Onesta's patents.

Dkt. 7 at 7-10

54

## Munich Actions Do Not Violate a Policy Against Extraterritoriality

- Like U.S. patent laws, U.S. venue laws are territorial and control conduct within the United States. Domestic venue laws do not bind foreign courts.
- BMW cites no authority that 28 U.S.C. § 1338(a) has extraterritorial effect.

55

# BMW Agrees with the General Rule That § 1338a Does Not Have Extraterritorial Effect

bear the burden of any injunction decision, not Germans.[3] Mot. 9-10 (citing *Deepsouth*, 406 U.S. at 531 ("'[Our legislation] do[es] not, and [was] not intended to, operate beyond the limits of the United States,' and *we correspondingly reject the claims of others to such control over our markets*." (emphasis added) (citation omitted))).[4]

Dkt. 21 at 5

# 28 USC § 1338(a) Cannot Apply Beyond the U.S. Borders



"Finally, there is simply no support for Creative's argument that **28 U.S.C. § 1338(a) bars the High Court of Singapore from applying United States copyright law. That statute clearly grants United States district courts jurisdiction over copyright claims "exclusive of the courts of the states," not exclusive of the courts of foreign nations**. Creative urges this Court to interpret this provision as a grant of jurisdiction exclusive of foreign courts as well as courts of the fifty states. There is no support for this interpretation, however. Even if this Court were to adopt Creative's strained interpretation of 28 U.S.C. § 1338(a), that statute could not prevent the High Court of Singapore from applying United States copyright law if it wished to do so. **As a foreign nation, Singapore is not bound by acts of Congress as the fifty states** are under the Supremacy Clause of the United States Constitution. Creative can point to no barrier precluding the High Court of Singapore from applying United States copyright law to Creative's counterclaim should the need arise.."

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (emphasis added)

57

## BMW Argues in Reply That Copyrights Should Be Treated Differently Than Patents Because the Patent Act Has Different Venue Provisions

Article III courts *exclusively*. Second, *Creative* made clear that the Copyright Act has broad forum options because there "is not the same type of mandatory venue provision" found in other statutes containing a specific "privilege of venue, granted by the legislative body which created th[e] right of action." 61 F.3d at 700. The Patent Act *does* contain these stricter venue provisions, and the Supreme Court requires adherence to them. *See TC Heartland LLC v. Kraft foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017); 28 U.S.C. §§451 (defining "judicial district" as the enumerated *U.S. District Courts*), 1400(b) (special venue rules for patent actions in the appropriate judicial district);

Dkt. 21 at 3

# 28 U.S.C. § 1400 Equally Applies to Copyrights

## § 1400. Patents and copyrights, mask works, and designs

(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400

59

## BMW Argues That Copyrights Should Be Treated Differently Because Reciprocal Enforcement Differs for Patents

Munich. Third, *Creative* explains that part of its rationale rests on reciprocity and the applicable copyright conventions. *See* 61 F.3d at 700-03. So it is of no moment to *patent* law if "U.K. courts, for example, have been enforcing U.S. copyright for decades." Opp. 16. Even if true of copyright, no such possibility exists in patent litigation where the Federal Circuit has rejected reciprocal extraterritoriality. *Voda*, 476 F.3d at 898-904. As Onesta candidly admits, *Voda* "held that U.S.

Dkt. 21 at 4

60

# Voda Merely Rejects Enforcement of Foreign Patents Under Federal *Supplemental* Jurisdiction, Not *Diversity* Jurisdiction



"The parties also dispute on appeal whether diversity jurisdiction under § 1332 provides an alternate and independent basis for the district court to hear Voda's claims of foreign patent infringement. However, Voda has not pled diversity, and it is not clear whether the district court would permit such a pleading to be made at this stage in the proceedings. **We therefore decline to decide whether the district court could properly exercise jurisdiction based in diversity**."

*Voda v. Cordis Corp.*, 476 F.3d 887, 905 (Fed. Cir. 2007) (emphasis added)

61

## Courts Have Allowed Enforcement of Foreign Patents Under Diversity Jurisdiction Following *Voda*



"When it enacted § 1332(a), Congress did not include an exception for claims predicated upon foreign patents."

*Baker-Bauman v. Walker,* No. 3:06-CV-017, 2007 WL 1026436, at *1 (S.D. Ohio Mar. 29, 2007)



"In *Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007), the Federal Circuit explained its holding in *Stein Associates*:

In *Stein Associates, Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984), this court held that U.S. district courts had no discretionary power to enjoin a party from enforcing a foreign patent before a foreign tribunal.

*Id*. at 890. **Quite simply, it is fanciful to argue that such a holding establishes the proposition that District Courts cannot exercise diversity jurisdiction over patent infringement actions based upon foreign patents**. Accordingly, the Court overrules Defendant's Motion to Dismiss Claims of Foreign Patent Infringement (Doc. # 18)."

*Baker-Bauman v. Walker,* No. 3:06-CV-017, 2007 WL 1026436, at *1-*2 (S.D. Ohio Mar. 29, 2007) (emphasis added)

## BMW's Incorrect Arguments on U.S. Policy

BMW argues that the Munich case frustrates U.S. policy because:

1. "Congress empowered federal courts to adjudicate infringement of U.S. patents";
2. the German case "indisputably deprives BMW of its right to have a jury decide infringement of U.S. patents";
3. U.S. policy is against "extraterritoriality"; and
4. the U.S. public has an interest in BMW's ability to invalidate Onesta's patents.

Dkt. 7 at 7-10.

63

# BMW Originally Argued That It Needed To Be in a Proceeding Where It Could Invalidate a Patent with *erga omnes* Effect

The Munich court lacks authority to finally invalidate or declare U.S. patents unenforceable with *erga omnes* effect. Ex. F ¶¶49-59 (under *BSH* principles, the Munich court may discretionarily rule on validity (of foreign EP patents), but only *inter partes*). That gap in the Munich court's competence would allow Onesta to again assert invalid or unenforceable patents against third parties—which it seems willing to do given the '381 patent's checkered past. *See supra* §II.A n.1.

Dkt. 7 at 10

64

# U.S. District Courts Do Not Invalidate Patents with *erga omnes* Effect

like BMW being able to invalidate patents with global effect. Mot. 9–10. But U.S. district court decisions on invalidity do not themselves inherently and immediately carry *erga omnes* effect. Instead, whether a court's invalidity decision is binding in later cases is determined as a matter of collateral estoppel and considers whether the patentee had a full and fair opportunity to litigate validity. *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333 (1971) ("the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'" (quoting *Eisel v. Columbia Packing Co.*, 181 F. Supp. 298, 301 (D. Mass. 1960)); *see also Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1206 (Fed. Cir. 2007) (declining to apply estoppel to unenforceability findings made in preliminary injunction ruling).

Dkt. 20 at 9-10

# By Filing DJs of Invalidity, BMW Can No Longer File IPRs, Which Would Have Carried *erga omnes* Effect



## § 315. Relation to other proceedings or actions

(a) INFRINGER'S CIVIL ACTION.—

(1) INTER PARTES REVIEW BARRED BY CIVIL ACTION.—An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent.

35 U.S.C. § 315(a)(1)

66

# BMW's Argument Is Left With Nothing But Unsupported Speculation That an Invalidity Finding in Germany Would Not Have Collateral Estoppel Effect in the U.S.

Onesta's invocation of *Blonder-Tongue* for collateral estoppel is a red herring—of course proceedings in WDTX will constitute a full and fair opportunity to litigate its patent claims. *See* Opp. 9-10. There is no suggestion that a future court will view a German judgment the same way, leaving Onesta free to assert U.S. patents invalidated *inter partes* again. *See* Mot. 9-10.

Dkt. 21 at 5

67

## ASI Factor 2: The *Unterweser* Factors

An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would:

1. frustrate a policy of the forum issuing the injunction;
2. be vexatious or oppressive;
3. threaten the issuing court's in rem or quasi in rem jurisdiction; or
4. cause prejudice or offend other equitable principles.

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Unterweser*, 428 F.2d at 890)

68

## *Unterweser* Factor 2: Vexatious or Oppressive Litigation

Factors courts consider for whether foreign cases are vexatious or oppressive:

1. "'inequitable hardship' resulting from the foreign suit";
2. "the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'"; and
3. "the extent to which the foreign suit is duplicitous" of the U.S. litigation.

*Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582 (quoting *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 366 (5th Cir. 2003))

69

## *Unterweser* Factor 2: Vexatious or Oppressive Litigation

Factors courts consider for whether foreign cases are vexatious or oppressive:

1. "'inequitable hardship' resulting from the foreign suit";
2. "the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'"; and
3. "the extent to which the foreign suit is duplicitous" of the U.S. litigation.

*Ganpat v. E. Pac. Shipping PTE, Ltd.,* 66 F.4[th] 578, 582 *(*quoting *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 366 (5th Cir. 2003))

## The Test Is Not Whether Having Two Cases Is Inequitable Hardship, but Whether Inequitable Hardship *Results From* the Foreign Suit

- Considering all the times a Defendant has filed a motion to transfer to its domicile, this motion seems to be a first.
- There is no inequitable hardship in Onesta filing actions in BMW's domicile that are fully proper under E.U. and U.S. law.
- Because the German actions were filed first, they cannot be the source of inequitable hardship.

71

# BMW Ironically Faults Onesta for Not Suing It Here Despite BMW's Lead Counsel Representing That Texas Does Not Have Personal Jurisdiction Over BMW

## V.    ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED

Blitzsafe's Amended Complaint should be dismissed because this Court does not have personal jurisdiction over BMWAG, and because venue is not proper.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

BLITZSAFE TEXAS, LLC,                )
                                     )
        *Plaintiff,*                 )     Case No. 2:17-CV-00418-JRG
                                     )
    v.                               )
                                     )
BAYERISCHE MOTOREN WERKE AG          )
AND BMW OF NORTH AMERICA,            )
LLC,                                 )
                                     )
        *Defendants.*                )

DEFENDANT BAYERISCHE MOTOREN WERKE AG'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL
JURISDICTION

AND

DEFENDANTS BAYERISCHE MOTOREN WERKE AG'S AND BMW OF NORTH
AMERICA, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER

Respectfully submitted,

Dated: October 16, 2017

/s/ Lionel M. Lavenue
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:    (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC

Dkt. 20-9 at 1, 9, and 29

72

## To the Extent BMW Believes It Is Harmed by Having Litigation in Two Locations, It Created this Harm, Barring Equitable Relief



"Third and finally, we turn to the Government's non-strawmen arguments for its irreparable injuries. Most of these are self-inflicted and therefore do not count. See 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2021) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted")."

*State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)



"That the government's asserted harm is largely self-inflicted "severely undermines" its claim for equitable relief. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993). "[S]elf-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)."

*Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)

## Litigation Costs Are Not Inequitable Hardship

> At bottom, BMW is complaining about litigation costs. Mot. 12–13 (protesting the burden of educating Munich judges on U.S. law). Such costs are rarely considered as a form of irreparable injury in the United States. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("Litigation costs are . . . not an irreparable harm in the injunction calculus."). If litigation costs were always in and of themselves inequitable hardship, this factor would always be met in every case, rendering it meaningless. *See Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1381 n.8 (Fed. Cir. 2008).

Dkt. 20 at 15-16

74

# BMW's Alleged Complaints About Harms Stemming From an Anti-antisuit Injunction Do Not Apply



To be clear on the record, Onesta hereby gives **NOTICE** that it does not intend to request an AASI from the Munich court to enjoin BMW from pursuing its complaint (Dkt. 1) or anti-suit injunction motion ("ASI") (Dkt. 7) in the above-captioned case, regardless of the outcome of BMW's ASI request. BMW's statements to the contrary are incorrect. Onesta remains opposed to all other forms of relief sought by BMW in its ASI motion and complaint.

Dkt. 24

75

# The Fact That the Proper German Proceedings Were First-filed Justifies Denying the ASI

*second*-filed case like BMW's.[11]  BMW argues that there is no "'first-filed principle' in suits

before separate sovereigns." Mot. 17 n.7.[12]  But its own authorities advise that the order of filing

is relevant.  BMW purports to quote *Microsoft*, *id.*, but in the remainder of a quote that BMW

omitted, the Ninth Circuit noted that "[t]he order in which the domestic and foreign suits were

filed, although not dispositive, *may be relevant* to this determination depending on the particular

circumstances." *Microsoft Corp. v. Motorola*, Inc., 696 F.3d 872, 887 (9th Cir. 2012) (emphasis

added).  And in *Unterweser*, there were three cases—a first U.S. case, a later London case, and

Dkt. 20 at 11-12

## Onesta's Response Identified That BMW Failed to Identify a Single Case Where an ASI Was Issued Against an Earliest-filed Foreign Case

[12] In the Motion, BMW did not identify a *single* case where an antisuit injunction was issued enjoining an earliest-filed foreign case. BMW did identify one case where an *anti*-antisuit injunction was issued against an earlier filed case. *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 11, 2021), at *7. However, that court discussed at length why it was justified in enjoining the technically first filed case—explaining that the foreign case was only filed four days before the domestic case, that the domestic plaintiff had no notice of the foreign case when the domestic case was filed, and that the domestic plaintiff was not even aware an antisuit injunction had been requested in China before it was issued and from which the anti-antisuit injunction provided relief. *Id.* at *1–*3.

Dkt. 20 at 11

77

## BMW Did Not Dispute This Failure of Proof in Reply but Merely Identified That the Order of Filing Is Not Solely Dispositive

Opp. 4, 8, 11 ("This is the second filed case."), 13, 19. But there is no rule that U.S. courts must surrender jurisdiction to a "first-filed case" abroad. Mot. 17 n.7 (collecting cases). Such a rule exists as between district courts, but it "has never been applied, and in fact it was never meant to apply[,] where the two courts involved are not courts of the same sovereignty…." *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981). If Onesta's "first-filed" status made a difference here, it would encourage a bad policy of racing to forum-shopped courts to obtain global injunctions—exactly what Onesta attempted.

Dkt. 21 at 5-6

## The Single Case BMW Cited in Reply on This Issue, *Compagnie*, Counsels Against an ASI

- The first action in *Compagnie* was filed in the U.S.
- Four years later the defendants filed a foreign action.
- The U.S. district court enjoined the later foreign action.
- Despite all this, the Third Circuit reversed, finding the ASI an abuse of discretion.

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 880, 887 (3d Cir. 1981), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

# The Customer Suit Exception Does Not Apply And BMW's Argument in Reply Is Fancifully Based on Alternate History

only underscores its stratagem to deprive BMW of such procedural protections. Had Onesta filed its suit against BMW in the U.S., BMW would have been able to seek a U.S. stay after a supplier (e.g., Qualcomm) pursued declaratory relief addressing Onesta's claims (e.g., in Onesta's current suit against Qualcomm in WDTX). *See* Opp. 12-13; Mot. 11.

Dkt. 21 at 6

80

## *Unterweser* Factor 2: Vexatious or Oppressive Litigation

Factors courts consider for whether foreign cases are vexatious or oppressive:

1. "'inequitable hardship' resulting from the foreign suit";

2. "the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'"; and

3. "the extent to which the foreign suit is duplicitous" of the U.S. litigation.

*Ganpat v. E. Pac. Shipping PTE, Ltd.,* 66 F.4th 578, 582 (quoting *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 366 (5th Cir. 2003))

# The German Actions Have No Effect on This Court's Ability to Determine This Case



To be clear on the record, Onesta hereby gives **NOTICE** that it does not intend to request an AASI from the Munich court to enjoin BMW from pursuing its complaint (Dkt. 1) or anti-suit injunction motion ("ASI") (Dkt. 7) in the above-captioned case, regardless of the outcome of BMW's ASI request. BMW's statements to the contrary are incorrect. Onesta remains opposed to all other forms of relief sought by BMW in its ASI motion and complaint.

Dkt. 24

## Because the German Actions Do Not Interfere With This Case, an ASI Is Unwarranted



"**When a foreign court tries to keep an American court from hearing a case, that frustrates the American litigation**. We have reversed a district court injunction where the foreign litigation was "ineffective in curtailing the ability of ... U.S. courts[ ] to enforce" the rights of the plaintiff. *Id.* at 369. **There, an American court could enforce the plaintiff's rights regardless of what the foreign court did, so there was no frustration of American litigation.** *See id.* Here, by contrast, the Indian court seeks to prevent the American litigation from proceeding. The district court's injunction is thus 'necessary to protect the court's jurisdiction.' *MacPhail v. Oceaneering Intern., Inc.*, 302 F.3d 274, 277 (5th Cir. 2002)."

*Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582–83 (5th Cir. 2023) (emphasis added)

83

# BMW Claims, Incredibly, That Onesta Aimed the Tactic of Simultaneous Litigation at BMW

Furthermore, conducting litigations simultaneously frustrates the "efficient determination of the case," as they will unfold across jurisdictions with vastly different timing and procedures. This is another "vexatious and oppressive" tactic aimed at BMW. For example, Onesta's

Dkt. 7 at 12

84

## BMW Filed the Duplicative Litigation, Not Onesta, and BMW Cannot Create Harm to Receive Equitable Relief



"Third and finally, we turn to the Government's non-strawmen arguments for its irreparable injuries. Most of these are self-inflicted and therefore do not count. See 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2021) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted")."

*State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)



"That the government's asserted harm is largely self-inflicted "severely undermines" its claim for equitable relief. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993). "[S]elf-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)."

*Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)

## Differences in Procedure Between the U.S. And Germany Do Not Justify the Extraordinary Relief of an ASI



Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process.

*Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994*)*

86

# BMW Claims Litigation in the U.S. Would Be More Efficient

already seized on the matter. The DJ action thus represents the more efficient proceeding for addressing the U.S. patents with less chance of error. An ASI would permit BMW to avoid

Dkt. 7 at 13

87

# Days After Filing the ASI Request, BMW's Lead Counsel Published an Article Saying the Opposite



## Germany: Efficiency and Predictability in Enforcement

Germany's reputation for efficiency and predictability has made it Europe's preferred forum for patent enforcement. Courts in Düsseldorf, Mannheim, and Munich are known for their disciplined procedures, technical expertise, and well-reasoned decisions. The process is tightly managed, the proceedings are notably swift, and hearings start promptly. The outcomes are consistent across venues, and the enforcement of decisions is relatively straightforward.

Another defining feature of German litigation is speed and efficiency. Infringement proceedings commonly conclude within nine to eighteen months, considerably faster than the two to three years typical in the United Kingdom or many U.S. jurisdictions. In addition, preliminary injunctions can be

https://www.finnegan.com/en/insights/articles/global-patent-litigation-strategic-insights-across-us-germany-and-china.html

88

## *Unterweser* Factor 2: Vexatious or Oppressive Litigation

Factors courts consider for whether foreign cases are vexatious or oppressive:

1. "'inequitable hardship' resulting from the foreign suit";
2. "the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'"; and
3. "the extent to which the foreign suit is duplicitous" of the U.S. litigation.

*Ganpat v. E. Pac. Shipping PTE, Ltd.,* 66 F.4th 578, 582 *(*quoting *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 366 (5th Cir. 2003))

# BMW Admitted in Reply That It Burdened the Court with Fully Duplicative Litigation

claims.'" *MWK*, 833 F. App'x at 564 (citations omitted). Onesta's claim that "[t]he Munich case is not fully duplicative of this case," Opp. 17, forgets that there are *three* German cases and the matter regarding the EP is not at issue here. Mot. 11, 16-17 & n.6; Ex. C. The two German cases—based on only the U.S. patents—are fully duplicative of what will be adjudicated here and should be withdrawn in Germany pursuant to an ASI to avert vexatious litigation. *See id.*

Dkt. 21 at 9

# The Order of Operations Matters

- The German action is not duplicative of the U.S. action because it was filed first.
- The U.S. action is duplicative of the already-filed proper German action.
- It is always the bigger, wealthier company trying to multiply proceedings to their benefit.

91

## BMW Filing a Duplicative Lawsuit Does Not Render the Original Duplicative Under *Unterweser*



"Third and finally, we turn to the Government's non-strawmen arguments for its irreparable injuries. Most of these are self-inflicted and therefore do not count. See 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2021) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted")."

*State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)



"That the government's asserted harm is largely self-inflicted "severely undermines" its claim for equitable relief. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993). "[S]elf-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)."

*Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)

## Onesta's German Action Is Not Vexatious and It Relies on Proper Legal Authority

61    It follows that, under the general rule laid down in Article 4(1) of the Brussels I *bis* Regulation, the courts of the Member State in which the defendant is domiciled have, in principle, jurisdiction in an infringement action brought against that defendant by the holder of a patent granted or validated in a third State which is domiciled in another Member State. In addition, the jurisdiction of the court of the Member State thus seised does, in principle, by virtue of that general rule, extend to the question of the validity of that patent raised as a defence in the context of that infringement action.

Dkt. 7-3 at ¶ 61

## Onesta's German Action Is Not Vexatious and It Relies on Proper Legal Authority

27. Furthermore, while *Electrolux* addressed a **patent effective in, and alleged infringing activities taking place in**, Türkiye, its *ratio decidendi* applies equally to **any other third State**. In line with the established use of the term "third State" in EU law, and absent any language limiting the term to certain third States, it is clear that the CJEU here refers to *any jurisdiction that is not an EU Member State*. **This cohort includes the United States of America**.

Dkt. 20-3 at ¶ 27 (Picht Decl.)

## ASI Factor 2: The *Unterweser* Factors

An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would:

1. frustrate a policy of the forum issuing the injunction;
2. be vexatious or oppressive;
3. threaten the issuing court's in rem or quasi in rem jurisdiction; or
4. cause prejudice or offend other equitable principles.

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Unterweser*, 428 F.2d at 890)

95

# BMW Admits That This *Unterweser* Factor Does Not Support Its Request



---

[3] The third *Unterweser* factor is inapplicable to *in personam* actions like this case. *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980, at *7 (E.D. Tex. Jan. 11, 2021).

Dkt. 7 at 7

## ASI Factor 2: The *Unterweser* Factors

An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would:

1. frustrate a policy of the forum issuing the injunction;
2. be vexatious or oppressive;
3. threaten the issuing court's in rem or quasi in rem jurisdiction; or
4. **cause prejudice or offend other equitable principles.**

*MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Unterweser*, 428 F.2d at 890)

# Onesta's German Pleadings Are Not Patent Misuse Nor Will It Receive Any Relief in Germany That Is Not Available Under U.S. Law

**Patent misuse.** But it is not "per se" patent misuse, Mot. 14, to seek damages beyond the six-year lookback in section 286, and none of BMW's authorities establish that principle. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964) (finding misuse where royalties extended beyond the *patent's term*, not § 286); *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 464 (2015) (declining to overrule *Brulotte*). Further, BMW has full ability to raise any damages arguments or alleged misuse defense in the Munich court, which will apply U.S. law. *See* Ex. 2 (Picht Decl.) ¶ 29.

Dkt. 20 at 18

## BMW's Reliance on *Bard* in Reply Proves that It's Allegation of Wrongful Enforcement is Not Misuse (*See, e.g.*, Dkt. 1 at ¶¶ 41-77)



"M3 Systems did not propose any of the classic grounds of patent misuse, such as tying or enforced package licensing or price restraints or extended royalty terms, *see* Chisum, *supra*, § 19.04[3], but generally urged the view that Bard's actions, even if not illegal, were an improper use of patents. ... The conduct to which the jury instruction on misuse generally refers, that is, **"wrongful" enforcement of patents**, is activity protected under *Noerr* and *California Motor*, and **is not subject to collateral attack as a new ground of "misuse."**"

*C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1373 (Fed. Cir. 1998)(emphasis added)

# BMW Speculates In Reply That A Patent Misuse Defense May Not Be Available In Germany, Which Is Wrong

29.    If a German court, based on its jurisdiction under the Brussels I *bis* Regulation, adjudicated a case involving the infringement of US patents, it **would apply US law to this US patent infringement issue**, according to Art. 8(1) Rome II-Regulation, as already explained by Prof. Leistner (see para. 29-31, 84 Leistner Dec.).[8] The defendant/alleged infringer would be able to **raise defenses based on US law**. In this sense, at the substantive law level such German proceedings would mirror US patent infringement litigation. This aspect, together with the fact that petitioning an EU Member State court in an *Electrolux* setting is covered by the Brussels I *bis* Regulation and explicit CJEU case law, weighs, in my professional opinion, against allegations of an abusive deployment of a respective patent in suit. In any case, a defense based on such allegations of abusive deployment could be raised in German court proceedings, i.e. the defendant/infringer would not be deprived of this argument because of the German venue.

Dkt. 20-3 at ¶ 29 (Picht Decl.)

# BMW Is Wrong to Argue That Procedural Differences Between the Courts Prejudices It



Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process.

*Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994*)*

101

## BMW's Speculation That Onesta Is More Likely To Be Granted An Injunction In Germany Ignores that the German Court Applies *eBay* and U.S. Law to the Issue

29.    If a German court, based on its jurisdiction under the Brussels I *bis* Regulation, adjudicated a case involving the infringement of US patents, it **would apply US law to this US patent infringement issue**, according to Art. 8(1) Rome II-Regulation, as already explained by Prof. Leistner (see para. 29-31, 84 Leistner Dec.).[8] The defendant/alleged infringer would be able to **raise defenses based on US law**. In this sense, at the substantive law level such German proceedings would mirror US patent infringement litigation. This aspect, together with the fact

Dkt. 20-3 at ¶ 29 (Picht Decl.)

# BMW's Recitation of the Fifth Circuit Test

Fifth Circuit requirements for antisuit injunction:

1. that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation;

2. that at least one harm from the foreign litigation—referred to as *Unterweser* threats—be identified; and

3. that any *Unterweser* threats found be weighed against the need to defer to principles of international comity.

Dkt. 7 at 6 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626-28 (5th Cir. 1996) (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)))

## BMW Identified No *Unterweser* Threats So Comity Counsels Non-interference with the German Court



"Likewise, there is no difference between addressing an injunction to the parties and addressing it to the foreign court itself. *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841 (1849)*; see also O'Hare International Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972). Enjoining the parties necessarily affects the court and compromises "the comity which the federal courts owe to courts of other jurisdictions." *Canadian Filters (Harwich) Limited v. Lear-Siegler, Inc.*, 412 F.2d at 578."

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 887 (3d Cir. 1981), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

104

# Germany Should Decide BMW's Jurisdictional Objections First

- BMW improperly seeks an ASI here before the Munich Court has an opportunity to address BMW's jurisdictional objections made there. Dkt. 20-7, at 3; Dkt. 20-8, at 3.
- Should BMW's requested ASI issue, the Munich Court would not have the opportunity to address the issue.
- It is reasonable to conclude that BMW's alleged "emergency" filings here reflect BMW's assessment regarding the chance that its German jurisdictional objections will succeed.

# BMW Wrongly Argues that the German Actions Attempt to Close This Courthouse's Door

legislation. *See id*. at 898-904; *Ericsson*, 2021 WL 89980, at \*7. "Our courts are not required to stand by" when a foreign court "attempts to close a courthouse door" that Congress, exercising "territorial jurisdiction, has opened." *Laker*, 731 F.2d at 936. To that end, BMW seeks only a

Dkt. 7 at 16

# The German Proceedings In No Way Interferes With the Court's Jurisdiction Over This Action



To be clear on the record, Onesta hereby gives **NOTICE** that it does not intend to request an AASI from the Munich court to enjoin BMW from pursuing its complaint (Dkt. 1) or anti-suit injunction motion ("ASI") (Dkt. 7) in the above-captioned case, regardless of the outcome of BMW's ASI request. BMW's statements to the contrary are incorrect. Onesta remains opposed to all other forms of relief sought by BMW in its ASI motion and complaint.

Dkt. 24

## The Supreme Court Teaches That Both Cases Should Proceed in Parallel



"The general principle established "(e) arly in our history," is that one court will not interfere with or try to restrain proceedings in another in an ordinary action in personam. *Donovan v. City of Dallas*, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964). "(W)here the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939). This principle has often been applied in cases similar to the present case where one of the actions is in a foreign jurisdiction."

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877, 887 (3d Cir. 1981), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

108

## *Electrolux* Was Carefully Reasoned and Its Result Respects Comity

42.     The key holding of *Electrolux* (cf. for quotes below) can be summarized as follows: the adjudication by an EU Member State court of an infringement of a third State patent, whereby the infringement is taking or has taken place in that third State, and even where the defendant has raised the invalidity of the infringed patent as a defense, is **compatible** both with

- the principle of non-interference under international law and

- the principle of relativity of international treaties

since

- the decision of the infringement court only has effect *inter partes* and

- has no impact on the status of the patent register in the granting state.

Dkt. 20-3 at ¶ 42 (Picht Decl.)

109

# BMW's Conclusion in Reply Requests the Court to Overrule *Electrolux* and "Preserve the *Status Quo*"

international patent treaty" would warrant revisiting supplemental jurisdiction). But in the meantime, this Pandora's box is opening *now*, and an ASI here can prevent immediate irreparable harm to BMW and blaze a path for U.S. courts to preserve the *status quo*. This Court need not "genuflect before a vague and omnipotent notion of comity [before] it must decide whether to enjoin a foreign action." *Kaepa*, 76 F.3d at 627. Rather than deferring to Onesta's "[c]razy" view

Dkt. 21 at 10

# An ASI Is Improper to Preserve the Status Quo Because the German Action Does Not Affect the Court's Ability to Rule in This Case



"There is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy."

*Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974)

111

# U.S. Policy Shows That BMW's Request Should Be Denied

We want to protect this country, its people, its territory, its economy, and its way of life from military attack and hostile foreign influence, whether espionage, predatory trade practices . . . or any other threat to our nation. [W]e want to protect our intellectual property from foreign theft. . . . We want to halt and reverse the ongoing damage that foreign actors inflict on the American economy. . . .[109]

Dkt. 7-6 at ¶ 102 (Bagley Decl.) (quoting whitehouse.gov) ); *see also* Dkt. 21 at n. 4

It fundamentally *strengthens—not harms*—the United States if its allies want to hold their citizens accountable for the torts they commit in the U.S.