IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| BAYERISCHE MOTOREN WERKE | ) | |
| AKTIENGESELLSCHAFT, | ) | |
| *Plaintiff*, | ) | No. 6:25-cv-00581 |
| | ) | |
| v. | ) | **JURY TRIAL** |
| | ) | |
| ONESTA, LLC, | ) | |
| *Defendant*. | ) | |

## <u>ORDER GRANTING ANTI-SUIT INJUNCTION</u>

Now before the Court is Bayerische Motoren Werke Aktiengesellschaft's ("BMW" or "Plaintiff") Motion for Anti-Suit Injunction ("the Motion"), which requests this Court to prohibit Onesta, LLC ("Onesta" or "Defendant") from pursuing adjudication of U.S. patents in Munich Regional Court I ("the Munich court"). Dkt. 7 at 3. On December 23, 2025, Onesta filed its Response in Opposition to BMW's Motion (Dkt. 20), and on December 29, 2025, BMW filed its Reply in Support (Dkt. 21). The Court held a hearing on BMW's Motion on January 13, 2026. After considering BMW's Motion, Onesta's Response, BMW's Reply, the applicable law and facts, and the Parties' oral argument, the Court orally **GRANTED** BMW's Motion for Anti-Suit Injunction. Dkt. 26 at 64. The following memorializes that ruling.

## I.     BACKGROUND

For centuries, determinations of infringement were made exclusively by the nation issuing a patent. Historically, any rights granted in U.S. patents have been enforceable only against defendants in U.S. federal courts under a panoply of constitutional and procedural protections. On October 9, 2025, Onesta became the first U.S. party to assert U.S. patents in a foreign court ("the Munich suit"). Onesta asserted two U.S. patents—Nos. 8,854,381 B2 ("the '381 patent") and

8,443,209 B2 ("the '209 patent")—against BMW in Munich Regional Court I ("the Munich court"). Dkt. 7 at 10; Dkt. 20 at 11.

This came on the heels of the Court of Justice of the European Union's (CJEU) decision in *BSH v. Electrolux*. In *Electrolux*, the CJEU held that, where an EU-based defendant is sued in its domicile member state, infringement alongside invalidity defenses can be adjudicated—with the invalidity findings carrying only *inter partes* effect. *BSH Hausgeräte GmbH v. Electrolux AB*, Case C-339/22, Judgment of the Court (Grand Chamber), Court of Justice of the European Union (Feb. 25, 2025). Though Onesta argues that the CJEU's ruling applies to U.S. patents, the decision never expressly grants long-arm authority to divest U.S. courts of jurisdiction to enforce U.S. patents. *See Id.*

On December 15, 2025, BMW filed this suit to prevent the adjudication of U.S. patents in the Munich court. Dkt. 1. In addition to their complaint, BMW filed a Motion for Temporary Restraining Order and Anti-Suit Injunction. Dkt. 7. The Court issued a "status quo" Temporary Restraining Order on December 16, 2025 (Dkt. 16) and extended it on December 30, 2025 (Dkt. 22). On January 13, 2026, this Court granted BMW's Motion for Anti-Suit Injunction and ordered Onesta to terminate its suit in the Munich court asserting U.S. patents. Dkt. 26 at 64. After further discussion with the Parties, this Court permitted Onesta to seek a temporary stay of this Order. Dkt. 26 at 69. On January 16, 2026, the Federal Circuit granted a temporary stay "to the extent that the District Court's order is temporarily stayed pending further order of this court." Dkt. 34 at 2.

## II.    LEGAL STANDARD

Federal courts have authority to enjoin parties from maintaining actions in foreign courts that divest U.S. courts of jurisdiction in cases properly before them. *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 564 (5th Cir. 2020) (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624,

626 (5th Cir. 1996)). When assessing whether to grant an ASI, the Fifth Circuit does not apply the traditional four-part injunction test. *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584-85 (5th Cir. 2023). Rather, "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions" that focus on harms arising from the foreign proceeding itself. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 335 F.3d 357, 364 (5th Cir. 2003).

The Fifth Circuit requires for an ASI: (1) that the parties be the same and that the U.S. action dispose of the relevant issues in the foreign litigation; (2) that at least one harm from the foreign litigation—referred to as *Unterweser* threats—be identified; and (3) that any *Unterweser* threats found be weighed against the need to defer to principles of international comity. *Kaepa*, 76 F.3d at 626-28 (citing *In re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), aff'd on reh'g, 446 F.2d 907 (5th Cir. 1971) (en banc)). *Unterweser* articulates the following disjunctive factors to inform this ASI analysis:

> An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles.

*MWK Recruiting*, 833 F. App'x at 562 (citing *Unterweser*, 428 F.2d at 890)

## III. DISCUSSION

### a. This action will dispose of the relevant issues in the Munich suit.

For the Court to grant an ASI, the parties in the foreign suit must be identical to those in the present case. *See Kaepa*, 76 F.3d at 626-28. This fact is undisputed—Onesta's German suit asserting U.S. patents was filed in Munich against BMW. Dkt. 20 at 1.

Second, the U.S. action must dispose of the relevant issues in the foreign litigation. *See Kaepa*, 76 F.3d at 626-28. Again, this fact is not disputed by Onesta. *See generally* Dkt. 20. The

Court's anti-suit injunction order requires Onesta to terminate their claims on U.S. patents in the Munich court.

Further, Onesta's claims on the '381 patent and the '209 patent can be brought in an appropriate U.S. court. Onesta has pursued litigation of its patent portfolio within the United States. *See* Dkt. 1 ¶¶1-24. In April 2025, Onesta filed a complaint at the International Trade Commission ("ITC"), asserting the claims of the '381 patent against NVIDIA Corp. and Qualcomm Inc. Certain Integrated Circuits, Elec. Devices Containing the Same, & Components Thereof, 337-TA-1450, D.I. 849117 (USITC Apr. 18, 2025). On April 17, 2025, Onesta also filed two complaints in this Court—one against NVIDIA and another against Qualcomm Inc. and its customers—alleging infringement of the '381 patent, among others. *Onesta, LLC v. Qualcomm Inc. et al.*, 1:25-cv-587-ADA, Dkt. 1 (W.D. Tex. Apr. 17, 2025); *Onesta, LLC v. NVIDIA Corp.*, 1:25-cv-586-ADA, Dkt. 1 (W.D. Tex. Apr. 17, 2025). Thus, this action does dispose of the relevant issues in the foreign litigation. *See Kaepa*, 76 F.3d at 626-28.

### b. The Munich suit frustrates the United States' policy of adjudicating their own patents and causes prejudice to BMW.

Under the *Unterweser* factors, a court may enjoin a party from pursuing foreign litigation if doing so would "frustrate a policy of the forum issuing the injunction" or "cause prejudice or offend other equitable principles." *Unterweser*, 428 F.2d at 890. Both factors apply here. Allowing the Munich proceedings to continue threatens the United States' policy interest in adjudicating its own patents and protecting litigants' jury rights in infringement cases. Similarly, proceedings in the Munich court necessarily deprive BMW of critical defendant rights available only here—e.g., fact discovery; invalidity consideration with *erga omnes* effect; and juries as a bulwark against the improper grant or assertion of U.S. patents. Dkt. 7 at 2.

As a result, the Munich action undermines the duty of Article III courts "to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants." *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984); *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-18 (1976). Congress has conferred jurisdiction by empowering federal courts to adjudicate infringement of U.S. patents. *See* 35 U.S.C. §§271, 287; 28 U.S.C. §2201(a). And ensuring that U.S. patent infringement claims are adjudicated in U.S. courts is "necessary to provide full justice to the parties" in this case because BMW seeks a jury trial on the infringement claims. Dkt. 1 at 44 ("[T]rial by jury on all issues triable of right by a jury"). "[T]here is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago." *Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 377 (1996). A robust U.S. policy prevents outsourcing to other courts issues triable to federal juries:

> An essential characteristic of [the federal] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and . . . assigns the decisions of disputed questions of fact to the jury. . . . **It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts**.

*Byrd v. Blue Ridge Rural Elec. Coop*, 356 U.S. 525, 537-38 (1958) (emphasis added); *cf. Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942) (Federal jury rights "should be jealously guarded by the courts").

Even if the Munich court decides infringement under U.S. law, it has no procedural means to convene a jury—much less one composed of U.S. citizens—to decide whether U.S. patents are infringed in U.S. markets. Dkt. 7 at 17. An ASI will protect BMW's right to a jury decision in this Court.

Congress's foreign and domestic policy decisions also reveal the strong interest in adjudicating U.S. issued patents in U.S. courts. Both Germany and the United States are signatories

to The Paris Convention for the Protection of Industrial Property (the "Paris Convention"), which expressly affirms the independence of each country's patent system and reserves the "provisions . . . relating to . . . jurisdiction" to each member state. *Voda v. Cordis Corp.*, 476 F.3d 887, 898-99 (Fed. Cir. 2007) (quoting the Paris Convention, art. 2(3)). And domestically Congress has taken care to create a delicate statutory scheme for U.S. patents and jurisdiction in patent cases. *E.g.* 28 U.S.C. §1338(a) (granting U.S. district courts original jurisdiction over patent disputes); 28 U.S.C. §1400(b) (prescribing special venue rules for patent actions). Allowing the Munich court to assume jurisdiction over Onesta's U.S. patent infringement claims eviscerates that statutory scheme and "prejudice[s] the rights of the [U.S.] government[]." *Voda*, 476 F.3d at 901.

    i. **The Court is not swayed by Onesta's argument regarding U.S. copyright law.**

Onesta draws several parallels between U.S. patent law and U.S. copyright law in their opposition to BMW's Motion. Dkt. 20 at 6, 8-10, 15–16. Onesta argues that U.S. copyright case law supports its arguments that the Munich suit "does not frustrate any U.S. policy" and is "neither vexatious nor oppressive." *Id.* Specifically, Onesta argues the "Munich action does not violate a policy against extraterritoriality," in part because the Ninth Circuit has "already determined that 28 U.S.C § 1338 does not prohibit enforcement of U.S. copyrights in foreign courts." Dkt. 20 at 8–9 (citing *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd*., 61 F.3d 696, 703 (9th Cir. 1995)); *see also Lucasfilm Ltd. v. Ainsworth*, [2011] UKSC 39 (holding that U.S. copyright claims are justiciable in U.K. courts). Onesta's view is that "[t]here is no reason to treat patents differently." Dkt. 20 at 9.

Onesta's view is unsupported by a comparison of the U.S. patent and U.S. copyright regulatory frameworks. Unlike with copyrights, receiving patent protections in the U.S. requires a rigorous application and examination process. *Compare* U.S. Copyright Off., Circular 2, Copyright

Registration (2022) *with* MPEP §§ 1801, 1893 (9th ed. Rev. 01.2024). Furthermore, there are strict timelines and procedures that must be observed to obtain reciprocal patent protections abroad. *See* MPEP § 1893 (9th ed. Rev. 01.2024); *Protecting Your Invention Abroad: Frequently Asked Questions About the Patent Cooperation Treaty (PCT)*, World Intell. Prop. Org., https://www.wipo.int/en/web/pct-system/faqs/faqs (last visited Jan. 30, 2026). In comparison, foreign works do not need to be registered in the U.S. to file an infringement lawsuit in the United States. U.S. Copyright Off. Compendium of U.S. Copyright Office Practices § 2000 (3d ed. 2021).

Onesta's view is also unsupported by U.S. patent case law. While the Federal Circuit's reasoning in *Voda v. Cordis Corp.* was focused on whether U.S. courts should exercise jurisdiction over foreign patents, many of its holdings are equally applicable to the inverse question. 476 F.3d 887, 900–05 (Fed. Cir. 2007). Specifically, the Federal Circuit held that "the act of state doctrine may make the exercise of supplemental jurisdiction over foreign patent infringement claims fundamentally unfair" and "[given] the number of U.S. patent cases that we resolve on validity or enforceability as opposed to infringement grounds, exercising such jurisdiction could be fundamentally unfair to the alleged infringer." *Id.* at 904. The Federal Circuit also pointed out that "as a rule of statutory construction, the Supreme Court 'ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations.'" *Id.* at 902. The Federal Circuit's holdings in *Voda* weigh heavily against Onesta's interpretation of 28 U.S.C. § 1338, its frustration of U.S. policy arguments, and its analysis of the undue hardships caused by a foreign court's adjudication of U.S. patents.

Furthermore, neither of the two patent cases that Onesta cites, which "circumvent the default rules on Congressional statutes without undermining U.S. policy," address the issues with Onesta's view in light of *Voda*. Dkt. 20 at 9 n.7. The first case, *Warner & Swasey Co. v. Salvagnini*

*Transferica S.p.A.*, predates *Voda*. 633 F. Supp. 1209, 1209 (W.D.N.Y.), *aff'd*, 806 F.2d 1045 (Fed. Cir. 1986). Furthermore, the Federal Circuit's holding relied largely on the district court's opinion which found that "it is unlikely that an Italian court would be required to delve into issues of patent validity" and that the Italian court may not "need to address any patent issues: there could be no infringement." *Id.* at 1214.

The second case, *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, is readily distinguishable from the instant case. 589 F. Supp. 2d 84 (D. Me. 2008). Unlike in *Fairchild Semiconductor Corp.*, there is no existing licensing agreement between BMW and Onesta containing a forum selection clause. *Id.* at 94–99. Furthermore, the court in *Fairchild Semiconductor Corp.* relied heavily on *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux* throughout its opinion. 24 F.3d 1368 (Fed. Cir. 1994). In *Mars Inc.*, the Federal Circuit held that, with respect to 28 U.S.C. § 1338, "[s]tatutes purporting to confer federal subject matter jurisdiction must be narrowly construed, with ambiguities resolved against the assumption of jurisdiction." For these reasons, the Court finds Onesta's arguments with respect to copyright law unpersuasive.

c.  **International comity is not offended by this decision.**

The factors discussed above are weighed against notions of international comity. *See Kaepa, 76 F.3d 624, 627*. But "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns." *Karaha Bodas*, 335 F.3d at 366. Comity "is neither a matter of absolute obligation" "nor of mere courtesy and good will." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S.D. of Iowa*, 482 U.S. 522, 543 n. 27 (1987). Instead, it is recognition by one nation of the acts of another, with "due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Id.*

Still, the Fifth Circuit acknowledges international comity as a strong interest weighed against the *Unterweser* factors in deciding whether to grant an ASI. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 366 (5th Cir. 2003). The Supreme Court has also stated that comity requires "due regard both to international duty and convenience, and to the rights of [the forum's] own citizens or of other persons who are under the protection of [the forum's] laws." *Société*, 482 U.S. at 543 n. 27. But district courts are not required to bow to "vague and omnipotent notions of comity." *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996). Instead, comity is implicated by "public international issues," but not "private" disputes, like breach of contract. *Compare Kahara Bodas*, 335 F.3d at 372 (comity implicated when entity controlled by the Government of Indonesia was party to the suit and related cases were being litigated in multiple foreign forums), *with Kaepa*, 76 F.3d at 627 (no comity concerns raised in disagreement between private parties under contract).

There are factors present in this case that are abnormal in the ASI context. For instance, the Court is unaware of any cases where an ASI has been granted to terminate the first filed proceedings between the parties. Moreover, this case features the unusual argument by Onesta that BMW would be inconvenienced by defending in a forum outside of its domicile, while BMW seeks courts *outside* its domicile. Dkt. 20 at 8; Dkt. 7 at 20. But there is no recognized first-filed principle. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984) ("The mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction."); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 887 (9th Cir. 2012) ("The order in which the domestic and foreign suits were filed . . . [is] not dispositive."). And making sure that U.S. patents are tried in U.S. courts, which regularly apply U.S. patent law is more "convenien[t]" for the courts of each

sovereign. *Société*, at 543 n. 27; Dkt. 7 at 21. Finally, given Onesta's domicile in the United States and BMW's desire to litigate here, the Court finds that neither party would be inconvenienced by doing so. Dkt. 1 at 6; Dkt. 4 at 2.

The ASI also acts with due regard to those under United States law, namely, those who hold intellectual property rights conferred and recognized by the U.S. Government. *See Société*, at 543 n. 27. Because those rights arise under United States law and are conferred by the U.S. government, infringement and validity challenges for *those* patents should be adjudicated in United States courts. And the opposite is true: "[O]ur courts should not determine the validity and infringement of foreign patents." *Voda v. Cordis Corp.*, 476 F.3d 887, 899 (Fed. Cir. 2007). As mentioned previously, this is especially true given that Germany[1] and the United States[2] are signatories to The Paris Convention for the Protection of Industrial Property, which acknowledges "the independence of each country's sovereign patent systems and their systems for adjudicating those patents." Paris Convention, art. 13–30, 21 U.S.T. 1583; Paris Convention, art. 1–12, 24 U.S.T. 2140; *Voda*, 476 F.3d at 899. "[N]othing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another." *Id.* To the extent that this case presents "public international issues," foreign policy decisions have resolved those issues in favor of adjudicating patents in the issuing forum. *See Kahara Bodas*, 335 F.3d at 372. Accordingly, BMW's request preserves comity by seeking only to terminate the Munich action as to its adjudication of the U.S. patents. Dkt. 7 at 25 n. 6.

---

[1] The Federal Republic of Germany signed the Paris Convention on June 19, 1970. Gesetz über die am 14. Juli 1967 in Stockholm unterzeichneten Übereinkünfte auf dem Gebiet des geistigen Eigentums (Law on the Agreements in the Field of Intellectual Property Signed in Stockholm on July 14, 1967), June 5, 1970, BUNDESGESETZBLATT, Teil II.

[2] The United States signed Articles 13 through 30 on September 5, 1970, and Articles 1 through 12 on August 25, 1973. Paris Convention, art. 13–30, 21 U.S.T. 1583; Paris Convention, art. 1–12, 24 U.S.T. 2140.

IV.    **CONCLUSION**

For these reasons and those stated on the record (Dkt. 26), Plaintiff BMW's Motion for

Anti-Suit Injunction is hereby **GRANTED.**


**SIGNED** this 13th day of February, 2026.


_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

11