**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, | ) ) ) | |
| | ) | C.A. No. 6:25-cv-00581-ADA |
| *Plaintiff*, | ) ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ONESTA IP, LLC, | ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFF BMW AG'S SUR-REPLY IN OPPOSITION TO ONESTA'S RULE 12(B)(1)
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN
THE ALTERNATIVE, FOR A STAY**

**TABLE OF CONTENTS**

I.    Introduction – Onesta's New Arguments and Identified Facts, First Raised in Its Reply, Do Not Negate Nor Moot This Court's Jurisdiction ............................................... 1

II.   Argument – Onesta Raises New Arguments and Identifies New Facts in Its Reply, None of Which Move the Needle to Satisfying its Burden to Dismiss this Case ............... 4

      A.    Onesta Raises and Identifies Three New Arguments and Evidence in its Reply As Allegedly Mooting the Declaratory Judgment – Each Fall Flat ............. 4

            1.    Onesta's New Patent Exhaustion Argument Is Legally Wrong.................. 4

            2.    Onesta's New Mischaracterization of Munich Filings Fails....................... 5

            3.    Onesta's New Argument that *BMW*'s Conduct Has Been Exceptional and Unreasonable Here Mises the Mark................................ 6

      B.    Onesta's "Term Sheet" No Longer Governs – Onesta's Notice Obviates the Factual Basis of its Motion to Dismiss ............................................................ 7

      C.    Contrary to Its Reply Argument, Onesta Is Not the Prevailing Party..................... 9

III.  Conclusion ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2000)................................................................................................... *passim*

*Bayerische Motoren Werke Aktiengesellschaft v. Onesta IP, LLC*,
  No. 2026-1388 (Fed. Cir. 2026)...................................................................................6, 7

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001)...................................................................................................10, 11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000).........................................................................................................8

*High Point SARL v. Sprint Nextel Corp.*,
  2016 WL 757292 (Fed. Cir. Feb. 25, 2016) ...................................................................5

*Powertech Technology Inc. v. Tessera, Inc.*,
  660 F.3d 1301 (Fed. Cir. 2011).......................................................................................5

*TransCore, LP v. Electronic Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009).......................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1).........................................................................................................7

**I.    Introduction – Onesta's New Arguments and Identified Facts, First Raised in Its Reply, Do Not Negate Nor Moot This Court's Jurisdiction**

BMW filed a declaratory judgment here, seeking as relief from this Court declarations (1) that BMW's products do not infringe Onesta's two respective U.S. patents, (2) that Onesta misused its U.S. patents by enforcing them abroad instead of here in the U.S., and (3) that BMW be awarded fees as the prevailing party. Onesta moved to dismiss, arguing that this declaratory judgment is now moot in view of Onesta's agreement with third-party Qualcomm, supposed supplier of BMW's allegedly infringing chipset. In its Reply, Onesta raised new arguments and new facts, none of which move the needle towards satisfying Onesta's burden in its Motion to Dismiss.

Onesta specifically raises three additional new arguments and facts, arguing: (1) that the Term Sheet exhausts Onesta's claims of infringement against BMW and BMW's affiliated companies, (2) that BMW cannot "identify what about 'the four corners of Onesta's infringement theory' extends beyond BMW's use of Qualcomm components," and (3) that BMW allegedly raised inconsistent arguments here and before the Federal Circuit. Each equally fall flat as mischaracterizations or misapplications of the facts and law.

First, Onesta argues for the first time in the Reply—incorrectly—that the Term Sheet exhausts Onesta's claims of infringement against BMW and BMW's affiliated companies. Dkt. 54, p. 4. But there is no proof on the record to demonstrate this to be the case, certainly not to the degree sufficient under *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2000). Further yet, there is no way to kick the tires on Onesta's allegation. BMW remains non-privy to the Term Sheet, neither able to seek contractual consideration nor negotiate the legalities, remaining in disputed limbo. It is unclear whether the license could be amended; and even accepting Onesta's statements regarding the Term Sheet as true, the license's scope does not extend to the four corners of Onesta's

1

infringement theory—a point Onesta tactically avoids. *Compare* Dkt. 53, pp. 9-10 (BMW arguing that "Onesta was clear that its allegations relating to the use of Qualcomm components were merely 'by way of example.'"); *with* Dkt. 54, p. 5 (Onesta contending that "'by way of example' [is] insufficient to create the substantial controversy").

Second, Onesta for the first time in its Reply raises the parties' positions in staying the German proceedings, arguing that BMW cannot "identify what about 'the four corners of Onesta's infringement theory' extends beyond BMW's use of Qualcomm components." Dkt. 54, p. 3. Onesta untimely raises this new German proceeding evidence as BMW's stay requests in Germany were filed before Onesta's opening brief here. Nevertheless those stay requests do not support dismissal because the German proceedings do not resolve the broader infringement accusations Onesta has leveled.

Third, Onesta argues in its Reply for the first time that "BMW has exhibited, and continues to exhibit, an unethical, relentless practice of making simultaneous, mutually-exclusive statements in different fora." Dkt. 54, p. 9. Onesta specifically points to alleged conflicting positions by BMW here and at the Federal Circuit. Dkt. 54, p. 9. But Onesta strips each position of necessary context— each event had different proceedings, posturing, motions, and sought relief. The controversy *here* extends beyond Onesta's infringement theories based on Qualcomm supplied chipsets in BMW products (the issues in Germany), and further encompasses the full breadth of Onesta's vague infringement theory (to the extent it includes non-Qualcomm chips) and whether Onesta misused its U.S. Patents by attempting to enforce them against BMW in Germany. Each of those are controversies different than that before the Federal Circuit.

Next, as to the "Term Sheet" that Onesta hangs its hat on—it is no longer controlling. Mere days after filing its Reply, Onesta submitted Notice to this Court that it reached a final agreement

2

with Qualcomm—i.e., the "Term Sheet" no longer governs the agreement between Qualcomm and Onesta, but rather it was replaced by a "formally executed" agreement. Dkt. 56. The "formally executed" agreement nevertheless likewise fails for the same reasons the "Term Sheet" failed.

Much like the now-defunct "Term Sheet," Onesta still seeks to conceal the "formally executed" agreement from BMW *and this Court*. As such, Onesta is unable to satisfy its lofty "***formidable burden***" that the underlying patent dispute is moot by failing to show that it is "***absolutely clear*** the allegedly wrongful behavior [i.e., alleging infringement of its patents by BMW] could not reasonably be expected to recur." *Nike, Inc.*, 568 U.S. at 91 (emphasis added). To do so would require, at a minimum, an unequivocal, irrevocable, worldwide license to BMW, its affiliates, and its customers to make, use, offer to sell, sell, or import any BMW vehicle or component thereof, whether in the past, present, or future. Whatever Onesta may have shown vis-à-vis its "Term Sheet" or "fully executed" agreements with third-party Qualcomm, this hidden evidence fails to show the sufficient licensing parameters under *Nike*.

Further yet, for the first time in its Reply, Onesta makes the unfounded assertion that "Onesta is the prevailing party" because it "sued BMW for patent infringement" *in Germany* and then unilaterally resolved that German dispute by "entering into a binding Term Sheet" with BMW's Qualcomm supplier, allegedly mooting the dispute *here*. Dkt. 54, p. 8. Even if the Court accepts Onesta's naked assertion that the Term Sheet resolves the underlying patent infringement dispute between the two parties in Germany, the issues here extend beyond the German dispute. And that resolution in Germany nevertheless does not render Onesta the prevailing party here.

For the reasons below, the Court should deny Onesta's Motion to Dismiss in its entirety, to retain jurisdiction to preserve BMW's ability to seek fees as the prevailing party, or at a

minimum, permit targeted jurisdictional discovery of the "Term Sheet" and "formally executed" agreement between Qualcomm and Onesta.

## II.    Argument – Onesta Raises New Arguments and Identifies New Facts in Its Reply, None of Which Move the Needle to Satisfying its Burden to Dismiss this Case

### A.    Onesta Raises and Identifies Three New Arguments and Evidence in its Reply As Allegedly Mooting the Declaratory Judgment – Each Fall Flat

#### 1.    Onesta's New Patent Exhaustion Argument Is Legally Wrong

For the first time in its Reply, Onesta argues that the Term Sheet exhausts Onesta's claims of infringement against BMW and BMW's affiliated companies. Dkt. 54, p. 4. But as noted, there is no proof on the record to demonstrate this to be the case—certainly not to the degree sufficient under *Nike, Inc.*, 568 U.S. at 91. Nevertheless, for the first time, Onesta argues in its Reply that BMW and all its affiliates are protected under patent exhaustion. Dkt. 54, p. 4. There is no way to kick the tires on that allegation. BMW remains non-privy to the Term Sheet (even if it were still material, and it is not), neither able to seek contractual consideration nor negotiate the legalities, remaining in disputed limbo. It is unclear whether the license could be amended; and even accepting Onesta's statements regarding the Term Sheet as true, the license's scope does not extend to the four corners of Onesta's infringement theory—a point Onesta tactically avoids. *Compare* Dkt. 53, pp. 9-10 (BMW arguing that "Onesta was clear that its allegations relating to the use of Qualcomm components were merely 'by way of example.'"); *with* Dkt. 54, p. 5 (Onesta contending that "'by way of example' [is] insufficient to create the substantial controversy").

Onesta's offhand reference to patent exhaustion under the Qualcomm Term Sheet as automatically licensing BMW's affiliated companies, dealers, and customers falls short. It does not establish mootness, and it does not defeat this Court's jurisdiction. Patent exhaustion is narrow, fact-specific, and strictly limited to the exact authorization in the license—which is not of record. And it never reaches past infringement absent explicit release language. *See, e.g.*, *TransCore, LP*

4

*v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271, 1279–80 (Fed. Cir. 2009) (finding covenant not to sue that operated as a license did not release liability for past infringement because it contained no release language, and patent exhaustion applies only to authorized sales occurring after the license/covenant, not to past acts); *High Point SARL v. Sprint Nextel Corp.*, 2016 WL 757292 (Fed. Cir. Feb. 25, 2016) (distinguishing forward licenses from retroactive ones). Onesta's Pearson Declaration—concerning the now-obviated term sheet—conspicuously omits any such release language.

Moreover, the Term Sheet that the Pearson Declaration purports to describe is now moot as superseded by the completely undescribed agreement supposedly entered into by Onesta and Qualcomm. Dkt. 56. Even if exhaustion could apply, BMW and Onesta disagree on its scope, coverage, and effect, and there is no evidence before the Court to resolve that dispute. Further yet, if it were to resolve this dispute, any reliance on those documents for exhaustion/implied license raises third-party-beneficiary and contract-interpretation issues that are inherently justiciable— require discovery. *See Powertech Technology Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011) (reversing dismissal because "the dispute between PTI and Tessera—as to whether the license agreement required royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction").

### 2. Onesta's New Mischaracterization of Munich Filings Fails

As for the remainder of Onesta's infringement theories, Onesta for the first time in its Reply raises the parties' arguments in staying the German proceedings, arguing that BMW cannot "identify what about 'the four corners of Onesta's infringement theory' extends beyond BMW's use of Qualcomm components." Dkt. 54, p. 3. Onesta untimely raises this new evidence as BMW's stay requests in Germany were filed before Onesta's opening brief here—nevertheless they do not support dismissal.

BMW's request addressed *only* the "contested embodiments" that Onesta itself had characterized in the Munich suits as using Qualcomm chips. *See* Dkts. 7-4, 54-2, 54-3. That narrow, case-specific observation is entirely consistent with BMW's position here: the *specific accused products* in Germany incorporate Qualcomm components, so a license could benefit those proceedings. Onesta's full infringement theory (which uses qualifying language like "by way of example" and extends to other products, methods, or non-Qualcomm embodiments, as BMW detailed at Dkt. 53, pp. 9–10) remains vague and requires clarification before this Court.

The Munich filings do not resolve the broader infringement accusations Onesta has leveled, and fail to provide a basis for Onesta to escape this Court's jurisdiction.

### 3. Onesta's New Argument that *BMW*'s Conduct Has Been Exceptional and Unreasonable Here Mises the Mark

It is unclear whether Onesta understood the full breadth of this Court's January 13th hearing decision—its attempts to spurn this Court's order suggest otherwise. Despite *categorically* losing essentially every issue during the January 13th hearing and then refusing to dismiss the German proceedings, Onesta nevertheless argues in its Reply for the first time that "BMW has exhibited, and continues to exhibit, an unethical, relentless practice of making simultaneous, mutually-exclusive statements in different fora." Dkt. 54, p. 9. Onesta's argument is legally incorrect and factually unsupported, and warrants a response. Onesta specifically points to alleged conflicting positions by BMW here and at the Federal Circuit. Dkt. 54, p. 9. But Onesta strips each position of necessary context—each event had different proceedings, posturing, motions, and sought relief.

At the Federal Circuit, BMW moved to dismiss Onesta's appeal of the anti-suit injunction as moot (a conclusion with which Onesta now agrees). *See Bayerische Motoren Werke Aktiengesellschaft v. Onesta IP, LLC*, No. 2026-1388 (Fed. Cir. 2026), Dkts. 29, 33. That argument was directed to a narrow question: whether Onesta could continue to invoke appellate jurisdiction

over an injunction requiring termination of the German proceedings after Onesta itself represented that those proceedings would be terminated pursuant to a binding agreement. *Id.* In that posture, Onesta bore the burden of establishing a live controversy **with respect to the termination of the German proceedings**. *Id.* BMW's argument was tailored to that burden and to that relief. *Id.*

Here, the question is different and Onesta's attempts to merge the two are improper. Onesta asks this Court to dismiss BMW's declaratory judgment action in its entirety under Rule 12(b)(1). In this posture, Onesta bears the "formidable burden" of proving that no live controversy exists **between the parties**. *Nike, Inc.*, 568 U.S. at 91. BMW's opposition reflects that distinction. *See* Dkt. 53. As noted throughout, the controversy *here* extends beyond Onesta's infringement theories based on Qualcomm supplied chipsets in BMW products, and further encompasses the full breadth of Onesta's vague infringement theory (to the extent it includes non-Qualcomm chips) and whether Onesta misused its U.S. Patents by attempting to enforce them against BMW in Germany.[1]

The termination of the German proceedings does not entirely moot the issues here.[2] And as noted above, this Court may still retain jurisdiction to resolve the question of fees for BMW as the prevailing party. Onesta's attempt to recast forum-specific, burden-driven arguments as "inconsistencies" is not a jurisdictional defect. It is advocacy by mischaracterization. The Court should reject it.

### B.    Onesta's "Term Sheet" No Longer Governs – Onesta's Notice Obviates the Factual Basis of its Motion to Dismiss

Onesta's entire Motion to Dismiss was premised on the alleged "Term Sheet" between Onesta and Qualcomm, arguing that it "moots this case." Dkt. 51, p. 6. Per Onesta's own March

---

[1] Onesta cites and elects to improperly characterize BMW's Federal Circuit arguments while declining to include it as an exhibit for full consideration. The full position is submitted as Exhibit 1 here for consideration. Ex. 1 at 16-18.

[2] The German proceedings have not yet been terminated. Onesta only requested termination of these proceedings. *See* Dkt. 56, p. 1.

13, 2026 Notice—filed days after Onesta's Reply (Dkts. 55, 56)[3]—the "Term Sheet" no longer governs. Onesta obviated its own Motion. This pivotal change in facts well after BMW's ability to brief them warrants a response.

To show mootness, Onesta bears a "***formidable burden***" of showing that it is "***absolutely clear*** the allegedly wrongful behavior [i.e., alleging infringement of its patents by BMW] could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). To do so would require, at a minimum, an unequivocal, irrevocable, worldwide license to BMW, its affiliates, and its customers to make, use, offer to sell, sell, or import any BMW vehicle or component thereof, whether in the past, present, or future. Whatever Onesta may have shown vis-à-vis its agreements with third-party Qualcomm through the "Term Sheet"—which is now moot—or in the new agreement that Onesta still refuses to produce, fall far short of this bar.

Onesta's Motion to Dismiss rested entirely upon a purported "binding Term Sheet" with Qualcomm, *see* Dkt. 51, p. 1, which Onesta removed by entering into a superseding final agreement with Qualcomm as reported in its Notice. Dkt. 56, p. 1. That Term Sheet was never produced, and Onesta instead asked the Court to accept its counsel's characterizations—principally through the Pearson Declaration—as proof that the parties' dispute had been resolved and that termination of the German proceedings was merely a matter of timing. *See generally* Dkt. 51.

In its Notice of Recent Developments, Onesta represents that "on March 10, 2026, Onesta's agreement with Qualcomm was formally executed." Dkt. 56, p. 1 (Onesta's Corrected Notice of

---

[3] Onesta filed a Corrected Notice, Dkt. 56, after BMW pointed out errors in its original, Dkt. 55, including improper argumentation and false under-oath statements describing Onesta's requests to terminate in Germany as "***BMW's*** withdrawal of complaint." Dkt. 55-1 ¶¶ 2-4 (emphasis added).

Recent Developments). It follows that the Term Sheet no longer governs anything. *See id.* That concession alone is fatal to Onesta's Motion to Dismiss. Once the Term Sheet ceased to be operative, every factual assertion in the Motion tied to the alleged effects of the Term Sheet became irrelevant. The supposedly "executed" agreement has not been produced, nor has Onesta even attempted to characterize its contents. With its Term Sheet superseded by the definitive agreement, Onesta no longer has *any* evidence of record to support its requested relief.

And while the Term Sheet is no longer the applicable document for the Court to consider, Onesta's descriptions of it are demonstrably false. Indeed, while Onesta claimed that March 27, 2026 was "the minimum sufficient time required to allow the agreed schedule in the Term Sheet for termination of the German proceedings to take place," Dkt. 51, p. 9, when it served its own ends Onesta was magically able to request termination over two weeks earlier on March 12, 2026. Dkt. 56, p. 1 ("Onesta withdrew its German actions against BMW.") That reversal does more than undermine Onesta's credibility; it confirms that the factual premises of the Motion were never reliable to begin with.

Onesta has mooted its own Motion. The document on which it relied no longer has any effect, and the document that supposedly replaced it remains hidden. The Court should not dismiss this declaratory-judgment action on speculation about what an undisclosed agreement might say— particularly where Onesta's representations have proven incorrect.

### C. Contrary to Its Reply Argument, Onesta Is Not the Prevailing Party

For the first time in its Reply, Onesta offers details on why it believes it is the prevailing party. Dkt. 54, p. 8. Onesta's new arguments fail and warrant a response.

Without citing any case law, Onesta makes the unfounded assertion that "Onesta is the prevailing party" because it "sued BMW for patent infringement" and then unilaterally allegedly resolved that issue by "entering into a binding Term Sheet" with BMW's supplier. Dkt. 54, p. 8.

But Onesta has lost at every turn both in Germany and in this case. In Germany, Onesta requested termination of the German proceedings, Dkt. 56, p. 1, which makes BMW the winner there. And because the winner pays on fees, Onesta will owe BMW its fees.

In this case, even if the Court accepts Onesta's naked assertion that the Term Sheet resolves the underlying patent infringement dispute between *these two parties* here—it does not—it does not render Onesta the prevailing party. To the contrary, this supports BMW as the prevailing party by reinforcing BMW's prayer for relief that "BMW AG has not infringed, and is not infringing" any claim of the two respective patents. Dkt. 1, p. 45.

Here, BMW is the only party that has secured any relief with respect to the declaratory judgment action. As noted above, BMW pled for a finding that it "is not infringing," *id.*—and Onesta allegedly concedes as much. A party "prevails" when it secures some relief on the merits (or equivalent judicial action) and a material alteration of the legal relationship between the parties that directly benefits the prevailing party through a court judgment or order with "judicial imprimatur." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001).

As for BMW's pleading of Onesta's misuse, this Court granted BMW's anti-suit injunction, halting Onesta's German actions and requiring Onesta to terminate proceedings it never should have brought. *See* Dkts. 26, 31, 50. That Order altered the parties' legal relationship by force of law, directly benefited BMW through court order, and is a merits victory for BMW. Voluntary compliance with a court order—if Onesta's request to terminate the German proceedings months after this Court's January 13th order is considered "compliance"—does not confer prevailing-party status *on the complying party* (i.e., Onesta). Nowhere has this Court (or, indeed, any court) provided Onesta with any *relief on the merits* or any material alteration of the

10

legal relationship ***between it and BMW*** that directly benefits Onesta through a court judgment or order with "judicial imprimatur." *Buckhannon*, 532 U.S. at 603–05.

Onesta did not prevail. It lost its effort to litigate U.S. patent claims in a foreign forum, was ordered to stop, resisted compliance, and ultimately retreated. BMW prevailed, not Onesta.

### III.    Conclusion

Onesta has not come close to meeting its formidable burden to establish lack of jurisdiction through mootness. Its Motion to Dismiss depends on a now-superseded "binding Term Sheet" that described only through self-serving attorney argument and declaration. Coupled with Onesta's contradictory representations about timing, there is simply not a reliable basis for concluding that the controversy Onesta created has been extinguished.

The Court should deny Onesta's Motion to Dismiss in its entirety, or at a minimum, permit the targeted jurisdictional discovery that BMW is seeking of Onesta.

11

Dated March 18, 2026                    Respectfully submitted,


/s/ Lionel M. Lavenue
 Lionel M. Lavenue (VA Bar No. 49005)
lionel.lavenue@finnegan.com
J. Derek McCorquindale (*pro hac vice*)
derek.mccorquindale@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone:      (571) 203-2700
Facsimile:      (202) 408-4400

Matthew C. Berntsen (MA Bar No. 678533)
matthew.berntsen@finnegan.com
Yi Yang (*pro hac vice*)
yi.yang@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Seaport Lane
Sixth Floor
Boston, MA 02210-2001
Telephone:      (617) 646-1600
Facsimile:      (617) 646-1666

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Joseph M. Myles (DC Bar No. 1672505)
joseph.myles@finnegan.com
David Faurie (*pro hac vice*)
david.faurie@finnegan.com
Victor M. Palace (*pro hac vice*)
victor.palace@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:      (202) 408-4000
Facsimile:      (202) 408-4400

*Attorneys for Plaintiff*
*Bayerische Motoren Werke Aktiengesellschaft*

12

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 18, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

<div align="center" style="margin-left:auto">

/s/ Lionel M. Lavenue
Lionel M. Lavenue

</div>